UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAURA HETTINGER,
Plaintiff(s),
v.
BOZZUTO MANAGEMENT COMPANY,
Defendant(s).

Civil Action
No. 23-03687 JEB
Washington, D.C.
June 13, 2024

---

INITIAL SCHEDULING CONFERENCE
BEFORE THE HONORABLE JAMES E. BOASBERG
UNITED STATES DISTRICT CHIEF JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S): F. Peter Silva, II, Esquire
Tycko & Zavareei, LLP
2000 Pennsylvania Avenue Northwest
Suite 1010
Washington, D.C. 20006

Randolph T. Chen, Esquire
412 H. Street Northeast
Suite 302
Washington, D.C. 20002

FOR THE DEFENDANT(S): Christina Araviakis, Esquire
James D. Bragdon, Esquire
Gallagher, Evelius & Jones, LLP
218 North Charles Street
Suite 400
Baltimore, Maryland 21201

REPORTED BY: Tammy Nestor, RMR, CRR
Official Court Reporter
333 Constitution Avenue Northwest
Washington, D.C. 20001
tammy_nestor@dcd.uscourts.gov

The following proceedings began at 10:36 a.m.:

THE COURT: Good morning, everybody. Sorry I am a little bit late. My hearing ran over.

Nicole, are we ready?

THE COURTROOM DEPUTY: We are here today for an initial scheduling conference in Civil Action 23-3687, Laura Hettinger versus Bozzuto Management Company. Beginning with counsel for the plaintiff, please state your name for the record.

MR. SILVA: Good morning, Your Honor. Peter Silva on behalf of the plaintiff. I am joined by Randy Chen, who is my co-counsel.

THE COURT: Good morning.

MS. ARAVIAKIS: Good morning, Your Honor. Christina Araviakis for the defendant. And I believe my co-counsel James Bragdon is trying to log on right now.

THE COURT: Welcome to you as well.

I have gotten your report. I know there's some -- again, I appreciate the agreement you folks have reached on certain things. And the class certification and expert dates that you proposed are fine with me as are the amendment pleading joinders. Initial disclosure is fine. I guess that was already made.

Initial disclosure has already been made, is that right, Mr. Silva?

MR. SILVA: That is correct.

THE COURT: All right. I will include that.

All right. I guess the big issue is sort of on scope of discovery. I think it's a little bit hard for me in the abstract to decide this. I think that -- it seems that you folks are having some -- are getting closer. I guess on page 10 where the plaintiff talks about proposal staging discovery regarding where Bozzuto would produce limited discovery for all buildings to determine which specific buildings at which the practices were occurring, you know, what -- you know, that doesn't sound so far off.

Ms. Araviakis, what are you -- I don't think that limiting discovery just to the NOVEL building is appropriate at this point given the allegations. I'm not saying you need to -- it's full open, open your files and give them everything having to do with every single building so they can maybe find something, but I think we need to have some way, at least some preliminary cut, regarding documents that might -- from all buildings or general practices that might let them try to make their case or not. So I'm wondering whether you have a proposal.

MS. ARAVIAKIS: Your Honor, I apologize. Mr. Bragdon, my co-counsel, is in the waiting room right now. I would also like him to be able to hear and chime in if he's able to be let in.

THE COURT: Okay. Nicole?

THE COURTROOM DEPUTY: My apologies, Your Honor. I'm still dealing with our other case in the courtroom. I'm letting him in now.

THE COURT: Okay. Mr. Bragdon, can you state your appearance.

MR. BRAGDON: Good morning, Your Honor. James Bragdon for defendant.

THE COURT: Okay. Ms. Araviakis is going to tell me about sort of the potential sort of first cut of discovery related to all buildings, again, so we reach some middle ground here between nothing on all buildings and the universe. So that's what I want to hear. I want to find some sensible place for sort of reasonable discovery and to put widespread practices.

So, Mr. Bragdon -- and again, we may not be able to -- what I would hope -- I mean, maybe the best is to sort of give you a sense of an overview of parameters where I think you should be, and then you folks can get together and nail down the specifics because I'm not going to be able to do that terribly well.

So, Mr. Bragdon, do you want to respond?

MR. BRAGDON: Yes, Your Honor. And I think the parties want to find a middle ground on this as well. As we said in the statement, there's 65 different buildings.

We had an initial discussion at the conference about what things could be overlapping among the properties and then which ones could be very different.

And Ms. Araviakis and I have begun to investigate some of the issues that we know are the focus of plaintiff's case at NOVEL. And our initial discovery shows that a lot of that will differ and require pretty intense fact discovery at NOVEL to get to the questions that plaintiffs want to get to. And that would require -- you would multiple by 65 if you did that level of discovery into every building.

So what I think -- what I have -- and I have looked detailed in my proposal to plaintiff's counsel in our conference, but what I think we could start with is discovery on NOVEL including even a deposition of the property manager.

And I think in the course of that discovery, some things will come out that are -- you know, she'll be able to answer some questions for Bozzuto, and some questions she will have to say, well, that depends on the property.

