**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LAURA HETTINGER,** *On Behalf of Herself and All Others Similarly Situated*<br>400 Army Navy Dr, Unit 515<br>Arlington, VA 22202<br><br>　　　　　　　　　　*Plaintiff*<br><br>　　**v.**<br><br><br>**BOZZUTO MANAGEMENT COMPANY**<br>6406 Ivy Lane Ste 700<br>Greenbelt, MD 20770<br><br>SERVE:<br><br>MICHAEL A. SCHLEGEL<br>6406 Ivy Lane Ste 700<br>Greenbelt, MD 20770<br>　　　　　　　　　　*Defendant* | **Case No:** 1:23-cv-03687-JEB<br><br><br>**Judge:** James E. Boasberg<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

<u>**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

　　　　Plaintiff Laura Hettinger ("Plaintiff"), on behalf of herself and all those similarly situated, by her attorneys, brings this class action against Defendant Bozzuto Management Company ("Bozzuto") for violations of the District of Columbia Consumer Protection Procedures Act ("CPPA").

**I.　　INTRODUCTION**

　　　　1.　　　　Bozzuto, a large residential property management company, has exploited residential tenants in many of its buildings in the District of Columbia (the "District") by using a drip-pricing scheme to inflate tenants' monthly rent through arbitrary and variable utility assessments. Tenants who do not pay Bozzuto's illegal charges face steep late fees and even eviction. Thus, they are captive customers for Bozzuto's abusive practices.

1

2.      To carry out its scheme, Bozzuto partitions the rent for many units of its buildings in the District into two portions: (1) a fixed monthly rate ("Fixed Rent"), the amount of which is clearly disclosed in advertising, applications, and leases, and (2) charges for utilities and other related fees ("Utility Rent"). While the fine print in the leases requires the Utility Rent to be paid to the building as a condition of living in the building, the specific amount of Utility Rent that one will have to pay is not identified in the lease, nor in any of the advertising, applications, or disclosures provided. This practice is illegal: District law mandates that the entire amount of money owed as a condition of occupancy be disclosed "[a]t the time a prospective tenant files an application to lease any rental unit."[1] Long after applying, tenants learn that Bozzuto secretly tabulates a new amount for Utility Rent every month, adds on extra billing fees, and then demands tenants pay that month's amount immediately—often in as little as ten days. Thus, by making the monthly payment of a variable utility charge a condition of occupancy in these buildings ("Utility Rent Properties"), tenants have little choice but to cede to Bozzuto's billing demands, as those who do not pay the Utility Rent on demand risk negative credit and background reporting, steep late fees, and eviction.

3.      Plaintiff brings this action to challenge this type of rental scheme and ensure the full disclosure of a unit's rent—which includes the entire amount of money owed as a condition of occupancy—at the time tenants file their rental applications as District law requires.

4.      Once its tenants enroll in the lease and have moved into the Utility Rent Properties, Bozzuto further exploits its power over tenants by overcharging them in two critical ways. ***First,*** without informing tenants prior to signing a lease and moving into their homes, Bozzuto requires their tenants to pay per unit rates for water and/or sewer service that exceed the lawful rates chargeable in multifamily residential properties. If tenants were able to pay utility companies directly, they would pay less than what Bozzuto demands.

---

[1] D.C. Code Ann. § 42-3502.22(b)(1).

5.      **Second,** Bozzuto uses an illegal submetering or energy allocation methodology to illegally tabulate each tenant's gas and/or electric Utility Rent, compounding tenants' problems. When tenants pay the utility companies directly for their unit's gas and/or electric charges, those charges are measured through the unit-level meters installed by the public utility companies ("Public Meters"). But because tenants in Utility Rent Properties must *also* pay *Bozzuto* a variable Utility Rent for gas and/or electric, Bozzuto relies on secretive private submetering[2] and energy allocation technology[3] (collectively "Private Submeters"). Private Submeters pose a significant risk of harm to consumers because they are not regulated in the same manner nor meet the same standards as Public Meters. Despite District regulations prohibiting these submetering methods in residential multifamily apartment buildings, tenants locked into leases have little choice but to cede to Bozzuto's illegal billing methods.

6.      While landlords and utility companies have long been comprehensively regulated in the District of Columbia to protect tenants, Bozzuto skirts these regulations. For example, in traditional rental arrangements, where monthly fixed rent includes utilities, tenants have the security of knowing their housing costs will not fluctuate from month to month—unlike in Bozzuto's scheme. In other arrangements, where the monthly rental rate excludes certain utilities, the tenant pays the utility company directly. Thus, the tenants have the security of knowing they are protected through the District's democratically-established and tenant-informed utility regulations—unlike in Bozzuto's scheme. The District caps utility rates and fees and provides other consumer protections, so there is little risk that tenants will lose their homes if economic hardship or a billing dispute causes them to fall behind on their utility bills. Meanwhile, Bozzuto's

---

[2] *See* D.C. Code § 34-1551(10) (defining "Submetering equipment" as "equipment used to measure actual electricity or natural gas usage in any nonresidential rental unit when the equipment is not owned or controlled by the electric or natural gas utility serving the building in which the nonresidential rental unit is located").

[3] *See* D.C. Code § 34-1551(4) (defining "Energy allocation equipment" as "any device, other than submetering equipment, used to determine approximate electric or natural gas usage for any nonresidential rental unit within a building").

scheme of partitioning "rent" into Fixed Rent and Utility Rent prevents tenants from enjoying either of those protections and makes them vulnerable to exploitative fees and costs and eviction.

7.      These unlawful practices have injured thousands of Bozzuto tenants. Plaintiff Laura Hettinger is one such tenant. In 2021, she completed an application for an apartment that disclosed only the Fixed Rent without any mention of the Utility Rent. She has since then paid a variable Utility Rent to Bozzuto, the numerical amount of which was not disclosed in her lease, and that is in excess of the District's maximum legal rates and measured via illegal submetering. On behalf of similarly situated tenants in affected Bozzuto properties, Plaintiff Hettinger brings this class action lawsuit asserting violations of the District of Columbia's Consumer Protection Procedures Act ("CPPA").

## II.    JURISDICTION

8.      The Court has subject matter jurisdiction over this case pursuant to pursuant to D.C. Code § 11-921.

9.      The Court has personal jurisdiction over Bozzuto pursuant to D.C. Code § 13-423 because it conducted, and continues to conduct, business in the District of Columbia or caused, and continues to cause, tortious injury in the District of Columbia.

10.     Venue is appropriate because the events that gave rise to this Complaint occurred in the District of Columbia.

## III.   PARTIES

11.     Plaintiff Laura Hettinger was a tenant in the Novel South Capitol East building ("Novel South") located at 4 I St SE, Washington, D.C. 20003. At all relevant times, the Novel South was managed by Defendant Bozzuto.

12.     Defendant Bozzuto Management Company is a Maryland corporation that operates in the District. Bozzuto is a subsidiary of The Bozzuto Group, a sprawling real estate company engaged in the development, building, ownership, and management of residential and commercial real property. Bozzuto manages over 91,000 residences across the United States, including approximately 12,000 residential units in multifamily apartments in the District of Columbia.

