# EXHIBIT 5

# APARTMENT LEASE CONTRACT

NATIONAL APARTMENT ASSOCIATION

Date of Lease Contract: July 23, 2021
(when the lease contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In—General Information

**1. PARTIES.** This Lease Contract is between the following tenants, as tenants *(list all people signing the Lease Contract)*:

Laura Catherine Hettinger

and Crescent Capitol View, LLC

as owner *(name of owner or agent of owner)*. The terms "you" and "your" refer to all tenants listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). By this Lease Contract, you agree to lease from us, and we agree to lease to you, Apartment No. 1106 (the "Apartment"), at 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)* for use as a private residence only. Written or electronic notice to or from owner or agent constitutes notice to or from both owner and agent. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached to this Lease Contract.

**READ THIS PARAGRAPH BEFORE SIGNING THIS LEASE: PRIOR TO THE EXECUTION OF THIS LEASE, YOU WERE NOTIFIED THAT THIS APARTMENT *[CHECK ONE]*:**

- ☐ is subject to rent control.
- ☒ is not subject to rent control and you acknowledge that, prior to execution of this Lease Contract by you, we have advised you that, pursuant to Section 205 of the District of Columbia Rental Housing Act of 1985, rent increases for the Apartment are NOT regulated by the Rent Stabilization Program (i.e., rent control program) of that Act, and that the Apartment is exempt from the Rent Stabilization Program.

**2. OCCUPANTS.** The Apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

as permissive occupant(s). No one else may occupy the Apartment. No family member of yours over the age of eighteen (18) years old (except a full-time student) or other person over the age of eighteen (18) years old may be listed as an "occupant," but rather must be qualified as, and be listed above as, a resident/tenant. No guest(s) of yours may stay in the Apartment for more than seven (7) consecutive days during a 30-day period, without our prior written consent.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the 23rd day of July, 2021 (the "Commencement Date"), and ends at midnight the 22nd day of August, 2022.

**4. SECURITY DEPOSIT.** Tenant has paid to Landlord the sum of $ 0.00 **(the "Security Deposit")**, the receipt of which is hereby acknowledged, which sum does not exceed one (1) month's Rent. The Security Deposit shall be held as collateral security and applied on any rent or unpaid utility bill or other charge payable by Tenant that may remain due and owing at any time during or at the expiration of this Lease, any extension thereof or holding over period, or applied to any damages to the Premises in excess of ordinary wear and tear caused by Tenant, Tenant's family, guests, employees, trades people, or pets, or other damages and expenses suffered by Landlord as a result of a breach by Tenant of any covenant or provision of this Lease. Tenant may not utilize the Security Deposit as Rent and Tenant shall not apply the same as the last month's Rent. Landlord shall not withhold the security deposit for the replacement value of apartment items that are damaged due to ordinary wear and tear. Any promise by the Tenant to leave, restore, surrender, or yield the Apartment in good repair does not obligate the Tenant to make substantial repairs, replace obsolete materials, or fix other defects without negligence or fault on the Tenant's part. For the purposes of this Section, the term "ordinary wear and tear" means deterioration that results from the intended use of the Apartment, including breakage or malfunction due to age or deteriorated condition. The term does not include deterioration that results from negligence, carelessness, accident, or abuse of the Apartment, fixtures, equipment, or other tangible personal property by the Tenant, immediate family member, or a guest.

**5. KEYS.** You will be provided 1 apartment key(s), 1 mailbox key(s), 0 FOB(s), and/or 0 other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same. A fee of $ 75.00 will be charged for replacing any lost or damaged keys. A fee of $ 100.00 will be charged for replacing any lost or damaged electronic entry fobs.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay to us $ 2276.00 per month for rent for the Apartment, payable in advance and without demand:

- ☒ at the on-site manager's office, or
- ☒ at our online payment site, or
- ☐ at

In addition, prorated rent is due from you to us on execution of this Lease in the amount of $ 660.77 for payment in advance of rent from the date of possession through the Commencement Date.

You must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must pay your rent via cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. If you don't pay all rent on or before the fifth (5th) day of the month, you'll pay a late charge. Your late charge will be *(check one)*: ☐ a flat rate of $ ______ or ☒ 5 % of the full amount of the total monthly rent payment. Regardless of the calculation method chosen above, the total amount of your late charges shall not exceed five percent (5%) of your total monthly rent payment. This charge is not a penalty but the cost to us of auditing your account and, if necessary, sending you a rent deficiency notice. A charge of $ 100.00 will be payable by you to us for each returned check or rejected electronic payment. In the event of non-payment of any rent(s), this Lease Contract shall cease and terminate, and you hereby expressly waive any right to a Notice to Quit for nonpayment of rent pursuant to DC Code §42-3505.01(a) (2001 ed.), codifications thereafter, or under any other D.C. Law or Regulation.

Landlord shall not impose on Tenant a mandatory fee for any service or facility that has not been approved pursuant to section 211 or section 215 of the Rental Housing Act of 1985, if the Apartment is subject to rent control.

Bozzuto 002757

© 2020, National Apartment Association, Inc.

7. **RENT INCREASES AND LEASE CONTRACT CHANGES.** Rent may be increased by us at any time or time(s) permitted by law. You will receive notices of rent increases, in writing, in accordance with District of Columbia law, which requires us to give you written notice of any rent increase at least 15 days before the advance written notice time period as set forth in Paragraph 40 (Move-Out Notice).

8. **UTILITIES.** Utilities for the Apartment (and related deposits, charges, fees, or services) shall be paid as follows:

(1) By you:
- ☐ Gas ☒ Cable
- ☒ Electricity ☒ Phone
- ☒ Water/Sewer ☒ Internet

(2) By us:
- ☐ Gas ☐ Cable
- ☐ Electricity ☐ Phone
- ☐ Water/Sewer ☐ Internet

You must not allow utilities to be disconnected during your tenancy for any reason, including disconnection for not paying your bills. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all tenants. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting, not candles or open flames. If any utilities are submetered for the apartment, or prorated by an allocation formula for water/sewer, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. Failure to pay any utilities shall be deemed a breach of this Lease Contract.

9. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any tenant, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other tenants, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We ☐ require ☐ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like. You shall maintain at all times during the Term of this Lease, at your sole expense, a renter's insurance policy, or its equivalent, issued by a licensed insurance company. Such policy shall provide limits of liability of $______________ personal liability, and $______________ personal property, and you shall provide us with proof of such insurance to our satisfaction.

If no box is checked, renter's insurance is not required.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, may be an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this Lease Contract will be applied to the owner's structural fire insurance on your behalf, and that you are in no way a co-insured or additional insured under any such policy. You are solely responsible for obtaining renter's insurance, or other desired insurance coverage, which may cover you for losses relating to a casualty in the Apartment, including but not limited to: replacement premises, bodily injury, and/or losses for personal possessions–irrespective of whether we require you to obtain any such insurance(s) as a condition of this Lease Contract above.

10. **LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior tenant moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term with our standard locks or latches. You must pay for any such change or rekeying, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

## Special Provisions

11. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

________________________________________

________________________________________

________________________________________

________________________________________

________________________________________

See any additional special provisions.

12. **DAMAGES AND REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the Apartment and apartment community due to a violation of the Lease Contract or community rules, improper use, negligence, or intentional conduct by you or your fellow Tenants, occupants, guests or visitors. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for and except for normal wear and tear, you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **DELAY OF OCCUPANCY.** If initial occupancy of the Apartment by you is or will be delayed for construction, repairs, cleaning, or a previous tenant's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate this Lease Contract as set forth below. Termination notice from you to us must be in writing. After termination, you are entitled only to refund of deposit(s) and any pre-paid rent. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that do not prevent you from occupying the apartment.

If there is a delay, and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later. Otherwise:

(1) If we give you written notice of a delay, after the initial term of this Lease Contract is scheduled to begin on the Commencement Date (as set forth in Paragraph 3 - Lease Term), and the notice states that occupancy has been delayed because of construction, or because of a previous tenant's holding over, and that the apartment will be ready on a specific date-you may terminate the Lease Contract within three (3 calendar days after you have received the notice, but not later.

(2) If we give you written notice of a delay, before the initial term of this Lease Contract is scheduled to begin on the Commencement Date (as set forth in Paragraph 3 - Lease Term), and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within seven (7) calendar days after you received the notice, but not later. In the event of such delay, the Commencement Date of the term of this Lease Contract will be deemed, by agreement hereunder and for all purposes, to be the date on which occupancy of the Apartment is available to you, and this Lease Contract nonetheless shall terminate on the date previously set forth in Paragraph 3 (Lease Term) above. This new Commencement Date may not be moved to an earlier date unless we and you agree to the same, in writing.

14. **AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional



© 2020, National Apartment Association, Inc. 

Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

## While You're Living in the Apartment

**15. COMMUNITY POLICIES OR RULES.** You, any occupants, and your guests and visitors shall comply with any and all written apartment rules and community policies, including instructions for care of our property, which may be attached to this Lease Contract as a written addendum. We reserve the right to change any written apartment rules and community policies at any time, and such amendments shall become effective and binding hereunder, as of the date the owner has sent a copy of them to you via first class mail. You, any occupants, and your guests and visitors shall comply with any amended apartment rules and community policies at all times after mailing, as set forth above. Any violation of any written apartment rules and community policies (or amendments thereof or thereto) shall be a violation of this Lease Contract and such apartment rules and community policies are incorporated herein, by reference.

**16. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean by you. Trash must be disposed of by you at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used by you only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas (if any of the foregoing exist in the apartment community) must be used by you with care in accordance with apartment rules and posted signs. Your access to amenities, such as swimming pools, exercise or meeting rooms, saunas, spas, tanning beds, storerooms, laundry rooms, or the like is not as a matter of right and may be terminated by us, should you fail to comply with applicable rules and regulations governing the same, or in the event that there is loud, boisterous, objectionable, or damaging behavior/occurrence(s) by you, your occupants, your guests or visitors, in or to such amenities. Glass containers are prohibited in or near pools and all common areas. You, your occupants, guests or visitors may not anywhere in the apartment community: use candles or use kerosene lamps; cook on balconies or anywhere outside of the Apartment; or solicit business or contributions. Conducting any kind of business (including child care services) in your Apartment or in the apartment community is prohibited-except that any lawful and properly licensed business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your Apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas.

We may exclude from the apartment community guests, visitors or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules and community policies, or disturbing other tenants, neighbors, visitors, or owner representatives. If any on-site management personnel or security personnel is provided by us to the apartment community, it is for the benefit us only, and is not a part of nor an amenity appurtenant to your tenancy interest hereunder. We're not responsible for obtaining criminal-history checks on any tenants, occupants, guests, visitors, or contractors in the apartment community. If you or any occupant, visitor or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**17. PROHIBITED CONDUCT.** You and your occupants, guests or visitors may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; possessing any firearm whether or not in compliance with all laws and regulations; discharging a firearm in the Apartment or apartment community; displaying or possessing a gun, knife, or other weapon in the Apartment or common area; storing anything in closets having gas appliances; tampering with utilities or telecommunications; or bringing hazardous materials into the apartment community.

**18. PARKING.** Parking *[check one]* ☐ is ☒ is not provided to you under this Lease Contract. If parking is checked as provided, we may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. We may charge a fee for any such parking, under a month-to-month commercial license separate from this Lease Contract, and may terminate your license to park upon providing you with thirty (30) days' written notice. Your obligations under this Lease Contract will not be amended or modified in any way in the event we terminate parking. Any termination of a parking license may be with, or without, cause and at our sole discretion. Any parking provided hereunder shall be deemed a commercial tenancy, not appurtenant to, nor a part of your residential tenancy under this Lease Contract. Motorcycles or motorized bikes shall not be parked inside an apartment unit or on sidewalks, under stairwells, or in handicapped parking areas. We may have unauthorized or illegally parked vehicles towed. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a tenant or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other tenant(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a tenant or occupant and is parked in a visitor or retail parking space.

**19. NO RELEASE OF TENANT/HEIRS & ASSIGNS.** Unless you're otherwise entitled to terminate your tenancy as a matter of law, or by an express provision herein, you won't be released from this Lease Contract for any reason-including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of Co-Tenants, loss of employment, bad health, or death. This Lease Contract inures only to the benefit of the named Tenants in Section 1 of this Lease Contract. In the event that the Tenant(s) listed herein should die at any time during the tenancy, there is no right of survivorship, inheritance, or assignment of this Lease Contract or the Apartment. In the event that the named Tenant(s) dies, all occupants must immediately vacate the Apartment. The tenant(s) hereunder hereby direct their personal representative and estate to promptly pay all unpaid rents or other financial obligations due hereunder to us, and to vacate and surrender the Apartment to the us within thirty (30) days after the Tenant(s) date of death, or in such time as is provided by a Court of competent jurisdiction in a probate or similar proceeding.

**20. MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**21. TENANT DUE CARE AND PROPERTY LOSS.** You and all occupants, guests and visitors must exercise due care for you own and others' safety, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and access control devices. You acknowledge and agree that living in an urban environment, such as Washington, D.C., has risks and dangers that are beyond our control. We cannot be, and are not responsible, legally nor otherwise to protect you from these risks and dangers, unless otherwise compelled to do so under law, and you agree to assume all such risks and dangers as part of your tenancy.



© 2020, National Apartment Association, Inc. Blue Moon eSignature Services Document ID: 275566931

**Smoke Detectors.** We will furnish smoke detectors to you as part of your Apartment rental, and will test them for working order. You must immediately report smoke detector malfunctions to us in writing. Smoke detectors shall not be disabled by you, your occupants, guests or visitors. If you damage or disable the smoke detector or remove power supply without replacing it, you may be liable to us for the costs of any fine incurred by us via a Notice of Infraction issued by the District of Columbia government due to such damage or disabling of the smoke detector, plus our actual damages. If you disable or damage the smoke detector, or fail to report known smoke detector malfunctions to us, you will likewise be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any tenant, occupant, guest or visitor for bodily injury or death, or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless due to our negligence. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services.

In the event the Apartment, or any part thereof, is taken by condemnation by any government agency or authority, your tenancy will be terminated at our option. You hereby specifically assign to us any portion of the award payable as damages for the taking of the property, and you waive any right to participate or make any claim in such condemnation proceedings.

**Crime or Emergency.** You agree to dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You agree to contact our representative. Unless otherwise provided by law, we're not liable to you or any occupants, visitors or guests for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We are not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute or regulation. We do not provide any security measures or devices. If we provide any access control devices or security measures upon the property, they are not an obligation of us to prevent crime or to reduce the risk of crime on the property. You agree that no access control devices or security measures can eliminate all crime and that you will not rely upon any provided access control devices or security measures as a warranty or guarantee of any kind. We disclaim any express or implied warranties of security, crime prevention or access control. You won't treat any of our security measures as an express or implied warranty of security, nor as a guarantee against crime nor of reduced risk of crime. We're not responsible for obtaining criminal-history checks on any tenants, occupants, guests, visitors or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

22. **CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the Apartment, fixtures, and furniture as is, except for conditions required by law to be fixed by us. You will be given an Inventory and Condition form on or before move-in. You must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, sanitary, and good working condition.

You must use customary diligence in maintaining the Apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter the Apartment or our property. No holes or stickers are allowed inside or outside the Apartment. But we will permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our apartment community rules and policies state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless we have consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the Apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the Apartment (whether or not we consent) become ours unless we agree otherwise in writing.

23. **REQUESTS BY YOU.** IF YOU NEED TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request does not waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the Apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are normally not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We will act with reasonable efforts to make repairs and reconnections, taking into consideration when casualty insurance proceeds are received. Unless otherwise required by law, rent will not abate in whole or in part.

24. **ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. You agree that an animal deposit is not considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any occupant, guest or visitor violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the Apartment at any time during your term of occupancy (with or without our consent), we will charge you for and you agree to pay for defleaing, deodorizing, and shampooing the Apartment. Initial and daily animal-violation charges are payment of damages for our time, inconvenience, and overhead in enforcing animal restrictions and rules. We may remove an unauthorized animal by following the procedures of paragraph 26 (Multiple Tenants or Occupants). We are not liable for loss, harm, sickness, or death of the animal unless due to our negligence. We will return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

25. **WHEN WE MAY ENTER.**

A. Except in the event of an emergency for the protection or preservation of the Apartment, or for the protection and safety of the tenants or other persons, the Landlord may enter the Apartment during the Tenant's tenancy only for a reasonable purpose, at a reasonable time, and after having provided the Tenant with reasonable notice.



© 2020, National Apartment Association, Inc. 

B. "Reasonable notice" means written notice provided to the Tenant at least 48 hours before the time the Landlord wishes to enter the Apartment or a shorter period of time as agreed to by the Tenant in writing. Written notice may include electronic communication including email and mobile text messaging, provided that if the Tenant fails to furnish a written acknowledgment, the Landlord will provide a paper notice.

C. "Reasonable time" means a time between the hours of 9 a.m. and 5 p.m., and not on a Sunday or federal holiday, or at another time agreed upon by the Tenant.

D. "Reasonable purpose" means a purpose that is directly related to the Landlord's duty to keep the Apartment Community safe from damage, to inspect the Apartment, make necessary or agreed repairs, decorations, alteration, renovations or improvements, supply necessary or agreed services, maintenance, or exhibit the Apartment to prospective or actual purchasers, mortgagees, tenants, workmen or contractors or to gain entry for work ordered by a governmental agency.

E. Upon the allegation of a Housing Code violation by the Tenant, the Tenant may not unreasonably prevent the Landlord from accessing the Apartment for assessment and abatement of the alleged violation and the Tenant must provide access to the Apartment within 48 hours of the written request by the Landlord for access.

You hereby expressly permit our access to your Apartment by the owner, management, or by its/their agent(s) in circumstances which may include, but are not limited to the following: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or re-keying unauthorized locks or security devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected and you fail to remove them; retrieving property owned or leased by former tenants; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law enforcement officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective tenants (after move-out or vacate notice has been given); or showing apartment to government inspectors, fire marshals, lenders, appraisers, contractors, prospective buyers, or insurance agents.

26. **MULTIPLE TENANTS OR OCCUPANTS.** Each Tenant named in Section 1 of this Lease Contract as a tenant is jointly and severally liable for all Lease Contract obligations. If you, any occupant, guest or visitor violates the Lease Contract or the Community Policies/Rules, all Tenants named in Section 1 of this Lease Contract as tenant shall be deemed to have violated the Lease Contract. Our requests and notices (including sale notices) to any Tenant shall be addressed as notice to all Tenants and occupants. Notices and requests from any Tenant or occupant (including notices of termination, repair requests, and entry permissions) constitute notice from all Tenants. Security deposit refunds will only be issued via one check, and any deduction itemizations will be mailed to one Tenant only.

## Replacements

27. **REPLACEMENT TENANTS AND SUBLETTING.** Replacing a Tenant, subletting, or assignment is not permitted, except with the prior written consent of Landlord in Landlord's sole and absolute discretion. If departing or remaining Tenants find a replacement tenant acceptable to us before moving out, and we expressly consent to the replacement, subletting, or assignment, then:

(1) a reletting charge *will not* be due;
(2) an administrative (paperwork) and/or transfer fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and
(3) you, the departing Tenant, *will* remain jointly and severally liable for all Lease Contract obligations for the remainder of the tenancy created hereby and any extensions thereof, until such date as the apartment is surrendered back to us vacant and is accepted by us, whether voluntarily, or by legal process.

**Procedures for Replacement Tenant:** If we approve a replacement tenant, then, at our option: (1) the replacement tenant must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement tenants must sign an entirely new Lease Contract. The departing Tenant will no longer have a right of occupancy of the Apartment, but will remain liable for all obligations under this Lease Contract, as provided above.

## Responsibilities of Owner and Tenant

28. **RESPONSIBILITIES OF OWNER.** We will comply with the Housing Regulation requirements to:

(1) keep common areas reasonably clean and maintained;
(2) maintain fixtures, furniture, hot water, heating and A/C equipment which we have installed and own; and
(3) make all reasonable requested repairs required by this Lease Contract, subject to your obligation to pay for damages for which you are liable.

Owner is not responsible, as a matter of law in the District of Columbia, to make any repair(s) that it has not been informed of.

29. **DEFAULT BY TENANT.** You'll be in default of this Lease Contract if you or occupant, guest or visitor violates any terms of this Lease Contract including but not limited to the following violations: (1) you do not pay any rent or other amounts that you owe when due; (2) you or any occupant, visitor or guest violate any other provision of this Lease Contract; (3) you or any occupant, guest or visitor violates the apartment community rules and policies, or fire, safety, health, or criminal laws; (4) you abandon the Apartment; (5) you give incorrect or false answers in a rental application; (6) you or any occupant is arrested, convicted, or given deferred adjudication for a criminal offense in the Apartment involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the District of Columbia Code; (7) any illegal drugs or paraphernalia are found in your Apartment, irrespective of who brought the same into the Apartment, or whether you had actual knowledge of the same; or (8) you or any occupant, guest or visitor engages in any of the prohibited conduct otherwise described in this Lease Contract. Timely payment of rent hereunder is a covenant of, and an integral part of this Lease Contract. Late payment of rent is a default hereunder, irrespective of whether the rent is ultimately paid, with or without a late charge.

**Eviction.** If you fail to pay rent, or any other charge hereunder otherwise defined as rent, we or our agents/attorney(s) may forthwith file a non-payment suit for possession of the Apartment. Any Notice to Quit/Correct or Vacate in the event of non-payment of rent is hereby expressly waived by you and all occupants. In the event of any default hereunder other than with respect to payment of rent, you will be provided with a thirty (30) day Notice to Correct or Vacate, as provided for under District of Columbia Law, prior to suit.

**Liability for Rent and Damages.** All rent and other charges payable by you for the period prior to termination of tenancy due to your default shall be and remain payable by you even if you are evicted, and all monthly rent and other charges for the remainder of the Lease Contract term or renewal period will be payable by you to us as damages incurred by us, and will be immediately due and delinquent if, without our written consent (1) you move out or give oral or written notice (by you) of intent to move out before the Lease Contract term or renewal period ends; and (2) you've not paid all rent for the entire Lease Contract term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be payable by you to us as damages even if you are judicially evicted or move out when we demand because you have defaulted. Your liability for damages is subject to our mitigation obligations, if any are required by law.

**Holdover.** You or any occupant, invitee, or guest or visitor must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) if you hold over after the date contained in your move-out notice, rent for the holdover period, either (a) as provided by D.C. Law, will be increased by 100% over the then-existing rent if the Apartment is exempt from rent control, without

Bozzuto 002761

© 2020, National Apartment Association, Inc.

notice, or (b) will be increased as provided by law over the then-existing rent, if the Apartment is subject to rent control; and; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new tenant who can't occupy because of the holdover.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Mitigation of Damages.** If you move out early, you will be subject to all of the provisions set forth herein. We will exercise customary diligence to re-let the Apartment and mitigate damages, to the extent required by law. We will credit all subsequent rent that we actually receive from subsequent tenants under a new lease against your liability for past-due and future rent and other sums due.

## General Clauses

**30. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**31. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have not authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**32. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing any right hereunder, including but not limited to written-notice requirements, rental due dates, acceleration, is not a waiver of such rights, under any circumstances.

**33. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax and electronic signatures are binding. All notices must be signed.

**34. MISCELLANEOUS.**

A. Exercising one remedy won't constitute an election or waiver of other remedies.
B. Insurance subrogation is waived by all parties.
C. All remedies are cumulative.
D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
E. This Lease Contract binds subsequent owners.
F. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
G. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
H. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.

**35. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**36. JURY TRIAL.** In the District of Columbia, you have the right to a jury trial in any legal proceeding. It is your obligation to ascertain the circumstances for seeking and securing a jury trial, and your right thereto may be waived should you not proceed in accordance with District of Columbia law. We have no obligation to provide you with any such information, and in no instance will the owner nor its/his/her employee, agent, or management company give you legal advice.

**37. FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond our control, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the Apartment or apartment community to materially affect its habitability by some or all tenants, we reserve the right to vacate any and all tenants and suspend or terminate tenancy, and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**38. PAYMENTS.** Payment of all sums by you is an independent covenant. At our option and without notice, we may apply money received first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due as provided in this Lease Contract and if not so provided then upon our demand. After the due date, we do not have to accept the rent or any other payments. Should any payment be returned to us marked for insufficient or uncollected funds, we have the right to require you to make subsequent payments, for the following six (6) months, via certified funds.

**39. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

**40. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term as specified in paragraph 3 (Lease Term), or prior to the end of the lease term, you must give our representative not less than sixty (60) days advance written notice of your intention to vacate. This advance written notice requirement expires upon the expiration of the initial lease term unless you sign a renewal lease for a term of more than month-to-month. If you sign a renewal lease for a term of more than month-to-month, then the advance written notice requirement in the renewal lease will become effective. If you do not sign a renewal lease or sign a renewal lease for a month-to-month term, then you will have the right to vacate the Apartment upon a 30-day notice for so long as you remain a month-to-month tenant. If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early under paragraph 19 (No Release of Tenant/Heirs & Assigns) except if you are able to terminate your tenancy under the statutory rights explained under paragraph 19 (No Release of Tenant/Heirs & Assigns) or any other applicable laws. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of this paragraph 3 (Lease Term), even if you move by the last date in the lease term, you will be responsible for an additional month's rent. If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover Tenant pursuant to state law, and we will have all remedies available under this Lease Contract and state law.

**41. MOVE-OUT PROCEDURES.** The move-out date you state in your move-out notice cannot be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in re-letting charges and acceleration of future rent. You're prohibited by law from applying any security deposit to rent you won't stay beyond the date you state in your move-out notice. All Tenants, guests, and occupants must abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each Tenant's forwarding address.

