# EXHIBIT 16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LAURA HETTINGER,

Plaintiff,

v.

BOZZUTO MANAGEMENT COMPANY,

Defendant.

Case No: 1:23-cv-03687-JEB

**EXPERT REPORT OF ARTHUR OLSEN IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

1. I have been retained by Tycko & Zavareei LLP, counsel for Plaintiff Laura Hettinger, ("Plaintiff"), to provide consulting and expert work regarding database analysis, data extraction and analysis, and calculations in connection with the above-captioned action, and to testify at deposition and trial if necessary. I am submitting this report in connection with Plaintiff's motion for class certification.

2. As part of my assignment in this case, I have been asked to review and analyze certain data that has been produced by Bozzuto Management Company, ("Defendant" or "Bozzuto") and to opine about the ability to programmatically perform certain calculations in this case using Bozzuto's data. I have personal knowledge of the following except where so stated, and could and would competently testify thereto.

## QUALIFICATIONS

3. My qualifications and background are set forth in my consultant profile ("Profile") and attached hereto as **Exhibit A**. As set forth in my Profile, I am the principal of Cassis Technology, LLC, an Information Technology ("IT") consulting firm, and have over 25 years of professional experience in the IT field, specializing in the areas of data analysis, database development, database administration, and database support.

4. Prior to starting my own firm, I worked as a database engineer for Microsoft Corporation ("Microsoft"). For my first assignment at Microsoft, I was the primary database engineer on a team tasked with integrating and scaling an Oracle-based online billing system obtained by Microsoft as part of a corporate acquisition. When this project was completed, the system could handle fifty thousand concurrent connections, and ten million users in total. From there, I participated in the design, implementation, and support of an extensive data warehousing solution for Microsoft's licensing division, which processed monthly transactions in excess of a billion dollars. I was awarded Microsoft's award for operational excellence in connection with my database-related work at the company.

5. I also worked for Hewlett-Packard Company ("Hewlett-Packard") as a database engineer. Among other responsibilities at Hewlett-Packard, I served as the primary database administrator for both Oracle and SQL Server systems that supported three primary manufacturing divisions within Hewlett-Packard (laptops, desktops, and servers), and also served as the lead analyst in charge of compiling, analyzing, and processing data from the various internal database systems throughout Hewlett-Packard for use in litigation support.

6. In addition to my work for Microsoft and Hewlett-Packard, I have provided database consulting services to a number of other large corporations, including, but not limited to,

Cisco Systems, Inc., Tessera Technologies, Inc., and Marvell Technology Group. My responsibilities in that regard have included integrating various internal database systems for a number of purposes, including but not limited to, corporate financial reporting services, Sarbanes-Oxley compliance, and corporate mergers and acquisitions. I have also managed the development of data integration solutions for small to mid-size companies, and developed a solution for integrating an automated process for the calculation of inventory reserves with Oracle Financials.

7. Since 2008, I have experience working on a large number of litigation consulting projects. A list of the cases in which I have offered testimony during the past four years, either in deposition or at trial, is attached hereto as **Exhibit B**.

8. For example, I previously provided trial testimony and was qualified as an expert witness in a consumer lawsuit against Wells Fargo relating to its overdraft practices and fees, which ultimately resulted in a judgment of $203 million against Wells Fargo. *See Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010). In its Order awarding restitution to the class members, the court found that I had done a "professional and careful job" in connection with this work:

> This order finds that plaintiffs' expert Arthur Olsen has convincingly shown that it is entirely practical to re-run the computerized data in storage for each class members' account and determine how many overdrafts were added by the high-to-low practice for debit-card transactions during the class period. Indeed, he has already done so, using various alternate posting sequences. This has been done by him on an account-by-account, day-by-day, and transaction-by-transaction basis, using the bank's own real-world data. Court orders were needed to provide him access to this data, but-after much work and time-this order finds that Expert Olsen has done a professional and careful job in laying out the impacts of various alternative posting protocols. This work has not only demonstrated the enormous impact of the high-to-low scheme, but it has demonstrated that it is possible, in considering relief and restitution, to add back to depositors' specific accounts the amounts that were wrongfully taken by Wells Fargo, using posting protocols that

> this order finds would have tracked the ordinary and reasonable expectations of depositors.

*Id.* at 1138.

9. In addition, I was the principal data expert for plaintiffs in the massive multi-district litigation *In re: Checking Account Overdraft Litigation*, MDL No. 2036 ("Overdraft MDL"). In connection with my work in the Overdraft MDL, I have analyzed historical transaction data from over thirty of the largest banks in the United States, including but not limited to: Bank of America, BancorpSouth, Capital One, Comerica, Compass, Great Western, JPMorgan Chase, PNC, RBS Citizens, TD Bank, Union Bank, and US Bank, in order to advise the court on the feasibility of using such data to ascertain class members and to calculate individual harm for those class members. In each case, I was able to perform these tasks, and I have submitted numerous declarations in support of class certification motions describing my findings and conclusions. In each of those cases, using algorithms that I developed, I was able to programmatically ascertain class members and calculate alleged class member harm using the bank's own data.

