# EXHIBIT 18

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAURA HETTINGER,
Plaintiff(s),
v.
BOZZUTO MANAGEMENT COMPANY,
Defendant(s).

Civil Case
No. 23-03687 JEB
Washington, D.C.
September 12, 2025

-----------------------------------------------------------

DISCOVERY HEARING HELD VIA ZOOM
BEFORE THE HONORABLE JAMES E. BOASBERG
UNITED STATES DISTRICT CHIEF JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S): Randolph T. Chen, Esquire
412 H. Street Northeast
Suite 302
Washington, D.C. 20002

F. Peter Silva, II, Esquire
Tycko & Zavareei, LLP
2000 Pennsylvania Avenue Northwest
Suite 1010
Washington, D.C. 20006

FOR THE DEFENDANT(S): Christina Araviakis, Esquire
Gallagher, Evelius & Jones,LLP
218 North Charles Street
Suite 400
Baltimore, Maryland 21201

REPORTED BY: Tammy Nestor, RMR, CRR
Official Court Reporter
333 Constitution Avenue Northwest
Washington, D.C. 20001
tammy_nestor@dcd.uscourts.gov

The following proceedings began at 1:19 p.m.:

THE COURTROOM DEPUTY: This Honorable Court is now in session. Chief Judge Boasberg is precising.

Good afternoon, Your Honor.

THE COURT: Let me just get the video.

THE COURTROOM DEPUTY: Bear with us one moment. Technical difficulties.

THE COURT: All right. Sorry about that.

Okay. Go ahead, Nikki.

THE COURTROOM DEPUTY: We are here on Civil Action 23-3687, Laura Hettinger versus Bozzuto Management Company.

Beginning with counsel for the plaintiff, please state your name for the record.

MR. CHEN: Good morning, Your Honor. This is Randy Chen and Peter Silva. I will be speaking today for the plaintiff.

THE COURT: Good afternoon.

MS. ARAVIAKIS: Good afternoon, Your Honor. Christina Araviakis on behalf of the defendant.

THE COURT: All right. Welcome to you as well.

Okay. So who is the proponent on the disputed issues?

MR. CHEN: It's the plaintiff, Your Honor.

THE COURT: Okay.

MR. CHEN: So there are essentially four issues, and

two of them, I think, can be lumped together. I will just kind of proceed with them in turn.

The first discovery dispute we have regards property management agreements. These are the contracts between Bozzuto and each property owner of each building in the portfolio. Bozzuto has produced one for NOVEL, which is the building at which plaintiff resides, but there's a dispute as to whether it needs to produce the agreements for the remaining buildings.

In our view, this is a pretty straightforward ask. The property management agreement spells out Bozzuto's relationship with the tenants including whether it can enforce the leases, whether it collects the fees, et cetera. So to us, this is a pretty foundational document that's necessary to determine Bozzuto's relationship with other class members, other absent class members, at other properties.

THE COURT: Okay. Ms. Araviakis.

MS. ARAVIAKIS: Yes, Your Honor. Your Honor, Bozzuto is not (unintelligible) a dispute that it is the property manager at the site. What the plaintiffs are seeking are dozens of pretty confidential documents that most of the information within the documents is unrelevant to -- is not relevant to this case. It contains proprietary business information.

Bozzuto is not disputing that it's a housing provider or a manager, so I'm not entirely sure the relevance for such a large production.

To the extent that plaintiffs are seeking information regarding revenue collection, I think that a more targeted discovery approach can be taken through a supplemental interrogatory or something along those lines instead of providing 50 or 60 property management agreements.

THE COURT: Because are there 50 or 60 buildings that were --

MS. ARAVIAKIS: That's correct, Your Honor.

MR. CHEN: Right.

THE COURT: All right. But if the fear is some proprietary information, I'm not sure what that would be, can't you give them redacted versions? In other words, it seems to me the agreements are going to be fairly relevant as to the common issues of fact and who can be in the class or not, right, Ms. Araviakis?

MS. ARAVIAKIS: Well, Your Honor, I don't think it's relevant to who -- who can be in the class because we are not disputing Bozzuto is managing these properties.

THE COURT: All right. So you are saying look -- well, I guess it could still be relevant. If the terms of the agreements are different from the ones at NOVEL, then maybe there are arguments that tenants of certain buildings

aren't in the class. I mean, if you want to stipulate that if anybody is in the class, everybody is in the class, I'm sure plaintiffs would accept that.

MR. CHEN: We would, Your Honor.

THE COURT: Right. Surprise.

But why isn't it relevant to determine what the tenants of which buildings should be in the class?