So for example, I looked at the categories that plaintiffs have stated, you know, in their statement what they want to focus on and what the Court's order directs us to. And it's -- you know, for advertising, for example, I can tell you from our initial discovery efforts that can

vary a lot between properties.

So what I would propose is that plaintiffs issue their discovery as broad as they want to. We start with NOVEL, the property that there have been facts alleged about, and then we can go through, as the defendant, to different categories and either say this is something that we think is too broad because here's evidence to show that it's different from property to property, or on this one category of requests, you know, like the lease, base lease, we think that's something we can produce, you know, for the portfolio.

THE COURT: All right. So, Mr. Silva, your response?

MR. SILVA: Your Honor, I'm just not hearing enough definitiveness is the biggest problem that I'm having. We believe and have alleged in our complaint that these practices are happening at all of or, you know, most of the buildings.

And so we need documents from across the portfolio to figure out where it's happening. We are happy to stage it. We are happy to limit those documents as much as possible. I actually -- we have been working internally on, you know, a number of documents that we think that we can do it in. And it's rather small, right?

I don't want to limit myself the entire scope, but

we are just thinking along the lines of if we have a lease, some of the bills, the utility bills, and then either a copy of the screen flow from the Bozzuto page where people -- where tenants sign up for each of the buildings and/or even just a statement on that last one that the Bozzuto website is similar for each one of its buildings, you know, that gets us a long way into figuring out which buildings are involved in our three theories because from the lease, we know who's charging for --

THE COURT: Let me stop you.

So why isn't that reasonable, Mr. Bragdon? You were talking sort of a small set of documents from each of the buildings.

MR. BRAGDON: Well, we're open to a small set of documents. The categories of, like, all marketing materials, that, for example, would be -- you know, we just started that, and it took us a full day to even get a beginning at NOVEL. So if we were --

THE COURT: Okay. I appreciate it. Let me just stop you.

So I think sort of what I envision, Mr. Silva, is something along the lines that you're proposing, which is --

So, Mr. Bragdon, I'm going to say it's got to be more than just NOVEL documents, but it shall be a limited

number of documents from each building.

Now, limited I hope you folks can agree on, and if you can't, you can come back to me. But I think that what I would rule is, A, you don't get everything from every building, Mr. Silva.

And B, Mr. Bragdon, you can't confine this to NOVEL. So the answer is small number of documents, every building.

And then, again, as I said, let's see where you are. And if there's a problem, we will come back. And then what we ought to do is maybe set a status hearing in, you know, 90 days, and let's see where discovery stands at that point.

Before you got on, Mr. Bragdon, I said that the proposed class cert schedule would be fine as well as the other deadlines.

So if I gave an order along those lines to get us started, and then we set another date, Mr. Silva, what do you think?

MR. SILVA: I like that idea, Your Honor.

THE COURT: Mr. Bragdon?

MR. BRAGDON: I agree.

THE COURT: Okay. Let's pick that date then.

What I'm going to do -- how is September 11 at 10:30 for the plaintiff?

MR. SILVA: Plaintiff's available, Your Honor.

THE COURT: I'm sorry. I didn't hear you.

MR. SILVA: Plaintiff's available, Your Honor.

THE COURT: Okay. Sorry.

Mr. Bragdon?

MR. BRAGDON: Defendants as well, yes, Your Honor.

THE COURT: Okay. And then I am going to have you submit by September 9 a joint status report that can just give me a sense of where things stand. It doesn't need to be particularly detailed.

Okay. Now, we are not going to have any mediation at this point given what you have said. If at any point in the discovery process you both think mediation would be helpful, I will send you to either a magistrate judge or the circuit program. Just let me know. I don't send you unless you both want to go. But if you both want to go, you can call chambers and we will set that.

One important point. You can't file any discovery motions without leave of Court. All right? So in other words, if there is a dispute that you really can't resolve, then you can both call chambers, and I will either get on the line right there, or we will pick a date very soon. But don't file motions because I'm not going to rule that way. I find this a much more efficient process.

Okay. So anything else? Any questions about that? Anything else we need to address today, Mr. Silva?

MR. SILVA: No. Just confirming on that last point. You mean, like, literally, like, get on the phone, the two of us calling your chambers, and we'll set a date?

THE COURT: I mean literally. I mean, and I might get on right there, or my clerks may say tomorrow at 10:00.

MR. SILVA: Perfect.

THE COURT: But don't expect that this is a process that will be regularly available.

MR. SILVA: Understood, Your Honor.

THE COURT: Mr. Bragdon, anything else today?

MR. BRAGDON: No. Thank you, Your Honor.

THE COURT: Thanks to all, folks. And I will issue -- we'll get an order out.

(The hearing concluded at 10:48 a.m.)

\- - -

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

7/10/24

s/ Tammy Nestor

Tammy Nestor, RMR, CRR
Official Court Reporter
333 Constitution Avenue NW
Washington, D.C. 20001
tammy_nestor@dcd.uscourts.gov