13.    As is typical of property management companies controlling large residential housing complexes ("Property Managers"), Bozzuto performs almost all duties related to the operation and management of apartment buildings as a commercial enterprise. It sets the terms of the rental agreements, including the rent and fees. It is responsible for and empowered to carry out advertising, leasing, maintenance, staffing, utility procurement and payments, rent assessment and collection, tenant communications, and vendor contracting, and retention and oversight. At all times relevant to this complaint, Bozzuto, in fact, carried out these responsibilities. Bozzuto also refers tenants for eviction and appears as the landlord's company representative in legal proceedings. Accordingly, Bozzuto is a "housing provider" within the meaning of the District's housing regulations.[4]

14.    Plaintiff Hettinger was a tenant in one of the multifamily apartment buildings that Bozzuto manages in the District. Plaintiff Hettinger and Class members enter into lease agreements with the owners/investors of the residential apartment buildings in which they reside. The lease agreements contain the contractual rights and responsibilities of the parties. The owners/investors enter into service agreements with Bozzuto, under which it provides property management services for the buildings. Pursuant to these contracts, Bozzuto (a) acts as the agent of the owners/investors and (b) exercises the rights and responsibilities of the owners/investors under their lease agreements with Plaintiff and the Class members. In this manner, Bozzuto either acts as the alter-ego of the owners/investors, takes assignment of the lease agreement, and/or is in functional privity and near privity of contract with Plaintiff and the Class members.

## IV.    FACTS

### A.    Bozzuto Omits Information About Utility Rent From its Applications and Lease Agreements to Increase Tenancy and Profit in a Competitive Market.

15.    Over the last decade, the District of Columbia has seen an explosion in the construction of multifamily residential high-rise apartment buildings controlled by large Property

---

[4] D.C. Code § 42-3501.03(15).

Managers, like Bozzuto. Areas including the Southwest Waterfront, Wharf, H Street Corridor, Union Market, and NOMA have added 43,000 rental units to the District between 2020 and 2022.[5] These medium-to-large residential apartment complexes typically have at least 150 residential units and are often owned by single-asset limited liability companies or investors.

16.     The explosion in new apartment buildings has led to fierce competition among buildings and the Property Managers that control them. Despite that, rents in the District have continued to rise. One possible explanation for the rent increases in the District was laid out in a lawsuit filed on November 1, 2023, in which the Attorney General of the District alleged that Bozzuto, as well as other Property Managers, such as William C. Smith & Co., Greystar, and JBG Smith Properties, engaged in a price-fixing scheme to set rents. In particular, the lawsuit alleges that various Property Managers agreed to use RealPage, a property management software, to determine rents in their buildings, resulting in them charging up to 20 percent more than they would otherwise be able to command.

17.     Whatever the reason for the surging rents in the District, Property Managers are engaging in a variety of tactics to entice tenants to visit and apply for housing in their buildings without actually lowering tenants' overall monthly costs. In some cases, Property Managers are competing through more impressive amenities and services. But Bozzuto's Utility Rent scheme is much more nefarious as it combines drip and partitioned pricing tactics with outright illegal charges and overcharges.[6]

---

[5] Jeff, Clabaugh, *Why DC-Area Developers are Building so Many Apartments*, WTOP News (Oct. 20, 2023, 3:21 PM), https://wtop.com/business-finance/2023/09/why-dc-area-developers-are-building-so-many-apartments/.

[6] "Drip pricing" is a predatory pricing practice in which companies advertise a low rate but sneak in additional fees throughout the life of a transaction. "Partitioned pricing" is another predatory practice in which companies advertise a total price for a good or service separate and apart from a portion of the cost. An example of drip and partitioned pricing is in the travel industry, in which consumers are led to believe they will pay the advertised price for a hotel room through an online reservation but then are compelled to pay an additional mandatory "resort fee" on top of the advertised rate.

18.     To carry out its scheme, Bozzuto devised a confusing system that departs from how tenants historically pay for rent and utilities in the District.

19.     By way of background, tenants in residential multifamily properties in the District traditionally were billed for utilities in a relatively straightforward way, either by receiving a bill directly from the utility company or by agreeing to a fixed rent that included utilities. For example, a tenant might pay Washington Gas for any natural gas used in connection with their gas stove, and Pepco for lighting and other electric power used in their unit. For utilities billed to the building, such as water, the building pays using the tenants' fixed rent to cover these costs.

20.     Under this traditional system, contrary to Bozzuto's practices, fixed rent might cover electricity and gas, but always included the following types of utilities (collectively, "Traditional Building Utilities"):

- **Water.** Because the District requires that the title holder be billed for water and the utility company does not install unit-level Public Meters in multifamily housing, water was historically covered by a tenant's fixed rent.

- **Heating, ventilation, and air conditioning systems ("HVAC").** Because of the way HVAC systems are designed for, installed in, and used by multifamily housing, unit-level Public Meters usually do not measure a unit's individual use of energy for the HVAC. These costs would be measured by the building's Public Meter and billed to the building.

- **Water Heating.** For the same reasons as above, the costs associated with heating water are often measured by the building's Public Meter and billed to the building.

- **Utilities for Common Spaces.** Here again, the building's Public Meter measures utility usage in any place where tenants do not reside, such as lobbies, hallways, leasing offices, custodial workspaces, gyms, and other common spaces.

21.     In its Utility Rent Properties, Bozzuto bucks this traditional practice. Tenants may still pay *utility companies* for gas and/or electric measured by their unit's Public Meters. But the Utility Rent requires tenants to additionally pay to *Bozzuto* a variable upcharge for Traditional Building Utilities or other costs as a condition of residing in their units and accessing facilities.

22.     Problematically, despite conditioning tenancy on payment of these variable upcharges, Bozzuto does not disclose the amount of Utility Rent in its advertising, application, or

lease agreements. Such nondisclosure is not only unfair and misleading, but a clear violation of District law.

> **1.    Bozzuto Upcharges Tenants Through Utility Rent it Does Not Disclose in its Apartment Advertising and Applications.**

23.    Bozzuto is able to enforce its Utility Rent charges through the confusing and unlawful way it structures its advertising and application process. Applications are typically made available to tenants online via a third-party provider, RentCafé. In those applications, Bozzuto discloses only the amount of the Fixed Rent, not the amount of Utility Rent or even its intent to charge Utility Rent, in violation of District law.

24.    In the context of multifamily housing, the District of Columbia defines rent as "the *entire amount* of money, money's worth, benefit, bonus, or gratuity demanded, received, or charged by a housing provider as a condition of occupancy or use of a rental unit, its related services, and its related facilities."[7] "'Related services' means services provided by a housing provider . . . to a tenant in connection with the use and occupancy of a rental unit, including … the provision of light, heat, hot and cold water, air conditioning . . . ."[8] "'Related facility' means any facility . . . made available to a tenant by a housing provider . . . including any use of . . . the common use of any common room, yard, or other common area.[9] In other words, where a lease provides that a landlord may evict a tenant for failure to pay a given fee or charge or otherwise interfere with one's enjoyment of the unit and related facilities, that fee or charge is a "condition of occupancy," and is considered part of the "entire amount" of "rent" owed.

25.    Bozzuto's standard lease agreement, Ex. A ("Standard Lease" or "Lease"),[10] makes clear that Utility Rent is "rent" under the preceding District law. Specifically, Paragraph 6 of the

---

[7] D.C. Code § 42-3501.03(28) (emphasis added).

[8] D.C. Code § 42-3501.03(27).

[9] D.C. Code § 42-3501.03(26).

[10] Ex. A consists of all documents which together form Plaintiff Hettinger's lease contract. For ease of reference, this Complaint will cite to the eight-page document entitled <u>Apartment Lease Contract</u> as the "Standard Lease" or "Lease," while it will cite to the two-page document entitled <u>Utility Addendum for Water, Sewer, Gas, Trash and Electric Service</u> as the "Utility Addendum."