Bozzuto 002762

© 2020, National Apartment Association, Inc. Blue Moon eSignature Services Document ID: 275566931

**42. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**43. DEPOSIT RETURN, SURRENDER.** The Security Deposit will be deposited in an escrow account devoted to Security Deposits in a federally insured banking or savings institution in Washington, D.C. Within forty-five (45) days after termination of the tenancy, Landlord must either (a) provide to Tenant, by certified mail directed to Tenant's last known address, a written list of any damages to the Premises together with a statement of costs properly incurred or Rent unpaid that will form the basis of a deduction from Tenant's Security Deposit; or (b) tender payment to Tenant of the Security Deposit funds, plus applicable interest as required by law if there are no deductions to be made. If Landlord notifies Tenant that deductions will be made from the Security Deposit, then Landlord has thirty (30) days from the date the notice of deductions was served to tender a refund to Tenant of any balance remaining of the Security Deposit (with interest as required by law) after all appropriate deductions have been made, together with an itemized list of expenses incurred or repairs made with the Security Deposit funds. Tenant's obligations under this Lease may not end when Tenant ceases to occupy the Apartment. Repairs required may be so substantial or of such a nature that work will not be completed within the forty-five (45) day period following the termination of the tenancy. In such event, Landlord reserves the right to pursue Tenant for reimbursement for damages and costs.

In order to determine the amount of the Security Deposit or other payment to be returned to the Tenant, the Landlord may (but shall not be required to) inspect the Apartment within three (3) days, excluding Saturdays, Sundays, and holidays, before or after the termination of the tenancy. The Landlord shall conduct the inspection, if the inspection is to be conducted, at the time and place of which notice is given to the Tenant. The Landlord shall notify the Tenant in writing of the time and date of the inspection. The notice of inspection shall be delivered to the Tenant, or at the Premises, at least ten (10) days before the date of the intended inspection.

Upon vacating the Premises, Tenant must furnish to Landlord, in writing, a forwarding address. If Tenant fails to leave a forwarding address, it is understood that any communication from Landlord will be sent to Tenant at Tenant's last known address; i.e., the Apartment vacated.

In the event of a sale of the property upon which the Apartment is situated or the transfer or assignment by Landlord of this Lease, Landlord has the obligation to transfer the Security Deposit to the purchaser or assignee. It is agreed that the foregoing will apply to every transfer or assignment made of the Security Deposit to a new Landlord.

It is expressly understood that Landlord's application of the Security Deposit shall not be Landlord's sole remedy in the event of Tenant's default. SHOULD THE COSTS OF REPAIRS, REPLACEMENTS, AND/OR LANDLORD'S OTHER DAMAGES EXCEED THE SECURITY DEPOSIT, TENANT SHALL PAY LANDLORD FOR SUCH EXCESS COSTS AND DAMAGES.

You have surrendered the apartment when: All apartment keys and access devices have been returned to us. If we request that you sign a form indicating that you have surrendered the apartment, you hereby expressly agree to do so. Should you fail to sign such a form, you will be held liable for all rents and other charges which accrue; 1) Until the date such form is signed, or 2) Until the last day of the month in which the US Marshal's Service has executed a Writ of Restitution for the apartment.

## Severability, Originals and Attachments, and Signatures

**44. SEVERABILITY. If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the Lease Contract and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.**

**45. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This Lease Contract is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

**You are legally bound by this document. Please read it carefully.**

**Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.**

**Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.**

**Tenant or Tenants** *(all sign below)*

Laura Hettinger

**Owner or Owner's Representative** *(signing on behalf of owner)*

Madeline Dunn

**Address and phone number of owner's representative for notice purposes**

4 I Street SE

Washington, DC

(202) 922-2025

**Name and address of locator service** *(if applicable)*

**Date form is filled out** *(same as on top of page 1)*

07/23/2021

Bozzuto 002763

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2)

# UTILITY ADDENDUM FOR WATER, SEWER, GAS, TRASH AND ELECTRIC SERVICE

NATIONAL APARTMENT ASSOCIATION

This Utility Addendum is incorporated into the Lease Contract (referred to in this addendum as "Lease Contract" or "Lease") dated July 23, 2021 between Crescent Capitol View, LLC ("We") and Laura Catherine Hettinger ("You") of Unit No. 1106 located at 4 I Street SE #1106 *(street address)* in Washington, DC 20003 and is in addition to all terms and conditions in the Lease. To the extent that the terms of this Utility Addendum conflict with those of the Lease, this Utility Addendum shall control.

1. Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, shall be as follows:
   a) **Water** service to your dwelling will be paid either:
      - ☐ by Us, because the payment for water service is included in your rent charged, pursuant to Paragraph 8 of your Lease Contract; or
      - ☐ by You directly to the utility service provider (NOTE: CHECK THIS ONLY IF THE DWELLING IS SEPARATELY METERED AND THE UTILITY COMPANY ACCOUNT IS IN THE TENANT'S NAME); or
      - ☒ by You when water bills are billed by the service provider to us and then allocated to you based on the following formula: Sub-metered through Conservice
      - ☐ If flat rate is selected, the current flat rate is $______ per month.
      - ☒ 3rd party billing company if applicable Conservice
   b) **Sewer** service to your dwelling will be paid either:
      - ☐ by Us, because the payment for sewer service is included in your rent charged, pursuant to Paragraph 8 of your Lease Contract; or
      - ☐ by You directly to the utility service provider (NOTE: CHECK THIS ONLY IF THE DWELLING IS SEPARATELY METERED AND THE UTILITY COMPANY ACCOUNT IS IN THE TENANT'S NAME); or
      - ☒ by You when sewer bills are billed by the service provider to us and then allocated to you based on the following formula: Sub-metered through Conservice
      - ☐ If flat rate is selected, the current flat rate is $______ per month.
      - ☒ 3rd party billing company if applicable Conservice
   c) **Gas** service to your dwelling will be paid either:
      - ☐ by Us, because the payment for gas service is included in your rent charged, pursuant to Paragraph 8 of your Lease Contract; or
      - ☐ by You directly to the utility service provider (Note: CHECK THIS ONLY IF THE DWELLING IS SEPARATELY METERED AND THE UTILITY COMPANY ACCOUNT IS IN THE TENANT'S NAME)
   d) **Trash** service to your dwelling will be paid either:
      - ☐ by Us, because the payment for trash service is included in your rent charged, pursuant to Paragraph 8 of your Lease Contract; or
      - ☐ by You directly to the utility service provider (NOTE: CHECK THIS ONLY IF THE DWELLING IS SEPARATELY METERED AND THE UTILITY IS IN THE TENANT'S NAME); or
      - ☒ by You when trash bills are billed by the service provider to us and then allocated to you based on the following formula:
      - ☒ If flat rate is selected, the current flat rate is $ 10.00 per month.
      - ☒ 3rd party billing company if applicable Conservice
   e) **Electric** service to your dwelling will be paid either:
      - ☐ by Us, because the payment for electric service is included in your rent charged, pursuant to Paragraph 8 of your Lease Contract; or
      - ☒ by You directly to the utility service provider (NOTE: CHECK THIS ONLY IF THE DWELLING IS SEPARATELY METERED AND THE UTILITY COMPANY ACCOUNT IS IN THE TENANT'S NAME)

2. If an allocation method is used, we or our billing company will calculate your allocated share of the utilities and services provided and all costs. Under any allocation method, Tenant may be paying for part of the utility usage in common areas or in other residential units as well as administrative fees. Both Tenant and Owner agree that using a calculation or allocation formula as a basis for estimating total utility consumption is fair and reasonable, while recognizing that the allocation method may or may not accurately reflect actual total utility consumption for Tenant. Where lawful, we may change the above methods of determining your allocated share of utilities and services and all other billing methods, in our sole discretion, and after providing written notice to you. More detailed descriptions of billing methods, calculations and allocation formulas will be provided upon request.

   If a flat fee method for trash or other utility service is used, Tenant and Owner agree that the charges indicated in this Agreement (as may be amended with written notice as specified above) represent a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost.

3. When billed by us directly or through our billing company, you must pay utility bills by the due date stated on the bill. If a payment is late, you will be responsible for a late fee as indicated below. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent permitted by law, to the extent there are any new account, monthly administrative, late or final bill fees, you shall pay such fees as indicated below.

| | | |
|---|---|---|
| New Account Fee: | $ 10.00 | (not to exceed $______) |
| Monthly Administrative Billing Fee: | $ 4.30 | (not to exceed $______) |
| Late Fee: | $______ | (not to exceed $______) |
| Final Bill Fee: | $______ | (not to exceed $______) |

   If allowed by state law, we at our sole discretion may amend these fees, with written notice to you.

4. For utilities which you are to pay (as stated above) you will be charged for the full period of time that you were living in, occupying, or responsible for payment of rent or utility charges on the dwelling. If you breach the Lease, you will be responsible for utility charges for the time period you were obliged to pay the charges under the Lease, subject to our mitigation of damages. In the event you fail to timely establish utility services which are your responsibility, we may charge you for any utility service billed to us for your dwelling and may charge a reasonable administration fee for billing for the utility service in the amount of $ 40.00 .

5. When you move out, you will receive a final bill which you must pay by the due date stated on the bill.

6. We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence by us or our employees.

7. You agree not to tamper with, adjust, or disconnect any utility metering or sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease and this Utility Addendum.

8. In the event we are using a ratio utility billing system, any dispute relating to the computation of your bill is between you and us and not a third party billing agent.

9. In the event we are using a ratio utility billing system, you have the right to receive information from us to verify the water and sewer utility bill.

10. This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. If any provision of this Addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease. Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.

11. The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or the Lease Contract.

**Electric utilities must be placed in the lease holders name or could be subject to an additional $40 administrative fee. HVAC usage is sub-metered per unit and will be billed to resident account through Conservice monthly in arrears.**

Tenant Signature *Laura Hettinger* Date 07/22/2021
Tenant Signature ______ Date ______
Tenant Signature ______ Date ______
Tenant Signature ______ Date ______
Tenant Signature ______ Date ______
Tenant Signature ______ Date ______
Management *Madeline Dunn* Date 08/10/2021

© 2018, National Apartment Association, Inc. - 9/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

# MOLD INFORMATION AND PREVENTION ADDENDUM

NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

***Please note: It is our goal to maintain a quality living environment for our tenants. To help achieve this goal, it is important to work together to minimize any mold growth in your dwelling. That is why this addendum contains important information for you, and responsibilities for both you and us.***

1. **DWELLING UNIT DESCRIPTION.** Unit. No. 1106, 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)*.

2. **LEASE CONTRACT DESCRIPTION.** Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants *(list all tenants)*:
Laura Catherine Hettinger

3. **ABOUT MOLD.** Mold is found virtually everywhere in our environment—both indoors and outdoors and in both new and old structures. Molds are naturally occurring microscopic organisms which reproduce by spores and have existed practically from the beginning of time. All of us have lived with mold spores all our lives. Without molds we would all be struggling with large amounts of dead organic matter.

Mold breaks down organic matter in the environment and uses the end product for its food. Mold spores (like plant pollen) spread through the air and are commonly transported by shoes, clothing and other materials. When excess moisture is present inside a dwelling, mold can grow. A 2004 Federal Centers for Disease Control and Prevention study found that there is currently no scientific evidence that the accumulation of mold causes any significant health risks for person with normally functioning immune systems. Nonetheless, appropriate precautions need to be taken.

4. **PREVENTING MOLD BEGINS WITH YOU.** In order to minimize the potential for mold growth in your dwelling, you must do the following:
   - Keep your dwelling clean—particularly the kitchen, the bathroom(s), carpets and floors. Regular vacuuming, mopping and using a household cleaner to clean hard surfaces is important to remove the household dirt and debris that harbor mold or food for mold. Immediately throw away moldy food.
   - Remove visible moisture accumulation on windows, walls, ceilings, floors and other surfaces as soon as reasonably possible. Look for leaks in washing machine hoses and discharge lines—especially if the leak is large enough for water to infiltrate nearby walls. Turn on any exhaust fans in the bathroom and kitchen *before* you start showering or cooking with open pots. When showering, be sure to keep the shower curtain *inside* the tub or fully close the shower doors. Also, the experts recommend that after taking a shower or bath, you: (1) wipe moisture off of shower walls, shower doors, the bathtub and the bathroom floor; (2) leave the bathroom door open until all moisture on the mirrors and bathroom walls and tile surfaces has dissipated; and (3) hang up your towels and bath mats so they will completely dry out.
   - Promptly notify us in writing about any air conditioning or heating system problems you discover. Follow our rules, if any, regarding replacement of air filters. Also, it is recommended that you periodically open windows and doors on days when the outdoor weather is dry (i.e., humidity is below 50 percent) to help humid areas of your dwelling dry out.
   - Promptly notify us in writing about any signs of water leaks, water infiltration or mold. We will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary.
   - Keep the thermostat set to automatically circulate air in the event temperatures rise to or above 80 degrees Fahrenheit.

5. **IN ORDER TO AVOID MOLD GROWTH,** it is important to prevent excessive moisture buildup in your dwelling. Failure to promptly pay attention to leaks and moisture that might accumulate on dwelling surfaces or that might get inside walls or ceilings can encourage mold growth. Prolonged moisture can result from a wide variety of sources, such as:
   - rainwater leaking from roofs, windows, doors and outside walls, as well as flood waters rising above floor level;
   - overflows from showers, bathtubs, toilets, lavatories, sinks, washing machines, dehumidifiers, refrigerator or A/C drip pans or clogged up A/C condensation lines;
   - leaks from plumbing lines or fixtures, and leaks into walls from bad or missing grouting/caulking around showers, tubs or sinks;
   - washing machine hose leaks, plant watering overflows, pet urine, cooking spills, beverage spills and steam from excessive open-pot cooking;
   - leaks from clothes dryer discharge vents (which can put lots of moisture into the air); and
   - insufficient drying of carpets, carpet pads, shower walls and bathroom floors.

6. IF SMALL AREAS OF MOLD HAVE ALREADY OCCURRED ON NON-POROUS SURFACES (such as ceramic tile, formica, vinyl flooring, metal, wood or plastic), the federal Environmental Protection Agency (EPA) recommends that you first clean the areas with soap (or detergent) and water, let the surface dry, and then within 24 hours apply a pre-mixed, spray-on-type household biocide, such as Lysol Disinfectant®, Pine-Sol Disinfectant® (original pine-scented), Tilex Mildew Remover® or Clorox Cleanup®. (Note: Only a few of the common household cleaners will actually kill mold). Tilex® and Clorox® contain bleach which can discolor or stain. **Be sure to follow the instructions on the container.** Applying biocides without first cleaning away the dirt and oils from the surface is like painting over old paint without first cleaning and preparing the surface.

Always clean and apply a biocide to an area 5 or 6 times larger than any visible mold because mold may be adjacent in quantities not yet visible to the naked eye. A vacuum cleaner with a high-efficiency particulate air (HEPA) filter can be used to help remove non-visible mold products from porous items, such as fibers in sofas, chairs, drapes and carpets—provided the fibers are completely dry. Machine washing or dry cleaning will remove mold from clothes.

7. **DO NOT CLEAN OR APPLY BIOCIDES TO:** (1) visible mold on porous surfaces, such as sheetrock walls or ceilings, or (2) large areas of visible mold on non-porous surfaces. Instead, notify us in writing, and we will take appropriate action.

8. **COMPLIANCE.** Complying with this addendum will help prevent mold growth in your dwelling, and both you and we will be able to respond correctly if problems develop that could lead to mold growth. If you have questions regarding this addendum, please contact us at the management office or at the phone number shown in your Lease Contract.

   If you fail to comply with this Addendum, you can be held responsible for property damage to the dwelling and any health problems that may result. We can't fix problems in your dwelling unless we know about them.

9. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

**Tenant or Tenants**
*(All tenants must sign here)*

Laura Hettinger

**Owner or Owner's Representative**
*(Signs here)*

Madeline Dunn

**Date of Lease Contract**

July 23, 2021

© 2018, National Apartment Association, Inc. - 9/2018, Washington, D.C.

Blue Moon eSignature Services Document ID: 275566931

# BED BUG ADDENDUM

NATIONAL APARTMENT ASSOCIATION We Lead the Way Home

Date: July 20, 2021
(when this Addendum is filled out)

***Please note: It is our goal to maintain a quality living environment for our tenants. To help achieve this goal, it is important to work together to minimize the potential for any bed bugs in your dwelling or surrounding dwellings. This addendum contains important information that outlines your responsibility and potential liability with regard to bed bugs.***

**1. DWELLING UNIT DESCRIPTION.**
Unit No. 1106, 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants *(list all tenants)*:
Laura Catherine Hettinger

**3. PURPOSE.** This Addendum modifies the Lease Contract and addresses situations related to bed bugs *(cimex lectularius)* which may be discovered infesting the dwelling or personal property in the dwelling. You understand that we relied on your representations to us in this Addendum.

**4. INSPECTION AND INFESTATIONS.** BY SIGNING THIS ADDENDUM, YOU REPRESENT THAT:

- YOU HAVE INSPECTED THE DWELLING PRIOR TO MOVING IN, OR PRIOR TO SIGNING THIS ADDENDUM, AND YOU DID NOT FIND ANY EVIDENCE OF BED BUGS OR A BED BUG INFESTATION;

OR

- YOU WILL INSPECT THE DWELLING WITHIN 48 HOURS AFTER MOVING IN, OR WITHIN 48 HOURS AFTER SIGNING THIS ADDENDUM AND WILL NOTIFY US OF ANY BED BUGS OR BED BUG INFESTATIONS.

You agree that you have read the information provided in this Addendum and that you are not aware of any infestation or presence of bed bugs in your current or previous dwellings, furniture, clothing, personal property, or possessions. You also acknowledge that you have fully disclosed to us any previous bed bug infestations or bed bug issues that you have experienced.

If you disclose to us a previous experience with bed bug infestations or other bed bug related issues, we can review documentation of the previous treatment(s) and inspect your personal property and possession to confirm the absence of bed bugs.

**5. ACCESS FOR INSPECTION AND PEST TREATMENT.** You must allow us and our pest control agents access to the dwelling at reasonable times to inspect for or treat bed bugs as allowed by law. You and your family members, occupants, guests, and invitees must cooperate and will not interfere with inspections or treatments. We have the right to select any licensed pest control professional to treat the dwelling and building. We can select the method of treating the dwelling, building and common areas for bed bugs. We can also inspect and treat adjacent or neighboring dwellings to the infestation even if those dwellings are not the source or cause of the known infestation. Unless otherwise prohibited by law, you are responsible for and must, at your own expense, have your own personal property, furniture, clothing and possessions treated according to accepted treatment methods established by a licensed pest control firm that we approve. You must do so as close as possible to the time we treated the dwelling. If you fail to do so, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract. You agree not to treat the dwelling for a bed bug infestation on your own.

**6. NOTIFICATION.** You must promptly notify us:

- of any known or suspected bed bug infestation or presence in the dwelling, or in any of your clothing, furniture or personal property.
- of any recurring or unexplained bites, stings, irritations, or sores of the skin or body which you believe is caused by bed bugs, or by any condition or pest you believe is in the dwelling.
- if you discover any condition or evidence that might indicate the presence or infestation of bed bugs, or of any confirmation of bed bug presence by a licensed pest control professional or other authoritative source.

**7. COOPERATION.** If we confirm the presence or infestation of bed bugs, you must cooperate and coordinate with us and our pest control agents to treat and eliminate the bed bugs. You must follow all directions from us or our agents to clean and treat the dwelling and building that are infested. You must remove or destroy personal property that cannot be treated or cleaned as close as possible to the time we treated the dwelling. Any items you remove from the dwelling must be disposed of off-site and not in the property's trash receptacles. If we confirm the presence or infestation of bed bugs in your dwelling, we have the right to require you to temporarily vacate the dwelling and remove all furniture, clothing and personal belongings in order for us to perform pest control services. If you fail to cooperate with us, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract.

**8. RESPONSIBILITIES.** You may be required to pay all reasonable costs of cleaning and pest control treatments incurred by us to treat your dwelling unit for bed bugs. If we confirm the presence or infestation of bed bugs after you vacate your dwelling, you may be responsible for the cost of cleaning and pest control treatments. If we must move other tenants in order to treat adjoining or neighboring dwellings to your dwelling unit, you may be liable for payment of any lost rental income and other expenses incurred by us to relocate the neighboring tenants and to clean and perform pest control treatments to eradicate infestations in other dwellings. If you fail to pay us for any costs you are liable for, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract, and obtain immediate possession of the dwelling. If you fail to move out after your right of occupancy has been terminated, you will be liable for holdover rent under the Lease Contract.

**9. TRANSFERS.** If we allow you to transfer to another dwelling in the community because of the presence of bed bugs, you must have your personal property and possessions treated according to accepted treatment methods or procedures established by a licensed pest control professional. You must provide proof of such cleaning and treatment to our satisfaction.

© 2020, National Apartment Association, Inc. - 2/2020, Washingtin, D.C.



Blue Moon eSignature Services Document ID: 275566931

**10. SPECIAL PROVISIONS.** The following special provisions control over the conflicting provisions of this printed form:

**You are legally bound by this document. Please read it carefully.**

| **Tenant or Tenants** *(All tenants must sign)* | **Owner or Owner's Representative** *(Signs below)* |
| --- | --- |
| Laura Hettinger | Madeline Dunn |
| | **Date of Signing Addendum** |
| | 08/10/2021 |

*You are entitled to receive an original of this Addendum after it is fully signed. Keep it in a safe place.*

Bed bugs, with a typical lifespan of 6 to 12 months, are wingless, flat, broadly oval-shaped insects. Capable of reaching the size of an apple seed at full growth, bed bugs are distinguishable by their reddish-brown color, although after feeding on the blood of humans and warm-blooded animals—their sole food source—the bugs assume a distinctly blood-red hue until digestion is complete.

**Bed bugs don't discriminate**

Bed bugs increased presence across the United States in recent decades can be attributed largely to a surge in international travel and trade. It's no surprise then that bed bugs have been found time and time again to have taken up residence in some of the fanciest hotels and apartment buildings in some of the nation's most expensive neighborhoods.

Nonetheless, false claims that associate bed bugs presence with poor hygiene and uncleanliness have caused rental housing tenants, out of shame, to avoid notifying owners of their presence. This serves only to enable the spread of bed bugs.

While bed bugs are, by their very nature, more attracted to clutter, they're certainly not discouraged by cleanliness.

Bottom line: bed bugs know no social and economic bounds; claims to the contrary are false.

**Bed bugs don't transmit disease**

There exists no scientific evidence that bed bugs transmit disease. In fact, federal agencies tasked with addressing pest of public health concern, namely the U.S. Environmental Protection Agency and the Centers for Disease Control and Prevention, have refused to elevate bed bugs to the threat level posed by disease transmitting pests. Again, claims associating bed bugs with disease are false.

**Identifying bed bugs**

*Bed bugs can often be found in, around and between:*

- Bedding
- Bed frames
- Mattress seams
- Upholstered furniture, especially under cushions and along seams
- Around, behind and under wood furniture, especially along areas where drawers slide
- Curtains and draperies
- Along window and door frames
- Ceiling and wall junctions
- Crown moldings
- Behind and around wall hangings and loose wallpaper
- Between carpeting and walls (carpet can be pulled away from the wall and tack strip)
- Cracks and crevices in walls and floors
- Inside electronic devices, such as smoke and carbon monoxide detectors
- Because bed bugs leave some persons with itchy welts strikingly similar to those caused by fleas and mosquitoes, the origination of such markings often go misdiagnosed. However, welts caused by bed bugs often times appear in succession and on exposed areas of skin, such as the face, neck and arms. In some cases, an individual may not experience any visible reaction resulting from direct contact with bed bugs.
- While bed bugs typically prefer to act at night, they often do not succeed in returning to their hiding spots without leaving traces of their presence through fecal markings of a red to dark brown color, visible on or near beds. Blood stains tend also to appear when the bugs have been squashed, usually by an unsuspecting host in their sleep. And, because they shed, it's not uncommon for skin casts to be left behind in areas typically frequented by bed bugs.

**Preventing bed bug encounters when traveling**

Because humans serve as bed bugs' main mode of transportation, it is extremely important to be mindful of bed bugs when away from home. Experts agree that the spread of bed bugs across all regions of the United States is largely attributed to an increase in international travel and trade. Travelers are therefore encouraged to take a few minutes upon arriving to their temporary destination to thoroughly inspect their accommodations, so as to ensure that any uninvited guests are detected before the decision is made to unpack.

Because bed bugs can easily travel from one room to another, it is also recommended that travelers thoroughly inspect their luggage and belongings for bed bugs before departing for home.

**Bed bug do's and don'ts**

- **Do not bring used furniture from unknown sources into your dwelling.** Countless bed bug infestations have stemmed directly from the introduction into a tenant's unit of second-hand and abandoned furniture. Unless the determination can be made with absolute certainty that a piece of second-hand furniture is bed bug-free, tenants should assume that the reason a seemingly nice looking leather couch, for example, is sitting curbside, waiting to be hauled off to the landfill, may very well be due to the fact that it's teeming with bed bugs.
- **Do address bed bug sightings immediately.** Rental housing tenants who suspect the presence of bed bugs in their unit must immediately notify the owner.
- **Do not attempt to treat bed bug infestations.** Under no circumstance should you attempt to eradicate bed bugs. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides poses too great a risk to you and your neighbors.
- **Do comply with eradication protocol.** If the determination is made that your unit is indeed playing host to bed bugs, you must comply with the bed bug eradication protocol set forth by both your owner and their designated pest management company.