10. I am being paid $350 per hour, which is my usual and customary rate. The amount I am being paid is not dependent on the opinions I reach or the outcome of this litigation. I have not authored any publications in the preceding 10 years.

## ASSIGNMENT

11. My assignment, for purposes of this report, was to review and analyze certain data that has been produced by Bozzuto and to opine about the ability to programmatically perform certain calculations in this case using Bozzuto's data. I understand that I may be asked at a later stage in this case to do additional work. Any assumptions I have made for this purpose were provided to me by counsel.

## INFORMATION PROVIDED

12. For my assignment in this case, I was provided with and reviewed the following documents:

a. First Amended Class Action Complaint (Docket # 41);

b. Order Granting Partial Summary Judgment (Docket # 61);

c. Second Joint Stipulation of Fact (Docket # 73);

d. Successive version D.C. Mun. Regs. tit. 21, § 4100 from 2020 to the present; and

e. Successive version D.C. Mun. Regs. tit. 21, § 4101 from 2020 to the present.

13. I was also provided with sample data in this case consisting of exemplar resident ledgers and utility bills. This information was provided for both Ms. Hettinger and for a small subset of the residents, as follows:

a. The resident ledger for Ms. Hettinger was produced to me in the form of a text-based PDF document without a Bates stamp;[1]

b. The resident ledger for 36 additional residents was produced in the form of a redacted PDF document (Bozzuto 043343 – Bozzuto 043555);

c. The utility bills for Ms. Hettinger was produced in the form of a text-based PDF document (Bozzuto 002830 – Bozzuto 002856); and

d. The utility bills for 38 additional residents was produced in the form of 38 redacted PDF documents (Conservice 00000028 – Conservice 00000549).

14. Among other things, the resident ledgers include the following data elements:

a. Resident Name;

[1] I was subsequently provided with a Bates stamped version (Bozzuto 002827 – Bozzuto 002829).

b. Resident Address;

c. Property ID;

d. Unit Number;

e. Lease From and To Dates;

f. Resident Move In and Move Out Dates;

g. The Date, Charge Code, Description, and Amount of each charge assessed to the resident;

h. The Date, Charge Code, Description, and Amount of each credit given to the resident; and

i. The Date, Description, and Amount of each payment made by the resident.

15. Among other things, the utility bills include the following data elements:

a. Resident Name;

b. Resident Address;

c. Unit Number;

d. Service Period;

e. Per Gallon Rate Charged for both Water and Sewer;

f. Amounts Charged for both Water and Sewer; and

g. Gallons of Water Consumed.

16. Based on paragraph 12 of the Second Joint Stipulation of Fact, it is my understanding that Bozzuto produced a subset of the resident ledgers and utility bills, but Bozzuto and/or Conservice has maintained, and could produce, similar data for all residents.

## ANALYSIS

17. For the purposes of this report, I was asked to perform a preliminary analysis using representative samples of the data produced thus far. I have focused on the data produced for Ms. Hettinger because her data was produced in a more native, text-based format, whereas other sample ledgers and utility bills produced by Bozzuto were redacted and therefore changed from a text-based PDF format to an image-based PDF format. As a result, an analysis of these files would require that they be run through an OCR process. While this certainly could be done, I have limited my analysis for the purposes of this report to the text-based files that were produced for Ms. Hettinger for two reasons. First, it is my understanding that this data may be available in a database and therefore could be produced in the form of a database extract. Second, even if the data could not be produced in the form of a database extract, these files almost certainly exist as text-based PDF documents and could be produced as such.

18. It is my understanding that Plaintiff is seeking to certify two Classes in this case, including a "Drip-Pricing Class," which contends that Bozzuto failed to disclose certain fees to Drip-Pricing Class Members at the time they filed their rental applications, and an "Overcharge Class," which contends that Bozzuto charged Overcharge Class Members a per-gallon water and/or sewer rate that exceeded a regulatory cap set by District regulations.

19. There are two proposed damages models for calculating class wide damages for each Class, including a "Statutory Damages Model" and a "Treble Damages Model." Both of these models assume that the relevant law authorizes consumers to recover statutory damages of $1,500 per violation or treble damages, whichever is greater.

***Statutory Damages Model***

20. Under the Statutory Damages Model, damages for each class member are calculated using a common formula that multiplies the total number of violations by $1,500.

21. For the Drip-Pricing Class, assuming each class member suffered one violation, the calculation is simple in that damages for each Drip-Pricing Class Member is $1,500. Since Bozzuto maintains records of the identities of Drip-Pricing Class Members, upon production of such records, I could apply this formula in an automated fashion in order to calculate statutory damages for each Drip-Pricing Class Member.