MS. ARAVIAKIS: Well, I guess -- so is Your Honor saying that it's relevant in how utilities are billed through the property management agreements and how the fees are collected?

THE COURT: Certainly the former.

MS. ARAVIAKIS: Well, I think that instead of producing such large documents across a portfolio, I think a more narrow, like, targeted discovery on that issue can be provided through written discovery --

THE COURT: Yeah --

MS. ARAVIAKIS: -- or at least a subset of property management agreements.

THE COURT: Well, if you want to stipulate that a certain form is used across multiple buildings, I'm sure they would accept that. But if you haven't done that, then I think they get them.

So you decide. Either you stipulate that this form we are producing covers buildings 1 through 15, this form

covers these buildings, that's fine. Otherwise, you have to give them up. If there's other -- you have to tell me what confidential business information -- I mean, maybe the amount that is paid to the property manager kind of thing, if you think that's confidential, that doesn't seem to be relevant to their case, you could redact that. But otherwise, I will order you to produce it.

Okay. Next issue, Mr. Chen.

MR. CHEN: This is issues 2 and 3 because they are related. We have propounded discovery asking for the contact information for absent class members, i.e., tenants who have applied for Bozzuto properties and paid an undisclosed fee.

We also have propounded discovery asking for the ultimate fees that each tenant did pay, so the application fee they paid up front as well as service fees and utility-related fees they paid after their lease started.

We get that this is a larger data ask, but you know, it's our understanding that it's kept in some kind of central repository that can be queried. This is highly relevant because it's plaintiff's burden to provide a damages model at the class cert stage.

And just to preview to explain why these fees are relevant is that, you know, our model is going to include a statutory damages component that the CPPA authorizes, but we

also need to calculate actual and treble damages because the CPPA says that a plaintiff is entitled to the greater of the two. So the application fee and those undisclosed utility-related fees are necessary to calculate that and build out that model.

The only other detail I want to add here is, you know, normally in, you know, a typical case, you know, I get it, oftentimes a sample is used to kind of build out a framework that can be populated after certification. Here, though, Bozzuto has declined to stipulate as to the actual size of the class. So you know, we know how many units each building has, but we don't know the actual number of class members.

So what that means is, you know, we get to cert and there's a dispute over individualized issues, whether or not that undermines predominance, I think we ultimately need either the size of the class or a full-blown damages model to assess whether or not an asserted individualized issue actually overwhelms the common one.

THE COURT: All right. Ms. Araviakis, I'm going to get to you in just a minute.

But why do you need the contact information now? In other words, why isn't that something that if the class is certified, just like in other class actions, then notification can go out to those members?

MR. CHEN: Sure. Yes. It bears on notice -- you know, I don't known if we feel terribly strongly that we get it an hour later. I do think there are efficiency elements. You know, here I think we are in a kind of unique posture where liability has actually been decided on a sub count, and you know, if we are able to certify a class, we would want to move expeditiously after certification to notice to moving for summary judgment as to the class, so --

THE COURT: I think it's premature unless, Ms. Araviakis, you want to provide that now.

MS. ARAVIAKIS: No, Your Honor. We agree that it's a premature ask.

THE COURT: Okay.

MR. CHEN: So the only thing I would ask on the addresses, Your Honor, is just some kind of stipulation that it's all housed somewhere and it can be produced. Like, I think we haven't been able, like --

THE COURT: We will deal with that down the road. In other words, if they say no, it's not, so then what? In other words, we are going to have to deal with that. If you get class cert, the notification issue will be teed up separately. But I think it's premature at this point.

MR. CHEN: Sure.

THE COURT: So then the question of the application fee and utility fees paid in order to calculate damages, but

I guess, does that -- why does that go to class cert? Why isn't that an issue that is also decided down the road, Mr. Chen?

MR. CHEN: So it's plaintiff's burden to provide a damages model at the certification stage because that damages model determines whether or not, you know, the Court can identify that the members in the class have been harmed, are entitled to damages.

Like, I'm happy to provide D.C. Circuit precedent that requires plaintiffs to provide that model. Like, it's my -- I understand that oftentimes a framework is provided and --

THE COURT: I mean, why isn't it enough to say, hey, all these people had to pay an application fee and a utility fee, which, I mean, they may deny that certain people had, but I don't think they are denying --

I mean, I trust, Ms. Araviakis, you are not denying that there were plenty of tenants who paid an application fee and also paid a utility fee, right?

MS. ARAVIAKIS: Right. That's correct, Your Honor.