Standard Lease, entitled "Rent and Charges," identifies only the Fixed Rent owed each month, but elsewhere the Standard Lease makes the payment of Utility Rent "a condition of occupancy or use of a rental unit" within the meaning of the District's tenant laws.[11] Specifically, the Standard Lease states:

- "Failure to pay any utilities shall be deemed a breach of this Lease Contract." Lease ¶ 8.

- "The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment." Ex. A at 9-10 ("Utility Addendum") ¶ 3.

- "You'll be in default of this Lease Contract if you . . . violate[] any terms of this Lease Contract including but not limited to the following violations: (1) you do not pay any rent or other amounts that you owe when due . . . ." Lease ¶ 29.

- "Timely payment of rent hereunder is a covenant of, and an integral part of this Lease Contract. Late payment of rent is a default hereunder, irrespective of whether the rent is ultimately paid, with or without a late charge." *Id*.

- "Eviction. If you fail to pay rent, or any other charge hereunder otherwise defined as rent, we or our agents/attorney(s) may forthwith file a non-payment suit for possession of the Apartment." *Id*.

26.    Thus, because Bozzuto (1) retains the right to evict those who do not pay their Utility Rent (including the Conservice fees set forth in the Utility Addendum), and (2) tenants who fall behind on their Utility Rent must pay Bozzuto a late fee for non-payment of rent (Lease ¶ 6; Utility Addendum ¶ 3), the Utility Rent is a condition of occupancy and, thus, rent under District law.

27.    Further, District law requires that "at the time a prospective tenant files an application to lease any rental unit," the housing provider must disclose the "applicable rent for

---

[11] D.C. Code § 42-3501.03(28).

the rental unit."[12]  Thus, at the time of the application, the leasing agent must disclose the entire amount of any charges that must be paid to reside in the unit and utilize the facilities, which includes the Utility Rent, and for good reason. As discussed in Paragraph 6 and Paragraph 49, these consequences are substantially more drastic for consumers in these arrangements than those directly billed by utility companies.

28.     Contrary to law and custom, Bozzuto does not disclose the entire amount owed as a condition of occupancy to prospective tenants at the time of application (or in the lease, *see infra* ¶¶ 31-35). Primarily, Bozzuto fails to disclose portions of Utility Rent, such as the amounts of variable rates charged for utilities and fixed monthly "Service Fees" associated with utility billing. Because prospective tenants often compare buildings online, Bozzuto can drive more interest by advertising a rent that is far below the actual rent.

29.     Making matters worse, Bozzuto charges tenants steep fees early in the application process, either as an application fee or non-refundable deposit, and these fees can often be in the hundreds of dollars.

30.     Bozzuto's scheme (and the nature of the rental market) also increases the probability that applicants will ultimately lease with Bozzuto, despite having inadequate disclosures relating to Utility Rent. Bozzuto often takes weeks to prepare the lease, and during this time, reasonable consumers are unlikely to apply for tenancy at other properties because of the high costs of applying for housing at many buildings. Further, due to Bozzuto's long delay in responding, even those tenants who can afford to pay for multiple applications for housing often do not have the time to walk away and restart the process at another building.

> **2.     Bozzuto Also Upcharges Tenants By Failing to Disclose the Amount of Utility Rent in its Lease Agreements.**

31.     After the expensive and slow application process, when tenants are invested in the property and have diminished housing options, Bozzuto provides them with the lease. It uses form

---

[12] D.C. Code § 42-3502.22(b)(1)(A). *See also* District of Columbia Tenant Bill of Rights, ¶ 3.

leases that are classic contracts of adhesion and can be dozens of pages long. Bozzuto presents them with the lease on a take-or-leave-it basis, and tenants cannot engage in the drafting or editing of the language or terms. Bozzuto uses a standard Apartment Lease Contract form lease produced by the National Apartment Association ("NAA"), which is usually accompanied by additional addendums based on standard NAA forms. *See, e.g.*, Standard Lease. As is relevant here, for Utility Rent Properties, Bozzuto utilizes NAA's standard Utility Addendum for Water, Sewer, Gas, Trash and Electric Service. *See, e.g.*, Utility Addendum. The Utility Addendum is a preprinted form that allows Property Managers like Bozzuto to check boxes and fill in blank spaces to indicate whether the tenant is responsible for payment of the specific utility, whether the tenant will be billed by the building or directly from the utility company, the amount or manner in which the tenant will be charged, and whether a private third party utility management provider ("UMP") will be involved in the billing.

32.     In the Utility Rent Properties, Bozzuto has inserted into the Utility Addendum additional utility service types that will be required of the tenant as part of their Utility Rent. These service types include Traditional Building Utilities, such as electricity for HVAC and gas for "Water Heating," and in some buildings, include utilities for common building spaces.

33.     Bozzuto also requires the tenant to assume additional costs associated with the utility billing. Through the Utility Addendum, Bozzuto requires tenants to open accounts with a UMP, Conservice LLC ("Conservice"), which handles the billing for the Utility Rent. Conservice is not a local public utility company, but a privately held Utah-based company backed by venture capital. The Utility Rent includes money that Bozzuto collects and pays to Conservice, such as new account set-up fees of up to $15.00, and monthly billing fees of up to $10.00 per month (the "Service Fee"). The Service Fee is a flat monthly rate that ranges between $4-$10 depending on the Utility Rent Property, but is uniform across tenants at a particular Utility Rent Property. For example, during Plaintiff's tenancy at the Novel South, Plaintiff and fellow tenants were charged a Service Fee of $4.30/month.

34.    While tenants may finally learn when signing the lease that payment of Utility Rent is a condition of occupancy, the entire amount of the rent, including the Utility Rent, is not disclosed to tenants in the leases themselves. Nor does Bozzuto include adequate and accurate information in the lease that would allow a tenant to make a reasonable estimate of the anticipated Utility Rent. This practice is done so that Bozzuto can acquire tenants by advertising the industry standard "rent" for the buildings it controls without having to disclose Utility Rent that tenants are required to pay on a monthly basis under their lease.

35.    Even though District law requires Bozzuto "at the time a prospective tenant files an application to lease any rental unit" to disclose the "applicable rent for the rental unit,"[13] which includes Utility Rent, *supra*, Bozzuto excludes the applicable rent from not only its apartment applications, but also from its standard lease agreements.

**B.    Once Locked Into the Standard Leases, Bozzuto Further Upcharges Tenants By Using Two Illegal Practices to Tabulate Utility Rent.**

36.    Bozzuto's Utility Rent scheme escalates once tenants have moved into its buildings. Once the lease agreement is formed and tenants move into the building, they receive monthly demands for Utility Rent. Compounding the overall unfairness of Bozzuto's Utility Rent scheme are two separate, illegal methods by which that rent gets calculated.

**1.    When Assessing Utility Rent, Bozzuto Illegally Uses Rates that Exceed the District's Maximum Rates for Utility Services.**

37.    The D.C. Water and Sewer Authority ("WASA") is the entity created by law to provide water and sewer services to District customers. WASA has three classifications of customers to set water and sewerage rates: Residential, Multi-Family, and Non-Residential.[14] The "Multi-Family" charge classification is defined to include "a multi-family structure or development (such as an apartment, condominium, or cooperative housing association) used for domestic purposes, with four or more single-family, apartment, condominium, or cooperative

---

[13] D.C. Code § 42-3502.22(b)(1)(A). *See also* District of Columbia Tenant Bill of Rights, ¶ 3.

[14] D.C. Mun. Regs. tit. 21, § 4104.1(a)-(c).

housing association residential dwelling units served by the same service line that is master metered[.]"[15]

38.    The water and sewage rates charged to these classifications are set each year by regulation after a period of notice and comment by the public.[16] The rate year runs from October 1 to September 30 of the following year.