© 2020, National Apartment Association, Inc. - 2/2020, Washingtin, D.C.

Blue Moon eSignature Services Document ID: 275566931

# LEASE CONTRACT BUY-OUT AGREEMENT

NATIONAL APARTMENT ASSOCIATION

**1. DWELLING UNIT DESCRIPTION.** Unit. No. **1106**, **4 I Street SE #1106** *(street address)* in Washington, D.C., **20003** *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **July 23, 2021**
Owner's name: **Crescent Capitol View, LLC**

Tenants *(list all tenants)*:
**Laura Catherine Hettinger**

**3.** The purpose of this Buy-Out Agreement is to give you the right to buy out of your Lease Contract early—subject to any special provisions in paragraph 9 below. In order to buy out early, your notice must be signed by all tenants listed in paragraph 1 of the Lease Contract and you must comply with all provisions of this Buy-Out Agreement.

**4. BUY-OUT PROCEDURES.** You may buy out of the Lease Contract prior to the end of the lease term and cut off all liability for paying rent for the remainder of the lease term if all of the following occur:

(a) you give us written notice of buy-out at least **60** days prior to the new termination date (i.e., your new move-out date), which *(check one)* ☐ must be the last day of a month or ☒ may be during a month;

(b) you specify the new termination date in the notice, i.e., the date by which you'll move out;

(c) you are not in default under the Lease Contract on the date you give us the notice of buy-out;

(d) you are not in default under the Lease Contract on the new termination date (move-out date);

(e) you move out on or before the new termination date and do not hold over;

(f) you pay us a buy-out fee (consideration) of $ **2276.00**;

(g) you pay us the amount of any concessions you received when signing the Lease Contract; and

(h) you comply with any special provisions in paragraph 9 below.

**5. WHEN PAYABLE.** The buy-out fee in paragraph 4(f) is due and payable no later than **60** days after you give us your buy-out notice. The total dollar amount of any concessions regarding rent or other monetary lease obligations for the entire lease term is $ **2276.00** and is due payable on the same day as the buy-out fee, subject to any special provisions in paragraph 9 regarding the amount, calculation method, or payment date.

**6. SHOWING UNIT TO PROSPECTIVE TENANTS.** After you give us notice of buy-out, the Lease Contract gives us the right to begin showing your unit to prospective tenants and telling them it will be available immediately after your new termination date.

**7. COMPLIANCE ESSENTIAL.** Our deposit of all amounts due under paragraphs 4(f) and 4(g) constitutes our approval of the new termination date stated in your notice of buy-out. If you fail to comply with any of the procedures or requirements in this agreement after we deposit such monies, your buy-out right and this agreement will be voided automatically; and (1) any amounts you have paid under this agreement will become part of your security deposit, and (2) the lease will continue without buy-out. Then, if you move out early, you are subject to all lease remedies, including reletting fees and liability for all rents for the remainder of the original lease term.

**8. MISCELLANEOUS.** If moving out by the new termination date becomes a problem for you, contact us. An extension may be possible if we have not already relet the dwelling unit to a successor tenant. We and any successor tenants who may be leasing your unit will be relying on your moving out on or before the new termination date. Therefore, you may not hold over beyond such date without our written consent—even if it means you have to make plans for temporary lodging elsewhere. "Default" as used in paragraphs 4(c) and 4(d) of this agreement means default as defined in the Lease Contract. You will continue to be liable for any damages and any sums accruing and unpaid prior to the new termination date.

**9. SPECIAL PROVISIONS.** Your right of buy-out *(check one)* ☐ is or ☒ is not limited to a particular fact situation. If limited, buy-out may be exercised only if the following facts (see below) occur and any described documents are furnished to us. Any special provisions below will supersede any conflicting provision of this printed agreement. Any false statements or documents presented to us regarding buy-out will automatically void your right to buy-out of the Lease Contract. The special provisions are:

| **Tenant or Tenants** *(All tenants must sign)* | **Owner or Owner's Representative** *(signs below)* |
|---|---|
| *Laura Hettinger* | *Madeline Dunn* |
| | **Date of Lease Contract** |
| | **July 23, 2021** |

© 2018, National Apartment Association, Inc. - 9/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

# ADDENDUM PROHIBITING SHORT-TERM SUBLETTING OR RENTAL

NAA NATIONAL APARTMENT ASSOCIATION We Lead the Way Home

1. **DWELLING UNIT DESCRIPTION.**
Unit No. 1106, 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)*.

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants *(list all tenants)*:
Laura Catherine Hettinger

This document shall serve as an addendum ("the Addendum") to the Apartment Lease Contract (the "Lease") between Tenant and Owner. **Where the terms of the Lease and this Addendum may conflict, the terms of this Addendum shall control.**

3. **SHORT TERM SUBLEASE OR RENTING PROHIBITED.** Without limiting the prohibition in the Lease on subletting and assignment and without limiting any of our rights or remedies, this Addendum to the Lease further supplements and defines the requirements and prohibitions contained in the Lease Contract between you and us. You are hereby strictly prohibited from subletting or renting to any third party, or allowing occupancy by any third party, of all or any portion of the dwelling, whether for an overnight use or duration of any length, without our prior written consent in each instance. This prohibition applies to overnight stays or any other stays arranged on Airbnb.com or other similar internet sites.

4. **PROHIBITION ON LISTING OR ADVERTISING DWELLING ON OVERNIGHT SUBLETTING OR RENTING WEBSITES.** You agree not to list or advertise the dwelling as being available for short term subletting or rental or occupancy by others on Airbnb.com or similar internet websites. You agree that listing or advertising the dwelling on Airbnb.com or similar internet websites shall be a violation of this Addendum and a breach of your Lease Contract.

5. **VIOLATION OF LEASE AGREEMENT.** Your Lease Contract allows for use of your dwelling as a private residence only and strictly prohibits conducting any kind of business in, from, or involving your dwelling. Separately, your Lease Contract prohibits subletting or occupancy by others of the dwelling for any period of time without our prior written consent. Permitting your dwelling to be used for any subletting or rental or occupancy by others (including, without limitation, for a short term), regardless of the value of consideration received or if no consideration is received, is a violation and breach of this Addendum and your Lease Contract.

6. **REMEDY FOR VIOLATION.** Any violation of this Addendum constitutes a material violation of the Lease Contract, and as such we may exercise any default remedies permitted in the Lease Contract, including termination of your tenancy, in accordance with local law. This clause shall not be interpreted to restrict our rights to terminate your tenancy for any lawful reason, or by any lawful method.

7. **TENANT LIABILITY.** You are responsible for and shall be held liable for any and all losses, damages, and/or fines that we incur as a result of your violations of the terms of this Addendum or the Lease Contract. Further, you agree you are responsible for and shall be held liable for any and all actions of any person(s) who occupy your dwelling in violation of the terms of this Addendum or the Lease Contract, including, but not limited to, property damage, disturbance of other tenants, and violence or attempted violence to another person. In accordance with applicable law, without limiting your liability you agree we shall have the right to collect against any renter's or liability insurance policy maintained by you for any losses or damages that we incur as the result of any violation of the terms of this Addendum.

8. **SEVERABILITY.** If any provision of this Addendum or the Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Addendum while preserving the intent of the parties.

9. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

**Tenant or Tenants**
*(All tenants must sign)*

Laura Hettinger

**Owner or Owner's Representative**
*(Signs below)*

Madeline Dunn

**Date of Signing Addendum**
08/10/2021

© 2018, National Apartment Association, Inc. - 9/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

# ADDENDUM REGARDING RECREATIONAL and MEDICAL MARIJUANA USE

NATIONAL APARTMENT ASSOCIATION

**1. DWELLING UNIT DESCRIPTION.**
Unit. No. 1106, 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants *(list all tenants)*:
Laura Catherine Hettinger

Where the terms and conditions of this Addendum vary from or contradict any terms or conditions set forth in the Lease Contract, this Addendum shall control.

**3.** The Legalization of Marijuana for Medical Treatment Amendment Act of 2010 and District of Columbia Muni. Regs. 22-C3 (2017) permits the limited use of medical marijuana and use of limited amounts of marijuana for personal use, in specific and limited circumstances. However, this is not the case under federal law. Under federal law, specifically the Controlled Substances Act (CSA), marijuana is still categorized as a Schedule I substance. This means that under federal law, the manufacture, distribution, or possession of marijuana is strictly prohibited. Because the U.S. Department of Housing and Urban Development is controlled by the federal government, it agrees that the use of marijuana, whether prescribed for medical reasons or not, is a criminal offense and will not be protected under the fair housing laws. Therefore, apartment complexes are not required to accommodate the use of marijuana by a tenant who is a current medical marijuana user.

**4.** The Property in which the Dwelling Unit listed above is located follows and complies with federal law regarding use of controlled substances and does, and will continue to prohibit the possession, use, manufacture, distribution or sale of any controlled substance, including marijuana, or any products of any kind infused with or containing marijuana, or any use of marijuana by the Tenant and/or guests. A violation of this Addendum is a violation of the Tenant's Lease, and in addition may result in enforcement by governmental authorities. If you have any questions or concerns about this Addendum, please speak to management.

**5.** By signing below, the Tenant acknowledges his or her understanding of the terms and conditions as stated above, and his or her agreement to comply with those terms and conditions.

**6. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

| Tenant or Tenants *(sign here)* | Date of Signing Addendum |
|---|---|
| *Laura Hettinger* | 07/22/2021 |

| Owner or Owner's Representative *(signs here)* | Date of Signing Addendum |
|---|---|
| *Madeline Dunn* | 08/10/2021 |

© 2019, National Apartment Association, Inc. - 8/20[illegible] Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

## CRIME/DRUG FREE HOUSING ADDENDUM

NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

**1. DWELLING UNIT DESCRIPTION.**
Unit. No. 1106, 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants *(list all tenants)*:
Laura Catherine Hettinger

**3. ADDENDUM APPLICABILITY.** In the event any provision in this Addendum is inconsistent with any provision(s) contained in other portions of, or attachments to, the above-mentioned Lease Contract, then the provisions of this Addendum shall control. For purposes of this Addendum, the term "Premises" shall include the dwelling unit, all common areas, all other dwelling units on the property or any common areas or other dwelling units on or about other property owned by or managed by the Owner. The parties hereby amend and supplement the Lease Contract as follows:

**4. CRIME/DRUG FREE HOUSING.** Tenant, members of the Tenant's household, Tenant's guests, and all other persons affiliated with the Tenant:

A. Shall not engage in any illegal or criminal activity on or about the premises. The phrase, "illegal or criminal activity" shall include, but is not limited to, the following:

1. Engaging in any act intended to facilitate any type of criminal activity.
2. Permitting the Premises to be used for, or facilitating any type of criminal activity or drug related activity, regardless of whether the individual engaging in such activity is a member of the household, or a guest.
3. The unlawful manufacturing, selling, using, storing, keeping, purchasing or giving of an illegal or controlled substance or paraphernalia as defined in city, county, state or federal laws, including but not limited to the District of Columbia and/or the Federal Controlled Substances Act.
4. Violation of any federal drug laws governing the use, possession, sale, manufacturing and distribution of marijuana, regardless of state or local laws. (So long as the use, possession, sale, manufacturing and distribution of marijuana remains a violation of federal law, violation of any such federal law shall constitute a material violation of this rental agreement.)
5. Engaging in, or allowing, any behavior that is associated with drug activity, including but not limited to having excessive vehicle or foot traffic associated with his or her unit.
6. Any breach of the Lease Contract that otherwise jeopardizes the health, safety, and welfare of the Owner, Owner's agents, or other Tenants, or involving imminent, actual or substantial property damage.
7. Engaging in or committing any act that would be a violation of the Owner's screening criteria for criminal conduct or which would have provided Owner with a basis for denying Tenant's application due to criminal conduct.
8. Engaging in any activity that constitutes waste, nuisance, or unlawful use.

B. AGREE THAT ANY VIOLATION OF THE ABOVE PROVISIONS CONSTITUTES A MATERIAL VIOLATION OF THE PARTIES' LEASE CONTRACT AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provisions of this Addendum shall be deemed a serious violation, and a material default, of the parties' Lease Contract. It is understood that a single violation shall be good cause for taking action to terminate the Lease Contract. In addition to the foregoing, Owner may terminate Tenant's tenancy for any other lawful reason, and by any lawful method.

**5. CRIMINAL CONVICTION NOT REQUIRED.** Unless otherwise required by law, proof of violation of any criminal law shall not require a criminal conviction.

**6. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

| **Tenant or Tenants** *(sign here)* | **Date of Signing Addendum** |
|---|---|
| Laura Hettinger | 07/22/2021 |

| **Owner or Owner's Representative** *(signs here)* | **Date of Signing Addendum** |
|---|---|
| Madeline Dunn | 08/10/2021 |

© 2018, National Apartment Association, Inc. - 9/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

# MIXED USE ADDENDUM

NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

1. **APARTMENT DESCRIPTION.**
Apt. No. 1106, 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)*.

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants *(list all tenants)*:
Laura Catherine Hettinger

This document shall serve as an Addendum ("the Addendum") to the Apartment Lease Contract (the "Lease") between Tenant and Owner. **Where the terms of the Lease and this Addendum may conflict, the terms of this Addendum shall control.**

3. **PURPOSE OF ADDENDUM.** The purpose of this Addendum is to provide you with notice that the apartment is located in a mixed-use living environment. The area surrounding the apartment contains both residences and commercial businesses. These commercial entities will produce certain noises, sounds, and odors up to twenty-four (24) hours a day.

4. **TENANT ACKNOWLEDGEMENT.** By signing this Addendum, Tenant acknowledges, understands and hereby agrees:
The apartment is located in the immediate area of commercial businesses, including, but not limited to, bars, nightclubs, restaurants and retail stores. Certain challenges may be associated with living in immediate proximity to such commercial businesses. These challenges may include these businesses emitting, but are not limited to: lights, noises, sounds (including but not limited to music, voices and other forms of entertainment), vibrations, odors and smoke, which may penetrate the walls and floors of the apartment. Such challenges may occur up to twenty-four (24) hours a day.

5. **TENANT DUE DILIGENCE.** Landlord has encouraged tenant to research the area around their apartment. You agree that you were given the opportunity to exercise due diligence by reading this Addendum and researching the area surrounding the apartment. You acknowledge and understand the risks disclosed herein. Having conducted your due diligence, you agree to fully assume the risks set forth in this Addendum.

6. **ASSUMPTION OF RISK / WAIVER.** You have chosen to reside at the apartment despite any inconveniences such as those disclosed herein or any other inconvenience, which may be associated with living in a mixed-use environment. You further agree: You are voluntarily assuming the risks of inconvenience and nuisance related to residing in an apartment located in a mixed-use area. You agree that any inconvenience associated with the mixed-use and/or the surrounding area, such as, but not limited to, those disclosed herein, will not be deemed to give you any offset to rent obligations, nor will they be the basis for a complaint against us for rent relief, constructive eviction, fitness and habitability, peaceful and quiet enjoyment, nuisance, or any other claim, right or remedy. We shall have no duty to evict any commercial business for any lights, sounds, vibrations, odors, etc. that may occur as a result of their commercial business. As such, you waive any and all claims against us that arise out of or are in any way related to lights, noises, sounds, vibrations, smoke, odors or any other inconvenience that may be caused by commercial businesses within the mixed-use area and/or their guests.

7. **SEVERABILITY.** If any provision of this Addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease.

8. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

**Tenant or Tenants**
*(All tenants must sign)*

Laura Hettinger

**Owner or Owner's Representative**
*(Signs below)*

Madeline Dunn

**Date of Signing Addendum**
08/10/2021

© 2018, National Apartment Association, Inc. - 1/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

# PHOTO, VIDEO, AND STATEMENT RELEASE ADDENDUM

NATIONAL APARTMENT ASSOCIATION

**1. DWELLING UNIT DESCRIPTION.**
Unit No. 1106, 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants *(list all tenants)*:
Laura Catherine Hettinger

Occupants *(list all occupants)*:

This document shall serve as an addendum ("the Addendum") that is hereby incorporated into and made part of the Apartment Lease Contract (the "Lease") between Tenant and Owner ("our" or "us"). Where the terms of the Lease and this Addendum may conflict, the terms of this Addendum shall control.

**3. PURPOSE OF ADDENDUM.** By signing this Addendum, you, without payment or other consideration, agree to grant us permission to use your likeness in photographs, videos and/ or other electronic and/or digital reproductions, including voice, in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. For purposes of this addendum, photographs, videos, written comments, statements, and other digital reproductions will hereinafter be collectively referred to as "media."

**A. CONSENT FOR MINOR OCCUPANTS.** By signing this Addendum, if any minor occupants are named above, you further certify that you are the parent, or legal guardian of the minor occupant(s) named above, and you, without payment or other consideration, agree to grant us permission to use their likeness in photographs, videos and/ or other electronic and/or digital reproductions, including voice, in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. For purposes of this addendum, photographs, written comments, videos, statements, and other digital reproductions will hereinafter be collectively referred to as "media."

**4. PHOTO AND VIDEO RELEASE.** You hereby grant us and our agents and affiliates (collectively, the "Released Parties") permission and a license to take, use, reuse, and publish the likeness of you and any minor occupants in all photographs or other electronic and/or digital media in any and all of our publications, including, without limitation, any website entries, advertising websites, and any other marketing materials. You understand and agree that these materials will become the property of the Released Parties and will not be returned. You agree to irrevocably authorize the Released Parties to edit, alter, copy, exhibit, publish, or distribute this media for any lawful purpose whatsoever including, without limitation, promotional and advertising uses. You waive the right to inspect or approve the finished product, including any written or electronic copy, wherein your likeness appears now or in the future. In addition, you waive any right to payment, royalties, or any other compensation arising or related to the use of the media.

**5. CONSENT TO USE YOUR NAME, LIKENESS, AND WRITTEN COMMENTS, AND STATEMENTS.** You are expressly agreeing to allow us to post your name, picture, written comments and statements, and/or the names, pictures, written comments and statements of any minor occupants in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. You hereby grant the Released Parties permission and a license to use, reproduce, and publish any media on its website, social media platforms, or in other marketing-related materials, whether in electronic or print form.

**6. RELEASE OF LIABILITY.** You hereby release, hold harmless, and forever discharge us from any claims or causes of actions including, without limitation, any and all claims for libel or violation of any right of publicity or privacy, related to our use of the media in any and all of our publications, including any website entries, advertising websites, social media websites, and any other marketing material so long as the claim or cause of action does not result from our intentional misconduct or gross negligence. This consent and release shall be binding upon you and your heirs, legal representatives and assigns.

**7. REVOCATION.** You have the right to revoke your consent to our use of your name, picture, video, voice, or statement, and/ or the name, picture, video, voice, written comments, or statement of any minor occupants, by written notice to us.

**8. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

© 2018, National Apartment Association, Inc. - 9/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

| **Tenant or Tenants** *(All tenants must sign)* | **Owner or Owner's Representative** *(signs below)* |
| --- | --- |
| Laura Hettinger | Madeline Dunn |
| | **Date of Signing Addendum** |
| | 08/10/2021 |

## 101 CIVIL ENFORCEMENT POLICY

101.1 The maintenance of leased or rental habitations in violation of the provisions of this subtitle, where those violations constitute a danger to the health, welfare, or safety of the occupants, is declared to be a public nuisance.

101.2 The abatement of the public nuisances referred to in subsection 101.1 by criminal prosecution or by compulsory repair, condemnation, and demolition alone has been and continues to be inadequate.

101.3 The public nuisances referred to in subsection 101.1 additionally cause specific, immediate, irreparable and continuing harm to the occupants of these habitations.

101.4 The public nuisances referred to in subsection 101.1 damage the quality of life and the mental development and well-being of the occupants, as well as their physical health and personal property, and this harm cannot be fully compensated for by an action for damages, rescission or equitable set-off for the reduction in rental value of the premises.

101.5 It is the purpose of this section to declare expressly a public policy in favor of speedy abatement of the public nuisances referred to in subsection 101.1, if necessary, by preliminary and permanent injunction issued by Courts of competent jurisdiction.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2901, Commissioners' Order 55-1503 (August 11, 1955).

## 106 NOTIFICATION OF TENANTS CONCERNING VIOLATIONS

106.1 After an inspection of a habitation, the Director shall provide the tenant of the habitation a copy of any notification with respect to that habitation issued to the owner pursuant to this subtitle.

106.2 The notification to the tenant shall state plainly and conspicuously that it is only for the tenant's information; Provided, that if the notice places duties on the tenant, it shall state those duties.

106.3 In any instance where a violation of this subtitle directly involves more than one habitation, the Director shall post a copy of any notification issued to the owner pursuant to this chapter for a reasonable time in one or more locations within the building or buildings in which the deficiency exists. The locations for posting the notification shall be reasonably selected to give notice to all tenants affected.

106.4 No person shall alter, modify, destroy, or otherwise tamper with or mutilate a notification posted under this section.

106.5 Any tenant directly affected by the violation(s) shall, upon request to the Director, be sent a copy of the posted notification.

106.6 This section shall not be subject to any notice requirement of this subtitle.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2903(b), Commissioners' Order 55-1503 (August 11, 1955).



Blue Moon eSignature Services Document ID: 275566931

## 300 NOTICE TO TENANTS OF HOUSING CODE PROVISIONS

300.1 The owner of each habitation shall provide to each existing tenant, and shall at the commencement of any tenancy provide to the tenant, a copy of the provisions of this chapter and a copy of the following sections of chapter 1 of this subtitle:

(a) Chapter 1, § 101 (Civil Enforcement Policy); and

(b) Chapter 1, § 106 (Notification of Tenants Concerning Violations).

AUTHORITY: Unless otherwise noted, the authority for this chapter is contained at paragraphs 28 and 46 of section 7 of An Act Making appropriations to provide for the expenses of the government of the District of Columbia for the fiscal year ending June thirtieth, nineteen hundred and three, and for other purposes ("Act of 1902"), Public, No.218, 32 Stat. 590, approved July 1, 1902, as amended by: An Act approved July 1, 1932 to amend section 7 [of the Act of 1902], Public, No. 237, 47 Stat. 550; and An Act approved July 22, 1947, Public Law 215, 61 Stat. 402.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2904, Commissioners' Order 55-1503 (August 11, 1955).

## 301 IMPLIED WARRANTY AND OTHER REMEDIES

301.1 There shall be deemed to be included in the terms of any lease or rental agreement covering a habitation an implied warranty that the owner will maintain the premises in compliance with this subtitle.

301.2 The rights, remedies, and duties set forth in this chapter shall not be deemed to be exclusive of one another unless expressly so declared or to preclude a court of law from determining that practices, acts, lease provisions and other matters not specifically dealt with in this chapter are contrary to public policy or unconscionable or otherwise unlawful.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR §§ 2902, 2913, Commissioners' Order 55-1503 (August 11, 1955).

## 302 VOIDING LEASE FOR VIOLATION OF REGULATIONS

302.1 The leasing of any habitation which, at the beginning of the tenancy, is unsafe or unsanitary due to violations of this subtitle in that habitation or in the common space of the premises (whether or not those violations are the subject of a notice issued under this subtitle) of which the owner has knowledge or reasonably should have knowledge, shall render void the lease or rental agreement for the habitation.

302.2 After the beginning of the tenancy, if the habitation becomes unsafe or unsanitary due to violations of this subtitle in that habitation or in the common space of the premises (whether or not the violations are the subject of a notice issued under this subtitle), the lease or rental agreement for the habitation shall be rendered void if both of the following apply:

(a) The violations did not result from the intentional acts or negligence of the tenant or his or her invitees; and

(b) The violations are not corrected within the time allowed for correction under a notice issued under this subtitle (or, if a notice has not been issued, within a reasonable time



Blue Moon eSignature Services Document ID: 275566931

after the owner has knowledge or reasonably should have knowledge of the violations).

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2902, Commissioners' Order 55-1503 (August 11, 1955).

## 303 SIGNED COPIES OF AGREEMENTS AND APPLICATIONS

303.1 In each lease or rental of a habitation entered into after June 12, 1970, the owner shall provide to the tenant upon execution (or within seven (7) days after execution) an exact, legible, completed copy of any agreement or application which the tenant has signed.

303.2 This section shall not be subject to any notice requirement of this subtitle.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2905, Commissioners' Order 55-1503 (August 11, 1955).

## 304 PROHIBITED WAIVER CLAUSES IN LEASE AGREEMENTS

304.1 Any provision of any lease or agreement contrary to, or providing for a waiver of, the terms of this chapter, or § 101 or § 106 of chapter 1, shall be void and unenforceable.

304.2 No person shall cause any of the provisions prohibited by this section to be included in a lease or agreement respecting the use of the property in the District of Columbia, or demand that any person sign a lease or agreement containing any such provision.

304.3 No owner shall cause to be placed in a lease or rental agreement any provision exempting the owner or premises from liability or limiting the liability of the owner or the residential premises from damages for injuries to persons or property caused by or resulting from the negligence of the owner (or the owner's agents, servants, or employees) in the operation, care, or maintenance of the leased premises, or any facility upon or portion of the property of which the leased premises are a part.

304.4 No owner shall place (or cause to be placed) in a lease or rental agreement a provision waiving the right of a tenant of residential premises to a jury trial, or requiring that the tenant pay the owner's court costs or legal fees, or authorizing a person other than the tenant to confess judgment against a tenant. This subsection shall not preclude a court from assessing court or legal fees against a tenant in appropriate circumstances.