22. For the Overcharge Class, the same common formula that multiplies the statutory damages amount of $1,500 by the total number of violations can be used. My understanding is that the final definition of what constitutes a violation (*e.g.,* one violation per class member, one violation per utility bill with overcharges, etc.) will be decided later in this proceeding. Once decided, the total number of violations will be established from bills and records maintained by Bozzuto and Conservice, which record specific per-gallon water and sewer rates that were charged at various Bozzuto properties (*e.g.*, Bozzuto 002830 – Bozzuto 002856). The per-gallon rates charged can then be compared with the regulatory cap in effect at the time to determine whether an overcharge violation has occurred. Upon production of such bills and records, I could set up a process to extract these key fields from the bills and records and build a class wide data set to identify total violations for each Overcharge Class Member.

***Treble Damages Model***

23. Under the Treble Damages Model, damages for each class member are calculated using a common formula based on the data maintained by Bozzuto and/or Conservice.

24. For the Drip-Pricing Class, the formula to calculate treble damages for each Drip-Pricing Class Member is expressed as the following equation (the "Drip-Pricing Formula"):

$$Treble\ Damages = 3 * ((Application\ Fee\ Paid) + (Total\ Service\ Fees\ and\ Utilities\ Paid))$$

25. The data required to execute the Drip-Pricing Formula is maintained by Bozzuto and recorded in the resident ledger data. For example, Ms. Hettinger's resident ledger itemizes the following charges that were billed to her, and subsequently paid by her: (a) Application Fee; (b) Utility – HVAC; (c) Utility – Processing Fee; (d) Utility – Sewer; and (e) Utility – New Account Fee.

26. To apply the Drip-Pricing Formula to the data for Ms. Hettinger, I first extracted the text from her resident ledger and loaded the results into a Microsoft SQL Server database. Once that was done, I applied the Drip-Pricing Formula to the data.

27. Applying the Drip-Pricing Formula to Ms. Hettinger's data results in actual damages of $1,255.39. When trebled, that amount is $3,766.17. The results of this calculation are attached hereto as **Exhibit C**.

28. The Drip-Pricing Formula provides a common damages methodology that can be used to calculate treble damages for each Drip-Pricing Class Member. Since Bozzuto maintains resident ledger data similar to that produced for Ms. Hettinger for all residents across all Properties, I could apply the Drip-Pricing Formula in an automated fashion to calculate treble damages for each Drip-Pricing Class Member once class-wide data is made available to me.

29. For the Overcharge Class, the formula to calculate treble damages for each Overcharge Class Member is expressed as the following equation (the "Overcharge Formula"):

$$Treble\ Damages = 3 * \left( \begin{matrix} (Charged\ Per\ Gallon\ Rate) * (Gallons\ Used) \\ - (Regulatory\ Cap\ Per\ Gallon\ Rate) * (Gallons\ Used) \end{matrix} \right)$$

30. The Overcharge Formula calculates damages as the differences between the amounts that the resident was actually charged based on the excessive water and/or sewer rate and the amount that the resident should have been charged based on the fixed water and/or sewer rate established by the regulatory cap in effect at the time.

31. The data required to execute the Overcharge Formula is maintained by Bozzuto and/or Conservice and recorded in the utility bills. For example, each of Ms. Hettinger's utility bills contain the Charged Per Gallon Rates for both Water and Sewer, as well as the Gallons Used. The Regulatory Cap Per Gallon Rates were derived from the Municipal Regulations that were provided to me, and are summarized in **Exhibit D**.

32. To apply the Overcharge Formula to the data for Ms. Hettinger, I first extracted the text from her utility bills and loaded the results into a Microsoft SQL Server database. Once that was done, I applied the Overcharge Formula to each of her utility bills.[2]

33. Applying the Overcharge Formula to Ms. Hettinger's data results in actual damages of $215.08. When trebled, that amount is $645.25. The results of this calculation are attached hereto as **Exhibit E**.

34. The Overcharge Formula provides a common damages methodology that can be used to calculate treble damages for each Overcharge Class Member. Assuming Bozzuto and/or Conservice maintains data of per-gallon water and sewer rates charged and gallons used, for all

[2] The "final" utility bill for Ms. Hettinger, which covered the period August 2, 2022 through August 22, 2022, was incomplete and was therefore excluded. However, once the complete bill is produced, I could incorporate it into these calculations.

residents across all Properties, in a similar format to that produced for Ms. Hettinger, I could apply the Overcharge Formula in an automated fashion to calculate treble damages for each Overcharge Class Member once class wide data is made available to me.