THE COURT: So I think it seems like it's an undisputed issue, and I think it would be sufficient for you to say that, Mr. Chen. I think those cases, and I haven't read them recently certainly, but I think those cases question whether there has been any damage in setting forth

and creating a damages model. You have to show that there was actually damage to people.

Well, that's easy. You have, under your theory, you have done that. And they are not contesting that the fees were paid. They could have plenty of other objections to why they are not damaged, but again, I think that's premature. But I will hear you some more on that.

MR. CHEN: No, no, Your Honor. I think as long as it is not fatal to the predominance issue, I think we are very comfortable coming forward with some kind of framework.

I do think -- you know, this, I don't think, is an actually disputed issue, but the numerosity factor, it would help to kind of get some kind of stipulation from them as to how big the class actually is rather than just the unit count estimate.

THE COURT: I mean, I think that -- I don't think -- I mean, I assume that you are probably pretty close on numerosity just with NOVEL.

MR. CHEN: Sure.

THE COURT: And the fact that there are 50 other buildings, I don't see how that's an issue. Again, if you -- I trust the defense would stipulate that application fees and utility fees, maybe not at the same time and the same people, but were paid by tenants of the other Bozzuto buildings, Ms. Araviakis, correct?

MS. ARAVIAKIS: Your Honor, there are very small, select -- I believe it might only be one building that doesn't charge utilities separately. So we couldn't stipulate as to all, but --

THE COURT: Sure. But the point is I trust you are not contesting numerosity on that basis?

MS. ARAVIAKIS: Not on the basis of the payment of the fees, Your Honor.

THE COURT: All right. So I think then I agree with the defense that that's also premature.

Next, Mr. Chen.

MR. CHEN: Last item, Your Honor. This is a request we have. It is our understanding that Bozzuto has reached settlement with Conservice. We have requested the settlement because we think it's relevant to the water overcharge claim.

For example, to the extent any settlement includes some term requiring rates to be capped at a regulatory maximum or provide for some other remedial billing changes, I think that sheds light on the liability issue as to water overcharges, at least as to the feasibility of, you know, of policies that could be in place to, you know, guard against those issues. And they have -- Bozzuto has declined to produce the settlement agreement.

THE COURT: Why isn't that a remedial measure that

wouldn't be admissible?

MR. CHEN: Under remedial measure, it is not admissible to prove liability, but it is admissible to prove feasibility of a particular protected measure, I believe. So it would go to that, Your Honor.

THE COURT: I will hear you, Ms. Araviakis.

MS. ARAVIAKIS: Your Honor, I think on the remedial measure issue, we would oppose producing this. We were originally -- we weren't -- we didn't have issue with producing the Conservice settlement agreement. There's nothing really relevant or nothing that plaintiff's counsel is seeking, but we did have to seek permission from Conservice before producing the agreement and then inform them we would only produce it pursuant to a court order.

So if the purpose of the agreement is to determine whether there are remedial measures taken, then I would oppose to the production of the agreement on that basis.

THE COURT: If, as Mr. Chen says, it's feasibility and you are happy to produce it -- maybe happy is an exaggeration -- you are willing to produce it with a court order, then maybe that's the simplest way to proceed. Ms. Araviakis?

MS. ARAVIAKIS: That works for the defendant, if we have a court order.

THE COURT: All right. So, Mr. Chen, what I am going

to do is issue a minute order that memorializes what I just said regarding the property management agreements and the settlement agreement.

And, Ms. Araviakis, can you produce all that in a week?

MS. ARAVIAKIS: The settlement agreement, we definitely can. The property management agreements, we may need a little bit more time to produce.

THE COURT: I will give you ten days, which is until --

MS. ARAVIAKIS: Okay.

THE COURT: That's the 22nd. I will say the settlement agreement by the 17th, and the property management agreements by the 22nd.

MS. ARAVIAKIS: That works.

THE COURT: Mr. Chen, that covers it?

MR. CHEN: That covers the waterfront, Your Honor.

THE COURT: Ms. Araviakis?

MS. ARAVIAKIS: That's all from the defendant, Your Honor. Thank you.

THE COURT: All right. And I expect to have an order out next week on this interlocutory appeal question. Okay?

MS. ARAVIAKIS: Thank you, Your Honor.

THE COURT: Thanks, everyone. Have a nice weekend.

(The hearing concluded at 2:16 p.m.)

\- - -

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

9/17/25 s/ Tammy Nestor
Tammy Nestor, RMR, CRR
Official Court Reporter
333 Constitution Avenue NW
Washington, D.C. 20001
tammy_nestor@dcd.uscourts.gov