39.    The applicable statutory maximum water and sewer rates per year are as follows:[17]

| | FY 2021 (Effective 10/1/2020) | | FY 2022 (Effective 10/1/2021) | | FY 2023 (Effective 10/1/2022) | | Approved FY 2024 (Effective 10/1/2023) | |
|---|---|---|---|---|---|---|---|---|
| Rate Class | Per Gallon | 1,000 Gallons | Per Gallon | 1,000 Gallons | Per Gallon | 1,000 Gallons | Per Gallon | 1,000 Gallons |
| **Multi-Family Water Rate** | $.00529 | $5.29 | $0.0055 | $5.55 | $0.00655 | $6.55 | $0.0068 | $6.68 |
| **Multi-Family Sewer Rate** | $0.01306 | $13.06 | $0.01422 | $14.22 | $0.01505 | $15.05 | $0.1564 | $15.64 |

40.    When tenants enroll in their leases in any Utility Rent Property, Bozzuto does not inform them of the illegal nature of the Utility Rent that they will be assessed. Instead, Bozzuto's Utility Addendums typically state that a tenant is responsible for the payment of water and sewer when "bills are billed by the service provider to [Bozzuto] and then allocated to [the tenant] . . . ." *See* Utility Addendum ¶ 1.

41.    In addition, in other advertising and materials provided to tenants, both before and after entering the lease, Bozzuto does not include any conspicuous disclaimers to put tenants on notice of its intention to charge rates in excess of the maximum statutory rates. In particular,

---

[15] *Id.*

[16] D.C. Code § 34-2202.16(b)(1); D.C. Mun. Regs. tit. 21, § 4101.

[17] *See* D.C. Mun. Regs. Tit. 21, § 4101.1(a) (sewer rates including prior versions 2021 and 2022); D.C. Mun. Regs. Tit. 21, § 4100.3 (water rates including prior versions 2021 and 2022); *Approved FY 2023 and FY 2024 Rates*, DC Water (Nov. 20, 2023, 8:54 AM), https://www.dcwater.com/approved-fy-2023-and-fy-2024-rates.

Bozzuto does not notify or inform tenants that it is charging rates in excess of the maximum statutory rates when advertising for the apartments on its websites, listing services, or in brochures and promotional materials that persuade prospective tenants to lease with Bozzuto. For tenants already residing in buildings, Bozzuto omits information about its inflated rates in the monthly bills, as well as in building communications via tenant portals, printed correspondence, and email blasts.

42.    Moreover, Bozzuto's Utility Rent is variable and represented to tenants as a charge that uses Bozzuto's actual costs as a basis. Thus, tenants reasonably expect that Bozzuto is passing on to them its actual costs of utilities and not charging rates in excess of what Bozzuto pays to the utility companies.

43.    Nevertheless, Bozzuto frequently demands that tenants in multifamily apartment buildings in the District, including Novel South, pay Utility Rent amounts that are calculated with rates greater than the statutory maximum per gallon rate for both water and sewer service for a given year.

## 2.    Bozzuto Uses an Illegal Submetering Methodology to Assess Portions of the Utility Rent.

44.    By using privately controlled submetering and energy allocation technology to determine Utility Rent bills for tenants, Bozzuto further violates the laws of this District.

45.    The Public Service Commission ("PSC") regulates gas and electric utility companies and services in the District of Columbia. The PSC bans the submetering, remetering, reselling, or other use of energy allocation equipment in residential rental units in the District of Columbia. This prohibition is included in Pepco's tariff and is agreed to by all customers, including Bozzuto as the property manager of the buildings at issue in this lawsuit.[18]

---

[18] "Electric service furnished to the Customer shall be for the Customer's own use and may not be remetered or submetered by the Customer, except for, within Multi-dwelling units, electric service furnished by the Customer solely for purpose of electric vehicle charging . . . ." *General Terms and Conditions for Furnishing Electric Service in the District of Columbia*, Pepco, at 7-8 (Nov. 17, 2023, 10:42 AM), https://www.pepco.com/SiteCollectionDocuments/MyAccount/MyBillUsage/Pepco_DC-Terms-and-Conditions.pdf.

46.     The ban on submetering has been in place for nearly a century. Between 1987-89, the PSC undertook an extensive investigation to determine whether the ban on residential submetering should be lifted,[19] but the PSC concluded that it was not in the public interest to lift the ban. Central to the PSC's reasoning was the protection of tenants, as no District entity has statutory authority to regulate "the relationship between submetering resellers and final consumers."[20] While the PSC has made other modifications to the ban, such as a 2021 amendment to permit submetering for the sole purpose of electric vehicle charging,[21] and a 2008 amendment to permit submetering in nonresidential rental units,[22] the ban on submetering in residential rental units remains in effect.

47.     Notwithstanding this prohibition, to calculate tenants' Utility Rents in many of its Utility Rent Properties, Bozzuto uses Private Submeters to allocate costs under one of two methods:

a)  **"Straight Submetering."** Utility Rent purportedly reflects whatever the Private Submeters have measured for that unit's usage and is charged at a set price for unit of utility consumption (e.g., dollars per kilowatt hour of electricity or per gallon of water); or

b)  **"Blended Submetering."** After Private Submeters purportedly measure that unit's actual usage, the unit's Utility Rent is calculated by dividing the Private Submeter's unit-reading by the building's total utility usage for the billing period, multiplied by the entire building's utility bill. The result is that the tenant pays what is purportedly a share of the building's total utilities.

---

[19] *See* Order No. 8836, 8 D.C.P.S.C. 337 (1987); Order No. 9213, 10 D.C. P.S.C. 248 (1989).

[20] *See* Order No. 9213, 10 D.C.P.S.C. 248, 250 (1989) ("The Commission . . . finds that it would not be in the public interest to lift the ban against submetering until the Commission has jurisdiction to regulate the relationship between submetering resellers and final consumers.").

[21] *See In the Matter of the Investigation into Modernizing the Energy Delivery Sys. for Increased Sustainability, in the Matter of the Application of the Potomac Elec. Power Co. for Approval of Its Transportation Electrification Program*, Order No. 21162, 2022 WL 2106153 (June 3, 2022).

[22] As part of the Clean and Affordable Energy Act of 2008, the District authorized such regulations. D.C. Code § 34-1551, *et seq.* The resulting regulations include a variety of protections for commercial tenants in a submetering arrangement, including setting timelines for billing and a prohibition on reimbursing the landlord for common room utilities. *See* C. Mun. Regs. Tit. 15, § 4401.11-4401.16.

48.     Through such use of Private Submeters, Bozzuto engages in the illegal submetering of tenants' gas and electric utilities, including in the Novel South. It uses Private Submeters to supposedly track the quantity of gas or electric services being used by a particular unit (though upon information and belief, its submetering technology and method for calculating charges based on the technology are highly unreliable). Further, when tenants enroll in their leases in any Utility Rent Property, Bozzuto does not inform them of the illegal nature of the Utility Rent that they will be assessed.

**C.     Bozzuto's Utility Rent Scheme Is Unfair.**

49.     These practices, *supra* §§ IV.A-B, are not only illegal, but they are also unfair and in violation of public policy. The requirement that the entire amount be disclosed to prospective tenants is not a mere technicality, but one that serves the public's interest in access to stable housing. Unlike Bozzuto's Utility Rent tenants, tenants who pay a single flat monthly rent enjoy the security of knowing their housing costs will not fluctuate from month to month. Also, unlike Bozzuto's Utility Rent tenants, when a tenant's monthly rental rate excludes certain utilities and the tenant pays the utility company directly for those fees, tenants will not be forced out of their homes due to unpredictable housing costs. When tenants pay utility companies directly, they are protected through the District's democratically-established and tenant-informed utility regulations. For example, utility companies have timelines by which they have to provide notice of the charges before they are due[23] and cannot set overly steep late fees.[24] They are required to send consumers standardized, transparent bills that include mandated disclosures.[25] If mistakes are made, there are

---

[23] D.C. Mun. Regs. tit. 15, § 304.1; see D.C. Mun. Regs. tit. 15, § 304.10 (bills are set on a monthly basis); D.C. Mun. Regs. tit. 15, § 4407.9 (setting timeline for delivering gas and electric bills to consumers).