304.5 The provisions of this section shall not be subject to any notice requirement of this subtitle.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR §§ 2906, 2907, and 2912, Commissioners' Order 55-1503 (August 11, 1955).

## 305 INSPECTION OF PREMISES AFTER BREACH OF WARRANTY OR VOIDED LEASE



Blue Moon eSignature Services Document ID: 275566931

305.1 Following a judicial determination that the owner has breached the implied warranty of habitability applying to the premises (under § 301 of this chapter), or following a judicial determination that a lease or rental agreement is void, the owner shall obtain a certificate from the Director that the habitation is in compliance with this subtitle prior to the next reletting of the habitation.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2911, Commissioners' Order 55-1503 (August 11, 1955).

## 306 WRITTEN RECEIPTS FOR PAYMENTS BY TENANT

306.1 In each lease or rental of a habitation, the owner shall provide written receipts for all monies paid to him or her by the tenant as rent, security, or otherwise, unless the payment is made by personal check.

306.2 Each receipt issued under this section shall state the following:

(a) The exact amount received;

(b) The date the monies are received; and

(c) The purpose of the payment.

306.3 Each receipt shall also state any amounts still due which are attributable to late charges, court costs, or any other such charge in excess of rent.

306.4 If payment is made by personal check, and there is a balance still due which is attributable to late charges, court costs, or any other such charge in excess of rent, the owner shall provide a receipt stating the nature of the charges and the amount due.

306.5 The provisions of this section shall not be subject to any notice requirement of this subtitle.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2909, Commissioners' Order 55-1503 (August 11, 1955).

## 307 PROHIBITION OF RETALIATORY ACTS AGAINST TENANTS

307.1 No action or proceeding to recover possession of a habitation may be brought against a tenant, nor shall an owner otherwise cause a tenant to quit a habitation involuntarily, in retaliation for any of the tenant's actions listed in § 307.3.

307.2 No demand for an increase in rent from the tenant, nor decrease in the services to which the tenant has been entitled, nor increase in the obligations of a tenant shall be made in retaliation against a tenant for any of the tenant's actions listed in § 307.3.

307.3 This section prohibits the taking of any of the actions set forth in this section in retaliation against the tenant for any of the following actions by a tenant:

(a) A good faith complaint or report concerning housing deficiencies made to the owner or a governmental authority, directly by the tenant or through a tenant organization;


Blue Moon eSignature Services Document ID: 275566931

(b) The good faith organization of a tenant organization or membership in a tenant organization;

(c) The good fait assertion of rights under this subtitle, including rights under §§ 301 and 302 of this chapter, or § 101 of chapter 1.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2910, Commissioners' Order 55-1503 (August 11, 1955).

## 308 SECURITY DEPOSITS

308.1 For purposes of this chapter, the term "security deposit" shall mean all monies paid to the owner by the tenant as a deposit or other payment made as security for performance of the tenant's obligations in a lease or rental of the property.

308.2 On or after February 20, 1976, any security deposit or other payment required by an owner as security for performance of the tenant's obligations in a lease or rental of a dwelling unit shall not exceed an amount equivalent to the first full month's rent charged that tenant for the dwelling unit, and shall be charged only once by the owner to the tenant.

308.3 All monies paid to an owner by tenants for security deposits or other payment made as security for performance of the tenant's obligations shall be deposited by the owner in an interest bearing escrow account established and held in trust in a financial institution in the District of Columbia insured by a federal or state agency for the sole purposes of holding such deposits or payments.

308.4 All monies held by an owner on February 20, 1976 for security deposits or other payments covered by this section shall be paid into an escrow account within thirty (30) days.

308.5 The owner of more than one residential building may establish one (1) escrow account for holding security deposits or other payments by the tenants of those buildings.

308.6 For each security deposit or other payment covered by this section, the owner shall clearly state in the lease or agreement or on the receipt for the deposit or other payment the terms and conditions under which the payment was made.

308.7 The housing provider shall post in the lobby of the building and rental office at the end of each calendar year, the following information: Where the tenants' security deposits are held and what the prevailing rate was for each 6-month period over the past year. At the end of a tenant's tenancy, the housing provider shall list for the tenant the interest rate for each 6-month period during the tenancy.

308.8 The provisions of this section shall not be applicable to Federal or District of Columbia agencies' dwelling units leased in the District of Columbia or to units for which rents are Federally subsidized.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2908, Commissioners' Order 55-1503 (August 11, 1955); as amended by: section 3 of the Security Deposit Act, D.C. Law 1-48, 22 DCR 2823 (November 28, 1975); and section 2 of the Adjustment of Interest Rates Paid on Rental Security Deposits Amendment Act of 1992, D.C. Law 9-212, §§ 2908.1(b) and 2908.5, 40 DCR 2204 (March 17, 1993), incorporating by reference the text of D.C. Act 9-341, 40 DCR 23 (December 21, 1992); as amended by D.C. Act 16-633 at 54 DCR 889 (February 2, 2007).



Blue Moon eSignature Services Document ID: 275566931

## 309 REPAYMENT OF SECURITY DEPOSITS TO TENANTS

309.1 Within forty-five (45) days after the termination of the tenancy, the owner shall do one of the following:

(1) Tender payment to the tenant, without demand, any security deposit and any similar payment paid by the tenant as a condition of tenancy in addition to the stipulated rent, and any interest due the tenant on that deposit or payment as provided in paragraph (4)(a) and (a-1) (14 DCMR § 311); or

(2) Notify the tenant in writing, to be delivered to the tenant personally or by certified mail at the tenant's last known address, of the owner's intention to withhold and apply the monies toward defraying the cost of expenses properly incurred under the terms and conditions of the security deposit agreement.

309.2 The owner, within 30 days after notification to the tenant pursuant to the requirement of paragraph (2)(a)(2) (14 DCMR § 309.1(b)), shall tender a refund of the balance of the deposit or payment, including interest not used to defray such expenses, and at the same time give the tenant an itemized statement of the repairs and other uses to which the monies were applied and the cost of each repair or other use.

309.3 Failure by the owner to comply with § 309.1 and § 309.2 of this section shall constitute prima facie evidence that the tenant is entitled to full return, including interest as provided in § 311, of any deposit or other payment made by the tenant as security for performance of his or her obligations or as a condition of tenancy, in addition to the stipulated rent.

309.4 Failure by the owner to serve the tenant personally or by certified mail, after good faith effort to do so, shall not constitute a failure by the owner to comply with § 309.1 and § 309.2.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2908, Commissioners' Order 55-1503 (August 11, 1955); as amended by: section 3 of the Security Deposit Act, D.C. Law 1-48, 22 DCR 2823 (November 28, 1975); and section 2 of the Unitary Rent Ceiling Adjustment Amendment Act of 1992, D.C. Law 9-191, §§ 2908.6 and 2908.7, 40 DCR 2184 (April 2, 1993); as amended by D.C. Act 16-633 at 54 DCR 889 (February 2, 2007).

## 310 RETURN OF SECURITY DEPOSIT: INSPECTION OF PREMISES

310.1 In order to determine the amount of the security deposit or other payment to be returned to the tenant, the owner may inspect the dwelling unit within three (3) days, excluding Saturdays, Sundays, and holidays, before or after the termination of the tenancy.

310.2 The owner shall conduct the inspection, if the inspection is to be conducted, at the time and place of which notice is given to the tenant.

310.3 The owner shall notify the tenant in writing of the time and date of the inspection.

310.4 The notice of inspection shall be delivered to the tenant, or at the dwelling unit in question, at least ten (10) days before the date of the intended inspection.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2908, Commissioners' Order 55-1503 (August 11, 1955); as amended by section 3 of the Security



Blue Moon eSignature Services Document ID: 275566931

Deposit Act, D.C. Law 1-48, 22 DCR 2823 (November 28, 1975).

## 311 INTEREST ON SECURITY DEPOSIT ESCROW ACCOUNTS

311.1 The interest in the escrow account described in § 309 on all money paid by the tenant prior to or during the tenancy as a security deposit, decorating fee, or similar deposit or fee, shall commence on the date the money is actually paid by the tenant, or within thirty (30) days after February 20, 1976, whichever is later, and shall accrue at not less than the statement savings rate then prevailing on January 1st and on July 1st for each 6-month period (or part thereof) of the tenancy which follows those dates. On those dates, the statement savings rate in the District of Columbia financial institution in which the escrow account is held shall be used. All interest earned shall accrue to the tenant except for that described in paragraph (4)(a-1) or as set forth in paragraph (2) (14 DCMR § 309).

311.2 Interest on an escrow account shall be due and payable by the owner to the tenant upon termination of any tenancy of a duration of twelve (12) months or more, unless an amount is deducted under procedures set forth in paragraph (2) (14 DCMR §§ 309.1 and 309.2). Any housing provider violating the provisions of this section by failing to pay interest on a security deposit escrow account that is rightfully owed to a tenant in accordance with the requirements of this section, shall be liable to the Rent Administrator or Rental Housing Commission, as applicable, for the amount of the interest owed, or in the event of bad faith, for treble that amount. For the purposes of this paragraph, the term "bad faith" means any frivolous or unfounded refusal to return a security deposit, as required by law, that is motivated by a fraudulent, deceptive, misleading, dishonest, or unreasonably self-serving purpose and not by simple negligence, bad judgment, or an honest belief in the course of action taken. Any housing provider who willfully violates the provisions of this section by failing to pay interest on a security deposit escrow account that is rightfully owed to a tenant in accordance with the requirements of this section shall be subject to a civil fine of not more than $ 5000 for each violation.

(1) If the housing provider invests the security deposit in an account with an interest rate that exceeds that of the statement savings rate as required in subparagraph (a)(14) (14 DCMR § 311.1), the housing provider may apply up to 30% of the excess interest for administrative costs or other purposes.

311.3 Except in cases where no interest is paid to the tenant as provided in § 311.2, the owner shall not assign the account or use it as security for loans.

311.4 It is the intent of this section that the account referred to in this section and § 309 shall be used solely for the purpose of securing the lessees' performance under the lease.

311.5 This section and § 309 and § 310 shall not be subject to the notice requirements of any other section of this subtitle.

SOURCE: The Housing Regulations of the District of Columbia, 5G DCRR § 2908, Commissioners' Order 55-1503 (August 11, 1955); as amended by: section 3 of the Security Deposit Act, D.C. Law 1-48, 22 DCR 2823 (November 28, 1975); and section 2 of the Adjustment of Interest Rates Paid on Rental Security Deposits Amendment Act of 1992, D.C. Law 9-212, § 2908.4(a), 40 DCR 2204 (March 17, 1993), incorporating by reference the text of D.C. Act 9-341, 40 DCR 23 (December 21, 1992); as amended by D.C. Act 16-633 at 54 DCR 889 (February 2, 2007).



Blue Moon eSignature Services Document ID: 275566931

## 315 NOTIFICATION REQUIRED

315.1 Prior to the acceptance of a nonrefundable application fee or security deposit, the owner of the habitation shall provide written notice of any requests that are pending for an adjustment in the rent ceiling of the habitation, as the adjustments are specifically enumerated in section 207 of the Rental Housing Act of 1985, D.C. Law 6-10, D.C. Official Code § 42-3502.07 (2001).

315.2 The notification shall include the current rent ceiling, the new rent ceiling requested in the petition, the petition filing date and petition number, and the nature of any repairs or rehabilitation planned in the dwelling unit as part of the petition.

315.3 A violation of this section shall be a Class 2 civil infraction pursuant to Titles I- III of the Department of Consumer and Regulatory Affairs Infractions Act of 1985. Adjudication of any infraction of this article shall be pursuant to titles I-III of the Department of Consumer and Regulatory Affairs Civil Infractions Act of 1985.

SOURCE: Section 2 of the Rent Ceiling Adjustment Notification Amendment Act of 1992, D.C. Law 9-79, §§ 2915.1 through 2915.3, 39 DCR 673 (February 7, 1992).

## 399 DEFINITIONS

399.1 The provisions of section 199 of chapter 1 of this title and the definitions set forth in that section shall be applicable to this chapter.



Blue Moon eSignature Services Document ID: 275566931

**38. HOUSING REGULATIONS.** TENANT ACKNOWLEDGES RECEIPT OF THE FOLLOWING SECTIONS OF THE DISTRICT OF COLUMBIA HOUSING REGULATIONS: CHAPTER 1, § 101, CHAPTER 1, § 106, AND CHAPTER 3.

**TENANT INITIAL HERE:** LH ______________________________.

THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND ALL OF THE TERMS OF THIS LEASE, SEEK LEGAL ADVICE BEFORE SIGNING IT.

**IN WITNESS WHEREOF**, Landlord and Tenant have signed this Lease as of the date first written above.

| **WITNESS:** | **TENANT:** |
|---|---|
| ______________________ | Laura Hettinger ______________________ |
| ______________________ | ______________________ |
| ______________________ | ______________________ |
| ______________________ | ______________________ |
| ______________________ | ______________________ |
| ______________________ | ______________________ |

| **WITNESS:** | **LANDLORD:** |
|---|---|
| ______________________ | By: Madeline Dunn ______________________ |
| Print Name: ______________________ | ______________________ |
| ______________________ | ______________________ |
| | ______________________ |
| | Print Name: ______________________ |
| | ______________________ |
| | Its: ______________________ |

# NO-SMOKING ADDENDUM

NATIONAL APARTMENT ASSOCIATION

Date: July 20, 2021
(when this Addendum is filled out)

*All use of any tobacco product involving smoking, burning, or combustion of tobacco is prohibited in any portion of the apartment community. You are entitled to receive an original of this No-Smoking Addendum after it is fully signed. Keep it in a safe place.*

1. **DWELLING UNIT DESCRIPTION.** Unit No. 1106, 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)*.

2. **LEASE CONTRACT DESCRIPTION.** Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants *(list all tenants)*:

Laura Catherine Hettinger

3. **DEFINITION OF SMOKING.** Smoking refers to any use or possession of a cigar, cigarette, e-cigarette, hookah, vaporizer, or pipe containing tobacco or a tobacco product while that tobacco or tobacco product is burning, lighted, vaporized, or ignited, regardless of whether the person using or possessing the product is inhaling or exhaling the smoke from such product. The term tobacco includes, but is not limited to any form, compound, or synthesis of the plant of the genus Nicotiana or the species N. tabacum which is cultivated for its leaves to be used in cigarettes, cigars, e-cigarettes, hookahs, vaporizers, or pipes. Smoking also refers to use or possession of burning, lighted, vaporized, or ignited non-tobacco products if they are noxious, offensive, unsafe, unhealthy, or irritating to other persons.

4. **SMOKING ANYWHERE INSIDE BUILDINGS OF THE APARTMENT COMMUNITY IS STRICTLY PROHIBITED.** All forms and use of burning, lighted, vaporized, or ignited tobacco products and smoking of tobacco products inside any dwelling, building, or interior of any portion of the apartment community is strictly prohibited. Any violation of the no-smoking policy is a material and substantial violation of this Addendum and the Lease Contract.

   The prohibition on use of any burning, lighted, vaporized, or ignited tobacco products or smoking of any tobacco products extends to all tenants, their occupants, guests, invitees and all others who are present on or in any portion of the apartment community. The no-smoking policy and rules extend to, but are not limited to, the management and leasing offices, building interiors and hallways, building common areas, dwellings, club house, exercise or spa facility, tennis courts, all interior areas of the apartment community, commercial shops, businesses, and spaces, work areas, and all other spaces whether in the interior of the apartment community or in the enclosed spaces on the surrounding community grounds. Smoking of non-tobacco products which are harmful to the health, safety, and welfare of other tenants inside any dwelling or building is also prohibited by this Addendum and other provisions of the Lease Contract.

5. **SMOKING OUTSIDE BUILDINGS OF THE APARTMENT COMMUNITY.** Smoking is permitted only in specially designated areas outside the buildings of the apartment community. Smoking must be at least 25 feet from the buildings in the apartment community, including administrative office buildings. If the previous field is not completed, smoking is only permitted at least 25 feet from the buildings in the apartment community, including administrative office buildings. The smoking-permissible areas are marked by signage.

   Smoking on balconies, patios, and limited common areas attached to or outside of your dwelling ☐ is ☒ is not permitted.

   The following outside areas of the community may be used for smoking: ____________________

   Even though smoking may be permitted in certain limited outside areas, we reserve the right to direct that you and your occupants, family, guests, and invitees cease and desist from smoking in those areas if smoke is entering the dwellings or buildings or if it is interfering with the health, safety, or welfare or disturbing the quiet enjoyment, or business operations of us, other tenants, or guests.

6. **YOUR RESPONSIBILITY FOR DAMAGES AND CLEANING.** You are responsible for payment of all costs and damages to your dwelling, other tenants' dwellings, or any other portion of the apartment community for repair, replacement, or cleaning due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees, regardless of whether such use was a violation of this Addendum. Any costs or damages we incur related to repairs, replacement, and cleaning due to your smoking or due to your violation of the no-smoking provisions of the Lease Contract are in excess of normal wear and tear. Smoke related damage, including but not limited to, the smell of tobacco smoke which permeates sheetrock, carpeting, wood, insulation, or other components of the dwelling or building is in excess of normal wear and tear in our smoke free apartment community.

7. **YOUR RESPONSIBILITY FOR LOSS OF RENTAL INCOME AND ECONOMIC DAMAGES REGARDING OTHER TENANTS.** You are responsible for payment of all lost rental income or other economic and financial damages or loss to us due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees which results in or causes other tenants to vacate their dwellings, results in disruption of other tenants' quiet enjoyment, or adversely affects other tenants' or occupants' health, safety, or welfare.

8. **LEASE CONTRACT TERMINATION FOR VIOLATION OF THIS ADDENDUM.** We have the right to terminate your Lease Contract or right of occupancy of the dwelling for any violation of this No-Smoking Addendum. Violation of the no-smoking provisions is a material and substantial default or violation of the Lease Contract. Despite the termination of the Lease Contract or your occupancy, you will remain liable for rent through the end of the Lease Contract term or the date on which the dwelling is re-rented to a new occupant, whichever comes first. Therefore, you may be responsible for payment of rent after you vacate the leased premises even though you are no longer living in the dwelling.

© 2018, National Apartment Association, Inc. - 10/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

9. **EXTENT OF YOUR LIABILITY FOR LOSSES DUE TO SMOKING.** Your responsibility for damages, cleaning, loss of rental income, and loss of other economic damages under this No-Smoking Addendum are in addition to, and not in lieu of, your responsibility for any other damages or loss under the Lease Contract or any other addendum.

10. **YOUR RESPONSIBILITY FOR CONDUCT OF OCCUPANTS, FAMILY MEMBERS, AND GUESTS.** You are responsible for communicating this community's no-smoking policy and for ensuring compliance with this Addendum by your occupants, family, guests, and invitees.

11. **THERE IS NO WARRANTY OF A SMOKE FREE ENVIRONMENT.** Although we prohibit smoking in all interior parts of the apartment community, there is no warranty or guaranty of any kind that your dwelling or the apartment community is smoke free. Smoking in certain limited outside areas is allowed as provided above. Enforcement of our no-smoking policy is a joint responsibility which requires your cooperation in reporting incidents or suspected violations of smoking. You must report violations of our no-smoking policy before we are obligated to investigate and act, and you must thereafter cooperate with us in prosecution of such violations.

This is an important and binding legal document. By signing this Addendum you are agreeing to follow our no-smoking policy and you are acknowledging that a violation could lead to termination of your Lease Contract or right to continue living in the dwelling. If you or someone in your household is a smoker, you should carefully consider whether you will be able to abide by the terms of this Addendum.

12. **SPECIAL PROVISIONS.** The following special provisions control over the conflicting provisions of this printed form:

**Tenant or Tenants**
*(All tenants must sign here)*

Laura Hettinger

**Owner or Owner's Representative**
*(Sign here)*

Madeline Dunn

© 2018, National Apartment Association, Inc. - 10/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

# APARTMENT LEASE CONTRACT ADDENDUM FOR SATELLITE DISH OR ANTENNA

NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

Under a Federal Communications Commission (FCC) order, you as our tenant have a right to install a transmitting or receiving satellite dish or antenna on the leased dwelling, subject to FCC limitations. We as a rental housing owner are allowed to impose reasonable restrictions relating to such installation. You are required to comply with these restrictions as a condition of installing such equipment. This addendum contains the restrictions that you and we agree to follow.

1. **DWELLING UNIT DESCRIPTION.** Unit No. 1106, 4 I Street SE #1106 _(street address)_ in Washington, D.C., 20003 _(zip code)_.

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants _(list all tenants)_:
Laura Catherine Hettinger

3. **NUMBER AND SIZE.** You may install 0 satellite dish(es) or antenna(s) on the leased premises. A satellite dish may not exceed one meter (3.3 feet) in diameter. Antennas that only transmit signals or that are not covered by 47 CFR § 1.4000 are prohibited.

4. **LOCATION.** Your satellite dish or antenna must be located: (1) inside your dwelling; or (2) in an area outside your dwelling such as a balcony, patio, yard, etc. of which you have exclusive use under your lease. Installation is not permitted on any parking area, roof, exterior wall, window, window sill, fence or common area, or in an area that other tenants are allowed to use. A satellite dish or antenna may not protrude beyond the vertical and horizontal space that is leased to you for your exclusive use.

5. **SAFETY AND NON-INTERFERENCE.** Your installation: (1) must comply with all applicable ordinances and laws and all reasonable safety standards; (2) may not interfere with our cable, telephone or electrical systems or those of neighboring properties; (3) may not be connected to our telecommunication systems; and (4) may not be connected to our electrical system except by plugging into a 110-volt duplex receptacle. If the satellite dish or antenna is placed in a permitted outside area, it must be safely secured by one of three methods: (1) securely attaching it to a portable, heavy object such as a small slab of concrete; (2) clamping it to a part of the building's exterior that lies within your leased premises (such as a balcony or patio railing); or (3) any other method approved by us in writing. No other methods are allowed. We may require reasonable screening of the satellite dish or antenna by plants, etc., so long as it does not impair reception.

6. **SIGNAL TRANSMISSION FROM EXTERIOR DISH OR ANTENNA TO INTERIOR OF DWELLING.** You may not damage or alter the leased premises and may not drill holes through outside walls, door jams, window sills, etc. If your satellite dish or antenna is installed outside your dwelling (on a balcony, patio, etc.), the signals received by it may be transmitted to the interior of your dwelling only by the following methods: (1) running a "flat" cable under a door jam or window sill in a manner that does not physically alter the premises and does not interfere with proper operation of the door or window; (2) running a traditional or flat cable through a pre-existing hole in the wall (that will not need to be enlarged to accommodate the cable); (3) connecting cables "through a window pane," similar to how an external car antenna for a cellular phone can be connected to inside wiring by a device glued to either side of the window—without drilling a hole through the window; (4) wireless transmission of the signal from the satellite dish or antenna to a device inside the dwelling; or (5) any other method approved by us in writing.

7. **SAFETY IN INSTALLATION.** In order to assure safety, the strength and type of materials used for installation must be approved by us. Installation must be done by a qualified person or company approved by us. Our approval will not be unreasonably withheld. An installer provided by the seller of the satellite dish or antenna is presumed to be qualified.

8. **MAINTENANCE.** You will have the sole responsibility for maintaining your satellite dish, antenna and all related equipment.

9. **REMOVAL AND DAMAGES.** You must remove the satellite dish or antenna and all related equipment when you move out of the dwelling. In accordance with the NAA Lease Contract, you must pay for any damages and for the cost of repairs or repainting caused by negligence, carelessness, accident or abuse which may be reasonably necessary to restore the leased premises to its condition prior to the installation of your satellite dish, antenna or related equipment. You will not be responsible for normal wear.

10. **LIABILITY INSURANCE.** You must take full responsibility for the satellite dish, antenna and related equipment. If the dish or antenna is installed at a height that could result in injury to others if it becomes unattached and falls, you must provide us with evidence of liability insurance (if available) to protect us against claims of personal injury and property damage to others, related to your satellite dish, antenna and related equipment. The insurance coverage must be $______, which is an amount reasonably determined by us to accomplish that purpose. Factors affecting the amount of insurance include height of installation above ground level, potential wind velocities, risk of the dish/antenna becoming unattached and falling on someone, etc.

11. **SECURITY DEPOSIT.** An additional security deposit of $______ will be charged. We _(check one)_ ☐ will consider or ☐ will not consider this additional security deposit a general security deposit for all purposes. The security deposit amount in Provision 4 of the Lease Contract _(check one)_ ☐ does or ☐ does not include this additional deposit amount. Refund of the additional security deposit will be subject to the terms and conditions set forth in the Lease Contract regardless of whether it is considered part of the general security deposit.

This additional security deposit is required to help protect us against possible repair costs, damages, or failure to remove the satellite dish, antenna and related equipment at time of move-out. Factors affecting any security deposit may vary, depending on: (1) how the dish or antenna is attached (nails,screws, lag bolts drilled into walls); (2) whether holes were permitted to be drilled through walls for the cable between the satellite dish and the TV; and (3) the difficulty and cost repair or restoration after removal, etc.

© 2018, National Apartment Association, Inc. - 9/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

12. **WHEN YOU MAY BEGIN INSTALLATION.** You may start installation of your satellite dish, antenna or related equipment only after you have: (1) signed this addendum; (2) provided us with written evidence of the liability insurance referred to in paragraph 10 of this addendum; (3) paid us the additional security deposit, if applicable, in paragraph 11; and (4) received our written approval of the installation materials and the person or company that will do the installation, which approval may not be unreasonably withheld.

13. **MISCELLANEOUS.** If additional satellite dishes or antennas are desired, an additional lease addendum must be executed.

14. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

**Tenant or Tenants**
*(All tenants must sign here)*

Laura Hettinger

**Owner or Owner's Representative**
*(signs here)*

Madeline Dunn

**Date of Lease Contract**

July 23, 2021

© 2018, National Apartment Association, Inc. - 9/2018, Washington, D.C.

Blue Moon eSignature Services Document ID: 275566931

# LEASE ADDENDUM
## LIABILITY INSURANCE REQUIRED OF Tenant

1. **DWELLING UNIT DESCRIPTION.** Unit. No. 1106, 4 I Street SE #1106 (street address) in Washington, D.C., 20003 *(zip code)*.

2. **LEASE CONTRACT DESCRIPTION.** Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants *(list all tenants)*:
Laura Catherine Hettinger

3. **ACKNOWLEDGMENT CONCERNING INSURANCE OR DAMAGE WAIVER.** You acknowledge that we do not maintain insurance to protect you against personal injury, loss or damage to your personal property or belongings, or to cover your own liability for injury, loss or damage you (or your occupants or guests) may cause others. You also acknowledge that by not maintaining your own policy of personal liability insurance, you may be responsible to others (including us) or the full cost of any injury, loss or damage caused by your actions or the actions of your occupants or guests. You understand that paragraph 9 of the Lease Contract requires you to maintain a liability insurance policy, which provides limits of liability to third parties in an amount not less than $________ per occurrence. You understand and agree to maintain at all times during the Term of the Lease Contract and any renewal periods a policy of personal liability insurance satisfying the requirements listed below, at your sole expense.

4. **REQUIRED POLICY.** You are required to purchase and maintain personal liability insurance covering you, your occupants and guests, for personal injury and property damage any of you cause to third parties (including damage to our property), in a minimum policy coverage amount of $ 100000.00 ,from a carrier with an AM Best rating of A-VII or better, licensed to do business in Washington, D.C. The carrier is required to provide notice to us within 30 days of any cancellation, non-renewal, or material change in your coverage. We retain the right to hold you responsible for any loss in excess of your insurance coverage.

5. **We may provide you with information of an insurance program that we make available to tenants, which provides you with an opportunity to buy renter's insurance from a preferred company. However, you are free to contract for the required insurance with a provider of your choosing.**

6. **SUBROGATION ALLOWED.** You and we agree that subrogation is allowed by all parties and that this agreement supersedes any language to the contrary in the Lease Contract.

7. **YOUR INSURANCE COVERAGE.** You have purchased the required personal liability insurance from the insurance company of your choosing listed below that is licensed to do business in this state, and have provided us with written proof of this insurance prior to the execution and commencement of the Lease Contract. You will provide additional proof of insurance in the future at our request.

Insurance Company: ________

8. **DEFAULT.** Any default under the terms of this Addendum shall be deemed an immediate and material default under the terms of the Lease Contract. If you do not cure this default within 30 days we shall be entitled to exercise all rights and remedies under the law.

9. **MISCELLANEOUS.** Except as specifically stated in this Addendum, all other terms and conditions of the Lease Contract shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease Contract, the terms of this Addendum shall control.

10. **SPECIAL PROVISIONS:** * Policy must include Also, "Novel South Capitol - 2 I (Eye) Street Acquisition (2 I (Eye) Street Southeast, Washington, DC 20003)" must be named on the policy as "additional insured" and/or "interested party."

**I have read, understand and agree to comply with the preceding provisions.**

| Tenant or Tenants *(All tenants must sign here)* | Owner or Owner's Representative *(signs here)* |
|---|---|
| Laura Hettinger | Madeline Dunn |
| | **Date of Lease Contract** |
| | July 23, 2021 |



Blue Moon eSignature Services Document ID: 275566931

# LEASE ADDENDUM FOR INTRUSION ALARM

NATIONAL APARTMENT ASSOCIATION

**1. DWELLING UNIT DESCRIPTION.**
Unit. No. **1106**, **4 I Street SE #1106** *(street address)* in Washington, D.C., **20003** *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **July 23, 2021**
Owner's name: **Crescent Capitol View, LLC**

Tenants *(list all tenants)*:
**Laura Catherine Hettinger**

**3. INTRUSION ALARM.** Your dwelling is equipped with an intrusion alarm. It must not be considered an assurance or guaranty of safety or security. You should at all times take precautions as if the intrusion alarm were malfunctioning. You acknowledge that the security of you and your family, occupants, and guests are your responsibility alone. Your use of the alarm system is *(check one)* ☐ required or ☒ optional. You are responsible for all false alarm charges for your dwelling.

**4. PERMIT FROM CITY.** You *(check one)* ☐ do or ☐ do not have to obtain a city permit for activation and use of the intrusion alarm if you do, the phone number to call is ________ ,and it is your responsibility to obtain the permit. You also will be responsible for any fines due to excessive false alarms.

**5. FOLLOW INSTRUCTIONS.** You agree to use reasonable care in operating the alarm and to follow the written instructions, rules and procedures furnished to you by us. Instructions ☐ are attached or ☐ will be provided to you when you move in.

**6. ALARM COMPANY.** You *(check one)* ☐ will or ☐ will not have to make arrangements with an independent alarm company to activate and maintain the alarm system. You *(check one)* ☐ may choose your own alarm company or ☐ are required to use ________ as your alarm company. The alarm system is repaired and maintained by **Residents service provider**.

**7. ENTRY BY OWNER.** Upon activation of the alarm system, you must immediately provide us (management) with your security code and any special alarm system instructions for lawful entry into the unit when no one is there, as authorized in your NAA Lease Contract. You must reimburse us for any expenses we incur in entering your dwelling, when those expenses are due to your failure to provide the foregoing information.

**8. REPAIRS OR MALFUNCTIONS.** If the intrusion alarm malfunctions, you agree to *(check one)* ☒ contact your intrusion alarm company immediately for repair or ☐ contact us immediately for repair. The cost of repair will be paid by *(check one)* ☒ you or ☐ us.

**9. NO WARRANTY.** We make no guarantees or warranties, express or implied, concerning the alarm system. All guarantees and warranties are expressly disclaimed. Crime can and does occur despite the best security measures. Anything electronic or mechanical in nature will malfunction from time to time. We are absolutely not responsible for malfunction of the alarm.

**10. LIABILITY.** We are not liable to you, your guests or other occupants for any injury, damage or loss resulting from the alarm or any malfunction of the alarm. It is recommended that you purchase insurance to cover casualty loss of your property, including loss by theft.

**11. EMERGENCIES.** Always call 911 or law enforcement authorities or emergency medical services in the event of a crime or emergency. Then contact us. We are not required to answer the alarm, but we do have the right to enter and cut off the alarm to minimize annoyance to neighbors when it malfunctions or is not timely cut off.

**12. ENTIRE AGREEMENT.** We've made no promises or representations regarding the alarm system except those in this addendum.

**13. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
**Resident must provide an access code for emergency entry.**

**Tenant or Tenants**
*(All tenants must sign here)*

Laura Hettinger

**Owner or Owner's Representative**
*(signs here)*

Madeline Dunn

**Date of Lease Contract**

**July 23, 2021**

## SUSTAINABLE LIVING ADDENDUM

NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

1. **DWELLING UNIT DESCRIPTION.**
Unit No. 1106, 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)*.

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Residents *(list all residents - leaseholders and occupants)*:
Laura Catherine Hettinger

Occupants:

This Addendum constitutes an Addendum to the above-described Lease Contract for the above-described premises and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **PURPOSE OF ADDENDUM.** This Addendum will provide requirements and guidelines that are beneficial to improve the quality of the Community's social, environmental, and economic impact for all. All Residents are required to sign this Addendum.

4. **ENERGY EFFICIENCY.** The following are guidelines recommended to reduce overall energy consumption and reduce electricity/gas expenses.

**Thermostat Settings.** During the winter months, Energy.gov (https://www.energy.gov/)recommends setting your thermostat to 68°F while you are awake and setting it lower while you are asleep or away from home. Considerations should be made for extremely cold temperatures as to avoid freezing pipes.

During the summer months, with central air conditioning, Energy.gov recommends setting the thermostat to 78°F while you are occupying the apartment and need cooling and setting the thermostat higher while you are away. Energy.gov recommends that you set your thermostat at as high a temperature as comfortably possible and ensure humidity control if needed.

Please note that the thermostat settings listed above are only recommended guidelines and that the appropriate thermostat setting will depend upon weather conditions and the size and layout of your unit.

**Lighting and Light Bulbs.** Use natural light when possible. Consider replacing standard incandescent light bulbs with energy-saving compact fluorescent light bulbs (CFLs) or light-emitting diodes (LEDs).

**Appliances.** We strongly encourage the use of appliances that have the ENERGY STAR label or other energy-efficient labeling.

**Conserve Electricity.** Consider unplugging chargers for power tools, mobile phones, laptops, televisions, and other electronic devices when not in use, or when you plan to be away from the apartment for an extended period of time.

5. **WATER EFFICIENCY – REQUIREMENTS AND SUGGESTIONS.** The following requirements and suggestions will help reduce overall water consumption at the Community.

**Requirements.**

- Residents are required to report leaks to owner immediately to prevent damage, conserve water, and manage water/sewer costs.
- The apartment may come equipped with water saving fixtures and appliances, including, but not limited to, showerheads, toilets, faucets, dishwashers, and washing machines. Residents are required to receive written approval from us prior to replacing or altering any of these fixtures/appliances.

**Suggestions.**

- Every drop counts! Turn off water when shaving, washing hands, and brushing your teeth.
- When doing laundry, also consider only washing full loads. When washing small loads, be sure to use the appropriate water level setting.

6. **WASTE AND RECYCLING – REQUIREMENTS AND SUGGESTIONS.** The following requirements and suggestions will help reduce overall waste consumption and reduce waste expenses.

**Requirements.**

- All Residents are required to dispose of waste and recyclables in the appropriate containers in accordance with the Owner's Rules and Regulations, in addition to any applicable local ordinances.
- Per common practice, the following materials are generally not recyclable: Styrofoam, window glass and mirrors, electronic waste (TVs and computers), motor oil containers, yard waste, chemicals, cleaning products or solutions, chemical containers, shredded paper, plastic bags, ceramics or dishes, food waste, scrap metal, monitors.

**Suggestions.**

- For materials that are not recyclable, we recommend finding ways to reduce and reuse those items. Visit https://www.plasticfilmrecycling.org for additional information.
- We encourage you to contact your local Waste Industries branch or recycling center to find a list of accepted materials for your recycling center.

© 2021, National Apartment Association, Inc. - 4/2021, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

**7. INDOOR ENVIRONMENT AND WELLNESS.** The following are guidelines which promote the quality of the indoor environment and wellness:

- This Community ❑ is ❑ is not a smoke-free environment. If the Community is a smoke-free environment, then no smoking or vaping is allowed anywhere in the Community, at any time. Smoking refers to any use or possession of a cigar, cigarette, e-cigarette, hookah, vaporizer, or pipe containing tobacco or a tobacco product while that tobacco or tobacco product is burning, lighted, vaporized, or ignited, regardless of whether the person using or possessing the product is inhaling or exhaling the smoke from such product. The term tobacco includes, but is not limited to any form, compound, or synthesis of the plant of the genus Nicotiana or the species N. tabacum which is cultivated for its leaves to be used in cigarettes, cigars, e-cigarettes, hookahs, vaporizers, or pipes. Smoking also refers to use or possession of burning, lighted, vaporized, or ignited non-tobacco products if they are noxious, offensive, unsafe, unhealthy, or irritating to other persons. Please refer to the No-Smoking Addendum for further information.
- Owner provides common area cleaning using only products that have the Green Cleaning® seal or a similar green certification. Owner recommends that Residents also use like products in the cleaning of their units.

**8. SEVERABILITY.** If any provision of this Addendum to the Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum to the Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Addendum to the Lease Contract while preserving the intent of the parties.

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

______________________________________________

**Resident or Residents**
*(All residents must sign)*

Laura Hettinger

**Owner or Owner's Representative**
*(signs below)*

Madeline Dunn

**Date of Signing Addendum**

08/10/2021

© 2021, National Apartment Association, Inc. - 4/2021, Washington, D.C.



Blue Moon eSignature Services Document ID: 275566931

BOZZUTO
Bozzuto Brings You Home.™

## ADDITIONAL RENT FOR COMMON AREAS AND AMENITIES – ADDENDUM TO LEASE – ALL STATES

This Addendum to the Lease dated **07/23/2021** by and between **Crescent Capitol View, LLC** ("Owner"), by its agent Bozzuto Management Company ("Agent") and **Laura Catherine Hettinger** ("Resident") shall be incorporated in and made a part of the aforesaid Lease and shall be renewed and shall expire under the same terms and conditions of the Lease.

As part of Resident's contractual undertaking in renting an apartment from Owner, it is required that the Resident make a lump sum payment of $ **600.00** in additional rent ("the Additional Rent") for the right to use, in common with other residents, the common areas and amenities of the community. At its sole option, Owner may charge the Additional Rent for each renewal Lease and said Additional Rent payment shall be made as part of the first monthly rent payment upon each renewal.

Resident hereby expressly certifies that is it understood and agreed between Owner and Resident that:

1. The Additional Rent, as provided above, is not part of the Resident's security deposit but rather is an additional rent payment negotiated as part of the Lease transaction.

2. The Additional Rent is not refundable (either in whole or in part) under any circumstances including Resident's non-use of any or all of the amenities or the unavailability of the amenities. Owner cannot guarantee that all facilities, amenities, equipment and services are or will be available at all times. Availability of amenities and common areas may be curtailed or limited by construction, renovation, servicing, repairs or other reasons and Owner shall not be in default under the Lease when this occurs. Residents are not entitled to abatement of Rent or Additional Rent or damages when facilities, services, amenities and equipment are not available.

3. Resident's signature herein confirms his/her understanding of the nature of the Additional Rent and his/her agreement to pay such Additional Rent contemporaneously with the first monthly rental payment.

OWNER

By: BOZZUTO MANAGEMENT COMPANY

Madeline Dunn
Name: **Crescent Capitol View, LLC**
Date: 08/10/2021

RESIDENT(S)

Laura Hettinger
Name: **Laura Catherine Hettinger**
Date: 07/22/2021

Name: __________
Date: __________



Blue Moon eSignature Services Document ID: 275566931

BOZZUTO

**COMMUNITY POLICIES AND PROCEDURES**
**ADDENDUM – ALL STATES**

This property is managed by the Bozzuto Management Company ("Management") on behalf of the Owner. It is Management's goal to maintain this property as an outstanding apartment community. In order to promote and maintain this Property, and as a condition of residency, Management has established the following policies. All residents agree to abide by these policies, as they are essential for the comfort and convenience of all community residents. The decision of whether Community Policies and Procedures have been violated shall be made at Management's sole discretion. A failure by Resident to abide by the Community Policies and Procedures may constitute a breach of Lease. In the event of any contradiction between the terms of this Addendum and any other Addendum or the Lease, this Addendum shall control.

**Contacting Management Office:**

Phone#: (202) 922-2025

Emergency After Hours Phone #: (202) 922-2025

Email: novel@bozzuto.com

Other contact information: novelconcierge@bozzuto.com

**Additional Fees Related to Lease**
The following fees may be charged by Owner to the extent permitted by local law:

**Transfer Fee:** $_______________. Resident agrees that any approved transfer will be subject to additional payment of this amount.

**Holdover/MTM**: $_______________/month. Resident agrees that in the event the Lease term expires, and Resident holds over and/or becomes a month-to-month tenant pursuant to the Lease or by operation of law, the monthly rent will increase by the foregoing amount. Resident agrees that this Addendum shall serve as written notice of the additional rent and/or rent increase and waives any right to further notice.

**Amenities Fee:** $_______________. Resident agrees to pay an amenities fee to Landlord for the foregoing amount as an additional charge under the Lease.

**Occupant Change Fee**: $_______________. New occupants or tenants, or any changes to the authorized occupants and tenants under the Lease, are conditioned on the payment of the foregoing fee.

To the extent any of the above fees are not completed or specified, Resident agrees that Owner may establish such fees through its policies and/or by written notice to the Resident. Resident agrees that Owner may change the amounts described above based on market conditions or for any other reason by providing written notice of the new fees, rent, or other charges. Any transfer or occupancy change requested by Resident is subject to approval by Owner and that payment of the above amounts does not entitle Resident to transfer apartments or change occupancy. The failure to complete the above amounts does not waive Owner's right to charge fees or increase rent as otherwise permitted by local law.

**KEYS, FOBS, CARDS, PASSES, AND REMOTE CONTROLS**
Resident agrees to abide by all written and/or posted instructions regarding the Access Items and to report any malfunctioning, broken or damaged Access Items, gates, locks, doors or related access equipment. Resident is liable for damages to Access Items and related access equipment caused by misuse or negligence of Resident, occupants or guests.

A key fob may be granted for use and access to amenities at the Property such as a club room, business center, theatre, fitness center etc. To the extent permitted by local law, Resident agrees that Resident's access to these amenities may be restricted by Management, in its sole discretion, should Resident violate the Community Policies and Procedures related to the use of these amenities. To the extent permitted by local law, Owner may reset and reissue key fobs or other access items due to emergencies or security concerns, and in such cases will reissue key fobs or access items to the leaseholder. Resident acknowledges and understands that Resident's guests will not be granted a key fob or other access items.

**RECREATIONAL FACILITIES AND AMENITIES**
Please contact the rental office prior to using the amenities such as swimming pool, rooftop terrace, sunning deck, clubroom for specific policies that govern their use. Some amenities have limited hours of operation. Some amenities may have supervision requirements and guest restrictions.

We cannot assume responsibility for the safety of Residents, occupants or guests who use our facilities. Most facilities are for use without any Management supervision and Residents, guests and occupants assume the risks of any injury incurred in the use of those facilities, except in the case of Management's omission, fault, neglect or other misconduct. Residents must adhere to all posted signage for everyone's safety and protection. Use of amenities and facilities is prohibited after the posted hours. Any misuse of a facility or amenity will be grounds for Lease termination or for suspension of use of the facility or amenity, to the extent permitted by local law.

Management cannot guarantee that all facilities, amenities, equipment and services are or will be available at all times. Availability of amenities and common areas may be curtailed or limited by construction, renovation, servicing, repairs or other reasons and Management shall not be in default under the Lease when this occurs. Residents are not entitled to rent abatement or damages when facilities, services, amenities and equipment are not available, except as provided for by local law. MANAGEMENT MAY ADD OR CHANGE RULES REGARDING AMENITIES AT THE COMMUNITY AT ANY TIME AND AT ITS SOLE DISCRETION.

**SERVICE GUARANTEE PROGRAM AND REQUESTS**
Management's Service Guarantee Program guarantees a 24-hour response time to reasonable maintenance requests. Management accepts requests made by phone, in-person, or electronically. The Service Guarantee only ensures that Management will contact Resident within 24 hours of receiving a maintenance request in an effort to start responding promptly. While maintenance will respond within 24 hours, the time necessary to complete the repairs may exceed 24 hours. Routine maintenance requests made on weekends or holidays and requests received after 4:00 p.m. on weekdays will be considered to have been placed the following business morning at 9 a.m. Residents have an obligation to contact Management if they receive no response to their maintenance request within twenty-four (24) hours. Management's response to Resident can be made by phone, email, letter or a note hand-delivered to Resident's apartment or mail-box. This Service Guarantee includes routine repairs to appliances, plumbing, smoke alarms, ceiling fans, heating and air conditioning, outside lighting, and other routine repairs. Priority service will be given to repairs of a serious nature, i.e., electric outages, loss of heat or air conditioning, no hot water, clogged toilets, broken windows, broken locks etc. The Service Guarantee Program may be suspended or restricted without notice as required by a force majeure or emergency situation, including without limitation the COVID-19 epidemic. During any emergency situation, the property may need to alter operations or reduce staffing, and that maintenance requests will be addressed as soon as possible.

Resident understands that rent will not be abated for the failure to complete a maintenance request within 24 hours. Resident acknowledges that Management's ability to address a maintenance request is conditioned upon Resident's good faith cooperation and Resident agrees to provide the cooperation necessary for Management to address Resident's maintenance requests.

Any plumbing problem, frozen water line, lack of heat in winter, gas leak or electrical failure should be considered an emergency. Please dial the designated emergency number for such occurrences, and our on-call personnel will respond. Any expense incurred as a result of mistreatment of the apartment or common areas will, insofar as necessary, be assessed against the Resident responsible. For your convenience and information, a set of instructions for the operation of appliances and mechanical equipment is available upon request. If you are concerned for your health or safety due to a condition in the building, please dial 911 to contact local Fire, Police, or Emergency response rather than calling the Management office.

**GUESTS**
Guests must be accompanied at all times when using the Property's facilities and amenities. Guests of all ages must limit their stay to no more than 14 days per year unless prior written approval from Management has been obtained. Residents are responsible for the conduct of their guests and should inform them of the Community Policies. Failure of guests to adhere to Community Policies may be grounds for exclusion from the Property or certain amenities and/or may constitute a breach of Lease.

Residents are responsible for the behavior of all family members, guests, and invitees. Regardless of age, if it is necessary for a family member, guest, or invitee to be accompanied by an adult when in common areas or when using amenities, then Resident should ensure that that person is accompanied. All Residents, guests or invitees shall follow all posted signage for the safety and protection of everyone.

**RESIDENT CONDUCT**

**Harassment:** We expect all residents, guests, vendors and employees to treat each other with courtesy and respect. Harassment of any type, including but not limited to, physical, verbal, written, cyber-based, or sexual, is strictly prohibited. Shouting, threats, use of obscenities, personally disparaging remarks, violence, coercion and/or intimidation against anyone in this community, including staff, shall be grounds for lease termination. Any person engaging in harassment will be asked to stop and immediately leave the area. A failure to cooperate may result in law enforcement being called. Any Resident who feels that they have been subject to, or becomes aware of, harassment should contact Management immediately. Residents are prohibited from harassing staff or disrupting our business operations. Residents are also prohibited from injuring our reputation by making bad faith and/or defamatory allegations against us to others.

**Communicating Concerns:** If you or a household member has a concern about your apartment or your experience living at the community, please contact the Property Manager or Assistant Manager. If you are not comfortable talking to them about the concern, you should request the name and telephone number of the Regional Manager. We will do our best to address concerns with sensitivity and professionalism. Residents must secure permission from Management prior to posting fliers or notices in the common areas.

**Quiet Hours and Disturbances:** Resident acknowledges that the hours from 11PM-7 AM ______ are designated "Quiet Hours" at the Community. During Quiet Hours, Residents must exercise special caution about noise and loud activities are prohibited, including, but not limited to: large social gatherings, vacuuming, loud music and television, loud household activities, and move-ins/move-outs. A violation of the noise policy is grounds for Lease termination and/or termination of Resident's right to possession of the apartment. In order to reduce noise or disruption to other Residents, Management may ask or require that Resident adopt noise reduction measures (including reduced activities or noise dampening items, such as rugs or carpeting).

**SECURITY**

**Weapons/Guns.** For the safety of our residents and visitors, no knives, firearms or other weapons are allowed in the common and public areas of this community, whether concealed or open-carry, except for weapons carried by law enforcement or security guards hired by Management. Guns kept inside apartments shall be stored unloaded and separately from ammunition in an enclosed and locked container. The sale or purchase of weapons and guns on the property is prohibited.

**Lobby and Front Desk Security Procedures.** If a community has a lobby and front desk, Residents should contact Management for hours when staff will be at the front desk and rules regarding sign-in for visitors or other security procedures.

**Video Doorbells.** Electronic video doorbell cameras (such as Ring, Google NEST, Arrow, etc.) are not permitted to be installed on apartment entry doors within the building.

**Out of Town Security Procedures.** Residents must notify Management of anticipated extended absences from their Apartment in excess of Seven days. Management is not liable for any damages in the Apartment occasioned by Residents' absence, and Resident agrees to pay for any damages caused by an extended absence, unless the damage is caused by Management's negligent acts or omissions.

**BALCONY AND EXTERIORS**

Please help us maintain an attractive community by keeping your balcony neat and free of unsightly clutter. Only patio or lawn furniture should be placed on the balcony. Balconies are not to be used as storage areas. Trash containers, bikes, and motorcycles are prohibited.

**Safety**: Balconies are potentially dangerous if overloaded with too many people or heavy furniture. Please contact the Management office immediately and do not use your balcony if you observe any of the following: leaning, sagging or soft spots; cracks or separation where the balcony and building connect; rust stains or abnormal water ponding; obstructed or poorly functioning drains, loose or damaged handrails. Nothing may be thrown over the balcony.

**Fire Hazards:** Grills, stoves, fire pits or other open flame devices of any kind ARE NOT PERMITTED. Their use is a fire code violation and grounds for immediate lease termination. Residents may only use grills provided by Owner and located in the outdoor common areas

**Signs/Flags:** Residents are prohibited from posting signs, notices, advertisements, flags, banners or similar items from their balcony, patio, terrace, or windows.

**GENERAL EXTERMINATION**

Management may conduct extermination operations in Residents' apartment several times a year and as needed to prevent insect infestation. Management will notify Residents in advance if extermination will occur in Resident's apartment, and give Resident instructions for the preparation of the apartment and safe contact with insecticides. Residents will be responsible for preparing the apartment for extermination in accordance with Management's instructions. Where permitted by law, Residents may be charged a fee for cancelled appointments caused by unprepared apartments. Residents must request any additional extermination treatments in writing. Resident understands that routine treatment of the apartment may be required in order to protect the health and safety of the community, and that individual apartments will not be excepted from treatment except as required by law.