## CONCLUSIONS

35. I was asked to review the data that Bozzuto has produced and evaluate whether it is feasible, using that data, to perform various calculations on that data to determine damages on a class-wide basis for both classes under the Statutory Damages Model and Treble Damages Model. I have determined that it is feasible to do so, and in fact, have already demonstrated this by performing the various calculations detailed above on the data produced for Ms. Hettinger. Upon production of class-wide data, I could perform the same analysis on behalf of all residents.

36. My opinions in this report are based upon the aforementioned information produced in this case, my extensive experience in the IT field, and my prior work as a data management expert in other cases. I hereby reserve the right to supplement or modify my opinions detailed in this report to the extent that new information and data is made available through discovery or other means.

I hereby certify that this report is a complete and accurate statement of all of my opinions, and the basis and reasons for them, to which I will testify under oath.

Arthur Olsen
December 5, 2025

cassis TECHNOLOGY

# IT CONSULTANT PROFILE: ARTHUR OLSEN

## BACKGROUND

Specializing in the areas of data analysis, database development, and database administration, Mr. Olsen has over 25 years of professional IT experience. He has a strong background in both Oracle and Microsoft database technologies, with a focus in developing large-scale applications and designing reporting solutions for publicly traded corporations. Additionally, he has had valuable experience in analyzing and processing massive amounts of data for use in litigation support.

## SKILLS

- Considerable experience compiling, analyzing and processing data in support of corporate and class-action litigation.
- Extensive training and experience creating functional designs and logical data models.
- Proficient in the wide range of database development and administration technologies including: Microsoft SQL Server; Oracle RDBMS; and Teradata RDBMS.
- Relevant experience designing, implementing and maintaining large scale database solutions on Oracle and SQL Server, including both online transaction based systems and data warehouses.
- Reporting specialist with experience developing custom reporting solutions based on financial systems such as Microsoft Dynamics and Oracle Financials, as well as custom applications.

## AWARDS

- Award for Operational Excellence | Microsoft
  Recognized for outstanding contribution to the design and implementation of the data warehousing solution for the Microsoft Licensing division.

## CERTIFICATIONS

- Oracle Certified Professional
- Certified Oracle Database Administrator

## EXPERIENCE

**Data Expert: Litigation Specialist** | retained by various law firms

- Data expert supporting massive multi-district class action litigation, (MDL No. 2036 – *In Re: Checking Account Overdraft Litigation*).
- Processed and analyzed data in support of class action litigation, (*Arnett v. Bank of America, N.A.*, D. Or. Case No. 3:11-CV-01372).
- Processed and analyzed data in support of class action litigation, (*Sheila I. Hofstetter et. al. v. JP Morgan Chase Bank, N.A.,* N.D. Cal. Case No. CV-10-1313 WHA).
- Processed and analyzed data in support of class action litigation, (*Veronica Gutierrez et. al. v. Wells Fargo Bank, N.A.*, N.D. Cal. Case No. 07-05923 WHA), that resulted in a $203 million class restitution award.

**Database Engineer: Reporting Specialist** | under contract at various clients

- Developed a custom Chart of Accounts management solution that integrates with Microsoft Great Plains for small to mid-size companies.
- Designed and implemented several custom financial reporting solutions, including one for a Fortune 500 company, based on Microsoft Business Intelligence, MOSS, and Excel Services.
- Architected a solution for a large corporation that integrated with Oracle Financials and automated the process of calculating inventory reserves.

**Database Administrator, Developer & Litigation Support Specialist** | under contract at Hewlett Packard, Cupertino, CA

- Primary Database Administrator responsible for both Oracle and SQL Server support for three divisions, including 20+ applications spread out over a total of 30+ development, test and production servers.
- Lead analyst responsible for compiling, analyzing and processing data from various systems throughout HP for use in litigation support.
- Participated as the principal authority in the composition and implementation of SQL Server database standards across the three divisions, including security models, backup and recovery plans, programming standards, and general database naming conventions.

**Database Engineer** | Microsoft Licensing, Inc., Reno, NV

- Participated in the design, implementation and support of an extensive data warehousing solution for Microsoft's licensing division. System included nearly twenty data sources and several thousand end users, including select customers who accessed the system remotely via the Internet.
- Developed numerous DTS packages to pull delta information from various source systems, process and denormalize data and push it to one of several data repositories.
- Created and documented plans for database maintenance, backup and recovery, and high availability.

**Database Engineer** | under contract at Microsoft Corporation, Redmond, WA

- Lone Oracle database administrator and general Oracle resource for all teams associated with an enterprise level online end user billing system, including: Management, Development, Testing, Production Support and Infrastructure.
- Primary owner of a 24 x 7 production database that resided on a DEC Alpha failover cluster.
- Designed replication model using Oracle replication to satisfy extensive reporting requirements.
- Tuned SQL statements as written by members of the development team. Developed PL/SQL triggers, stored procedures, SQL scripts and NT scripts as needed to enhance applications and to correct problems as discovered.
- Acted as liaison between Microsoft and Oracle for all technical issues related to the databases, and between Microsoft and Digital for all technical issues related specifically to the Alpha cluster.