[24] D.C. Mun. Regs. tit. 15, § 305.3.

[25] D.C. Mun. Regs. tit. 15, § 304.7 (requiring the bills to contain specific information, including the dates and readings of the submetering or energy allocation equipment, the name of the contact person in the case of any questions or disputes concerning the bill, and the average cost in cents per energy unit).

procedures for disputing charges and verifying meterage.[26] For those sent an erroneous bill or who otherwise cannot pay, those tenants face little risk that they will lose their homes, unlike tenants subject to Bozzuto's scheme. Further, utility companies must offer payment plans and take other steps to ensure customers' continual access to safe housing, particularly for lower income and elderly customers.[27]

50.    By contrast, Bozzuto's Utility Rent scheme deprives tenants of the security and benefits of these two traditional methods. Instead, Bozzuto's Utility Rent scheme is substantially injurious to consumers, oppressive, harmful, and provides no commensurate benefit to consumers.

51.    While the Utility Rent is payable monthly, tenants do not know what amount will be assessed each month until a bill is provided to them. While tenants receiving direct billing from utility companies often have approximately a month to pay a bill, it is not unusual for Bozzuto to only give tenants fewer than ten days to pay their Utility Rent after tenants receive the bill. For example, a tenant will receive a bill for their July Utility Rent in late August, but their payment will be due on September 1.

52.    In addition, omitted from the Utility Rent bills is information that can allow a tenant to assess the accuracy of the charges. For example, despite purportedly assessing a tenant's bills based on that tenant's share of utilities, the bills for Utility Rent typically do not include details such as the amount of the building's total usage, or the unit's percentage of the building's total usage. Bozzuto also does not make this information readily accessible to tenants, and certainly not

---

[26] D.C. Mun. Regs. Tit. 21, § 403 (customer can challenge bill and initiate investigation); see D.C. Mun. Regs. Tit. 21, § 409.2 (providing customer the right to appeal investigation findings in administrative hearing for water and sewer utilities); D.C. Mun. Regs. tit. 21, § 410 (procedure for water and sewer administrative hearing); D.C. Mun. Regs. tit. 15, § 325.1 (administrative hearings for gas and electric); D.C. Code Ann. § 34-804(d) (providing customers free representation by the District's Office of People's Counsel).

[27] D.C. Mun. Regs. tit. 21, § 4102 (outlining customer assistance programs); D.C. Code § 34-2202.16 (b-1)(1) (financial assistance programs for water and sewer bills); Receive Assistance With Your Utility Bills (LIHEAP), Department of Energy & Environment (Oct. 18, 2023, 11:31 AM), https://doee.dc.gov/liheap (financial assistance for utility bills); D.C. Code Ann. § 34-304 (providing complete defense of excessive charges to collection actions).

on a timeframe that allows tenants to examine the bill before Utility Rent is due and late fees are assessed. Moreover, because tenants do not hold accounts with utility companies, they cannot bypass Bozzuto and request information directly from the companies.

53.     In fact, when tenants request that Conservice inspect their private submeters, Conservice refers them to the Bozzuto, without conducting any reasonable investigation or follow-up. In turn, Bozzuto often refers the tenant back to Conservice, leaving the tenant helpless—in an ongoing merry-go-round of finger-pointing and misdirection.

54.     If tenants do not pay their Utility Rent on time, Bozzuto's leases provide it the right to assess them late fees for non-payment of rent, regardless of outstanding billing disputes. Bozzuto typically sets this fee at around 5% of the Fixed Rent amount. Thus, a tenant who pays $2,000 a month in Fixed Rent will pay a $100 late fee if the Utility Rent is not paid on time, even if the Utility Rent is for an amount much less than that. Thus, even if the Utility Rent is disputed, the demand sent unreasonably late, or the tenant experienced an unexpected financial hardship, a tenant may be forced to pay a steep financial penalty. Moreover, Bozzuto reserves the right to evict tenants for non-payment of Utility Rent and report them to credit and housing reporting agencies. Thus, because tenants risk additional exorbitant fees, damage to their credit, public records of allegations of non-payment of rent, and the loss of their homes, they have no meaningful choice but to pay whatever Utility Rent Bozzuto demands. The combination of the lack of transparency, short time to pay the bill, and harsh penalties for failure to pay on time severely prejudices tenants' ability to protect their interests.

55.     Moreover, even once outside of the original lease term, tenants will rarely be able to absorb the cost of relocating to another home simply to avoid being subject to Bozzuto's Utility Rent scheme. Moving homes is itself an expensive endeavor, as tenants may need to take time from work and incur moving costs, and new apartments typically require new security deposits, move-in fees, and other expenses. The tenant may not be able to locate other appropriate housing options that do not also involve a Utility Rent scheme. And for those tenants who may have paid

Bozzuto late or continue to owe Utility Rent, their credit and background reports may be damaged, ultimately harming their ability to secure alternative housing.

56.    Finally, even the Standard Leases contemplate that Bozzuto should not be permitted to enforce illegal terms. Specifically, the Utility Addendum states that it is "designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful." Utility Addendum ¶ 10. Because each of the two billing methods, as well as the undisclosed amount of the Utility Rent, not to mention the failure to adequately disclose Utility Rent in its advertising and applications, are unlawful, Bozzuto violated the law and acted unfairly in enforcing these terms.

**D.    Plaintiff Hettinger Was a Victim of Bozzuto's Utility Rent Scheme.**

57.    The Novel South, managed by Bozzuto, is a multifamily residential apartment complex located in Southeast D.C. In total, the Novel South has 355 residential rental units.

58.    At Novel South, Bozzuto engages in Straight Submetering of HVAC, water, and sewer services.

59.    In June 2021, Plaintiff Hettinger visited the Novel South's website while comparing apartment prices online. The website allowed her to view pictures of, and learn other details about, the Novel South. The website even showed the specific floor plans of available units along with the amount of the monthly rent of those units. The amount of the monthly rent displayed was exclusively Fixed Rent, and there was no mention on the website of the separate Utility Rent that would be required.

60.    After viewing the Novel South's website, Plaintiff Hettinger visited the Novel South building in person for a tour of the building. During her visit, the Bozzuto representative did not adequately disclose to Plaintiff Hettinger Novel's Utility Rent. For example, the Bozzuto representative did not disclose that Plaintiff Hettinger would be required to pay a monthly Service Fee of $4.30 to be billed for certain utilities. The Bozzuto representative also did not adequately disclose the amounts Plaintiff Hettinger could expect to pay for utilities through third-parties,

which included water, sewer, gas, and electric for HVAC usage, such as through estimates or the formula by which utility charges would be calculated.

61.    On June 27, 2021, Plaintiff Hettinger paid a nonrefundable application fee of $75.00 and submitted a rental application online through RentCafé. In the application, the amount of the monthly rent that was disclosed was her Fixed Rent of $2,276. At no point prior to Plaintiff Hettinger's filing of her rental application did Bozzuto cure the disclosure failures alleged in the preceding paragraph.