**BUSINESS CENTER**

If this community has a business center, Resident agrees to use the business center at Resident's sole risk and according to any rules established by Management. Management is not responsible for data, files, programs or any other information lost or damaged in the Business Center or on its computers. No software may be loaded on Business Center computers without the written approval of Management. Business Center computers and equipment may not be used for illegal, inappropriate, or offensive purposes. At its discretion, Management may impose time and other limits on use of the Business Center. Resident understands and acknowledges that Resident's use of the business center is not private or confidential, and any information disclosed or used by Resident on the property's computers or equipment could be stored or reviewed by Management or other parties.

**MOLD**

In addition to the requirements of the Mold Information and Prevention Addendum, Resident agrees as follows

Resident understands that the lack of temperature control and air circulation will increase the likelihood of mold growth in the apartment. Resident agrees that air conditioning should not be turned off for an extended period of time, and that the temperature and air flow should be maintained at reasonable levels at all times.

Resident shall provide Owner with immediate written notification of any windows or fans that are broken or not working. Resident shall use all reasonable care to close all windows to prevent rain or outdoor water from penetrating the apartment. Resident shall endeavor to be aware of any water leaks or damage and humidity levels in the apartment. Resident shall conduct a visual inspection for the presence of mold growth inside the apartment at least once per month. This inspection shall include window frames, carpets, ceiling tiles, plants, personal property, and any currently or formerly damp material containing cellulose such as wallpaper, books, papers and newspapers. Resident agrees to take steps to control the humidity in the apartment and to immediately report any water leaks or mold growth. Failure to report water leaks or mold growth may be grounds for Lease termination.

Resident agrees not to bring any personal property into the apartment that may contain mold, especially "soft possessions" such as sofas, mattresses and pillows. Resident shall clean and dry any damp or wet building materials or personal property within 24 hours.

**PET/ANIMAL POLICIES**

If the community permits pets, permission must be secured in writing from Management before the pet resides in your apartment. Visiting pets are not permitted at any time. If pets are permitted, pet owners must adhere to all guidelines included in the Animal Addendum and the Pet Policies set forth below:

- Management reserves the right to approve or disapprove all Pets for any reason and at any time.
- Visual Inspection: Upon request, Resident shall present the Pet to Management for visual inspection before final approval is given for the Pet to reside at the Premises.
- Photograph: Upon request, Resident shall provide Management with a photograph of the Pet
- Proof of Vaccination: Resident must provide Owner with proof of the Pet's annual inoculations for rabies, distemper, and any other vaccinations required by law or by Management.
- Management reserves the right to prohibit, at its sole discretion, certain small pets at the Property or to limit the number of small pets at the Property.
- Resident is not permitted to keep animals that are undomesticated, dangerous, or not commonly known as pets, as determined by Management in its sole discretion.
- In applying for approval of any animal to reside at the Property, Resident is required to disclose whether: the animal has ever been designated dangerous by a government authority or veterinarian; has bitten, attacked or caused injury to another animal or person; or has been removed from another residential community. Owner reserves the right to remove the animal from the Property if such an event has occurred.
- Total Pets Permitted in Premises: Only 2 Pets (excluding small pets such as hamsters, fish, etc.) will be permitted to reside in the Premises.
- Cats: Must be neutered/spayed, as applicable, with supporting documentation provided.
- Animals may not be left unattended on the balcony. Animals may not defecate and urinate on balconies.

Restricted Dog Breeds: The following dog breeds (including any mix thereof) are not permitted to reside at or visit the Premises or the Property ("Restricted Breeds"): Akbash, Akita/Akita Inu, American Bulldog, Anatolian Shepherd, Bandog/Bandogge, Beauceron (a.k.a. Berger de Beauce, Bas rouge, Beauce Shepherd, Red Stocking dog), Belgian Shepherd (a.k.a. Belgian Sheep Dog, Malinois, Tervuren, Laekenois, Groenendael), Black Russian Terrier (a.k.a. Russian Bear Schnauzer, Black Terrier, Tchiorny Terrier, Chornyi), Boerboel, Briard, Bully Kutta/ Bully Cutha/Bohli Kutta (a.k.a. PBK,), Cane Corso (a.k.a. Italian Mastiff), Chinese Shar Pei (a.k.a Chinese Fighting Dog), Doberman Pinscher, Dogo Argentino, Dogue De Bordeaux (a.k.a. Bordeaux Bulldog, French Mastiff), Fila Brasileiro, Great Dane, Gull Dong (Gull Terr, Bully Gull Terr), Jindo/Chindo, Kangal, Kuchi/Koochee, Kuvasz, Mastiffs, Pit Bull (including Pit Bull Terriers, American Pit Bull Terrier, any Staffordshire Terrier or Bull Terrier), Perro de Presa Mallorquin, Presa Canario (a.k.a. Canary Dogs), Rottweiler, Tosa Inu (a.k.a. Tosa Ken, Japanese Tosa, Japanese Mastiff), Wolf, Wolf-Dog Hybrids (including all wolf-like breeds). The list of Restricted Breeds is subject to change by Management at any time without notice. Management has sole discretion to determine whether an animal is a restricted breed and may base its decision on documentation, visual inspection, examination by a veterinarian, and other measures. Residents who are found to have a restricted breed occupying their apartment (or a pet in a no-pet building) are in violation of their Lease, are required to remove the pet. Note: the list of Restricted Breeds applies to pets only, and not to support or assistance animals that have been approved as a reasonable accommodation.

**STORAGE**

In the event Management provides storage lockers or units ("Lockers") on the Property to accommodate Residents in the storage of personal property, the use of said storage lockers shall be subject to the terms and conditions that Management prescribes. Management makes no representations or warranties regarding the security of the storage lockers. Upon termination of the lease or rental of a Locker, Resident agrees to empty the Locker of all personal property. Resident agrees not to store items that are dangerous or detrimental to the life or health of residents or safety of the property including flammable items such as straw, cotton, paper stock, rags, or perishable items. Resident agrees not to make any improvements or alterations to the Locker without prior written consent. All items in the Locker will be deemed abandoned if not removed within ten days after (i) termination of Resident's rental of the Locker, (ii) Resident's failure to pay storage or rental fees for the Locker, or (iii) termination of Resident's occupancy of the apartment, whichever comes first. Upon such abandonment, as allowed by law, Owner may remove all personal property from the Locker and sell or dispose of in its discretion. Management shall not be liable for any damages to Resident's property kept in the storage lockers, unless such damages are the result of Management's negligence.

**COVID-19 EPIDEMIC AND OTHER EMERGENCIES**

Management's priority during the COVID-19 epidemic (or any other public health, natural disaster, or other emergency) is to promote the health and safety of the community. To that end, Resident ("you") acknowledge and agree that the community may be subject to certain restrictions and policy changes by Management ("we") during the time of a health or other crisis, including the following:

**Emergency Restrictions:** We reserve the right to implement emergency policies and procedures. These policies and procedures may be adopted based on governmental orders or restrictions, guidance from public health or other authorities, or in Management's discretion. These restrictions may include, but are not limited to, the following: closure of common areas, access restrictions, reduced staffing or services by Management, limitations on visitors or guests, required social distancing or use of protective equipment, and enhanced cleaning or safety protocols.

**Resident Notification**. We will make reasonable efforts to keep the community informed of material information during a public health crisis or emergency. However, we must take care not to provide inaccurate information and to respect the privacy of other persons at all times, and therefore may be limited in what information we can provide. During an emergency, you should seek up-to-date guidance and information from governmental and public health authorities.

**Resident's Compliance.** To ensure the safety of all in the community during a public health or other emergency, Residents and Management must work together in a cooperative and respectful manner. You agree to follow and comply with any directive or restriction from us and/or governmental authorities. You understand that the failure to follow such restrictions (for example, by failing to follow social distancing protocols, failing to wear proper protective equipment, or improperly accessing to common area facilities) may risk the health and safety of others in the community. A failure to comply with directives or restrictions is a breach of the lease and may lead to lease termination. We reserve the right to deny access for persons refusing to abide by our requirements.

**Assumption of the Risk.** You assume the risk of your use of common areas and amenity spaces, including the gym and pool areas, including the risk that COVID-19 may be transmitted among members of the community despite the precautions in place. Our decision to reopen common areas, the gym, the pool, or other amenities/services at the property is not a representation of the safety of using these areas.

**SATELLITE DISHES**
Prior to the installation of any  or similar equipment, Resident shall be required to provide Landlord with a certification (by a structural engineer or other certified professional) that the structural system of the roof is adequate to support the installation of the Satellite Dish, and that installation of the Satellite Dish will not cause damage to the construction materials or structure of the building. No Satellite Dish or similar may be installed without such a certification and approval by Management.

**SOLICITORS AND SALESPERSONS**
Residents should not solicit other Residents for commercial purposes without the approval of Management. Anyone having the approval of the Management to sell or solicit within the Property (such as Girl Scouts, Little League, etc.) must obtain a letter of authorization from Management.

**PARKING AND VEHICLE USE**
All parking on the property is subject to the rules and regulations of Management and/or any independent company hired to manage the parking. Resident agrees to the following rules and restrictions:

- To the extent permitted by local law, Owner reserves the right to tow vehicles at resident's expense, when parked as follows: in a reserved or handicapped parking space without required tags; in a fire zone; blocking access to other vehicles or to buildings or amenities; taking up more than one space; without valid parking permits; invalid registration; in abandoned or wrecked condition; or for other lawful reasons.
- Parking spaces may not be used for any purpose other than parking a vehicle.
- No one may use the driveway space in front of their parking spot or individual parking garage for additional parking or storage.
- Parking Permits must be displayed at all times. A lost or stolen permit should be reported immediately.
- Management reserves the right, in its sole discretion, not to issue Visitor Parking Permits to visitors who have previously violated Community Policies and Procedures and/or the community parking rules.
- Some properties have designated parking areas or other restrictions for motorcycles, commercial vehicles, recreational vehicles, or other vehicles. Check with Management for these guidelines.
- Resident agrees that Owner is not liable for damages related to the towing of any vehicle nor for any consequential damages which may be incurred as a result of said towing, unless such damages are the result of Management's negligence.
- Unless there is a designated car wash area, washing of vehicles in the community is not permitted. Residents shall not perform any repairs or maintenance such as changing oil or tuning engines on their vehicles in the garage or parking lots surrounding the community.

If the property has a garage entrance door or parking gate, Resident agrees to comply with the following rules when using the garage or parking area:

- Always approach exit and entry gates with caution and at a slow rate of speed.
- Never stop your car where the gate can hurt your vehicle as the gate opens and closes.
- Never follow an open vehicle into an open gate. Always use your card to gain entry.
- Never force the gate open with your car.
- Never get out of your vehicle while the gates are opening or closing.
- If you are using the gates with a boat or trailer, please contact Management for assistance.
- Do not operate the gate if there are small children nearby.
- If you lose your card, please contact Management immediately.
- Do not give your card or code to anyone.
- Do not tamper with the gate or allow occupants or guests to do so.

Resident releases Management and Owner from any liability or claim arising from the use of parking facilities (including any damage to a vehicle or loss of personal property), except for claims or liability arising from Management or Owner's negligence.

**PRIVACY/DISCLOSURE OF RESIDENT INFORMATION**
Owner and/or Manager collects nonpublic, personally identifiable financial information on Residents. During the application process, Residents disclose a certain amount of personal financial information such as income, prior rental history, assets and liabilities. Owner may obtain a personal credit report that contains personal financial information from one of the credit reporting agencies. In addition, Owner undertakes criminal background checks of residents and occupants prior to granting authorization to reside in the Apartment. Owner keeps personal information which has been collected about Residents in its files. Owner also shares such information with affiliates or nonaffiliated third parties as permitted by law to assist in collection efforts in the event of a default under any lease. Owner may be asked by other landlords to describe a Resident's rental history, and may share such information such as a Resident's rental payment history.

Owner maintains appropriate security standards and procedures to prevent unauthorized access to Resident information. Employee access to personal financial information is limited to those with a business reason for knowing such information. Employees are educated about the importance of maintaining confidentiality of personal information. Owner takes appropriate measures to enforce employee privacy responsibilities.

Resident agrees that Owner may collect personal information, including but not limited to names, addresses, phone numbers, email addresses and credit card information ("Personal Information") about Resident, family members, or occupants ("Information Providers") for the purpose of administering certain services, transactions, amenities, or information ("Owner Services"). Resident consents to the exchange of Personal Information between Owner and the various vendors and service providers that may from time to time be selected or utilized by Owner to provide or assist with Owner Services (collectively, "Service Providers") and other related purposes or as permitted or required by law. Resident further consents to the Service Providers' collection and use of Personal Information for the purposes described herein.

| **Resident's Parking, Storage, and Access Items** | |
|---|---|
| **Apartment and Access Keys/Passes**<br>Apartment Key(s): ______<br>Replacement Cost: $______ per key<br>Mailbox Key(s): ______<br>Mailbox No.: ______<br>Replacement Cost: $______ per key<br>Access Entry Key(s) or Fobs: ______<br>Replacement Cost: $______ per key | **Parking and Garage Gate Access**<br>No. of Parking Spaces: ______<br>Cost per parking space/month: $______<br>Cost per 2nd parking space/month: $______<br>Assigned Space Numbers: ______<br>Parking Permits/Stickers: ______<br>Replacement Cost: $______ per permit<br>Access Cards/Controls Received: ______<br>Replacement Cost: $______ per card/control |
| **Storage Locker**<br>Assigned Locker No. ______<br>Cost of Locker Per Month: $______<br>Locker Key(s) Given: ______<br>Replacement Cost: $______ | **Vehicle Information**<br>**Vehicle 1:**<br>Make: ______<br>Model: ______<br>Color: ______<br>License Plate No.: ______<br>Permit or Space No. Assigned: ______<br>**Vehicle 2:**<br>Make: ______<br>Model: ______<br>Color: ______<br>License Plate No.: ______<br>Permit or Space No. Assigned: ______ |

**I have read, understand, and agree to this COMMUNITY POLICIES AND PROCEDURES ADDENDUM:**

**RESIDENT(S):**

Lucas Hettinger
Signature

Signature

Signature

Signature

Signature

Signature

07/22/2021
Date

**OWNER**
By: BOZZUTO MANAGEMENT COMPANY

Nicole Dunn
Signature

08/10/2021
Date

BOZZUTO

# District of Columbia Rental Concession Addendum

This Addendum to the Lease dated **07/23/2021** by and between **Crescent Capitol View, LLC** ("Owner"), by its agent Bozzuto Management Company ("Agent") and **Laura Catherine Hettinger** ("Resident") shall be incorporated in and made a part of the aforesaid Lease and shall be renewed and shall expire under the same terms and conditions of the Lease. In the event of any contradiction between the terms of this Addendum and any other Addendum or the Lease, this Addendum shall control.

Resident is leasing an apartment at the Property subject to the terms of the Lease. Resident understands that the monthly market rent for the Apartment is $**2276.00** ("Market Rent"). In consideration for Resident's agreement to reside in the apartment under said Lease terms, Owner is offering Resident a concession under the following terms ("Concession"):

**One Month Free credited towards 10/1/2021-10/31/2021**

Resident understands and agrees that the Concession is only valid for the current Lease term and Landlord is not obligated to offer future concessions upon renewal. Resident further understands and agrees that the Concession will be rescinded and/or subject to reimbursement under the following terms:

- In any month in which rent is paid late, ie., after the fifth (5th) day of the month, any applicable Concession shall be rescinded and Resident shall be required to pay the Market Rent.

- Resident shall be required to reimburse Owner for the full value of the Concession, including any waived amenity charges, in the event Resident transfers apartments, terminates the Lease early, defaults under the Lease or is evicted.

OWNER:

By: BOZZUTO MANAGEMENT COMPANY
By: ______________________
Name *Madeline Dunn*
Date: 08/10/2021

RESIDENT(S):

Name: *Laura Hettinger*
Date: 07/22/2021

Name: ______________________
Date: ______________________



Blue Moon eSignature Services Document ID: 275566931

BOZZUTO
Bozzuto Brings You Home.™

**ADDITIONAL FEE FOR COMMON AREAS AND AMENITIES – ADDENDUM TO LEASE – WASHINGTON, DC**

This Addendum to the Lease dated 07/23/2021 by and between Crescent Capitol View, LLC ("Owner"), by its agent Bozzuto Management Company ("Agent") and Laura Catherine Hettinger ("Resident") shall be incorporated in and made a part of the aforesaid Lease and shall be renewed and shall expire under the same terms and conditions of the Lease.

As part of Resident's contractual undertaking in renting an apartment from Owner, it is required that the Resident make a lump sum payment of $ 600.00 ("the Additional Fee") for the right to use, in common with other residents, the common areas and amenities of the community. At its sole option, Owner may charge the Additional Fee for each renewal Lease and said Additional Fee payment shall be made as part of the first monthly rent payment upon each renewal.

Resident hereby expressly certifies that is it understood and agreed between Owner and Resident that:

1. The Additional Fee, as provided above, is not part of the Resident's security deposit but rather is an additional payment negotiated as part of the Lease transaction.

2. The Additional Fee is not refundable (either in whole or in part) under any circumstances including Resident's non-use of any or all of the amenities or the unavailability of the amenities. Owner cannot guarantee that all facilities, amenities, equipment and services are or will be available at all times. Availability of amenities and common areas may be curtailed or limited by construction, renovation, servicing, repairs or other reasons and Owner shall not be in default under the Lease when this occurs. Residents are not entitled to abatement of Rent or Additional Fee or damages when facilities, services, amenities and equipment are not available.

3. Resident's signature herein confirms his/her understanding of the nature of the Additional Fee and his/her agreement to pay such Additional Fee contemporaneously with the first monthly rental payment.

OWNER

By: BOZZUTO MANAGEMENT COMPANY

*Madeline Dunn*
Name: Crescent Capitol View, LLC
Date: 08/10/2021

RESIDENT(S)

*Laura Hettinger*
Name: Laura Catherine Hettinger
Date: 07/22/2021

Name: ____________
Date: ____________



Blue Moon eSignature Services Document ID: 275566931

BOZZUTO

**ADDENDUM OF SPECIAL PROVISIONS TO**
**DISTRICT OF COLUMBIA LEASE**

This Addendum to the Lease dated 07/23/2021 by and between Crescent Capitol View, LLC ("Owner"), by its agent Bozzuto Management Company ("Agent") and Laura Catherine Hettinger ("Resident") shall be incorporated in and made a part of the aforesaid Lease and shall be renewed and shall expire under the same terms and conditions of the Lease. In the event of any contradiction between the terms of this Addendum and any other Addendum or the Lease, this Addendum shall control.

**Resident's Waiver for Use of Common Areas and Amenity Spaces**
Resident ("You") expressly agrees to assume all risks of every type, including but not limited to risks of personal injury or property damages, of whatever nature and severity, including incidents leading to or causing death, that are casually related to your use of the amenities and common areas (including the gym, pool, clubroom, roof areas, lobby, elevators, and entryways) at the Community, unless caused by the negligent acts or omissions of Owner or Manager. You agree to hold Owner and Manager harmless and to release and to waive any and all claims, allegations, actions, damages, losses, liabilities of every type, that you may have against Owner and Manager and that are in any way related to or that arise from such use unless caused by the negligent acts or omissions of Owner and Manager. This provision shall be enforceable to the fullest extent of the law.

**Notices**
All notices and demands authorized and required under the Lease (including all Addendums) may be served upon Resident in person, by electronic mail or by U.S. Mail, addressed to Resident. All notices or demands authorized or required to be given to Owner may be served upon Agent in person, by electronic mail or by U.S. Mail at the property address provided in paragraph 1 of the Lease.

**Multiple Residents or Occupants**
Notwithstanding Lease Paragraph 21's statement that "Notices and requests from any resident or occupant (including notices of lease termination, repair requests and entry permissions) constitute notice from all residents," notices of Lease termination and notices to vacate are only valid if signed by all residents who have signed the Lease. Owner may in its discretion, accept a notice from one resident or other authorized party, if Owner reasonably believes that resident or party is authorized to act on behalf of all residents and/or occupants.

**Privacy -- Owner's Disclosure of Resident Information**
Owner collects the following nonpublic, personally identifiable financial information on Residents. During the application process, Residents disclose a certain amount of personal financial information such as income, prior rental history, assets and liabilities. To qualify to lease an apartment, Residents must allow Owner to obtain a personal credit report that contains personal financial information from one of the credit reporting agencies. In addition, Owner undertakes criminal background checks of residents and occupants prior to granting authorization to reside in the Apartment.

Owner keeps personal information which has been collected about Residents in its files. Owner also shares such information with affiliates or nonaffiliated third parties as permitted by law to assist in collection efforts in the event of a default under any lease. Owner is frequently asked by other landlords to describe a Resident's rental history. Typically, as is the practice in the industry, Owner shares such information, which includes a Resident's rental payment history, with landlords who make such requests.

Owner maintains appropriate security standards and procedures to prevent unauthorized access to Resident information in whatever medium it is stored. Employee access to personal financial information is limited to those with a business reason for knowing such information. Employees are educated about the importance of maintaining confidentiality of personal financial information. Owner takes appropriate measures to enforce employee privacy responsibilities.



Blue Moon eSignature Services Document ID: 275566931

**Security Deposits**
Owner may pay any refund to any Resident identified in Paragraph 1 of the Lease without obligation to any other named Resident. Upon the sale or conveyance of the Property, Owner may transfer or assign any deposits to the new owner and all of Owner's liability for such deposits shall terminate.

**Exposure to Airborne Allergens, including Smoke, Chemicals, Perfumes and Animal Allergens**
Residents, occupants and visitors to the Property may be exposed to airborne allergens including, but not limited to, smoke, chemicals, perfumes and pet dander. Assistive animals are allowed to live at this Property, even if there is a "no pets" policy. Scented chemicals, including paint, cleaners, air fresheners, and insecticides, are used by Owner in the Property's maintenance and repair processes and they are also used by Residents.

Owner does not guarantee that Residents' apartments or the common and public areas will be free from smoke, pet dander, chemicals, perfumes or other airborne allergens. By entering into this Lease, Resident acknowledges that he/she and occupants and guests may be exposed to smoke, pet dander, chemicals, perfumes and other airborne allergens and that said exposure does not constitute Owner's default under or breach of the Lease.

Notwithstanding the foregoing, Owner reserves the right to restrict, and in some cases prohibit, the keeping of animals, and the use of chemicals and perfumes by residents, occupants and guests inside apartments and in common and public areas in the event such activities interfere with other residents' quiet enjoyment of their apartment and the Property.

**Mold**
In addition to the requirements of the Mold Information and Prevention Addendum, Resident agrees to take the following steps to prevent mold: Resident shall provide Owner with immediate written notification of any windows or fans that are broken or not working. Resident shall use all reasonable care to close all windows to prevent rain or outdoor water from penetrating the apartment. Resident shall endeavor to be aware of any water leaks or damage and humidity levels in the apartment. Resident shall conduct a visual inspection for the presence of mold growth inside the apartment at least once per month. This inspection shall include window frames, carpets, ceiling tiles, plants, personal property, and any currently or formerly damp material containing cellulose such as wallpaper, books, papers and newspapers. Resident agrees to take steps to control the humidity in the apartment and to immediately report any water leaks or mold growth. Failure to report water leaks or mold growth may be grounds for Lease termination.

Resident agrees not to bring any personal property into the apartment that may contain mold, especially "soft possessions" such as sofas, mattresses and pillows. Resident shall clean and dry any damp or wet building materials or personal property within 24 hours. Resident agrees to indemnify and hold Owner harmless against any claims, losses, damages and expenses of whatsoever kind, including attorney's fees, that Owner may incur as a result of any claims asserted against Owner that arise out of any harmful substances brought or allowed to be brought into the Property, or caused to infest the Property as a result of the negligent or willful action of Resident, occupants, and guests.

**Owner's Security Policy**
If security systems, security devices, or walk-through/drive-through patrols are utilized at this Property, no representation is made that they will prevent injury, theft or vandalism. Those persons walking or driving through the complex on behalf of Owner are independent contractors and have no greater authority under the law to restrain or arrest criminals or to prevent crime than the ordinary citizen. Resident understands and agrees that Owner has no responsibility for the acts or omissions of any Owner or employee of any such independent contractor. Owner reserves the right to reduce, modify or eliminate any such independent contractors, security systems, security devices, or services (other than those required by law, if any) at any time, without notice to Resident; and such action shall not be a breach of any obligation or warranty on the part of Owner. "Neighborhood Crime Watch" signs, if any, do not imply safety or security. Resident has read, understood, and agrees to abide by the terms of the above security policy and the security terms of the Lease. Owner has not represented that the Property has been or will be free from crime or that the Property has had little or no history of crime. Resident further acknowledges that Owner is not obligated under any circumstances to respond to any signal from an intrusion alarm system.

**Cooperation with governmental authorities**
Owner cooperates with governmental authorities, including law enforcement and census taker requests to provide information about current and former Residents. Owner also assists law enforcement in entering the Premises with a warrant or without a warrant if law enforcement asserts that it has legal grounds for a warrantless entry. Resident hereby waives any legal action against Owner for providing information to governmental authorities, including law enforcement and census takers, and for allowing law enforcement to enter the Premises, in the event the grounds for the warrant or for the warrantless entry are not upheld by the adjudicating court of law.

**Resident Estoppel**
If Resident is executing this Lease as a **renewal to a current Lease**, Resident acknowledges and agrees that all of the obligations of Owner under the current Lease have been duly performed and completed. Resident has no claims against Owner and Owner is not in default under the current Lease. The apartment, including all improvements and common areas, satisfy the requirements of the current Lease and have been accepted and approved by Resident.