## EDUCATION

- Microsoft Internal Training – Redmond, WA | March 2000
  Instructor led SQL Server training, including courses on Database Architecture and Administration, Database Tuning, and Microsoft's TSQL
- ARIS Education Center – Bellevue, WA | June 1996
  Oracle DBA Program, including courses on Relational Database Design, Database Architecture and Administration, SQL and PL/SQL, Application Tuning, Database Tuning, and Advanced Database Concepts
- University of Washington – Seattle, WA | June 1989
  BA in Business Administration with a concentration in Finance.

# CASE LIST: ARTHUR OLSEN

## TESTIMONY GIVEN IN DEPOSITION OR AT TRIAL SINCE JANUARY 2016

| Case Name | Filing Date | Case Number | Court |
|---|---|---|---|
| *Bickerstaff v. SunTrust Bank* | 7/12/2010 | 10EV010485H | State Court of Fulton County, Georgia |
| *Corvello v. Wells Fargo Home Mortgage* | 10/20/2010 | 4:10-CV-05072-VC | U.S. District Court, Northern District of California |
| *Hawkins, et al. v. First Tennessee Bank* | 9/6/2011 | CT-004085-11 | Circuit Court of Shelby County, Tennessee |
| *In re: Fifth Third Early Access Cash Advance Litigation* | 11/2/2012 | 1:12-cv-00851-MRB | U.S. District Court, Southern District of Ohio |
| *Hernandez, et al. v. Point Loma Credit Union* | 6/18/2013 | 37-2013-00053519-CU-BT-CTL | Superior Court of San Diego County, California |
| *Moss, et al., v. First Premier Bank* | 9/30/2013 | 2:13-CV-05438-JFB-GRB | U.S. District Court, Eastern District of New York |
| *Lusnak, et al. v. Bank of America* | 3/12/2014 | 2:14-cv-01855-GW | U.S. District Court Central District of California |
| *All-South Subcontractors v. Sunbelt Rentals* | 8/22/2014 | 1:14-cv-00124-WLS | U.S. District Court, Middle District of Georgia |
| *Lynch, et al. v. San Diego County Credit Union* | 3/12/2015 | 37-2015-00008551-CU-BT-CTL | Superior Court of San Diego County, California |
| *IN RE: TD Bank, N.A. Debit Card Overdraft Fee Litigation* | Consolidated 4/15/2015 | MDL No. 2613.<br>Civil Action No. 6:15-MN-2613-BHH | U.S. District Court, District of South Carolina |

| Case Name | Filing Date | Case Number | Court |
|---|---|---|---|
| *Hunters Run, et al. v. WCA Waste Corporation* | 6/17/2015 | 1:15-cv-151-MW-GRJ | U.S. District Court, Northern District of Florida |
| *Gunter, et al. v. United Federal Credit Union* | 9/21/2015 | 3:15-cv-00483-MMD-WGC | U.S. District Court, District of Nevada |
| *Stathakos, et al. v. Columbia Sportswear* | 10/2/2015 | 4:15-cv-04543-YGR | U.S. District Court Northern District of California |
| *Morrow, et al. v. Carter's, Inc.* | 5/6/2016 | 1:16-cv-01485-ELR | U.S. District Court Northern District of Georgia |
| *Childress, et al. v. JP Morgan Chase* | 5/31/2016 | 5:16-cv-00298-BO | U.S. District Court Eastern District of North Carolina |
| *Roberts, et al. v. Capital One, N.A.* | 6/22/2016 | 1:16-cv-04841-LGS | U.S. District Court Southern District of New York |
| *Kirkpatrick, et al. v. HomeAway.com* | 6/23/2016 | 1:16-cv-00733-LY | U.S. District Court Western District of Texas |
| *Baker, et al., v. City of Florissant* | 10/31/2016 | 4:16-cv-1693 | U.S. District Court, Eastern District of Missouri |
| *Webb, et al., v. City of Maplewood* | 11/1/2016 | 4:16-cv-1703 | U.S. District Court, Eastern District of Missouri |
| *Liberty Salad, Inc., et al. v. Groundhog Enterprises* | 1/17/2017 | 2:17-cv-00226 | U.S. District Court, Eastern District of Pennsylvania |
| *Hoggard, et. al. v. Nationstar Mortgage* | 1/13/2017 | 1:17cv00099-TK | U.S. District Court, District of Columbia |
| *Custom Hair Design, et al. v. Central Payment* | 8/21/2017 | 8:17-cv-00310 | U.S. District Court, District of Nebraska |