62.    On July 1, 2021, Bozzuto approved Plaintiff Hettinger's application and requested an earnest money deposit of $300.00, which Plaintiff Hettinger paid the same day before she received the lease.

63.    On or around July 22, 2021, Bozzuto sent Plaintiff Hettinger an electronic copy of its Standard Lease and accompanying addenda, including the Utility Addendum, for her electronic signature. Plaintiff Hettinger did not have the ability to edit or modify the terms of the lease. Plaintiff Hettinger signed the thirteen-month lease to occupy the residential apartment unit as her primary residence.

64.    The Utility Addendum also required that Plaintiff Hettinger pay a $10.00 "New Account Fee" to start an account with Conservice, and a $4.30 monthly Service Fee to receive her bills from Conservice. Utility Addendum ¶ 3. As defined in Paragraph 2, both the New Account Fee and Service Fee are included within the definition of "Utility Rent" because they are utility-related fees; both fees were not disclosed to Plaintiff Hettinger at the time she filed her rental application.

65.    The Utility Addendum stated that Plaintiff Hettinger was responsible for the payment of water and sewer when "bills are billed by the service provider to [Bozzuto] and then allocated to you based on the following formula: Sub-metered through Conservice." Utility Addendum ¶¶ 1.a)-b). There is no statement or disclosure indicating that Bozzuto was going to bill Plaintiff Hettinger and other tenants at rates greater than the statutory maximum rate.

66.     Nonetheless, Bozzuto engaged in the systematic overcharging of Plaintiff Hettinger and her fellow tenants for water and sewer service by charging them at a rate greater than the maximum statutory rate. For instance,

a.   in August 2021, Plaintiff Hettinger was charged $9.67 for water and $14.64 for sewer per 1000/gallons in excess of the FY 2021 $5.29 and $13.06 multifamily statutory rate, respectively;

b.   in December 2021, Plaintiff Hettinger was charged $10.00 for water and $15.55 for sewer per 1000/gallons in excess of the FY 2022 $5.55 and $14.22 multifamily statutory rate, respectively.

67.     Further, pursuant to the Utility Addendum, Plaintiff Hettinger was responsible for payment of electricity directly to the utility company as her unit had a unit-level Public Meter, and her utility accounts were in her name. *Id.* ¶ 1.e).

68.     However, the special provisions section of the Utility Addendum stated that Plaintiff Hettinger would be responsible for paying additional Utility Rent for electricity that was billed to the building through its Public Meter that would be assessed via submetering:

Electric utilities must be placed in the lease holders name or could be subject to an additional $40 administrative fee. HVAC usage is sub-metered per unit and will be billed to resident account through Conservice monthly in arrears.

*Id.* ¶ 11. Plaintiff Hettinger did not know and was not told that Bozzuto's submetering practices were in violation of the District's prohibition on the Private Submetering of electricity in residential apartment buildings. Plaintiff Hettinger would not have agreed to the provision had she known that it was in violation of District law.

69.     Each month, Plaintiff Hettinger and all other Novel South tenants received a bill from Pepco for the electricity used in their apartments based on the reading of the unit-level Public Meters.

70.     Each month, Plaintiff Hettinger and all other Novel South tenants also received a monthly statement from Conservice for utility charges, including for HVAC, water, and sewage all based on submetering or the use of energy allocation equipment.[28]

71.     Bozzuto engaged in illegal submetering of electricity when, through Conservice, it sent Plaintiff Hettinger and other tenants monthly statements demanding payment for electricity based on the use of submetering or energy allocation equipment. For instance, Plaintiff Hettinger was charged and paid $15.79 for HVAC after receiving the statement dated April 23, 2022.

## V.    CLASS ACTION ALLEGATIONS

72.     This action is brought and may properly proceed as a class action pursuant to Federal Rule of Civil Procedure 23.

73.     Plaintiff Hettinger seeks certification of the following **Class**:

All current and former District of Columbia residential tenants of Bozzuto-managed properties who were assessed and paid a Service Fee that was not disclosed to them at the time they filed their rental applications during the three years preceding the filing of this action.

74.     Plaintiff Hettinger seeks certification of the following three **Subclasses:**

**Utility Nondisclosure Subclass.** All Class members who were assessed and paid utility charges that were not disclosed to them at the time they filed their rental applications during the three years preceding the filing of this action.

---

[28] For example, the monthly statement's "Service Type" description stated: "HVAC service is provided by Pepco. Your submetering system measures the amount of electricity used by the HVAC system in your unit. Your submeter reads in kWh units. You are billed according to that consumption multiplied by the average electric rate of the local utility provider. You are charged $.185455 per kWh." Hettinger Conservice Utility Bill dated April 23, 2022. It further stated: "Sewer service is provided by DC Water and Sewer Authority. Your submetering system measures the amount of Sewer used in your unit. Your submeter reads in Gal units. You are billed according to that consumption multiplied by the average Sewer rate of the local utility provider. You are charged a base fee of $0.00 per month, as well as $.015432 per Gal." *Id.* Finally, for water, the bill stated: "Water service is provided by DC Water and Sewer Authority. Your submetering system measures the amount of Water used in your unit. Your submeter reads in Gal units. You are billed according to that consumption multiplied by the average Water rate of the local utility provider. You are charged a base fee of $0.00 per month, as well as $.009807 per Gal." *Id.*

**Overcharge Subclass:** All Class members who were assessed and paid utility charges for water and/or sewer service at a rate greater than the lawfully established maximum rates at any point during the three years preceding the filing of this action.

**Submetering Subclass:** All Class members (1) who were assessed and paid utility charges for electricity and/or gas services; (2) via sub-metering or energy allocation equipment at any point during the three years preceding the filing of this action.

75.    The Class and Subclasses are collectively referred to herein as the "Classes." The members of the Classes (collectively, the "Class members") have been subjected to improper billing practices and, as a result, unfair, misleading, and/or deceptive treatment by Defendant.

76.    Excluded from the Classes are Bozzuto's officers and directors and current or former employees of Bozzuto, and their immediate family members, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and staff.

77.    **Numerosity**. Plaintiff is informed and believes that there are thousands of members of each Class. The Classes are so large that the joinder of all of their members is impracticable. The exact number of members of each of the three Classes can be determined from information in the possession and control of Bozzuto.

78.    **Commonality**. Bozzuto has acted or refused to act on grounds that apply generally to the Classes, including failing to disclose the amount of Utility Rent in the application and lease agreement, overcharging utilities per unit, using an illegal submetering scheme, failing to provide meaningful customer service related to suspected overcharges, and failing to investigate suspected overcharges. Absent certification of the Classes, the relief sought herein creates the possibility of inconsistent judgments and/or obligations imposed on Defendant. Numerous common issues of fact and law exist, including, without limitation:

a.    Whether Bozzuto violated District of Columbia law by failing to disclose the applicable rent to tenants at the time of application;

b.    The nature, extent, policies, and procedures of Bozzuto for including illegal provisions in residential leases for tenants in the District of Columbia;

23

c.    The nature, extent, policies, and procedures of Bozzuto for submetering utilities for leased residential properties in the District of Columbia;

d.    The nature, extent, policies, and procedures of Bozzuto in charging water and sewer rates per gallon in leased residential properties at a rate that exceeds the applicable utility service rates;

e.    The nature, extent, policies, and procedures of Bozzuto in communicating with customers promptly regarding suspected overcharges for District of Columbia residents; and

f.    Whether Bozzuto is in functional privity or privity of contract with Class members.

79.    **Typicality**. Plaintiff Hettinger's claims are typical, if not identical, to the claims that could be asserted by all members of the Classes. Plaintiff's claims arose from Bozzuto's practices applicable to all such class members.