I have read, understand and agree to this **ADDENDUM OF SPECIAL PROVISIONS** to the Lease.

OWNER: Crescent Capitol View, LLC

By: BOZZUTO MANAGEMENT COMPANY

By: *Madeline Dunn*
Name:
Date: 08/10/2021

**RESIDENT(S)**

*Laura Hettinger*
Name: Laura Catherine Hettinger
Date: 07/22/2021

Name:
Date:

Name:
Date:

Name:
Date:

Name:
Date:

Name:
Date:

BOZZUTO

**WELCOME HOME COMMITMENT-30 DAY SATISFACTION**

This Addendum to the Lease between **Crescent Capitol View, LLC** ____________________ ("Owner"), by its agent Bozzuto Management Company ("Agent" or "Bozzuto") and **Laura Catherine Hettinger** ____________________ ("Resident") shall be incorporated in and made a part of the aforesaid Lease. In the event of any contradiction between the terms of this Addendum and any other Addendum or the Lease, this Addendum shall control.

Owner has agreed to offer a 30-Day Satisfaction Guarantee to residents who enter into a Lease. If, within the 30-day period immediately following the start of the Lease term, Resident is not satisfied with the Unit, Resident may terminate the Lease without incurring any early termination fees. In order to terminate the Lease pursuant to this Addendum, Resident must notify the Property Manager in writing of the move-out date and must vacate the Unit within 30 days from the start of the Lease term. This option to terminate the Lease will expire 30 days after the start of the Lease term.

If Resident exercises this termination option, Resident will be responsible for the payment of rent and utilities from the start of the Lease term through the provided move-out date. Resident also will be responsible for any moving expenses and damage caused to the Unit in excess of ordinary wear and tear, as well as any charges owed under the Lease, including parking. Additionally, Resident will be responsible for paying back the concession provided pursuant to the Concession Addendum. The Property will refund to Resident any unused rent and the Security Deposit, less any damages or other amounts owed under the Lease, consistent with the Lease and applicable local law. To the extent permitted by local law, the Owner will retain all fees paid on move-in (including application, amenity, or pet fees). If Resident chooses to transfer to another apartment at the property, Resident would be required to enter into a new Lease with Owner for that apartment, which may include additional terms or increased rent.

By signing below, the parties agree to abide by the terms of this Addendum.

OWNER:

By: BOZZUTO MANAGEMENT COMPANY

By: *Madeline Dunn*
Date: 08/10/2021

RESIDENT(S):

*Laura Hettinger*
Date: 07/22/2021

______________________
Date: ______________

______________________
Date: ______________

______________________
Date: ______________

______________________
Date: ______________

______________________
Date: ______________

EQUAL HOUSING OPPORTUNITY



**Bozzuto 002810**

Blue Moon eSignature Services Document ID: 275566931

# E-SIGNATURE CERTIFICATE

*This certificate details the actions recorded during the signing of this Document.*

## DOCUMENT INFORMATION

| | |
|---|---|
| Status | Signed |
| Document ID | [redacted] |
| Submitted | 08/10/21 |
| Total Pages | 54 |
| Forms Included | Apartment Lease Form, All-In-One Utility Addendum, Mold Information and Prevention Addendum, Bed Bug Addendum, Lease Contract Buy-Out Agreement, Short-Term Subletting or Rental Prohibited, Addendum Regarding Recreational and Medical Marijuana Use, Crime/Drug Free Housing Addendum, Mixed Use Addendum, Photo, Video, and Statement Release Addendum, D.C. Housing Code (101-106 & 300-399), D.C. Housing Regulations Signature Page, No-Smoking Addendum, Satellite Dish or Antenna Addendum, Renter's or Liability Insurance Addendum, Intrusion Alarm Addendum, Sustainable Living Addendum, All States - Common Area Addendum, All States - Community Policies 2, DC - Concession Addendum, DC Common Area Fee, District of Columbia - Special Provisions 2, Welcome Home Commitment-30 Day Satisfaction |

## PARTIES

### Laura Hettinger

signer key: 614b7c102c55a048005a8b448f0ba4e1
IP address: 73.213.111.165
signing method: Blue Moon eSignature Services
authentication method: eSignature by email [redacted]
browser: Mozilla/5.0 (iPhone; CPU iPhone OS 14_6 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/14.1.1 Mobile/15E148 Safari/604.1

*Laura Hettinger*

### Madeline Dunn

signer key: c9e9efa49f821bca799d0a731966099e
IP address: 10.100.20.209
signing method: Blue Moon eSignature Services
authentication method: eSignature by email novel@bozzuto.com
browser: PHP 7.3.29/SOAP

*Madeline Dunn*

(Property Manager)

## DOCUMENT AUDIT

| | | |
|---|---|---|
| 1 | 07/20/21 08:18:39 AM CDT | Laura Hettinger accepted Consumer Disclosure |
| 2 | 07/22/21 01:19:05 PM CDT | Laura Hettinger signed Apartment Lease Form |
| 3 | 07/22/21 01:20:15 PM CDT | Laura Hettinger signed All-In-One Utility Addendum |
| 4 | 07/22/21 01:20:21 PM CDT | Laura Hettinger dated All-In-One Utility Addendum |
| 5 | 07/22/21 01:20:31 PM CDT | Laura Hettinger signed Mold Information and Prevention Addendum |
| 6 | 07/22/21 01:20:40 PM CDT | Laura Hettinger signed Bed Bug Addendum |
| 7 | 07/22/21 01:21:04 PM CDT | Laura Hettinger signed Lease Contract Buy-Out Agreement |
| 8 | 07/22/21 01:21:20 PM CDT | Laura Hettinger signed Short-Term Subletting or Rental Prohibited |
| 9 | 07/22/21 01:21:46 PM CDT | Laura Hettinger dated Addendum Regarding Recreational and Medical Marijuana Use |
| 10 | 07/22/21 01:21:50 PM CDT | Laura Hettinger signed Addendum Regarding Recreational and Medical Marijuana Use |
| 11 | 07/22/21 01:22:07 PM CDT | Laura Hettinger dated Crime/Drug Free Housing Addendum |
| 12 | 07/22/21 01:22:10 PM CDT | Laura Hettinger signed Crime/Drug Free Housing Addendum |

DOCUMENT AUDIT CONTINUED

| | | |
|---|---|---|
| 13 | 07/22/21 01:22:27 PM CDT | Laura Hettinger signed Mixed Use Addendum |
| 14 | 07/22/21 01:22:49 PM CDT | Laura Hettinger signed Photo, Video, and Statement Release Addendum |
| 15 | 07/22/21 01:23:06 PM CDT | Laura Hettinger signed D.C. Housing Code (101-106 & 300-399) |
| 16 | 07/22/21 01:23:12 PM CDT | Laura Hettinger initialed D.C. Housing Regulations Signature Page |
| 17 | 07/22/21 01:23:20 PM CDT | Laura Hettinger signed D.C. Housing Regulations Signature Page |
| 18 | 07/22/21 01:23:28 PM CDT | Laura Hettinger signed No-Smoking Addendum |
| 19 | 07/22/21 01:23:43 PM CDT | Laura Hettinger signed Satellite Dish or Antenna Addendum |
| 20 | 07/22/21 01:24:11 PM CDT | Laura Hettinger signed Renter's or Liability Insurance Addendum |
| 21 | 07/22/21 01:24:25 PM CDT | Laura Hettinger signed Intrusion Alarm Addendum |
| 22 | 07/22/21 01:24:36 PM CDT | Laura Hettinger signed Sustainable Living Addendum |
| 23 | 07/22/21 01:25:17 PM CDT | Laura Hettinger signed All States - Common Area Addendum |
| 24 | 07/22/21 01:25:24 PM CDT | Laura Hettinger dated All States - Common Area Addendum |
| 25 | 07/22/21 01:25:40 PM CDT | Laura Hettinger signed All States - Community Policies 2 |
| 26 | 07/22/21 01:25:43 PM CDT | Laura Hettinger dated All States - Community Policies 2 |
| 27 | 07/22/21 01:25:52 PM CDT | Laura Hettinger dated DC - Concession Addendum |
| 28 | 07/22/21 01:26:03 PM CDT | Laura Hettinger signed DC - Concession Addendum |
| 29 | 07/22/21 01:26:15 PM CDT | Laura Hettinger signed DC Common Area Fee |
| 30 | 07/22/21 01:26:25 PM CDT | Laura Hettinger dated DC Common Area Fee |
| 31 | 07/22/21 01:26:41 PM CDT | Laura Hettinger signed District of Columbia - Special Provisions 2 |
| 32 | 07/22/21 01:27:28 PM CDT | Laura Hettinger dated District of Columbia - Special Provisions 2 |
| 33 | 07/22/21 01:27:42 PM CDT | Laura Hettinger signed Welcome Home Commitment-30 Day Satisfaction |
| 34 | 07/22/21 01:27:45 PM CDT | Laura Hettinger dated Welcome Home Commitment-30 Day Satisfaction |
| 35 | 07/22/21 01:28:03 PM CDT | Laura Hettinger submitted signed documents |
| 36 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Apartment Lease Form |
| 37 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed All-In-One Utility Addendum |
| 38 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated All-In-One Utility Addendum |
| 39 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Mold Information and Prevention Addendum |
| 40 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Bed Bug Addendum |
| 41 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated Bed Bug Addendum |
| 42 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Lease Contract Buy-Out Agreement |
| 43 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated Short-Term Subletting or Rental Prohibited |
| 44 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Short-Term Subletting or Rental Prohibited |
| 45 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Addendum Regarding Recreational and Medical Marijuana Use |
| 46 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated Addendum Regarding Recreational and Medical Marijuana Use |
| 47 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Crime/Drug Free Housing Addendum |
| 48 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated Crime/Drug Free Housing Addendum |
| 49 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated Mixed Use Addendum |
| 50 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Mixed Use Addendum |
| 51 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated Photo, Video, and Statement Release Addendum |
| 52 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Photo, Video, and Statement Release Addendum |
| 53 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed D.C. Housing Code (101-106 & 300-399) |
| 54 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed D.C. Housing Regulations Signature Page |
| 55 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed No-Smoking Addendum |
| 56 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Satellite Dish or Antenna Addendum |
| 57 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Renter's or Liability Insurance Addendum |
| 58 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Intrusion Alarm Addendum |
| 59 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Sustainable Living Addendum |

| | | |
|---|---|---|
| 60 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated Sustainable Living Addendum |
| 61 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated All States - Common Area Addendum |
| 62 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed All States - Common Area Addendum |
| 63 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed All States - Community Policies 2 |
| 64 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated All States - Community Policies 2 |
| 65 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed DC - Concession Addendum |
| 66 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated DC - Concession Addendum |
| 67 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed DC Common Area Fee |
| 68 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated DC Common Area Fee |
| 69 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed District of Columbia - Special Provisions 2 |
| 70 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated District of Columbia - Special Provisions 2 |
| 71 | 08/10/21 09:54:56 AM CDT | Madeline Dunn signed Welcome Home Commitment-30 Day Satisfaction |
| 72 | 08/10/21 09:54:56 AM CDT | Madeline Dunn dated Welcome Home Commitment-30 Day Satisfaction |
| 73 | 08/10/21 09:54:56 AM CDT | Madeline Dunn submitted signed documents |

# APARTMENT LEASE CONTRACT

NAA NATIONAL APARTMENT ASSOCIATION We Lead the Way Home

Date of Lease Contract: July 23, 2021
(when the lease contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In—General Information

**1. PARTIES.** This Lease Contract is between the following tenants, as tenants *(list all people signing the Lease Contract)*:

Laura Catherine Hettinger

and Crescent Capitol View, LLC

as owner *(name of owner or agent of owner)*. The terms "you" and "your" refer to all tenants listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). By this Lease Contract, you agree to lease from us, and we agree to lease to you, Apartment No. 1106 (the "Apartment"), at 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code)* for use as a private residence only. Written or electronic notice to or from owner or agent constitutes notice to or from both owner and agent. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached to this Lease Contract.

**READ THIS PARAGRAPH BEFORE SIGNING THIS LEASE: PRIOR TO THE EXECUTION OF THIS LEASE, YOU WERE NOTIFIED THAT THIS APARTMENT *[CHECK ONE]*:**

- ☐ is subject to rent control.
- ☒ is not subject to rent control and you acknowledge that, prior to execution of this Lease Contract by you, we have advised you that, pursuant to Section 205 of the District of Columbia Rental Housing Act of 1985, rent increases for the Apartment are NOT regulated by the Rent Stabilization Program (i.e., rent control program) of that Act, and that the Apartment is exempt from the Rent Stabilization Program.

**2. OCCUPANTS.** The Apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

as permissive occupant(s). No one else may occupy the Apartment. No family member of yours over the age of eighteen (18) years old (except a full-time student) or other person over the age of eighteen (18) years old may be listed as an "occupant," but rather must be qualified as, and be listed above as, a resident/tenant. No guest(s) of yours may stay in the Apartment for more than seven (7) consecutive days during a 30-day period, without our prior written consent.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the 23rd day of July, 2021 (the "Commencement Date"), and ends at midnight the 22nd day of August, 2022.

**4. SECURITY DEPOSIT.** Tenant has paid to Landlord the sum of $ 0.00 **(the "Security Deposit")**, the receipt of which is hereby acknowledged, which sum does not exceed one (1) month's Rent. The Security Deposit shall be held as collateral security and applied on any rent or unpaid utility bill or other charge payable by Tenant that may remain due and owing at any time during or at the expiration of this Lease, any extension thereof or holding over period, or applied to any damages to the Premises in excess of ordinary wear and tear caused by Tenant, Tenant's family, guests, employees, trades people, or pets, or other damages and expenses suffered by Landlord as a result of a breach by Tenant of any covenant or provision of this Lease. Tenant may not utilize the Security Deposit as Rent and Tenant shall not apply the same as the last month's Rent. Landlord shall not withhold the security deposit for the replacement value of apartment items that are damaged due to ordinary wear and tear. Any promise by the Tenant to leave, restore, surrender, or yield the Apartment in good repair does not obligate the Tenant to make substantial repairs, replace obsolete materials, or fix other defects without negligence or fault on the Tenant's part. For the purposes of this Section, the term "ordinary wear and tear" means deterioration that results from the intended use of the Apartment, including breakage or malfunction due to age or deteriorated condition. The term does not include deterioration that results from negligence, carelessness, accident, or abuse of the Apartment, fixtures, equipment, or other tangible personal property by the Tenant, immediate family member, or a guest.

**5. KEYS.** You will be provided 1 apartment key(s), 1 mailbox key(s), 1 FOB(s), and/or 0 other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same. A fee of $ 75.00 will be charged for replacing any lost or damaged keys. A fee of $ 100.00 will be charged for replacing any lost or damaged electronic entry fobs.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay to us $ 2276.00 per month for rent for the Apartment, payable in advance and without demand:

- ☒ at the on-site manager's office, or
- ☒ at our online payment site, or
- ☐ at ______

In addition, prorated rent is due from you to us on execution of this Lease in the amount of $ 660.77 for payment in advance of rent from the date of possession through the Commencement Date.

You must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must pay your rent via cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. If you don't pay all rent on or before the fifth (5th) day of the month, you'll pay a late charge. Your late charge will be *(check one)*: ☐ a flat rate of $ ______ or ☒ 5 % of the full amount of the total monthly rent payment. Regardless of the calculation method chosen above, the total amount of your late charges shall not exceed five percent (5%) of your total monthly rent payment. This charge is not a penalty but the cost to us of auditing your account and, if necessary, sending you a rent deficiency notice. A charge of $ 100.00 will be payable by you to us for each returned check or rejected electronic payment. In the event of non-payment of any rent(s), this Lease Contract shall cease and terminate, and you hereby expressly waive any right to a Notice to Quit for nonpayment of rent pursuant to DC Code §42-3505.01(a) (2001 ed.), codifications thereafter, or under any other D.C. Law or Regulation.

Landlord shall not impose on Tenant a mandatory fee for any service or facility that has not been approved pursuant to section 211 or section 215 of the Rental Housing Act of 1985, if the Apartment is subject to rent control.



© 2020, National Apartment Association, Inc. Blue Moon eSignature Services Document ID: 284942155

7. **RENT INCREASES AND LEASE CONTRACT CHANGES.** **Rent may be increased by us at any time or time(s) permitted by law. You will receive notices of rent increases, in writing, in accordance with District of Columbia law, which requires us to give you written notice of any rent increase at least 15 days before the advance written notice time period as set forth in Paragraph 40 (Move-Out Notice).**

8. **UTILITIES.** Utilities for the Apartment (and related deposits, charges, fees, or services) shall be paid as follows:

(1) By you:
- ☐ Gas
- ☒ Electricity
- ☒ Water/Sewer
- ☒ Cable
- ☒ Phone
- ☒ Internet

(2) By us:
- ☐ Gas
- ☐ Electricity
- ☐ Water/Sewer
- ☐ Cable
- ☐ Phone
- ☐ Internet

You must not allow utilities to be disconnected during your tenancy for any reason, including disconnection for not paying your bills. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all tenants. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting, not candles or open flames. If any utilities are submetered for the apartment, or prorated by an allocation formula for water/sewer, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. Failure to pay any utilities shall be deemed a breach of this Lease Contract.

9. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any tenant, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other tenants, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We ☐ require ☐ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

You shall maintain at all times during the Term of this Lease, at your sole expense, a renter's insurance policy, or its equivalent, issued by a licensed insurance company. Such policy shall provide limits of liability of $__________ personal liability, and $__________ personal property, and you shall provide us with proof of such insurance to our satisfaction.

If no box is checked, renter's insurance is not required.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, may be an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this Lease Contract will be applied to the owner's structural fire insurance on your behalf, and that you are in no way a co-insured or additional insured under any such policy. You are solely responsible for obtaining renter's insurance, or other desired insurance coverage, which may cover you for losses relating to a casualty in the Apartment, including but not limited to: replacement premises, bodily injury, and/or losses for personal possessions–irrespective of whether we require you to obtain any such insurance(s) as a condition of this Lease Contract above.

10. **LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior tenant moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term with our standard locks or latches. You must pay for any such change or rekeying, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

## Special Provisions

11. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

____________________

____________________

____________________

____________________

____________________

See any additional special provisions.

12. **DAMAGES AND REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the Apartment and apartment community due to a violation of the Lease Contract or community rules, improper use, negligence, or intentional conduct by you or your fellow Tenants, occupants, guests or visitors. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for and except for normal wear and tear, you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **DELAY OF OCCUPANCY.** If initial occupancy of the Apartment by you is or will be delayed for construction, repairs, cleaning, or a previous tenant's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate this Lease Contract as set forth below. Termination notice from you to us must be in writing. After termination, you are entitled only to refund of deposit(s) and any pre-paid rent. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that do not prevent you from occupying the apartment.

If there is a delay, and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later. Otherwise:

(1) If we give you written notice of a delay, after the initial term of this Lease Contract is scheduled to begin on the Commencement Date (as set forth in Paragraph 3 - Lease Term), and the notice states that occupancy has been delayed because of construction, or because of a previous tenant's holding over, and that the apartment will be ready on a specific date-you may terminate the Lease Contract within three (3 calendar days after you have received the notice, but not later.

(2) If we give you written notice of a delay, before the initial term of this Lease Contract is scheduled to begin on the Commencement Date (as set forth in Paragraph 3 - Lease Term), and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within seven (7) calendar days after you received the notice, but not later. In the event of such delay, the Commencement Date of the term of this Lease Contract will be deemed, by agreement hereunder and for all purposes, to be the date on which occupancy of the Apartment is available to you, and this Lease Contract nonetheless shall terminate on the date previously set forth in Paragraph 3 (Lease Term) above. This new Commencement Date may not be moved to an earlier date unless we and you agree to the same, in writing.

14. **AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional



© 2020, National Apartment Association, Inc. Blue Moon eSignature Services Document ID: 284942155

Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

## While You're Living in the Apartment

**15. COMMUNITY POLICIES OR RULES.** You, any occupants, and your guests and visitors shall comply with any and all written apartment rules and community policies, including instructions for care of our property, which may be attached to this Lease Contract as a written addendum. We reserve the right to change any written apartment rules and community policies at any time, and such amendments shall become effective and binding hereunder, as of the date the owner has sent a copy of them to you via first class mail. You, any occupants, and your guests and visitors shall comply with any amended apartment rules and community policies at all times after mailing, as set forth above. Any violation of any written apartment rules and community policies (or amendments thereof or thereto) shall be a violation of this Lease Contract and such apartment rules and community policies are incorporated herein, by reference.

**16. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean by you. Trash must be disposed of by you at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used by you only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas (if any of the foregoing exist in the apartment community) must be used by you with care in accordance with apartment rules and posted signs. Your access to amenities, such as swimming pools, exercise or meeting rooms, saunas, spas, tanning beds, storerooms, laundry rooms, or the like is not as a matter of right and may be terminated by us, should you fail to comply with applicable rules and regulations governing the same, or in the event that there is loud, boisterous, objectionable, or damaging behavior/occurrence(s) by you, your occupants, your guests or visitors, in or to such amenities. Glass containers are prohibited in or near pools and all common areas. You, your occupants, guests or visitors may not anywhere in the apartment community: use candles or use kerosene lamps; cook on balconies or anywhere outside of the Apartment; or solicit business or contributions. Conducting any kind of business (including child care services) in your Apartment or in the apartment community is prohibited-except that any lawful and properly licensed business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your Apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas.

We may exclude from the apartment community guests, visitors or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules and community policies, or disturbing other tenants, neighbors, visitors, or owner representatives. If any on-site management personnel or security personnel is provided by us to the apartment community, it is for the benefit us only, and is not a part of nor an amenity appurtenant to your tenancy interest hereunder. We're not responsible for obtaining criminal-history checks on any tenants, occupants, guests, visitors, or contractors in the apartment community. If you or any occupant, visitor or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**17. PROHIBITED CONDUCT.** You and your occupants, guests or visitors may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; possessing any firearm whether or not in compliance with all laws and regulations; discharging a firearm in the Apartment or apartment community; displaying or possessing a gun, knife, or other weapon in the Apartment or common area; storing anything in closets having gas appliances; tampering with utilities or telecommunications; or bringing hazardous materials into the apartment community.

**18. PARKING.** Parking *[check one]* ☐ is ☒ is not provided to you under this Lease Contract. If parking is checked as provided, we may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. We may charge a fee for any such parking, under a month-to-month commercial license separate from this Lease Contract, and may terminate your license to park upon providing you with thirty (30) days' written notice. Your obligations under this Lease Contract will not be amended or modified in any way in the event we terminate parking. Any termination of a parking license may be with, or without, cause and at our sole discretion. Any parking provided hereunder shall be deemed a commercial tenancy, not appurtenant to, nor a part of your residential tenancy under this Lease Contract. Motorcycles or motorized bikes shall not be parked inside an apartment unit or on sidewalks, under stairwells, or in handicapped parking areas. We may have unauthorized or illegally parked vehicles towed. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a tenant or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other tenant(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a tenant or occupant and is parked in a visitor or retail parking space.

**19. NO RELEASE OF TENANT/HEIRS & ASSIGNS.** Unless you're otherwise entitled to terminate your tenancy as a matter of law, or by an express provision herein, you won't be released from this Lease Contract for any reason-including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of Co-Tenants, loss of employment, bad health, or death. This Lease Contract inures only to the benefit of the named Tenants in Section 1 of this Lease Contract. In the event that the Tenant(s) listed herein should die at any time during the tenancy, there is no right of survivorship, inheritance, or assignment of this Lease Contract or the Apartment. In the event that the named Tenant(s) dies, all occupants must immediately vacate the Apartment. The tenant(s) hereunder hereby direct their personal representative and estate to promptly pay all unpaid rents or other financial obligations due hereunder to us, and to vacate and surrender the Apartment to the us within thirty (30) days after the Tenant(s) date of death, or in such time as is provided by a Court of competent jurisdiction in a probate or similar proceeding.

**20. MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**21. TENANT DUE CARE AND PROPERTY LOSS.** You and all occupants, guests and visitors must exercise due care for you own and others' safety, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and access control devices. You acknowledge and agree that living in an urban environment, such as Washington, D.C., has risks and dangers that are beyond our control. We cannot be, and are not responsible, legally nor otherwise to protect you from these risks and dangers, unless otherwise compelled to do so under law, and you agree to assume all such risks and dangers as part of your tenancy.



© 2020, National Apartment Association, Inc. Blue Moon eSignature Services Document ID: 284942155

**Smoke Detectors.** We will furnish smoke detectors to you as part of your Apartment rental, and will test them for working order. You must immediately report smoke detector malfunctions to us in writing. Smoke detectors shall not be disabled by you, your occupants, guests or visitors. If you damage or disable the smoke detector or remove power supply without replacing it, you may be liable to us for the costs of any fine incurred by us via a Notice of Infraction issued by the District of Columbia government due to such damage or disabling of the smoke detector, plus our actual damages. If you disable or damage the smoke detector, or fail to report known smoke detector malfunctions to us, you will likewise be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any tenant, occupant, guest or visitor for bodily injury or death, or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless due to our negligence. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services.

In the event the Apartment, or any part thereof, is taken by condemnation by any government agency or authority, your tenancy will be terminated at our option. You hereby specifically assign to us any portion of the award payable as damages for the taking of the property, and you waive any right to participate or make any claim in such condemnation proceedings.