| Case Name | Filing Date | Case Number | Court |
|---|---|---|---|
| *Smith, et al. v. Flagstar Bank* | 8/22/2018 | 3:18-CV-05131-WHA | U.S. District Court, Northern District of California |
| *Clark v. Bank of America, N.A.* | 11/29/2018 | 1:18-cv-3672-SAG | U.S. District Court, District of Maryland |
| *Howards v. Fifth Third Bank* | 12/10/2018 | 1:18-cv-00869-MRB | U.S. District Court, Southern District of Ohio |
| *Garcia, et al. v. UMB Bank* | 1/15/2019 | 1916-CV01874 | Circuit Court of Jackson County, Missouri |
| *McNeil, et al. v. Capital One, N.A.* | 1/24/2019 | 1:19-cv-00473-DG-RER | U.S. District Court, Eastern District of New York |
| *Baker, et al. v. State Farm* | 2/7/2019 | 4:19-cv-00014-CDL | U.S. District Court, Middle District of Georgia |
| *Blankenship, et al., v. HAPO Community Credit Union* | 2/20/2019 | 19-2-00922-03 | Superior Court of Washington, County of Benton |
| *Howell, et al., v. Eastman Credit Union* | 4/25/2019 | C42517 | Circuit Court for Sullivan County, Tennessee |
| *Walkingstick, et al., v. Simmons Bank* | 5/22/2019 | 6:19-cv-03184-RK | U.S. District Court, Western District of Missouri |
| *Garcia v. JSC Federal Credit Union* | 5/23/2019 | 2019-35818 | District Court of Harris County, Texas |
| *Yarski, et al., v. Knoxville TVA Emp Credit Union* | 6/13/2019 | 3-220-19 | Circuit Court of Knox County, Tennessee |
| *Loomis v. Suncoast Credit Union* | 8/15/2019 | 19-CA-8511 DIV J | Circuit Court of Hillsborough County, Florida |

| Case Name | Filing Date | Case Number | Court |
|---|---|---|---|
| *Carnley v. Conduent Business Services* | 9/5/2019 | 5:19-cv-01075-XR | U.S. District Court, Western District of Texas |
| *Nguyen, et al., v. Raymond James & Associates, Inc.* | 1/14/2020 | 8:20-cv-195-CEH-AAS | U.S. District Court, Middle District of Florida |
| *Precision Roofing, et al., v. Centerstate Bank* | 4/6/2020 | 3:20-cv-00352-BJD-JRK | U.S. District Court, Middle District of Florida |
| *Wilkins v. Simmons Bank* | 4/14/2020 | 3:20-cv-00116-DPM | U.S. District Court, Eastern District of Arkansas |
| *Loguidice v. Gerber Life Insurance Co.* | 4/24/2020 | 7:20-CV-03254 (KMK) | U.S. District Court, Southern District of New York |
| *Grant, et al., v. Centerstate Bank* | 8/18/2020 | 8:20-cv-1920-MSS-AAS | U.S. District Court, Middle District of Florida |
| *Flores v. Intrust Bank, N.A.* | 6/1/2021 | 2021-CV-001724-OT | District Court, Sedgwick County, Kansas |
| *Morrow v. Navy Federal Credit Union* | 6/15/2021 | 1:21-cv-722-MSN-LRV | U.S. District Court, Eastern District of Virginia |
| *Beyard v. Pentagon Federal Credit Union* | 7/7/2021 | 1:21-cv-01063-KJM-SAB | U.S. District Court, Eastern District of California |
| *Gibbs v. Firefighters Community Credit Union* | 8/5/2021 | CV-19-927066 | Common Pleas Court, Cuyahoga County, Ohio |
| *Perkins v. Vantage Credit Union* | 8/16/2021 | 21SL-CC03736 | Circuit Court of St. Louis County, State of Missouri |
| *Bulls v. USAA Federal Savings Bank* | 11/24/2021 | 5:21-cv-00488-BO | U.S. District Court, Eastern District of North Carolina |

| Case Name | Filing Date | Case Number | Court |
|---|---|---|---|
| *Ramirez v. Bank of America, N.A.* | 2/10/2022 | 4:22-cv-00859-YGR | U.S. District Court, Northern District of California |
| *Polvay v. FCTI, Inc.* | 5/25/2022 | 1:22-cv-04315-JSR | U.S. District Court, Southern District of New York |
| *Washington v. VyStar Credit Union* | 6/21/2022 | 2019-CA-4951 | Circuit Court of Duval County, Florida |
| *Adams v. Max Credit Union* | 5/11/2023 | 46-cv-2020-900119 | Circuit Court of Macon County, Alabama |
| *Virginia is for Movers v. Apple Federal CU* | 8/10/2023 | 1:23-cv-00576-TSE-IDDVAED | U.S. District Court, Eastern District of Virginia |
| *Purcell v. Federal Insurance Co.* | 9/26/2023 | 3:23-cv-04927-JD | U.S. District Court, Northern District of California |
| *J.A. v. 2K Games, Inc.* | 11/17/2023 | 3:23-cv-5961-JD | U.S. District Court, Northern District of California |
| *Alvarez v. Newrez* | 9/24/2024 | 4:24-cv-3597 | U.S. District Court, Southern District of Texas |