80.    **Adequacy**. Plaintiff Hettinger is a member of each Class and Subclass and will adequately represent the interests of those class members because there are no conflicts between Plaintiff and those class members, and because Plaintiff's counsel has the experience and skill to zealously advocate for the interests of the members of the Classes.

81.    **Predominance**. Common issues predominate over individualized inquiries in this action because Bozzuto's liability can be established as to all members of the Classes as discussed herein.

82.    **Superiority**. There are substantial benefits to proceeding as a class action that render proceeding as the Classes superior to any alternatives, including that it will provide a realistic means for members of the Classes to recover damages; the damages suffered by members of the Classes may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Classes may be unaware that they have legal recourse for the conduct alleged herein; and because issues common to members of the Classes can be effectively managed in a single proceeding. Plaintiff knows of no

difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

## VI.    CAUSE OF ACTION

### CLAIM 1
### VIOLATIONS OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT
### D.C. Code § 28-3901, *et seq.*
### On Behalf of the Classes Against Defendant

83.    The District of Columbia enacted the Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, *et seq.*, to protect consumers from unfair and misleading business practices and to provide consumers with proper redress of grievances.

84.    Any consumer who suffers damages as a result of violations of the CPPA may bring an action and recover $1,500 per violation or treble damages per occurrence, whichever is greater, punitive damages, attorneys' fees, and other appropriate relief.

85.    Plaintiff Hettinger is a consumer under the CPPA as the utility bills at issue relate to her use and enjoyment of residential real estate in the District of Columbia.

86.    Bozzuto is a merchant and subject to liability under the CPPA because it regularly provides consumer goods and services related to residential real estate leasing directly to consumers such as Plaintiff and the Class members. Additionally, and alternatively, Bozzuto is a merchant because it is sufficiently connected to the supply side of residential real estate leasing as the property manager of residential apartment buildings. Without Bozzuto's actions and services, the residential landlords could not fulfill their obligations under the lease and provide residential housing to consumers.

87.    The CPPA prohibits a wide variety of unfair and deceptive trade practices perpetrated against consumers.[29] The practices prohibited include engaging in *any* unfair or deceptive trade practice, whether or not any consumer is, in fact, misled, deceived, or damaged by

---

[29] D.C. Code Ann. § 28-3904.

the practice.[30] D.C. Code § 28-3904 contains a non-exhaustive list of unfair and deceptive trade practices including:

> (e) misrepresent as to a material fact which has a tendency to mislead;
> (e-1) represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;
> (f) fail to state a material fact if such failure tends to mislead;
> (f-1) use innuendo or ambiguity as to a material fact, which has a tendency to mislead; [and]
> . . . .
> (u) represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not[.]

88.     A trade practice which violates any statute, regulation, rule of common law, or other law of the District of Columbia is an unfair or deceptive trade practice.[31]

89.     The CPPA also applies to deceptive billing practices related to a contract for consumer goods and services.

90.     Bozzuto violated the CPPA **as to Plaintiff Hettinger and the Classes** when it engaged in the following unfair and deceptive trade practices:

- **[Subcount A]** In violation of **D.C. Code § 28-3904's prohibition on unlawful conduct acts,** Bozzuto violated the CPPA by failing to disclose the "applicable rent for the rental unit" to **Plaintiff Hettinger and the Classes** at the time of the filing of their rental application in violation of D.C. Code § 42-3502.22(b)(1)(A), as well as failing to disclose this information in the lease agreement. Bozzuto disclosed the Fixed Rent in the rental application but did not state that it would charge Utility Rent. Further, Bozzuto disclosed Fixed Rent in the lease agreement, but did not state the amount of Utility Rent it would charge. This is unlawful because the Utility Rent is part of the "rent" as it is included in "the entire amount of money, . . . demanded, received, or charged by [Bozzuto] as a condition of occupancy or use

---

[30] *Id.*

[31] D.C. Code Ann. § 28-3905(b)(1)(B).

of a rental unit, its related services, and its related facilities." D.C. Code § 42-3501.03.

- **[Subcount B]** In violation of **D.C. Code § 28-3904's prohibition on deceptive and/or unfair acts,** Bozzuto violated the CPPA when it engaged in a drip pricing scheme by which it omitted the obligation to pay Utility Rent from its advertising and applications, and did not disclose the full financial obligations of tenancy until after tenants invested substantial time and effort into the leasing process, and valuable consideration had been paid in the form of an application fee, earnest money, or other pre-lease sums.

- **[Subcount C]** In violation of **D.C. Code § 28-3904's prohibition on unfair acts,** Bozzuto violated the CPPA's prohibition on unfair conduct when Bozzuto partitioned out costs typically covered by fixed rent and made Class members responsible for a variable Utility Rent. In so doing, Bozzuto deprived Class members of the protections and benefits they would enjoy with a single, predictable, monthly fixed rent and the standard legal protections afforded consumers when they are billed for utilities directly by utility companies, while using severe penalties to enforce the terms.

91.    Bozzuto violated the CPPA **as to Plaintiff Hettinger and the Overcharge Subclass** when it engaged in the following unfair and deceptive trade practices:

- **[Subcount D]** In violation of **D.C. Code § 28-3904(e-1)'s prohibition on representing a transaction confers obligations it does not have**, Bozzuto violated the CPPA each time it represented to the Overcharge Subclass members that they were obligated to pay a Utility Rent for water and/or sewer service calculated using utility rates that exceeded the District's lawful rates for multifamily residential properties, including the applicable established maximum allowable rate per gallon/1000 gallon for multiple family dwellings in violation of

District of Columbia law and regulations.[32] Because Bozzuto was obligated to charge the lawful rate and was prohibited by law from charging a higher rate, Bozzuto's representation to Overcharge Subclass members that a given month's Utility Rent transaction conferred an obligation to pay Bozzuto an arbitrary, inflated rate violated this prohibition.

- **[Subcount E]** In violation of **D.C. Code § 28-3904(f)'s prohibition on the failure to state a material fact if such failure tends to mislead,** Bozzuto violated the CPPA each time it failed to disclose at the time of lease signing that it intended to calculate Utility Rent for water and/or sewer service using rates in excess of the District's lawful rates for multifamily properties, and violated it again each month when it demanded Utility Rent and failed to disclose that it was assessing that rent using rates that exceeded the lawful rates.

- **[Subcount F]** In violation of **D.C. Code § 28-3904(f-1) prohibition on the use of innuendo or ambiguity as to a material fact, which has a tendency to mislead,** Bozzuto violated the CPPA each time it represented to the Overcharge Subclass members in monthly demands for Utility Rent that they are being charged at water and/or sewer service rates based on the amount of water and/or sewer used when they are actually being charged at a rate higher than the District's lawful rates.

- **[Subcount G]** In violation of **D.C. Code § 28-3904's prohibition on unfair acts,** Bozzuto violated the CPPA each time it charged Utility Rent for water and/or sewer service at rates in excess of the District's lawful rates.

- **[Subcount H]** In violation of **D.C. Code § 28-3904's prohibition on unlawful conduct acts,** Bozzuto violated the CPPA each time it charged Utility Rent for water and/or sewer service at rates in excess of the District's lawful rates.

---

[32] D.C. Code Ann. § 34-2202.16b; D.C. Mun. Regs. Tit. 21, § 4101-4101.1.