**Crime or Emergency.** You agree to dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You agree to contact our representative. Unless otherwise provided by law, we're not liable to you or any occupants, visitors or guests for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We are not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute or regulation. We do not provide any security measures or devices. If we provide any access control devices or security measures upon the property, they are not an obligation of us to prevent crime or to reduce the risk of crime on the property. You agree that no access control devices or security measures can eliminate all crime and that you will not rely upon any provided access control devices or security measures as a warranty or guarantee of any kind. We disclaim any express or implied warranties of security, crime prevention or access control. You won't treat any of our security measures as an express or implied warranty of security, nor as a guarantee against crime nor of reduced risk of crime. We're not responsible for obtaining criminal-history checks on any tenants, occupants, guests, visitors or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**22. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the Apartment, fixtures, and furniture as is, except for conditions required by law to be fixed by us. You will be given an Inventory and Condition form on or before move-in. You must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, sanitary, and good working condition.

You must use customary diligence in maintaining the Apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter the Apartment or our property. No holes or stickers are allowed inside or outside the Apartment. But we will permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our apartment community rules and policies state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless we have consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the Apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the Apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**23. REQUESTS BY YOU.** IF YOU NEED TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request does not waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the Apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are normally not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We will act with reasonable efforts to make repairs and reconnections, taking into consideration when casualty insurance proceeds are received. Unless otherwise required by law, rent will not abate in whole or in part.

**24. ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. You agree that an animal deposit is not considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any occupant, guest or visitor violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the Apartment at any time during your term of occupancy (with or without our consent), we will charge you for and you agree to pay for defleaing, deodorizing, and shampooing the Apartment. Initial and daily animal-violation charges are payment of damages for our time, inconvenience, and overhead in enforcing animal restrictions and rules. We may remove an unauthorized animal by following the procedures of paragraph 26 (Multiple Tenants or Occupants). We are not liable for loss, harm, sickness, or death of the animal unless due to our negligence. We will return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**25. WHEN WE MAY ENTER.**

A. Except in the event of an emergency for the protection or preservation of the Apartment, or for the protection and safety of the tenants or other persons, the Landlord may enter the Apartment during the Tenant's tenancy only for a reasonable purpose, at a reasonable time, and after having provided the Tenant with reasonable notice.



© 2020, National Apartment Association, Inc. ☑ Blue Moon eSignature Services Document ID: 284942155 

B. "Reasonable notice" means written notice provided to the Tenant at least 48 hours before the time the Landlord wishes to enter the Apartment or a shorter period of time as agreed to by the Tenant in writing. Written notice may include electronic communication including email and mobile text messaging, provided that if the Tenant fails to furnish a written acknowledgment, the Landlord will provide a paper notice.

C. "Reasonable time" means a time between the hours of 9 a.m. and 5 p.m., and not on a Sunday or federal holiday, or at another time agreed upon by the Tenant.

D. "Reasonable purpose" means a purpose that is directly related to the Landlord's duty to keep the Apartment Community safe from damage, to inspect the Apartment, make necessary or agreed repairs, decorations, alteration, renovations or improvements, supply necessary or agreed services, maintenance, or exhibit the Apartment to prospective or actual purchasers, mortgagees, tenants, workmen or contractors or to gain entry for work ordered by a governmental agency.

E. Upon the allegation of a Housing Code violation by the Tenant, the Tenant may not unreasonably prevent the Landlord from accessing the Apartment for assessment and abatement of the alleged violation and the Tenant must provide access to the Apartment within 48 hours of the written request by the Landlord for access.

You hereby expressly permit our access to your Apartment by the owner, management, or by its/their agent(s) in circumstances which may include, but are not limited to the following: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or re-keying unauthorized locks or security devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected and you fail to remove them; retrieving property owned or leased by former tenants; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law enforcement officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective tenants (after move-out or vacate notice has been given); or showing apartment to government inspectors, fire marshals, lenders, appraisers, contractors, prospective buyers, or insurance agents.

**26. MULTIPLE TENANTS OR OCCUPANTS.** Each Tenant named in Section 1 of this Lease Contract as a tenant is jointly and severally liable for all Lease Contract obligations. If you, any occupant, guest or visitor violates the Lease Contract or the Community Policies/Rules, all Tenants named in Section 1 of this Lease Contract as tenant shall be deemed to have violated the Lease Contract. Our requests and notices (including sale notices) to any Tenant shall be addressed as notice to all Tenants and occupants. Notices and requests from any Tenant or occupant (including notices of termination, repair requests, and entry permissions) constitute notice from all Tenants. Security deposit refunds will only be issued via one check, and any deduction itemizations will be mailed to one Tenant only.

## Replacements

**27. REPLACEMENT TENANTS AND SUBLETTING.** Replacing a Tenant, subletting, or assignment is not permitted, except with the prior written consent of Landlord in Landlord's sole and absolute discretion. If departing or remaining Tenants find a replacement tenant acceptable to us before moving out, and we expressly consent to the replacement, subletting, or assignment, then:

(1) a reletting charge *will not* be due;
(2) an administrative (paperwork) and/or transfer fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and
(3) you, the departing Tenant, *will* remain jointly and severally liable for all Lease Contract obligations for the remainder of the tenancy created hereby and any extensions thereof, until such date as the apartment is surrendered back to us vacant and is accepted by us, whether voluntarily, or by legal process.

**Procedures for Replacement Tenant:** If we approve a replacement tenant, then, at our option: (1) the replacement tenant must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement tenants must sign an entirely new Lease Contract. The departing Tenant will no longer have a right of occupancy of the Apartment, but will remain liable for all obligations under this Lease Contract, as provided above.

## Responsibilities of Owner and Tenant

**28. RESPONSIBILITIES OF OWNER.** We will comply with the Housing Regulation requirements to:

(1) keep common areas reasonably clean and maintained;
(2) maintain fixtures, furniture, hot water, heating and A/C equipment which we have installed and own; and
(3) make all reasonable requested repairs required by this Lease Contract, subject to your obligation to pay for damages for which you are liable.

Owner is not responsible, as a matter of law in the District of Columbia, to make any repair(s) that it has not been informed of.

**29. DEFAULT BY TENANT.** You'll be in default of this Lease Contract if you or occupant, guest or visitor violates any terms of this Lease Contract including but not limited to the following violations: (1) you do not pay any rent or other amounts that you owe when due; (2) you or any occupant, visitor or guest violate any other provision of this Lease Contract; (3) you or any occupant, guest or visitor violates the apartment community rules and policies, or fire, safety, health, or criminal laws; (4) you abandon the Apartment; (5) you give incorrect or false answers in a rental application; (6) you or any occupant is arrested, convicted, or given deferred adjudication for a criminal offense in the Apartment involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the District of Columbia Code; (7) any illegal drugs or paraphernalia are found in your Apartment, irrespective of who brought the same into the Apartment, or whether you had actual knowledge of the same; or (8) you or any occupant, guest or visitor engages in any of the prohibited conduct otherwise described in this Lease Contract. Timely payment of rent hereunder is a covenant of, and an integral part of this Lease Contract. Late payment of rent is a default hereunder, irrespective of whether the rent is ultimately paid, with or without a late charge.

**Eviction.** If you fail to pay rent, or any other charge hereunder otherwise defined as rent, we or our agents/attorney(s) may forthwith file a non-payment suit for possession of the Apartment. Any Notice to Quit/Correct or Vacate in the event of non-payment of rent is hereby expressly waived by you and all occupants. In the event of any default hereunder other than with respect to payment of rent, you will be provided with a thirty (30) day Notice to Correct or Vacate, as provided for under District of Columbia Law, prior to suit.

**Liability for Rent and Damages.** All rent and other charges payable by you for the period prior to termination of tenancy due to your default shall be and remain payable by you even if you are evicted, and all monthly rent and other charges for the remainder of the Lease Contract term or renewal period will be payable by you to us as damages incurred by us, and will be immediately due and delinquent if, without our written consent (1) you move out or give oral or written notice (by you) of intent to move out before the Lease Contract term or renewal period ends; and (2) you've not paid all rent for the entire Lease Contract term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be payable by you to us as damages even if you are judicially evicted or move out when we demand because you have defaulted. Your liability for damages is subject to our mitigation obligations, if any are required by law.

**Holdover.** You or any occupant, invitee, or guest or visitor must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) if you hold over after the date contained in your move-out notice, rent for the holdover period, either (a) as provided by D.C. Law, will be increased by 100% over the then-existing rent if the Apartment is exempt from rent control, without



© 2020, National Apartment Association, Inc. Blue Moon eSignature Services Document ID: 284942155 

notice, or (b) will be increased as provided by law over the then-existing rent, if the Apartment is subject to rent control; and; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new tenant who can't occupy because of the holdover.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Mitigation of Damages.** If you move out early, you will be subject to all of the provisions set forth herein. We will exercise customary diligence to re-let the Apartment and mitigate damages, to the extent required by law. We will credit all subsequent rent that we actually receive from subsequent tenants under a new lease against your liability for past-due and future rent and other sums due.

## General Clauses

**30. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**31. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have not authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**32. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing any right hereunder, including but not limited to written-notice requirements, rental due dates, acceleration, is not a waiver of such rights, under any circumstances.

**33. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax and electronic signatures are binding. All notices must be signed.

**34. MISCELLANEOUS.**

A. Exercising one remedy won't constitute an election or waiver of other remedies.
B. Insurance subrogation is waived by all parties.
C. All remedies are cumulative.
D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
E. This Lease Contract binds subsequent owners.
F. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
G. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
H. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.

**35. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**36. JURY TRIAL.** In the District of Columbia, you have the right to a jury trial in any legal proceeding. It is your obligation to ascertain the circumstances for seeking and securing a jury trial, and your right thereto may be waived should you not proceed in accordance with District of Columbia law. We have no obligation to provide you with any such information, and in no instance will the owner nor its/his/her employee, agent, or management company give you legal advice.

**37. FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond our control, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the Apartment or apartment community to materially affect its habitability by some or all tenants, we reserve the right to vacate any and all tenants and suspend or terminate tenancy, and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**38. PAYMENTS.** Payment of all sums by you is an independent covenant. At our option and without notice, we may apply money received first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due as provided in this Lease Contract and if not so provided then upon our demand. After the due date, we do not have to accept the rent or any other payments. Should any payment be returned to us marked for insufficient or uncollected funds, we have the right to require you to make subsequent payments, for the following six (6) months, via certified funds.

**39. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

**40. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term as specified in paragraph 3 (Lease Term), or prior to the end of the lease term, you must give our representative not less than sixty (60) days advance written notice of your intention to vacate. This advance written notice requirement expires upon the expiration of the initial lease term unless you sign a renewal lease for a term of more than month-to-month. If you sign a renewal lease for a term of more than month-to-month, then the advance written notice requirement in the renewal lease will become effective. If you do not sign a renewal lease or sign a renewal lease for a month-to-month term, then you will have the right to vacate the Apartment upon a 30-day notice for so long as you remain a month-to-month tenant. If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early under paragraph 19 (No Release of Tenant/Heirs & Assigns) except if you are able to terminate your tenancy under the statutory rights explained under paragraph 19 (No Release of Tenant/Heirs & Assigns) or any other applicable laws. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of this paragraph 3 (Lease Term), even if you move by the last date in the lease term, you will be responsible for an additional month's rent. If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover Tenant pursuant to state law, and we will have all remedies available under this Lease Contract and state law.

**41. MOVE-OUT PROCEDURES.** The move-out date you state in your move-out notice cannot be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in re-letting charges and acceleration of future rent. You're prohibited by law from applying any security deposit to rent you won't stay beyond the date you state in your move-out notice. All Tenants, guests, and occupants must abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each Tenant's forwarding address.

Bozzuto 002819

© 2020, National Apartment Association, Inc.

**42. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**43. DEPOSIT RETURN, SURRENDER.** The Security Deposit will be deposited in an escrow account devoted to Security Deposits in a federally insured banking or savings institution in Washington, D.C. Within forty-five (45) days after termination of the tenancy, Landlord must either (a) provide to Tenant, by certified mail directed to Tenant's last known address, a written list of any damages to the Premises together with a statement of costs properly incurred or Rent unpaid that will form the basis of a deduction from Tenant's Security Deposit; or (b) tender payment to Tenant of the Security Deposit funds, plus applicable interest as required by law if there are no deductions to be made. If Landlord notifies Tenant that deductions will be made from the Security Deposit, then Landlord has thirty (30) days from the date the notice of deductions was served to tender a refund to Tenant of any balance remaining of the Security Deposit (with interest as required by law) after all appropriate deductions have been made, together with an itemized list of expenses incurred or repairs made with the Security Deposit funds. Tenant's obligations under this Lease may not end when Tenant ceases to occupy the Apartment. Repairs required may be so substantial or of such a nature that work will not be completed within the forty-five (45) day period following the termination of the tenancy. In such event, Landlord reserves the right to pursue Tenant for reimbursement for damages and costs.

In order to determine the amount of the Security Deposit or other payment to be returned to the Tenant, the Landlord may (but shall not be required to) inspect the Apartment within three (3) days, excluding Saturdays, Sundays, and holidays, before or after the termination of the tenancy. The Landlord shall conduct the inspection, if the inspection is to be conducted, at the time and place of which notice is given to the Tenant. The Landlord shall notify the Tenant in writing of the time and date of the inspection. The notice of inspection shall be delivered to the Tenant, or at the Premises, at least ten (10) days before the date of the intended inspection.

Upon vacating the Premises, Tenant must furnish to Landlord, in writing, a forwarding address. If Tenant fails to leave a forwarding address, it is understood that any communication from Landlord will be sent to Tenant at Tenant's last known address; i.e., the Apartment vacated.

In the event of a sale of the property upon which the Apartment is situated or the transfer or assignment by Landlord of this Lease, Landlord has the obligation to transfer the Security Deposit to the purchaser or assignee. It is agreed that the foregoing will apply to every transfer or assignment made of the Security Deposit to a new Landlord.

It is expressly understood that Landlord's application of the Security Deposit shall not be Landlord's sole remedy in the event of Tenant's default. SHOULD THE COSTS OF REPAIRS, REPLACEMENTS, AND/OR LANDLORD'S OTHER DAMAGES EXCEED THE SECURITY DEPOSIT, TENANT SHALL PAY LANDLORD FOR SUCH EXCESS COSTS AND DAMAGES.

You have surrendered the apartment when: All apartment keys and access devices have been returned to us. If we request that you sign a form indicating that you have surrendered the apartment, you hereby expressly agree to do so. Should you fail to sign such a form, you will be held liable for all rents and other charges which accrue; 1) Until the date such form is signed, or 2) Until the last day of the month in which the US Marshal's Service has executed a Writ of Restitution for the apartment.

## Severability, Originals and Attachments, and Signatures

**44. SEVERABILITY. If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the Lease Contract and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.**

**45. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This Lease Contract is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

**You are legally bound by this document. Please read it carefully.**

**Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.**

**Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.**

**Tenant or Tenants** *(all sign below)*

Laura Hettinger

**Owner or Owner's Representative** *(signing on behalf of owner)*

Madeline Dunn

**Address and phone number of owner's representative for notice purposes**

4 I Street SE

Washington, DC

(202) 922-2025

**Name and address of locator service** *(if applicable)*

**Date form is filled out** *(same as on top of page 1)*

07/23/2021



© 2020, National Apartment Association, Inc. Blue Moon eSignature Services Document ID: 284942155

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2)

# LEASE CONTRACT ADDENDUM FOR ENCLOSED GARAGE, CARPORT, OR STORAGE UNIT

NATIONAL APARTMENT ASSOCIATION

1. **DWELLING UNIT DESCRIPTION.** Unit. No. 1106, 4 I Street SE #1106 *(street address)* in Washington, D.C., 20003 *(zip code).*

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants *(list all tenants)*:
Laura Catherine Hettinger

3. **GARAGE, CARPORT, OR STORAGE UNIT.**
Carport Space Number: ______
Garage Number: G1-047
Storage Unit Number: ______
The Monthly charge for the *(check one)* ❑ carport ☒ garage ❑ storage unit is $ 300.00.

This is a month-to-month commercial license, and we may terminate your license to park in, or to otherwise utilize the carport/garage/storage unit, upon providing you with thirty (30) days' written notice to quit. Any termination of this license may be with, or without, cause and at our sole discretion. Any license created hereby shall be deemed a commercial tenancy, not appurtenant to, nor a part of your tenantial tenancy under your Lease Contract.

4. **SECURITY DEPOSIT.** An additional security deposit of $______ will be charged for the checked areas above. We *(check one)* ❑ will consider or ❑ will not consider this additional security deposit a general security deposit for all purposes. The security deposit amount in Provision 4 of the Lease Contract *(check one)* ❑ does or ❑ does not include this additional deposit amount. Refund of the additional security deposit will be subject to the terms and conditions set forth in the Lease Contract regardless of whether it is considered part of the general security deposit.

5. **USE RESTRICTIONS.** Garage or carport may be used only for storage of operable motor vehicles unless otherwise stated in our rules or community policies. Storage units may be used only for storage of personal property. No one may sleep, cook, barbeque, or live in a garage, carport, or storage unit. Persons not listed as a tenant or occupant in the Lease Contract may not use the areas covered by this addendum. No plants may be grown in such areas.

6. **NO DANGEROUS ITEMS.** Items that pose an environmental hazard or a risk to the safety or health of other tenants, occupants, or neighbors in our sole judgment or that violate any government regulation may not be stored. Prohibited items include fuel (other than in a properly capped fuel tank of a vehicle or a closed briquette lighter fluid container), fireworks, rags, piles of paper, or other material that may create a fire or environmental hazard. We may remove from such areas, without prior notice, items that we believe might constitute a fire or environmental hazard. Because of carbon monoxide risks, you may not run the motor of a vehicle inside a garage unless the garage door is open to allow fumes to escape.

7. **NO SMOKE, FIRE, OR CARBON MONOXIDE DETECTORS.** No smoke, fire, or carbon monoxide detectors will be furnished by us unless required by law.

8. **GARAGE DOOR OPENER.** If an enclosed garage is furnished, you ☒ will ❑ will not be provided with a ☒ garage door opener and/or ❑ garage key. You will be responsible for maintenance of any garage door opener, including battery replacement. Transmitter frequency settings may not be changed on the garage door or opener without our prior written consent.

9. **ACCESS CONTROL.** Always remember to lock any door of a garage or storage unit and any door between a garage and the dwelling. When leaving, be sure to lock all keyed deadbolt locks.

10. **INSURANCE AND LOSS/DAMAGE TO YOUR PROPERTY.** You will maintain liability and comprehensive insurance coverage for any vehicle parked or stored. We are not responsible for pest control in such areas.

11. **COMPLIANCE.** We may periodically open and enter garages and storerooms to ensure compliance with this addendum. In the event we enter the garage or storerooms, we will comply with the notice provisions set forth in the Lease Contract.

12. **NO LOCK CHANGES, ALTERATIONS, OR IMPROVEMENTS.** Without our prior written consent, locks on doors of garages and storage units may not be rekeyed, added, or changed, and improvements, alterations, or electrical extensions or changes to the interior or exterior of such areas are not allowed. You may not place nails, screws, bolts, or hooks into walls, ceilings, floors, or doors. Any damage not caused by us or our representatives to areas covered by this addendum will be paid for by you.

13. **MOVE-OUT AND REMEDIES.** Any items remaining after you have vacated the dwelling will be removed, sold, or otherwise disposed of according to the Lease Contract, which addresses disposition or sale of property left in an abandoned or surrendered dwelling. All remedies in the Lease Contract apply to areas covered by this addendum.

14. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

© 2018, National Apartment Association, Inc. - 9/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 284942155

| **Tenant or Tenants** *(All tenants must sign here)* | **Owner or Owner's Representative** *(signs here)* |
|---|---|
| Laura Hettinger | Madeline Dunn |
| | **Date of Lease Contract** |
| | July 23, 2021 |

# TENANT PARKING ADDENDUM

Date: September 24, 2021
(when this Addendum is filled out)

**1. DWELLING UNIT DESCRIPTION.**
Unit No. 1106, 4 I Street SE #1106 (street address) in Washington, D.C., 20003 (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: July 23, 2021
Owner's name: Crescent Capitol View, LLC

Tenants (list all tenants):
Laura Catherine Hettinger

The term of this Parking Addendum is as follows: Begins on October 1st, 2021 and ending on ________, ______.

**TENANT AND OWNER AGREE AS FOLLOWS:**

3. You agree to properly register all vehicles with management. If you get a new or replacement vehicle you must notify us and complete a revised agreement.

4. If you are provided with a parking tag or sticker it must be properly installed and displayed.

5. Unless your vehicle(s) has been assigned a specific space(s) you may park in any available space(s) in the parking areas, with the exception of spaces reserved for a particular use or any marked handicap space, unless you possess a government issued handicap decal or similar signage.

6. If you are assigned a specific parking space(s) we shall assign you the space(s) and retain the right to change assigned space(s) at our sole discretion.

7. You understand and accept that we have the right at any time, without notice, to tow unauthorized or non-registered vehicles from any parking space on the property.

8. You agree to use parking spaces in accord with the terms of the Lease and Community Rules.

9. Any vehicles which are improperly parked or are in violation of this addendum, the terms of the Lease or Community Rules will be towed at your expense. You agree that we shall not be liable to you for damages related to the physical towing nor any consequential damages you may incur through loss of use of the vehicle(s) to the fullest extent permitted by law.

10. You understand that we will not be held liable for any damage or theft that may occur while your vehicle(s) is parked on any part of the property to the fullest extent permitted by law. Upon signing this agreement you knowingly accept the risk of parking any vehicle(s) on the property.

11. Any action by you, any occupant, guest, or visitor that violates this addendum shall constitute a violation of the Lease Contract.

12. You understand and agree that any judgment of possession entered against you shall be a judgment for possession of any parking spaces which you are entitled to under this addendum. Once such judgment is rendered and executed upon you, you shall immediately remove all vehicles from the property parking areas. If you fail to remove your vehicle(s), we shall tow the vehicle(s) at your expense. You agree that we shall not be liable to you for damages related to the physical towing nor any consequential damages you may incur through loss of use of the vehicle(s) to the fullest extent permitted by law.

**COST FOR PARKING**

Tenant agrees to pay a onetime fee of $______ per vehicle on or before the ____ day of ______, ______. In alternative tenant agrees to pay $ 300.00 monthly per vehicle due on or before the 1st day of the month. If no amount is filled in parking shall be free for properly registered and authorized vehicles.

Tenant understands and accepts that all-parking rights and privileges will immediately be revoked in the case that Tenant is 5 days delinquent in paying the required parking fee.

Tenant agrees to pay $ 100.00 NSF fee for all checks returned for non-sufficient funds.

**VEHICLE INFORMATION:**
**Vehicle 1**

[redacted]

Make:
Model & Year:
State:
License Plate:
Permit Number:
Phone Number:
Parking Space:

**Vehicle 3**
Make:
Model & Year:
State:
License Plate:
Permit Number:
Phone Number:
Parking Space:

**13. SPECIAL PROVISIONS.**

© 2018, National Apartment Association, Inc. - 9/2018, Washington, D.C.



Blue Moon eSignature Services Document ID: 284942155

| **Tenant or Tenants** *(All tenants must sign)* | **Owner or Owner's Representative** *(Signs below)* |
| --- | --- |
| Laura Hettinger | Madeline Dunn |
| | **Date of Signing Addendum** |
| | 09/29/2021 |

# E-SIGNATURE CERTIFICATE

*This certificate details the actions recorded during the signing of this Document.*

bluemoon SOFTWARE

### DOCUMENT INFORMATION

| | |
|---|---|
| Status | Signed |
| Document ID | 284942155 |
| Submitted | 09/29/21 |
| Total Pages | 12 |
| Forms Included | Apartment Lease Form, Enclosed Garage Addendum, Parking Addendum |

### PARTIES

**Laura Hettinger**
signer key: 6c827b1b40671977b617bc4636e6716f
IP address: 172.58.157.209
signing method: Blue Moon eSignature Services
authentication method: eSignature by email [redacted]
browser: Mozilla/5.0 (iPhone; CPU iPhone OS 14_7_1 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/14.1.2 Mobile/15E148 Safari/604.1

*Laura Hettinger*

**Madeline Dunn**
signer key: 825e798110a08528834992df8e1d4fbd
IP address: 10.100.10.85
signing method: Blue Moon eSignature Services
authentication method: eSignature by email novel@bozzuto.com
browser: PHP 7.3.29/SOAP

*Madeline Dunn*

(Property Manager)

## DOCUMENT AUDIT

| | | |
|---|---|---|
| 1 | 09/24/21 01:20:34 PM CDT | Laura Hettinger accepted Consumer Disclosure |
| 2 | 09/24/21 01:29:49 PM CDT | Laura Hettinger signed Apartment Lease Form |
| 3 | 09/24/21 01:31:15 PM CDT | Laura Hettinger signed Enclosed Garage Addendum |
| 4 | 09/24/21 01:31:39 PM CDT | Laura Hettinger signed Parking Addendum |
| 5 | 09/24/21 01:31:46 PM CDT | Laura Hettinger submitted signed documents |
| 6 | 09/29/21 09:40:37 AM CDT | Madeline Dunn signed Apartment Lease Form |
| 7 | 09/29/21 09:40:37 AM CDT | Madeline Dunn signed Enclosed Garage Addendum |
| 8 | 09/29/21 09:40:37 AM CDT | Madeline Dunn signed Parking Addendum |
| 9 | 09/29/21 09:40:37 AM CDT | Madeline Dunn dated Parking Addendum |
| 10 | 09/29/21 09:40:37 AM CDT | Madeline Dunn submitted signed documents |