| Date | Charge Code | Charge Description | Amount |
|---|---|---|---|
| 6/27/2021 | appfee | Application Fee (Laura Hettinger) | $75.00 |
| 9/1/2021 | ocielect | Utility - HVAC - 07/23/21-08/01/21 | $0.71 |
| 9/1/2021 | ocinfee | Utility - New Account Fee | $10.00 |
| 9/1/2021 | ocifee | Utility - Processing Fee - 09/01/21-09/30/21 | $4.30 |
| 9/1/2021 | ocisew | Utility - Sewer - 07/23/21-08/01/21 | $20.17 |
| 9/1/2021 | ociwat | Utility - Water - 07/23/21-08/01/21 | $13.61 |
| 10/1/2021 | ocielect | Utility - HVAC - 08/01/21-09/01/21 | $2.27 |
| 10/1/2021 | ocifee | Utility - Processing Fee - 10/01/21-10/31/21 | $4.30 |
| 10/1/2021 | ocisew | Utility - Sewer - 08/01/21-09/01/21 | $62.79 |
| 10/1/2021 | ociwat | Utility - Water - 08/01/21-09/01/21 | $41.46 |
| 11/1/2021 | ocielect | Utility - HVAC - 09/01/21-10/01/21 | $1.37 |
| 11/1/2021 | ocifee | Utility - Processing Fee - 11/01/21-11/30/21 | $4.30 |
| 11/1/2021 | ocisew | Utility - Sewer - 09/01/21-10/01/21 | $51.15 |
| 11/1/2021 | ociwat | Utility - Water - 09/01/21-10/01/21 | $33.18 |
| 12/1/2021 | ocielect | Utility - HVAC - 10/01/21-11/01/21 | $1.48 |
| 12/1/2021 | ocifee | Utility - Processing Fee - 12/01/21-12/31/21 | $4.30 |
| 12/1/2021 | ocisew | Utility - Sewer - 10/01/21-11/01/21 | $53.39 |
| 12/1/2021 | ociwat | Utility - Water - 10/01/21-11/01/21 | $34.94 |
| 1/1/2022 | ocielect | Utility - HVAC - 11/01/21-12/01/21 | $6.04 |
| 1/1/2022 | ocifee | Utility - Processing Fee - 01/01/22-01/31/22 | $4.30 |
| 1/1/2022 | ocisew | Utility - Sewer - 11/01/21-12/01/21 | $52.86 |
| 1/1/2022 | ociwat | Utility - Water - 11/01/21-12/01/21 | $29.68 |
| 2/1/2022 | ocielect | Utility - HVAC - 12/01/21-01/01/22 | $13.30 |
| 2/1/2022 | ocifee | Utility - Processing Fee - 02/01/22-02/28/22 | $4.30 |
| 2/1/2022 | ocisew | Utility - Sewer - 12/01/21-01/01/22 | $47.86 |
| 2/1/2022 | ociwat | Utility - Water - 12/01/21-01/01/22 | $30.80 |
| 3/1/2022 | ocielect | Utility - HVAC - 01/01/22-02/01/22 | $2.61 |
| 3/1/2022 | ocifee | Utility - Processing Fee - 03/01/22-03/31/22 | $4.30 |
| 3/1/2022 | ocisew | Utility - Sewer - 01/01/22-02/01/22 | $49.65 |
| 3/1/2022 | ociwat | Utility - Water - 01/01/22-02/01/22 | $30.80 |
| 4/1/2022 | ocielect | Utility - HVAC - 02/01/22-03/01/22 | $23.22 |
| 4/1/2022 | ocifee | Utility - Processing Fee - 04/01/22-04/30/22 | $4.30 |
| 4/1/2022 | ocisew | Utility - Sewer - 02/01/22-03/01/22 | $43.53 |
| 4/1/2022 | ociwat | Utility - Water - 02/01/22-03/01/22 | $27.64 |
| 5/1/2022 | ocielect | Utility - HVAC - 03/01/22-04/01/22 | $15.79 |
| 5/1/2022 | ocifee | Utility - Processing Fee - 05/01/22-05/31/22 | $4.30 |
| 5/1/2022 | ocisew | Utility - Sewer - 03/01/22-04/01/22 | $51.67 |
| 5/1/2022 | ociwat | Utility - Water - 03/01/22-04/01/22 | $32.83 |
| 6/1/2022 | ocielect | Utility - HVAC - 04/01/22-05/01/22 | $4.86 |
| 6/1/2022 | ocifee | Utility - Processing Fee - 06/01/22-06/30/22 | $4.30 |
| 6/1/2022 | ocisew | Utility - Sewer - 04/01/22-05/01/22 | $58.42 |
| 6/1/2022 | ociwat | Utility - Water - 04/01/22-05/01/22 | $36.69 |
| 7/1/2022 | ocielect | Utility - HVAC - 05/01/22-06/01/22 | $1.70 |