92.     Bozzuto violated the CPPA **as to Plaintiff Hettinger and the Submetering Subclass** when it engaged in the following unfair and deceptive trade practices:[33]

- **[Subcount I]** In violation of **D.C. Code § 28-3904(e-1)'s prohibition on representing a transaction confers obligations it does not have**, Bozzuto violated the CPPA each time it represented to the Submetering Subclass members that they were obligated to pay for electricity and/or gas based on the use of submetering for reasons other than the charging of an electric vehicle, which is prohibited by law. Because Bozzuto was legally obligated to refrain from engaging in the assessment of rent via submetering, Bozzuto's representation to the Submetering Subclass members that a given month's Utility Rent transaction conferred an obligation to pay Bozzuto for utilities measured via submetering violated this prohibition.

- **[Subcount J]** In violation of **D.C. Code § 28-3904(f)'s prohibition on the failure to state a material fact if such failure tends to mislead**, Bozzuto violated the CPPA each time it failed to disclose at the time of lease signing and again each month when it demanded Utility Rent for electricity and/or gas that it lacked the legal authority to assess tenants Utility Rent on a submetering basis.

- **[Subcount K]** In violation of **D.C. Code § 28-3904(f-1)'s prohibition on the use of innuendo or ambiguity as to a material fact, which has a tendency to mislead,** Bozzuto violated the CPPA each time it failed to disclose at the time of lease signing and again each month when it demanded Utility Rent for electricity and/or gas that it lacked the legal authority to assess tenants Utility Rent on a submetering basis.

---

[33] The Court dismissed Subcounts I, J, K, and M in its April 26, 2024 Order. While Plaintiff recognizes Subcounts I-M have been dismissed from this action, Plaintiff has retained them in this First Amended Complaint to maintain consistent alphabetization of the Subcounts between the Complaint and First Amended Complaint to avoid confusion.

- **[Subcount L]** In violation of **D.C. Code § 28-3904's prohibition on unfair acts,** Bozzuto violated the CPPA each time it charged Utility Rent for electricity and/or gas using a submetering methodology. The PSC and DC Council have repeatedly established that the ban on submetering is necessary because of the substantial risk to consumers posed by unregulated utility charges.

- **[Subcount M]** In violation of **D.C. Code § 28-3904's prohibition on unlawful conduct acts,** Bozzuto violated the CPPA each time it charged Utility Rent for electricity and/or gas using a submetering methodology because tabulating tenants' gas and/or electric Utility Rent via submetering is illegal, as set forth in the preceding Subcount.

93.    Bozzuto violated the CPPA **as to Plaintiff Hettinger and the Classes** when it engaged in the following unfair trade practices:

- **[Subcount N]** In violation of **D.C. Code § 28-3904's prohibition on unfair acts,** Bozzuto violated the CPPA through each of the acts and practices challenged in these Subcounts because such practices caused and are likely to cause substantial harm to Plaintiff Hettinger and the Class members, as they have been charged rent that was not disclosed in Bozzuto's advertising nor at the time of application or lease signing, overcharged substantial amounts of money based on rates in excess of statutory maximums, charged for utility bills based on an illegal submetering methodology, and/or face the prospect of eviction from their homes if they resist or challenge these unfair practices. The unfairness prong of the CPPA was added to further "protect consumer independence by stopping business practices that impede a consumer's ability to make informed choices."[34] Bozzuto's practices violate this command.

---

[34] *See* Report on Bill 220185, *available at* https://chairmanmendelson.com/wp-content/uploads/2018/03/B22-185-Consumer-Protection-Clarification-and-Enhancement-Amendment-Act-Packet.pdf (last accessed Nov. 8, 2023).

94.    Bozzuto violated the CPPA **as to Plaintiff Hettinger and the Classes** when it engaged in the following unfair and deceptive trade practices:

- **[Subcount O]** In violation of **D.C. Code § 28-3904(h)'s prohibition on advertising goods "without the intent to sell them as advertised or offered**," Bozzuto violated the CPPA by advertising rental properties with rental prices that Bozzuto did not intend to lease them at, given Bozzuto's failure to disclose Utility Rent charges to prospective tenants in its advertising and rental applications.

95.    Plaintiff Hettinger and the Class members cannot reasonably avoid these practices. Prior to leasing the properties, they lack meaningful choice because (a) they may invest time and money in selecting the apartments before being apprised of the full details of the scheme; (b) Bozzuto utilizes take-it-or-leave-it leases and controls a significant portion of the housing supply in the District; (c) some of Bozzuto's competitors employ similar practices; and/or (d) Bozzuto has superior knowledge and tenants are not informed of the full extent of the Utility Rent scheme and the many ways in which it is illegal.

96.    Moreover, once enrolled in the leases, Plaintiff Hettinger and the Class members continue to lack meaningful choice to avoid paying the demanded Utility Rent because (a) Bozzuto can impose steep late fees and other harsh consequences, including negative credit and background reporting and eviction; (b) Bozzuto deprives them of information needed to dispute the accuracy of the Utility Rent demand; (c) Bozzuto makes the various aforementioned misleading representations and omissions regarding the basis and legality of the Utility Rent, further preventing tenants from understanding the full extent of its illegal acts; (d) Class members may still be locked into leases and under an obligation to finish their tenancy; and/or (e) Class members may not have other options for other housing due to the many expenses and burden associated with relocating, Bozzuto's control of the market, and other limitations.

97.    Bozzuto's unfair and deceptive acts do not provide any benefit to consumers or competition, while Bozzuto gains an unfair advantage over competitors who do not engage in such practices.

98.     As a result of Bozzuto's violations, Plaintiff and the members of the Classes were harmed, and are entitled to damages in the greater of actual damages or $1,500 for each of the aforementioned violations and attorneys' fees. In addition, they are entitled to declaratory and injunctive relief enjoining future conduct of this nature by Bozzuto, including but not limited to engaging in evictions and negative credit reporting against tenants who do not pay their Utility Rent or who do not do so in a timely manner, the collection of any Utility Rent from Class members when the entire amount of that Utility Rent is not included in the application or lease but is a condition of occupancy and use of the facilities, the assessment of any Utility Rent via Private Submetering, and the assessment of Utility Rent using rates in excess of any statutory maximum.

## PRAYER FOR RELIEF

Plaintiff Hettinger prays for relief as follows:

a.      Certifying the proposed Classes;

b.      Awarding Plaintiff and the Classes actual damages;

c.      Awarding Plaintiff and the Classes compensatory damages;

d.      Awarding Plaintiff and the Classes statutory damages, where permitted by applicable law;

e.      Awarding Plaintiff and the Classes treble damages, where permitted by applicable law;

f.      Awarding Plaintiff and the Classes exemplary and/or punitive damages, where permitted by applicable law;

g.      Awarding Plaintiff and the Classes restitution of the amounts unlawfully taken from them by Defendant;

h.      Disgorging Defendant of the amounts unlawfully taken from Plaintiff and the Classes;

i.      Awarding Plaintiff and the Classes attorneys' fees and costs;

j.      Awarding Plaintiff and the Classes pre- and post-judgment interest, as applicable;

k.     Enjoining Defendant from continuing to engage in unlawful advertising, leasing, and billing practices and implementing related penalties; and

l.     All further relief as the Court deems just and proper.

Respectfully submitted,

Date: January 2, 2025

*/s/ Anna Haac*
Anna Haac (DC Bar No. 979449)
F. Peter Silva II (DC Bar No. 1010483)
*ahaac@tzlegal.com*
*psilva@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave., Northwest, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*/s/ Randolph T. Chen*
Randolph T. Chen (DC Bar No. 132644)
Jason S. Rathod (DC Bar No. 100082)
Nicholas A. Migliaccio (DC Bar No. 484366)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE
Washington DC 20002
Office: (202) 470-3520
Fax: (202) 800-2730
rchen@classlawdc.com
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

*Counsel for Plaintiff Laura Hettinger*