| Date | Charge Code | Charge Description | Amount |
|---|---|---|---|
| 7/1/2022 | ocifee | Utility - Processing Fee - 07/01/22-07/31/22 | $4.30 |
| 7/1/2022 | ocisew | Utility - Sewer - 05/01/22-06/01/22 | $49.57 |
| 7/1/2022 | ociwat | Utility - Water - 05/01/22-06/01/22 | $31.41 |
| 8/1/2022 | ocielect | Utility - HVAC - 06/01/22-07/01/22 | $1.20 |
| 8/1/2022 | ocifee | Utility - Processing Fee - 08/01/22-08/31/22 | $4.30 |
| 8/1/2022 | ocisew | Utility - Sewer - 06/01/22-07/01/22 | $50.93 |
| 8/1/2022 | ociwat | Utility - Water - 06/01/22-07/01/22 | $31.45 |
| 8/24/2022 | ocielect | Utility - HVAC - 07/01/22-08/01/22 | $2.18 |
| 8/24/2022 | ocifee | Utility - Processing Fee - 09/01/22-09/30/22 | $4.30 |
| 8/24/2022 | ocisew | Utility - Sewer - 07/01/22-08/01/22 | $44.77 |
| 8/24/2022 | ociwat | Utility - Water - 07/01/22-08/01/22 | $26.51 |
| | | **Total** | **$1,255.39** |

| | | *Multi-Family Water Rates* | | *Multi-Family Sewer Rates* | |
|---|---|---|---|---|---|
| **Fiscal Year** | **Effective Date** | **Per Gallon** | **1,000 Gallons** | **Per Gallon** | **1,000 Gallons** |
| FY2021 | 10/1/2020 | 0.00529 | $5.29 | 0.01306 | $13.06 |
| FY2022 | 10/1/2021 | 0.00555 | $5.55 | 0.01422 | $14.22 |
| FY2023 | 10/1/2022 | 0.00655 | $6.55 | 0.01505 | $15.05 |
| FY2024 | 10/1/2023 | 0.00668 | $6.68 | 0.01564 | $15.64 |
| FY2025 | 10/1/2024 | 0.00078 | $7.78 | 0.01614 | $16.14 |

| Usage Month | Water Usage (Gallons) | Per Gallon Water Rate Charged | Per Gallon Water Regulatory Cap | Per Gallon Sewer Rate Charged | Per Gallon Sewer Regulatory Cap | Water Overcharges | Sewer Overcharges | Total Overcharges |
|---|---|---|---|---|---|---|---|---|
| JUL 2022 | 3,020 | $0.008778 | $0.005550 | $0.014825 | $0.014220 | $9.75 | $1.83 | $11.58 |
| JUN 2022 | 3,374 | $0.009322 | $0.005550 | $0.015095 | $0.014220 | $12.73 | $2.95 | $15.68 |
| MAY 2022 | 3,246 | $0.009675 | $0.005550 | $0.015270 | $0.014220 | $13.39 | $3.41 | $16.80 |
| APR 2022 | 3,809 | $0.009632 | $0.005550 | $0.015338 | $0.014220 | $15.55 | $4.26 | $19.81 |
| MAR 2022 | 3,348 | $0.009807 | $0.005550 | $0.015432 | $0.014220 | $14.25 | $4.06 | $18.31 |
| FEB 2022 | 2,820 | $0.009800 | $0.005550 | $0.015437 | $0.014220 | $11.99 | $3.43 | $15.42 |
| JAN 2022 | 3,255 | $0.009462 | $0.005550 | $0.015253 | $0.014220 | $12.73 | $3.36 | $16.10 |
| DEC 2021 | 3,078 | $0.010008 | $0.005550 | $0.015550 | $0.014220 | $13.72 | $4.09 | $17.82 |
| NOV 2021 | 3,632 | $0.008172 | $0.005550 | $0.014553 | $0.014220 | $9.52 | $1.21 | $10.73 |
| OCT 2021 | 3,545 | $0.009857 | $0.005550 | $0.015061 | $0.014220 | $15.27 | $2.98 | $18.25 |
| SEP 2021 | 3,539 | $0.009375 | $0.005290 | $0.014453 | $0.013060 | $14.46 | $4.93 | $19.39 |
| AUG 2021 | 4,289 | $0.009667 | $0.005290 | $0.014639 | $0.013060 | $18.77 | $6.77 | $25.55 |
| JUL 2021 | 1,404 | $0.009692 | $0.005290 | $0.014367 | $0.013060 | $6.18 | $1.84 | $8.02 |
| | | | | | **TOTALS** | **$168.31** | **$45.12** | **$213.43** |