Planet Depos
We Make It Happen™

# Transcript of Lauren Pair, Corporate Designee

**Date:** November 9, 2026
**Case:** Harris -v- Kettler Management, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

**Exhibit 1**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

----------------------------------X

CRYSTAL HARRIS, :

Plaintiff, :

v. :Civil Action No.:

KETTLER MANAGEMENT, INC., :2026-CAB-000177

Defendants. :

----------------------------------X

Deposition Of LAUREN PAIR

Held at Planet Depos

Washington, D.C. 20036

Monday, November 9th, 2026

10:00 a.m. (EST)

Job No.: 656404

Pages 1 - 92

Reported by: Stefanie Towns, CCR

Deposition of LAUREN PAIR, Held in Washington, D.C.:

Pursuant to agreement, before Stefanie Towns, Notary Public in and for the District of Columbia.

A P P E A R A N C E S

ON BEHALF OF PLAINTIFF:
RANDOLPH CHEN, ESQUIRE
MIGLIACCIO & RATHOD, LLP
412 H Street, N.E.
Suite 302
Washington, D.C. 20002
202.470.3520
rchen@classlawdc.com

ON BEHALF OF DEFENDANT KETTLER:
RYAN STEINBERG, ESQUIRE
GALLAGHER, LLP
650 S. Exeter Street
Suite 1200
Baltimore, Maryland 21202
410.951.1421
rsteinberg@gallagherllp.com

A P P E A R A N C E S (Continued)

ON BEHALF OF D.C. DEPARTMENT OF HOUSING
AND COMMUNITY DEVELOPMENT:
MICHAEL, SPENCER, ESQUIRE
KEITH ANDERSON, ESQUIRE
LAKEILA STEMMONS, ESQUIRE
1909 Martin Luther King Jr. Avenue S.E.
Washington, D.C. 20020

C O N T E N T S


| EXAMINATION OF LAUREN PAIR | PAGE |
|---|---|
| By Mr. Steinberg | 6 |
| By Mr. Chen | 56 |


E X H I B I T S

(Attached to the Transcript.)


| PAIR DEPOSITION EXHIBITS | | PAGE |
|---|---|---|
| Exhibit 1 | Subpoena | 10 |
| Exhibit 2 | Second Amended Notice | 10 |
| Exhibit 3 | Housing Provider's Disclosures | 20 |
| Exhibit 4 | Instructions | 23 |
| Exhibit 5 | Pamphlet | 43 |
| Exhibit 6 | Disclosure to Tenants | 46 |

Thereupon,

LAUREN PAIR,

called as a witness, and having been first duly sworn, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR THE DEFENDANT KETTLER MANAGEMENT, INC.

BY MR. STEINBERG:

Q. Good morning.

A. Good morning.

Q. My name is Ryan Steinberg. I am an attorney with Gallagher, LLP. I represent Kettler Management, Inc., which I'll refer to as Kettler going forward. We represent them in a punitive class action that was brought by a tenant named Crystal Harris. Randy Chen, who is to my left represents Ms. Harris. This is a punitive class action that relates to utility billing practices at D.C. properties managed by Kettler.

Now, Ms. Pair, have you ever been deposed?

A. Yes.

Q. Roughly how many times?
A. About three, maybe four.
Q. And were those third party depositions or were you part of a party in that litigation?
A. I was a party.
Q. What was the most recent example?
A. About 26 years ago.
Q. And have you ever given trial testimony?
A. Yes.
Q. When was the most recent time?
A. During Covid. So somewhere between 2020 and 2022. I don't remember the exact dates.
Q. And who were the parties in that trial?
A. They were the D.C. government employees.
Q. What was the trial about?
A. It was about a -- actually let me take that back. Trying to think. No. No. I did testify. It was about -- it was a criminal matter in U.S. District Court for fraud -- for bribery, bribery and fraud.
Q. And what were you asked to give testimony about?

A. About -- gosh, you're asking me to remember. As I can recall, it had to do with how a unit that I formerly managed, conducted certain transactions.
Q. And what was alleged to be elicit in how they were managing those transactions?
A. There was -- I had an employee who was taking bribes from a real estate developer, and the FBI agent was also -- there was also an FBI agent, who was also implicated taking bribes from the developer, and the trial was for the developer and another cohort.
Q. Do you know what the resolution of that trial was?
A. I believe the developers received -- they were -- jail time. They were imprisoned. And the District of Columbia employee took a plea deal, so I don't know what happened with her.
Q. So I'm going to be asking you a series of questions. Please answer truthfully to the best of your ability. It's also important

that you answer with a yes, no, not just a head nod or anything like that, because the cord reporter to your left is typing down your answer.

If you don't understand a question, just tell me. If you answer, I will assume you understood.

Your counsel to your right might object to certain questions. Mr. Chen, my left, might object to certain questions, but unless counsel instructs you not to answer, you should go ahead and answer the questions afterwards.

If you need a break, just let me know, just as long as no question is pending.

So I'm going to ask that you look in the binder, which is right there, and I did explain off the record that the numbers in the bottom right are mislabeled in terms of the numbers. But this is -- if you could please look at 2 and 3 in the tabs here. You can look at 2 first, please.

MR. STEINBERG: So we will mark this as Exhibit 1.
(Exhibit 1 was marked for identification and is attached to the transcript.)
Q. Have you seen this document before?
A. Yes.
Q. And is it your understanding that you're here to testify on behalf of who exactly?
A. I believe that, as I recall from looking at the subpoena, your client is the one that subpoenaed to testify, Kettler Management.
Q. And are you here to testify on behalf of Department of Housing and Community Development?
A. Yes.
Q. So you're here to testify in your personal capacity?
A. No.
MR. STEINBERG: I would ask you now to go to Tab 3, which we will mark as Exhibit 2.
(Exhibit 2 was marked for identification and is attached to the transcript.)

Q. And I'm going to ask you if you're familiar with this document. And you're welcome to flip through the multiple pages.
A. Yes, I've seen this document before.
Q. So did you review it before today?
A. Yes.
Q. And are you familiar with the 9 listed matters for examination --
A. Yes.
Q. -- in 4 and 5?
A. Yes.
Q. Is it your understanding that you're here to testify on all 9 matters?
A. Yes.
Q. Are you aware the Department of Housing Community Development is refusing to provide testimony on any of these topics?
A. Not to my knowledge.
Q. And what steps did you take to prepare for today's deposition?
A. I read through your subpoena including the -- the first notice of deposition and the second

amended notice of deposition. I read the definitions and instructions and to -- to come up with responses for the matters for examination. I also looked at our materials for the period -- the class period that you have defined in the definitions and instructions on Page 3.
Q. And did you review any databases?
A. Yes.
Q. Which databases?
A. We have a rent controlled database that was released to the public on June 2nd, 2025; and I checked to see if the properties that I could find, because I can't -- I don't think there were addresses but I did try to find ones owned by Kettler or managed by Kettler if I could in our rent control database.
Q. And did you find examples of properties owned by Kettler?
A. The only one that I could find readily was -- no, wait a minute. That's not coded. That's a different coding. I can't -- I don't think

so. I need specific property addresses.
Q. Did you review any email accounts in preparation for today?
A. Yes, I did a general search on our -- we have a general mailbox set up for my division, and I looked for Kettler, and I looked for some of the other parties that are -- I think, for example, Studebaker, Conservice, that are named in your subpoena, but I didn't come up with anything.
Q. So you found no examples for Studebaker, Conservice or Kettler?
A. No.
Q. Did you find any examples for Crystal Harris?
A. I don't think I looked up Crystal Harris.
Q. Did anybody else review those databases on your behalf?
A. No.
Q. Did anybody else review any email accounts on your behalf?
A. No.
Q. In preparation for today, did you speak with

anyone at the Office of the Tenant Advocate?
A. No.
Q. Did you speak with anyone at the Rental Housing Commission?
A. No.
Q. Did you speak with anyone at the Office of Attorney General's Consumer Protection Section?
A. No.
Q. Or the Office of Administrative Hearings?
A. No.
Q. Ms. Pair, what's your highest level of education?
A. I'm an attorney.
Q. And what year did you graduate law school?
A. 2004.
Q. And are you a member of any bars?
A. Maryland and the District of Columbia.
Q. Which bar did you obtain first?
A. Maryland.
Q. Was that immediately after you graduated law school?

A. I graduated in the winter. So I finished in the winter so I took the spring bar.
Q. And then how many years after that did you obtain D.C. bar membership?
A. Maybe the next year, 2005, maybe.
Q. And what is your position within the Development of Housing and Community Development?
A. I'm the rent administrator.
Q. Were you appointed to that position?
A. Yes.
Q. When were you appointed to that position?
A. 2017.
Q. Have you ever been reappointed?
A. Yes.
Q. When were you reappointed?
A. Every three years.
Q. So does that mean you've been reappointed twice?
A. Four times.
Q. Four times?
A. Just my fourth time.

Q. You were just reappointed?
A. Yes.
Q. This year?
A. Yes, in June.
Q. Did you have any prior roles at the Department of Housing Community Development?
A. Yes.
Q. What were those roles?
A. I was the rental conversion and sale administrator. I ran the rental conversion and sale division.
Q. How many years were you in that position?
A. Eleven.
Q. Are there any individuals that you report to within the Department of Housing Community Development?
A. Yes.
Q. Who are those individuals?
A. The director.
Q. Are there any other individuals?
A. No.
Q. And, roughly, how many employees would you

say report to you?
A. Ten.
Q. And what are the functions of the Rental Accommodations Division?
A. The Rental Accommodations Division we administer the Rental Housing Act of 1985, which regulates all rental housing in the District of Columbia and includes the rent stabilization program.
Q. Is the Rental Accommodations Division responsible for rental unit registration?
A. Yes.
Q. Is it responsible for claims of exemption?
A. Yes.
Q. Is it responsible for publishing disclosure forms under the Rental Housing Act?
A. Yes.
Q. Does that include Form 3?
A. Form 3, which is the disclosure -- it's the tenant disclosure, yes.
Q. That's correct. Yes. Are you responsible -- well, let me rephrase that. Is the Rental

Accommodations Division responsible for answering questions from the public through the Housing Resource Center?
A. Yes.
Q. Do you or your staff have any role in determining the contents of the disclosure forms?
A. Somewhat. We do it -- we have to do it with subject to the approval of the Rental Housing Commission, so we work with them.
Q. And do you personally approve disclosure forms that RAD publishes?
A. I don't personally approve them. I mean I may draft them and have input in drafting them, but all disclosure forms I've done with the authorization of the Rental Housing Commission.
Q. And do you have to publicly publish those drafts before the Rental Housing Commission approves them?
A. No.
Q. And what exactly is the relationship between

the Rental Accommodations Division and the Rental Housing Commission?

A. The Rental Accommodations Division, you know, we are -- we, as I said, administer the -- administer the act. The Rental Housing Commission is an appellate body that hears decisions that come out of the rental accommodations -- if the Rent Administrator issues a direct decision, an administrative decision, it can go up on appeal to the Rental Housing Commission. The Rental Housing Commission also has appellate authority over the Office of Administrative hearings. So petitions that go through that particular route, can also be appealed to the office of -- sorry, the Rental Housing Commission.

Q. But the Rental Housing Commission does not publish the disclosures forms, correct?

A. No, the rent administrator publishes the forms, with the approval of the Rental Housing Commission.

Q. And what is the relationship between the Rental Accommodations Division and the Office of the Tenant Advocate?
A. We're co-agencies. Basically because we're regulators we can't advocate on behalf of tenants, we often receive tenants that have questions, concerns, complaints, and we will refer them to -- or may need legal representation and we refer them to the Office of the Tenant Advocate.
Q. And which office publishes the Tenant Bill of Rights?
A. Office of Tenant Advocate.
Q. Does the Rental Accommodations Division have any input into the Tenant Bill of Rights?
A. No.
MR. STEINBERG: So, now, I'm going to ask you to look at Form 3, which is Tab 5 in this binder. And I'm going to mark this as Exhibit Number 3.
(Exhibit 3 was marked for identification and is attached to the transcript.)

Q. Are you familiar with this form?
A. Yes.
Q. Is this a true copy of the form that the Rental Accommodations Division publishes?
A. Appears to be, yes.
Q. Do you have any reason to believe that it is not a true copy?
A. No.
Q. Do you see on the bottom right where the footed reads RAD form 3 revised 10/22, what does that mean?
A. That means that we made revisions in October of 2022 to reflect changes in the regulations that were recently updated in 2021, and probably -- I don't recall with specificity, but probably changes to the Rental Housing Act that were enacted, as well.
Q. And this is the current version that we're looking at?
A. Correct.
Q. So it has not been revised since October 2022?

A. No.
Q. And were you involved in the October '22 revision?
A. Yes.
Q. What was your role in that revision?
A. We provided -- I mean you know, we negotiated, for lack of a better word with the Rental Housing Commission about the contents and the Rental Housing Commission had the final word on what the content of the form would be.
Q. And who within the Rental Accommodations Division drafts and approves changes to the form?
A. I -- the rent administrator in consultation with the two attorneys that are on my staff.
Q. Did you approve the current version?
A. I don't approve them. All I can do is submit it to the Rental Housing Commission and they approve the final form.
Q. Is there any sort of public notice and comment period?

A. For forms?
Q. Yes.
A. No.
MR. STEINBERG: I'd like you to look at Tab 4 now. Mark this as Exhibit 4.
(Exhibit 4 was marked for identification and is attached to the transcript.)
Q. And do you recognize this exhibit?
A. Yes.
Q. What exactly is this exhibit?
A. They're instructions that we envisioned, you know, someone who's completing an RAD Form 3, the instructions, the accompanying instructions, to give them guidance in completing the form.
Q. And do you see on the bottom right where the footer read RAD Form 3 instructions 10/22?
A. Correct. Yes.
Q. Have these instructions changed since October 2022?
A. No.
Q. And do you see where the instructions state

use of this RAD Form 3 is required effective January 31st, 2023?
A. Yes.
Q. What form are housing providers expected to use before January 31st, 2023?
A. Another version of this of the RAD Form 3. I don't think we had instructions before that date.
Q. But before that date was it mandatory to use Form 3?
A. Yes.
Q. Okay. So we just looked at the instructions to Form 3 and Form 3 itself --
A. Yes.
Q. -- and neither has changed since October of 2022?
A. Not that I can recall.
Q. To your knowledge is there anybody else within the Rental Accommodations Division who would believe that there has been a different version in effect?
A. No.

Q. If we can turn back to Form 3, so is there any field or box on this form that relates to utilities?
A. I don't believe so. No.
Q. Is there any box or field on this form that relates to utility charges?
A. No.
Q. Is there any box or field on this form that relates to sub-metering?
A. No.
Q. Is there any box or field on this form that relates to a utility billing or administrative fee?
A. No.
Q. Is there any box or field on this form that relates to a service fee?
A. No.
MR. CHEN: Objection. Do you want to explain -- do you want to define a service fee, so we all understand what you're talking about?
Q. So I will just read the service fee that

was -- the definition of a service fee that was in the attachment to our notice of deposition which says, that the term service fee means a mandatory monthly administrative or billing fee, assessed on a tenant in connection with utility service of the kind described in the complaint as a monthly administrative billing fee. The definition I just read of service fee, is that how you understand the term service fee to mean?
A. Not in general, but for this -- for this deposition, yes.
Q. So based on that definition of service fee, is it correct that there is no box or field on Form 3 that relates to service fees?
A. Correct.
Q. Does the Rental Accommodations Division publish any other notice form for landlords to use in disclosing information to applicants?
A. Yes.
Q. What is it?

A. There are two other disclosure forms. I don't remember the exact titles off the top of my head. One is RAD Form 4, and then the other one is RAD Form 5. And the Form 5 is more to give tenants -- tenants are entitled to have all of -- look at this information once a year and tell tenants where they can locate the information. That much I remember.
Q. And what is Form 4?
A. Form 4, I believe, is the -- is it the rent history? It's the rent history. So the rent history, you know, for the past three years, and whether the rental accommodation is exempt from rent control.
Q. And what is the consequence if a D.C. landlord fails to provide Form 3 to a perspective tenant?
A. Well, it can be challenged. The tenant can file a tenant petition, because they didn't receive the information that they're entitled to by the statute.

Q. And what kind of consequence would a landlord face based on that position?
MR. CHEN: Objection. Can we just clarify whether we're talking about rent controlled units or non rent controlled units or both?
Q. Let's start with rent controlled units. What is the consequence if a D.C. landlord fails to provide Form 3 to a perspective tenant?
A. The tenant could file a tenant petition which we would transfer to the Office of Administrative Hearings and I imagine there would be -- could be rollbacks on rent or -- or other penalties that are -- that are outlined in the Rental Housing Act.
Q. Do you have any knowledge of how often those petitions result in a consequence like a rent rollback?
A. No, I don't.
Q. Now, for non rent controlled units, what is the consequence if a D.C. landlord fails to provide Form 3 to a perspective tenant?

A. I'm not sure. Again, I mean it's a violation of the Rental Housing Act, because tenants are entitled to the information, so I'm not sure what -- I haven't seen that -- contemplated that.
Q. Are there any sorts of exemptions that would title either a rent control or non rent controlled landlord, that would entitle them to not have to file or to provide Form 3?
A. They don't file with rental -- they don't file -- they don't file a Form 3 with the Rental Accommodations Division. Properties that are rent controlled are required to file the Form 4, which you don't have in your exhibits, and so, I'm sorry -- I'm sorry, the question again?
Q. Are there any landlords whether rent controlled or non rent controlled that are exempt from having to provide Form 3 to tenants?
A. No.
Q. So I'd like you to turn to Box C of Form 3.

It's on the bottom of Page 2.
MR. SPENCER: Which tab are you on?
MR. STEINBERG: We're in 5. Tab 5.
Q. Do you see where Box C asks for one figure. It says, the current monthly rent or rent charge for rental unit is blank?
A. Mm-hmm. Yes. I'm sorry.
Q. Do you see where the instructions for that blank -- and sorry you can turn back to the instructions for this question state only fill in the current monthly rent charge for the rental unit. This is on the second page.
A. Where are you looking?
Q. It's on the second page. It's the top bullet point under Box C.
A. Okay.
Q. Do you see where it says that?
A. Yes, the monthly rent charge, the current monthly rent charge.
Q. So is there anything in this instruction that tells the house provider to add utility charges to that number?

A. No.
Q. Is there anything in that instruction that tells the housing provider to add utility billing to that number?
A. No.
Q. Is there anything in that instruction that tells the housing provider to add an administrative fee to that number?
A. Administrative fee or the service fee?
Q. Let's say a service fee. Is there anything within that instruction --
A. Okay.
Q. -- that tells the housing provider to add the service fee?
A. Service.
Q. I'm getting myself confused.
A. Okay.
Q. For the record I'm just going to ask it one more time.
A. Okay.
Q. Is there anything in that instruction that tells the housing provider to add the service

fee to that number?
A. No.
Q. Okay. Do you know why the instruction doesn't say anything to that effect?
A. Because it's not within our authority to tell a housing provider what constitutes rent, a monthly rent, or a rent charge, monthly rent charged. We don't give that instruction.
Q. So the number put into that box should not include utility billing or any service fee?
A. I don't know. That's not --
MR. CHEN: Objection. Calls for a legal conclusion.
Q. When you say, I don't know, what do you mean by that?
A. We don't -- the Rental Accommodations Division, as I said before, does not -- does not -- we don't tell a housing provider what constitutes rent. It's up to the housing provider to calculate their own rents. It's not regulated by the statute. We don't administer that.

Q. To your knowledge has a Rental Accommodations Division ever received a complaint from a tenant that a housing provider was inaccurately listing the amount of rent charged on Form 3?
A. I'm sure we have. I don't know off the top of my head. We have hundreds of tenant petitions every year, so I'm sure in that universe of tenant petitions, someone has claimed that the rent charge was incorrect.
Q. But have you ever personally reviewed any complaint like that?
A. No.
Q. So from the Rental Accommodations Division's perspective, the housing provider has discretion about whether to include utility billing or service fees within that number for rent charged?
A. I don't know.
MR. CHEN: Objection. Calls for legal conclusion.
A. I don't know.

Q. But the Rental Accommodations Division does not have a position either way. Is that correct?
A. We don't give technical advice as to what should comprise a monthly rent or a rent charge, monthly rent charged. We don't give guidance on that. It's not within our authority. We don't have regulatory authority or statutory authority to do so.
Q. But the Rental Accommodations Division has never expressed -- affirmatively stated that the amount rent charged should include utility fees or service fees?
A. No. No.
Q. So I'd like to go back to Form 3 and Box C, and this is starting on the bottom of Page 2. So you'll see that there are a list of different fees that you have to fill out in Box C on Page 2 starting onto Page 3. You're in the right part if --
A. Okay.
Q. -- you turn the page.

A. Oh, you want me to turn the page. Okay. Yes, I see.
Q. Is this a complete list of fees and other costs that should be added in Box C?
A. I don't know if it's a complete list. It's a list that's -- that's -- these were provisions that were pulled from the -- directly from the Rental Housing Act. So when you say should, I mean I don't know what a comprehensive list would look like. But by statute, for example, in the Rental Housing Act, there is a required disclosure about non refundable applications fees, for example, or the security deposit. So I don't know if this would be a complete list, but it's what the statute requires us to have on the form.
Q. Are there any -- is there anything within the statute that is required to be listed that is not listed here in Box C?
A. I don't know.
Q. Are there any specific fees or costs that come to mind that are not listed here?

A. No.
Q. And is it correct that Box C contains no blank checked box or instruction to add utility charges anywhere?
A. No, it does not.
Q. Is there any blank check box or instruction within Box C to add anything about sub-metered costs?
A. No.
Q. Is there any blank check box or instruction within Block C to add anything about allocated utility charges?
A. No.
Q. Is there any blank charges or instruction within Box C -- excuse me Box C to add anything about a utility billing fee?
A. No.
Q. Is there anything within Box C in terms of a blank check box or instruction to add anything about a service fee?
A. No.
Q. Is there anywhere else in Form 3, its

instructions or the required attachments listed on Page 3 that ask a housing provider to disclose utility charges for a utility billing fee also known as a service fee?
A. No.
Q. To your knowledge has the Rental Accommodations Division ever told any housing provider that utility expenses must be disclosed on this form?
A. Not to my knowledge.
Q. To your knowledge has the Rental Accommodations Division ever told any housing provider that a service fee must be disclosed on this form?
A. Not to my knowledge.
Q. Do you know why the Rental Accommodations Division listed the application fee and security deposit as other costs but not utility charges?
A. As I stated before, it's because it's in the statute or in the regulations. Utility fees to my knowledge are not in the statute.

Q. To your knowledge are service fees in the statute?
A. No.
Q. Do you see on the top of Page 3 on Form 3 where it states that rent charge for rent stabilized unit may be increased no more than once every 12 months?
A. Yes.
Q. Is there any published guidance or rental accommodations division that addresses whether variable utility expenses which vary from month to month could be construed as a rent increase?
A. No.
Q. Are you aware if the Rental Accommodations Division requires a notice to tenant of rent adjustments when a tenant's utility bill changes?
A. No.
Q. Do you see where Form 3 states deposit must be less than or equal to the first month's rent charge?

A. Yes.
Q. Does the Rental Accommodation Division compute that gap -- that -- excuse me, that cap by adding utility charges or a service fee to the base rent?
A. No.
Q. Do you see where Form 3 states that a rent surcharge is not included as part of the rent charged?
A. On this form?
Q. It's Form 3. It's actually on Page 2.
A. Yeah. Yes.
Q. So is it correct that the Rental Accommodations Division recognizes that some monthly charges paid to the housing provider are not rent charged?
A. Rent charged applies to rental accommodations that are subject to rent stabilization. And monthly rent is for exempt properties. So a rent charge would be only be for a property that is rent stabilized.
Q. But for a rent stabilized unit, there are

certain costs paid to the housing provider by the tenant that are not part of rent charge. Is that correct?
A. I don't know.
Q. Is it correct that the Rental Accommodations Division does not treat separately billed utility charges or a service fee as rent or rent charged for registration purposes?
A. We don't -- we don't make any kind of assessment of what monthly rent -- or what constitutes -- what goes into monthly rent or a monthly rent charged. We take at face value what is given to us on disclosure documents and notices.
Q. And that answer you just provided, that also applies to rent increase limits?
A. The rent increase limits are regulated by the statute. They're linked to -- for rent stabilized properties, they're linked to an index that's published by the Rental Housing Commission annually. For market rate or exempt units, we don't -- there's no --

there's no -- the only -- there's nothing about the amount, only just to ensure that the tenants have 60 days advanced notice. We don't make any kind of assessment as to what goes into the monthly rent or the monthly rent charged.

Q. So you don't make any kind of assessment about whether utility costs or within that number of rent charged?

MR. CHEN: May I just object briefly on this. You are using the term utilities and service fee a lot, are you referring -- I think it would be helpful to understand what you're talking about. Are utilities, utilities that are paid to D.C. Water or Pepco, or are they utilities that are paid directly to the landlord? Like which one are you talking about here?

MR. STEINBERG: I'm not going to clarify that. I think it's however the witness interprets it.

MR. CHEN: I think we need to define it

clearly, right? Like those are different things. If someone is paying utilities -- I don't whether the witness is contemplating when we're talking about utilities, whether we're talking about a utility bill paid to Pepco or whether it's utilities charged by the landlord paid to the --

MR. STEINBERG: Let's do this.

Q. What is your interpretation when I'm referring to utilities, what does that mean to you?

A. Utilities means that what's charged -- charged by the utility company to operate the housing accommodation. I don't know how that cost is passed on to the tenant.

Q. From the perspective of the Rental Accommodations Divisions, is there any meaningful distinction between whether the tenant is paying directly to the utility company or the landlord as acting as a pass through?

A. We don't make any kind of assessment about

the utility charges. We're not involved in that. We don't regulate it.
Q. Has the Rental Accommodations Division in any public communication from January 9th, 2023 to today, stated that utility charges are part of rent?
A. No, not to my knowledge.
MR. STEINBERG: I'd like you to turn to the 6th divider in this binder, which I believe is Exhibit Number 5. We'll mark it as Exhibit Number 5.
(Exhibit 5 was marked for identification and is attached to the transcript.)
Q. Are you familiar with this document?
A. Yes.
Q. What is this document?
A. This is a pamphlet that the Rental Accommodation -- or the rent administrator is required to publish. It's statuary. It's a statutory requirement, about providing, you know, a summary or general information about rent control in the District of Columbia.

Q. Did you write or approve the current version?
A. I participated in drafting it, yes.
Q. Does the Rental Accommodation Division have final authority over the publishing of this document?
A. Yes.
Q. Does the Rental Housing Commission play any role in that process?
A. Not on this document, no.
Q. Is there anywhere within this document that it states that utilities, utility charges, or a service fee are part of rent?
A. No.
Q. To your knowledge has the Rental Accommodations Division stated in any frequently asked questions, fact sheets, or bulletins that utility charges, utilities, or a service fee are part of rent?
A. Not to my knowledge, no.
Q. Has a Rental Accommodations Division stated that utilities, utility charges, or service fee in any kind of training material or

presentation that was given to landlords,
tenants, or trade groups has it stated that
utilities -- utilities or utility charges are
a service fees or a part of rent?
A. Not to my knowledge, no.
Q. Is there any call script or guidance used by
the Housing Resource Center in which
employees are instructed to say that
utilities, utility charges, or a service fee
are a part of rent?
A. No.
Q. To your knowledge is there anywhere on the
Department of Housing Community Development
website or the sub-page for the Rental
Accommodations Division where it is stated
that utilities, utility charges, or a service
fee are a part of rent?
A. No.
Q. If a tenant calls the Housing Resource Center
and asked whether a service fee is part of
rent, what is the staff instructed to say?
A. We would instruct them to call the Office of

the Tenant Advocate. We don't give any -- we have no authority, statutory, regulatory authority, about what goes into a rent, question of rent. So if you're disputing the rent, we would refer them to OTA.
Q. Is that instruction written down anywhere?
A. I don't believe so.
Q. Do you have any knowledge of what the Office of the Tenant Advocate would tell that tenant?
A. No.
Q. Are you familiar with the disclosures listed in 42-3502.22B and this is the first divider in the binder, if you'd like to look.
MR. STEINBERG: And we can mark this as Exhibit Number 6.
(Exhibit 6 was marked for identification and is attached to the transcript.)
A. Yes, these are the elements that go into RAD Forms 3, 4 and 5.
Q. And in Part B of this statute, which begins on that first page that I've printed out,

does the Rental Accommodations Division have a position on when the disclosures listed here must be made?
A. I don't think it's a question of -- it's in the -- I believe it's in the regulations. It's in the DCMR.
Q. Do you have any knowledge what the DCMR says on this point?
A. Off the top of my head, I think that -- I think that forms 3 and 4 must be given to the tenant -- given to a perspective applicant; whether it's given before they sign the lease or at a lease signing, I couldn't tell you.
Q. To your knowledge has the Rental Accommodations Division ever provided guidance on when those disclosures must be made?
A. I can't recall. I don't know. It may be in the instructions. It's on the last page of the instructions.
Q. Mm-hmm.
A. For Form 3.

Q. Are you referring to the paragraph that starts with service on tenants?
A. Yes.
Q. So is it your understanding that this instruction instructs landlords to provide a copy of Form 3 to tenants within 30 days of when the tenant's lease begins?
A. Yes. That's in the regulations.
Q. So from a perspective of the Rental Accommodations Division, would a landlord be in compliance with the requirements of Form 3 if they provide it within 30 days of the tenant's lease beginning?
A. Yes.
Q. To your knowledge has a Rental Accommodations Division ever found a housing provider to be out of compliance because Form 3 was delivered after the application rather than at the time of application?
A. The Rental Accommodations Division wouldn't make that determination. That would be the Office of Administrative Hearings through a

tenant petition.
Q. Do you know if a tenant has ever contacted the Rental Accommodations Division asking for guidance on when Form 3 must be disclosed?
A. I don't have personal knowledge, but it sounds within the realm of something that a -- a question that we could receive.
Q. Would somebody at the Housing Resources Center when they field a call from the tenant asking when Form 3 must be disclosed, what sort of guidance would that employee provide to the tenant?
A. I don't know. It would depend on the question.
Q. Are you aware if anyone outside the Rental Accommodation Division has ever asked the Rental Accommodations Division to add utilities, utility charges, or service fees to Form 3?
A. Not that I'm aware of.
Q. Has the Rental Accommodation Division ever issued an advisory opinion, an interpretive

letter, or written guidance on whether a landlord must disclose a utility charge utility or service fee as part of rent on Form 3?
A. Not during the class period that you specified in the subpoena.
Q. So there's been no sort of advisory opinions, interpretive letters, or written guidance to that point since January 29th, 2023?
A. No.
Q. Does the Rental Accommodations Division issue any note notices of violation?
A. We issue notice of noncompliance for registrations or for -- I'm sorry, not for registrations. Excuse me. Let me take that back. Notices of noncompliance -- actually notices of noncompliance for registrations if someone -- if a housing provider has failed to register and also void orders for eviction notices.
Q. Do any of those notices of noncompliance relate to noncompliance with Form 3?

A. No.
Q. To your knowledge has a Rental Accommodations Division taken any enforcement action against any housing provider for failing to disclose a utility charge, utilities, or service fee as part of rent on Form 3?
A. No.
Q. Prior to this deposition has the Rental Accommodations Division been asked to take a position in this case or in any other litigation about utilities, utility charges, and service fees?
A. Not in a case, no.
Q. Are there any other examples where it's been asked to take a position?
A. Not a position, but we've participated in review of legislation.
Q. What are those pieces of legislation?
A. I don't know off the top of my head. It was some time ago.
Q. Since before January 9th, 2023 is that what you're referring to?

A. It could be. I don't remember.
MR. STEINBERG: We can go off the record.
(Discussion held off the record.)
Q. So I just want to confirm earlier you were saying that when a tenant or an applicant complains that they were not told about a utility charge, or a utility service fee at or before application that RAD's practice would be to refer that tenant to the Office of the Tenant Advocate?
A. Correct.
Q. Would RAD -- Rental Accommodations Division, ever refer any complainants to the Office of the Attorney General?
A. I don't -- I mean, perhaps, but that's not our typical policy, no.
Q. In your experience has Rental Accommodations Division ever referred a complainant to the Office of the Attorney General?
A. I have personally.
Q. Did that complainant -- complaint have

anything to do with utilities, utility
billing fees, or service fees?
A. No.
Q. Compared with other -- compared with other
disclosure complaints, such as those relating
to mold, housing code violations, or rent
history, how often do complaints about
utilities come up?
A. I don't know.
Q. Before today's deposition did you run any
kind of searches to see if there were any
kind of complaints related to utility
disclosure practices?
A. No.
Q. Are you familiar with Kettler Management,
Inc.?
A. No.
Q. And you said earlier that you ran searches to
see if there were any records related to
Kettler, is that correct?
A. For example, I think I ran -- because
Ms. Harris, the plaintiff's property address

appeared somewhere, I don't know if it was in the subpoena or where, I think I looked up her specific building, but I would need property addresses for the other buildings referenced in the subpoena.
Q. Would your searches have uncovered any complaints related to that address?
A. I think I only checked registration. I didn't check tenant petitions.
Q. Did you check for tenant inquiries or communications?
A. No, I mean beyond the searching, no. No, because I don't think I searched Ms. Harris' name in our email box.
Q. Did you search the address of the property in your email search box?
A. I believe I did.
Q. And what did you find when you ran that search?
A. I think I found an eviction, one or two eviction notices filings.
Q. So you didn't find anything other than

eviction related communications?
A. Correct.
Q. Are you aware of any notices of violation, fines, or other enforcement against Kettler in D.C.?
A. No.
Q. Are you familiar with Conservice?
A. No.
Q. Are you familiar with Studebaker?
A. No.
Q. Do you have any knowledge of what Conservice and Studebaker do?
A. No.
Q. Are you aware of any documents responsive to the topics we have discussed today that we have not -- that you have not identified yet?
A. No.
Q. For the topics we've discussed today, is there anyone within the Rental Accommodations Division that you think is more knowledgeable about those topics?
MR. STEINBERG: I have no further

questions for this witness.

MR. CHEN: All right. Thank you.

CROSS-EXAMINATION BY COUNSEL FOR THE PLAINTIFF

BY MR. CHEN:

Q. Good morning, Ms. Pair.

A. Good morning.

Q. Hopefully we can end while it's still the morning but I do have a few question so I would appreciate your time. I'm Randy Chen. I represent the plaintiff in this case. So I just want to start off by asking you a few questions about the rent administrator's role. So can you just describe to me the rent administrator's regulatory authority as you understand it?

A. Well, there's a section in the Rental Housing Act that lays out the specific rent administrator authority -- I'm sorry duties and responsibilities, and also in the regulations. Basically, you know, we administer the Rental Housing Act which regulates all rental housing in the District.

I oversee -- you know, I issue administrative orders, advisory opinions. I administer the -- the filing aspect, I guess of the Rental Housing Act, all the disclosure notices, registrations that are filed in our office. I work in coordination with the Rental Housing Commission. And also with -- I'm the -- the statute requires that we also coordinate with other District agencies, including MPD.
Q. Got it. And just so I understand the structure. So the rent administrator is kind of the head of the Rental Accommodations Division, is that correct?
A. Correct.
Q. And the Rental Accommodations Division is a subsection, if you will, within DHCD?
A. Yes, it's a division. Yes.
Q. Got it. And the Rental Housing commission is that separate from DHCD or is that also the --
A. It's an independent agency.

Q. Got it. So what is the role -- what is -- so can I use rent administrator and RAD interchangeably?
A. Well, I mean in the statute they're two separate --
Q. Okay.
A. -- they're two separate entities. But, you know, when I refer to the division, I include myself.
Q. Okay.
A. So I think it's acceptable to say RAD and i will include myself in that definition.
Q. So does RAD have authority -- so when I say RAD, I'm including you --
A. Yes.
Q. -- so it's just easier.
A. I understand.
Q. So does RAD have authority over non rent controlled units in D.C.?
A. To the extent that if a property is exempt, they're required to be registered with our office.

Q. Correct. Yeah. So I'm talking about like -- so let's back up. So RAD definitely has authority of rent controlled units, correct?
A. To an extent, yes.
Q. Yeah. So if a tenant who has a complaint about disclosure form, or their rent increase in a rent controlled unit, who do they file that complaint with?
A. They would file it with my office and then we review it for technical completeness, and then transfer it to the Office of Administrative Hearings for adjudication.
Q. Got it. So do you guys adjudicate the merits of a petition?
A. Of a tenant petition, no.
Q. Got it. So you -- so RAD's role is limited to kind of ensuring that it's complying with technical components but the ultimate decision on the merits is made by OAH, correct?
A. On tenant petitions, yes.
Q. Got it. What kind -- what kind of petitions

does RAD adjudicate?
A. Certain types of housing provider petitions, for example, voluntary agreements, or substantial rehabilitation petitions for vacant rental units, hardship petitions. I think that may be it.
Q. So it's on the provider's side, not the tenant's?
A. Correct. Not the tenant's side.
Q. Got you. So just so I understand, tenant petitions in rent controlled units are decided by OAH, correct?
A. Correct.
Q. And RAD does adjudicate some provider petitions for the things that you just described?
A. Correct.
Q. But it's like a discreet subset of things, is that right?
A. Yes.
Q. And then who does the tenant appeal to after OAH?

A. After OAH the Rental Housing Commission.
Q. And then after that?
A. D.C. Court of Appeals.
Q. Got it. And then what about for -- does RAD hear any disputes that would be filed by a tenant at a property that's exempt from rent control?
A. Would RAD hear that?
Q. Yes.
A. No.
Q. Where does that tenant go to file a complaint about that?
A. Depending on what the complaint is D.C. Superior Court, I imagine.
Q. Okay.
A. Yes.
Q. And, sorry, I really appreciate this back and forth.
A. Sure.
Q. I'm trying to slow down because I want to make sure the record is clear. So does RAD -- do you know that the term rent is

defined by the Rental Housing Act, there's a statutory definition?
A. Yes.
Q. Does RAD have any authority to adjudicate any dispute over whether a charge is or is not rent as defined by the statute?
A. No.
Q. Who has authority to decide that dispute?
A. In a rental -- in a rent stabilized unit it would be the Office of Administrative Hearings; for -- for an exempt, depending on the reason for an exception, I suppose, but you know, if it's exempt because it's under a government subsidized program, but I imagine it would be under the D.C. Superior Court.
Q. Got it. And the reason -- and I don't mean to get into -- you've been there a long time so you actually might know this question, but the reason for that distinction as RAD's authority of what RAD can and cannot adjudicate, is that all set by the enabling statute?

A. Yes.
Q. Got it. Okay. So I wanted to kind of start off because I want to kind of move to one thing that you talked about with Mr. Steinberg. Can you turn to Exhibit 3, please?
A. Tell me the tab, please.
Q. It's Exhibit 3, Tab 5.
A. Yes.
Q. You remember this document?
A. Of course.
Q. So I think Mr. Steinberg had a question about when this was required to be disclosed to the tenant, do you remember that?
A. Yes.
Q. And if you can just pause and we're going to turn back to tab 4, which I think is Exhibit 4. I think you said the answer was in the instructions --
A. Yes.
Q. -- in this exhibit. Is that correct?
A. Yes.

Q. So you said on the third page there's this line about you must serve the housing provider's notice to tenant of rent adjustment RAD Form 3 within 30 days when the lease begins, is that --
A. Yes.
Q. -- is that what you remember saying?
A. Yes.
Q. So I just want to make sure because I saw there was a little bit of a discrepancy. So the notice to tenant of a rent adjustment, what -- what is that?
A. The notice of a tenant of a rent adjustment --
Q. Is --
A. Actually maybe it's a typo.
Q. Yeah.
A. It's a typo.
Q. I just want to understand.
A. Yeah.
Q. You know what this is. What is a notice of a rent adjustment?

A. A notice of rent adjustment applies to rent stabilized units, and it's the notice when a housing provider intends to increase the rent.
Q. So it's when an existing tenant had been paying rent --
A. Correct.
Q. -- for however long will get a rent increase?
A. Correct. It's a 60 day advanced notice.
Q. So this bid about the tenant getting within 30 days must apply to the rent adjustment notice?
A. No, it applies to this notice. It's the title is incorrect. We should have -- we should have picked this up. It should be the housing providers disclosures to applicant or tenant. RAD Form 3 and the required attachments have to be served on the tenant.
Q. Got it. So I just want to make sure I understand. I'm not trying to --
A. No. No.
Q. -- confuse you. I want to understand when

the from is supposed to be provided. So just turn back to the first page.
A. Yes.
Q. And it's ultimately okay if we need time to run this down --
A. Right.
Q. -- because it's not -- I just want this to be accurate. So do you see on the second paragraph it says when to use this form. Do you see that header?
A. Yes.
Q. Is that referring to Exhibit 3, the Form 3?
A. Yes.
Q. So it says, the housing provider's disclosure to applicant or tenant, are you fooling me? I'm going to read it so just let me know if you're following me.
A. Up here. Sorry.
Q. Yes. So I'm going to read it again. Just so it's clear on the record.
A. Oh, I see. You're right. I understand. I see what I did now.

Q. It's okay. Again, I want to make clear --
A. No. No. I understand.
Q. Can I just read the instructions just so it's --
A. It's in the record. Sure.
Q. Exactly. Yeah. When to use this form. The housing provider's disclosure to applicant or tenant, is that Form 3, Ms. Pair?
A. Yes.
Q. It's required for a housing provider to disclose certain information about a housing accommodation, and tenants must receive this form when they have for a rental unit. Do you see that?
A. Yes.
Q. So is Form 3 supposed to be disclosed when the tenant applies?
A. Yes. Yes.
Q. Got it.
A. That's the correct answer.
Q. Got it. Thank you. That's very helpful.
A. My apologies for my misstatement before.

Q. No. Not at all. Not at all. There's a lot of instructions. I understand these can get kind of -- I understand why you read that instruction that way. But is it -- just for today's record to be clear, is it correct that Form 3 -- is it correct that DHCD instructs Form 3 to be provided at the time a tenant applies for the rental application?
A. Yes. And I do believe I said when I was referring to Forms 3, 4 and 5 that they are done either at the time signing or before -- or a lease is signed or before when someone's an applicant as opposed to a perspective tenant.
Q. Got it. So can we just clear it up. So today for a perspective tenant when does RAD instruct landlords to provide Form 3?
MR. STEINBERG: Objection.
A. Oh, I don't know -- between 3, 4 and 5 I don't know off the top of my head. According to this instruction for RAD Form 3 they receive it at the time they're making their

application.
Q. Thank you.
A. Right?
Q. All right. And then I just want to kind of get into -- can we turn to Tab 4 again. This is Exhibit 3. This is Form 3, correct?
A. You mean Tab 5?
Q. I'm sorry. Tab 5.
A. That's okay. I know it's a little confusing.
Q. Tab 5, Exhibit 3 is this Form 3, Ms. Pair?
A. Yes.
Q. I just want to ask a few questions about Form 3. So can you just turn to Page 2?
A. Yes.
Q. And do you see Section C?
A. Yes.
Q. It says monthly rent or rent charge and other costs, do you see that?
A. Yes.
Q. And do you see this instruction says quote, rent applies to units exempt from rent stabilization and means that amount of money

received or charged by a housing provider as a condition of occupancy or use of a rental unit and its related services and facilities. Do you see that?
A. Yes.
Q. Do you know where that language comes from?
A. The statute. Section 103 of the Rental Housing Act.
Q. So is it essentially almost verbatim?
A. It is verbatim.
Q. So I want to ask you a question here, does the rent -- does RAD make any determinations about whether a sum of money is or is not rent under this definition?
A. No.
Q. And you said -- sorry to repeat the question, but that question is decided by either Rental Housing Commission or a court, is that right?
A. The amount of rent or rent charged is up to the housing provider to determine and if a talent challenges it, then Office of Administrative Hearings would -- or Rental

Housing Commission would make that determination.
Q. Or the Superior Court?
A. Or the Superior Court, correct.
Q. Okay. So, let's say, let's just kind of walk through a hypothetical, if that's okay. Let's say there's a landlord that has an apartment that's rent is one thousand dollars, do you understand that basic premise?
A. Yes.
Q. Say the landlord says, you know what, I want to -- I want to advertise this unit as a $500 a month rent, and I'm going to call this other $500 a workaround fee. Just humor me for a minute, a workaround fee. But it's all paid the same way. Both, you know, in the one thousand dollars situation the tenant paid it to the landlord on a monthly basis, and in the second situation even when the fees are split up to 500 rent, 500 workaround they're both paid to the landlord as well, in

that circumstance could a landlord say here that their rent is accurately $500?
MR. STEINBERG: Objection.
A. Is it a rent controlled unit or is it an exempt unit that we're talking about?
Q. I appreciate the distinction. Let's start with a rent controlled unit.
MR. STEINBERG: Objection.
A. So to me if they -- if a housing provider's advertising $500 as the rent and the other $500 to me that's a rent concession, and they'd be -- the rent charge would be $500. I don't see how they would be able to charge the additional $500.
Q. Can you explain that a little more, why not?
MR. STEINBERG: Objection.
A. Because the -- that's the rent charged is what is disclosed. That's what's set as. So if it was $1000 and they dropped it down to $500 to make it more lucrative, you know, to attract tenants in, that according to the statute, that's where the rent charged is now

set. They can't make up the difference with additional fees.
Q. So for a rent controlled building, let's talk about this hypothetical landlord, he discloses in this blank $500 --
A. Yeah.
Q. -- for rent, that's what he charges his tenants. Follow?
A. Yeah.
Q. And then he charges a separate fee every month that's called the $500 workaround fee, so the tenant is paying one thousand dollars. Is that proper under --
MR. SPENCER: Objection.
MR. STEINBERG: I object, as well.
Q. I can rephrase the question. How would RAD view that arrangement?
MR. STEINBERG: Objection.
A. That the -- what's the -- so the statute is about disclosures, right? So what's disclosed to the tenant is what the tenant should ultimately be paying. So if they have

a workaround fee, that's not something that's authorized under the Rental Housing Act. The rent -- the rent charged would be $500.
Q. So would that landlord be entitled to collect the $500 workaround fee in addition --
MR. STEINBERG: Objection.
Q. Can I finish my question?
MR. STEINBERG: Sorry.
Q. Would the landlord be entitled to collect the $500 rent, as well as, the $500 workaround fee for a rent controlled unit in this hypothetical?
MR. SPENCER: Objection.
MR. STEINBERG: Objection.
A. I don't believe so. But that would be something that would have to be adjudicated by the Office of Administrative Hearings.
Q. In your view what is -- why do you not think so?
MR. STEINBERG: Objection.
MR. SPENCER: Objection.
A. Because as I stated, what's disclosed is what

should be the rent charged. And the rent charged is based on a rent history. So if the rent history was a thousand dollars and they dropped it down to 500, 500 is the new rent under case law and under the statute.
Q. And does your answer change for non rent controlled buildings?
MR. STEINBERG: Objection.
A. So, again, it would depend on the exemption. If it was exempt because the property is government subsidized then there would be a covenant or some other controlling document that would regulate the rents, right. But let's just say it's a pure market rate --
Q. Yes. Let's just talk about the general.
A. -- and they advertise it as 500 and the actual rent was thousand, again, they've gone outside of the -- outside of the Rental Housing Act which requires disclosing the rent, the monthly rent to a tenant prior to the lease signing, correct? So I mean I think that it could be challenged.

Q. And so the reasons that you stated that, is it fair to say that you found -- in the prior example of a rent controlled unit, you found that arrangement potentially suspect, is that a fair characterization of your testimony?

MR. STEINBERG: Objection.

A. Yes.

Q. And would that characterize -- would that suspect characterization apply to the non rent controlled unit, as well?

MR. STEINBERG: Objection.

MR. SPENCER: Objection. Let's take a break.

MR. CHEN: Can I just clarify what I'm trying to do here? I'm really just trying to understand is the answer similar for rental controlled versus non rent controlled, that's all.

MR. STEINBERG: I objected, if that was a question for the witness.

MR. CHEN: Yeah. Do you want to take a break? She's in the middle of a question so

I think it would be good to finish the question.

MR. SPENCER: She just answered the question, correct?

MR. CHEN: I don't think there was an answer but I could be wrong. Is the court reporter able to advise what the question was? I know there was some crosstalk?

(The previous question was read back.)

MR. STEINBERG: I would like to object so if you're going to ask the question again and then I can object then or however you want to do it but --

MR. CHEN: I think we can just make the objection clear and would you mind just reading back the question again. I think it would make sense to read both questions back.

(The previous question was read back.)

MR. STEINBERG: For the record, I object to the question.

MR. SPENCER: I object, as well.

A. And I would say, I don't know. It's a

market, so the lease would govern.

MR. SPENCER: Let's take a quick break.

(A recess was taken)

Q. All right. Thank you, Ms. Pair. Are you ready?

A. Yes.

Q. All right. So we're still on C here and I just wanted to kind of circle back to this bit here where it talks about the definition of rent. So I'm going to apologize and just read it again so the record is clear. So rent applies to the units exempt for rent stabilization and the amount of money received or charged by a housing provider as a condition of occupancy or a use in a rental unit and it's related services and facilities. Do you see that?

A. Yes.

Q. So let's, again, talk about our hypothetical landlord who charges one thousand dollars in rent. The tenant pays that amount, one thousand dollars to the landlord on a monthly

basis, and the lease says, you know, if you don't pay it, the landlord has a right to evict. Is that one thousand dollars rent?

MR. STEINBERG: Objection.

MR. SPENCER: Objection.

A. I mean if that's what matches under the lease then, yes.

Q. Applying this instruction, I'm applying this instruction, I'm just asking for your understanding of the question. I'm not asking for a legal opinion.

A. Okay.

Q. So, again, just to kind of recap the example, tenant pays a thousand dollars a month to the landlord, it's called rent in his lease, there's a right to evict if he doesn't pay it, does that fall within the instructions explanation of what rent is?

MR. STEINBERG: Objection.

MR. SPENCER: Objection.

A. I mean, yes, a thousand dollars for monthly rent if it's in the lease then, yes, that's

what the legal definition of rent is.
Q. Now, let's say the landlord splits it up and says we'll call $500 rent in the lease and we'll call it $500 the workaround fee and if you don't pay either, I have the right to evict you. Is the $500 rent apply in this instruction?
MR. STEINBERG: Objection.
MR. SPENCER: Objection. You don't have to answer that question. Yeah -- can we take a quick sidebar yet again.
MR. CHEN: Hold on. Just for the record, you're only allowed to instruct her when it's not to answer if something that's privileged. I'm not asking for the Agency's opinion. I'm not asking for a legal determination. I'm just asking for the witness's understanding of what something is -- basing this instruction provided by RAD.
MR. SPENCER: Can you make that clear in your question, please?

MR. CHEN: I'm happy to. Do you still want to take a quick sidebar?
MR. SPENCER: Yes.
(Discussion held off the record.)
Q. All right. Thank you. Ms. Pair, we've had a chance to sort out some of the issues. I just want to kind of say briefly the intention of my questioning and your attorneys may make objections but I just want to kind of get that out so we all kind of have a common understanding on the record. So I want to be clear that I am not asking for your legal opinion on the interpretation of the statute. I'm going to try to frame my question so there is going to be some level of a hypothetical. I'm going to try to frame it with respect to the -- what's on the disclosure. So that's my goal. Okay? Do you want to make that --
MR. STEINBERG: I'll wait to hear the questions.
Q. So if you'll just forgive me for kind of

going all the way back to the start. I'm going to read this instruction again. So we're on Form 3, correct?
A. Yes.
Q. This instruction says, rent applies to units exempt for rent stabilization and means the amount of money received or charged by a housing provider as a condition of occupancy or use of a rental unit and its services. So for here the tenant whose lease has a one thousand dollar amount that's paid to the landlord every month, that the landlord had the right to evict for nonpayment, should that one thousand dollars be disclosed under this instruction on Form 3?
A. Yes.
MR. STEINBERG: Objection.
THE WITNESS: Sorry.
Q. And, now, let's talk about a situation where the landlord drops that rent to $500 and there's an extra $500 fee. Let's just call it the fee. The non rent fee, if you will.

The non rent fee is also a condition of occupancy, because in the lease it says, if you don't pay the rent or the non rent fee, you can be evicted. Under the RAD's Form 3 instructions, should both the $500 rent and the $500 non rent fee be disclosed?
MR. STEINBERG: Objection.
A. The rent is what is disclosed on the form on the RAD Form 3, that's the rent.
Q. I see. So is it RAD's position that whatever gets disclosed on this form is the rent for the unit?
MR. STEINBERG: Objection.
MR. SPENCER: Objection.
A. We don't have a position on that. We don't decide what goes into rent or rent charged. So if the housing provider puts on here that the monthly rent is $500, they're making a truthful, accurate, and complete representation. So that's what we accept. We don't make a determination of what $500 -- $500 is actually rent and $500 is a

workaround we don't -- we don't administer that. We don't have the authority to do that.
Q. Do you have the authority to adjudicate a complaint that a landlord inaccurately disclosed the monthly rent on Form 3?
A. Again, that would be a tenant petition and, no, we do not adjudicate tenant petitions.
Q. Got it. Does RAD have any authority to opine on what legally is rent under the statute?
A. The statute does provide the rent administrator with an authority to advisory opinion, non binding advisory opinions on requests.
Q. Got it. And would advisory opinion be -- would it be subordinate to like a court decision?
A. Well, it's nonbinding so, yes.
Q. And the Rental Housing Commission decision would also take precedence over an advisory, is that right?
A. Yes.

Q. Got it. And has RAD your section of DHCD has it issued any advisory opinions regarding what constitutes rent?
A. No.
Q. So let's talk, again, about the landlord with the one thousand dollars rent in this case. If the landlord's lease says the monthly rent is a thousand dollars and on this form they disclose 900, based on the definition of rent in the form, is it your view that that disclosure is accurate or inaccurate?
MR. STEINBERG: Objection.
MR. SPENCER: Objection.
A. I have no idea. I mean, again, the housing provider is making a representation to the government and to the tenant that this is truthful, accurate, and complete information. So if they're making a representation the rent is $900, I have no basis for object -- you know, to question that. I don't have -- I don't question what goes into the rent or the rent charged.

Q. Got it. And like I'm just talking about a situation like the lease literally says the rent is one thousand dollars, but the landlord disclosed the wrong amount, $900. Does RAD -- does RAD have any role over determining whether a landlord was compliant with Form 3?
MR. STEINBERG: Objection.
A. Not that I'm -- not that that has been in my experience.
Q. Okay. So does RAD ever process or adjudicate any complaints that any information on Form 3 is inaccurate?
A. When you say process, if someone submits this -- these are aren't required to be filed for exempt properties but we accept them if they are filed. So we process those but adjudicate, no.
Q. Got it. So if a tenant ever complained that a landlord inaccurately disclosed the rent on Form 3, that's just something -- that's a dispute that RAD would have no role in

deciding?
A. If it's exempt property then, no, we would not have a role. They would have to seek legal recourse for it.
Q. Got it. And what about a rent controlled property?
A. A rent control we would not have a role in it other than to accept a tenant petition if that's how the tenant decided to proceed.
Q. Got it. And when you say accept the tenant petition that's the process where RAD accepts it and promptly forwards it OAH?
A. Once there's technical compliance with filing, yes.
Q. And what are you looking for in technical compliance? What's the checklist?
A. Off the top of my head, you know, that the tenant's information is included, the housing provider or property manager's information is included. That the complaint itself is complete. That the tenant has proved that they are an actual tenant by showing a lease

or proof of payment, you know, minimal supporting documentation to prove their tenancy.
Q. Got it. And then earlier Mr. Steinberg had --
MR. CHEN: Actually can we go off the record?
(A recess was taken)
Q. All right. Thank you again, Ms. Pair. I just want to kind of recall back to earlier in your testimony today. Do you remember Mr. Steinberg asked you questions that said something to the effect that on Form 3 is there a field or a box that relates to a service fee?
A. Yes, I recall the question.
Q. Do you recall your answer?
A. I said, no.
Q. So do you still have it opened to --
A. Yes.
Q. -- Column C. So, again, this is the last hypothetical, I promise. Let's say the

service fee is, I'm going to track this definition, okay. Let's say it's an amount of money that is charged and received by the housing provider, all right? Do you see that in the instructions?
A. Are we in instructions or the form?
Q. I'm sorry. Still the form.
A. Oh.
Q. Still the form. I'm just looking at the definition of rent on the form.
A. Okay. Page 2. That's okay.
Q. Whenever you have it?
A. I got it.
Q. Let me restart the question to make sure the record is clear. Okay. So rent applies to units exempt from rent stabilization and means amount of money received or charged by a housing provider as a condition of occupancy or use of its rental services and facilities. Do you see that?
A. Yes.
Q. Okay. Now, let's talk about the service fee,

and let's say the service fee was received or charged by a housing provider, you following?
A. Yes.
Q. And let's say it was a condition of occupancy so, you know, you didn't pay it, could get evicted over it, follow?
A. Yes.
Q. And let's say it was also -- it was related to the use of rental unit, you had to pay it as part of the lease, follow?
A. Yes.
Q. Based on the instructions, would the service fee be rent?
MR. STEINBERG: Objection.
MR. SPENCER: Objection.
A. I don't know. I mean it's -- again, this is -- I don't make a determination of what's rent. I don't have statutory, regulatory authority to do that. If the housing provider puts down on the -- on this form the current monthly rent is a thousand dollars or $500, whatever they put down on the form is

all that I'm interested in. Is the blank filled out? I'm not looking behind the substance of what the dollar figure is on the form.

Q. Got it. And is RAD tasked with any authority to adjudicate the substance of what the fee, the service fee may or may not be rent?

MR. SPENCER: Objection.

A. No.

MR. CHEN: All right. No further questions. We're done.

MR. STEINBERG: I'm done.

(The deposition was concluded at 12:05 p.m. EST)

CERTIFICATE OF REPORTER - NOTARY PUBLIC

I, Stefanie Towns, the officer before whom the foregoing deposition was taken, do hereby certify that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me and thereafter reduced to typewriting under my direction; that reading and signing was requested; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 10th day of November 2026.

My Commission Expires: January 12th, 2029.




## A

**ability**
8:22
**able**
72:13, 77:7
**about**
7:2, 7:7, 7:15, 7:16, 7:18, 7:22, 8:1, 22:8, 25:21, 28:4, 33:16, 35:12, 36:7, 36:11, 36:16, 36:20, 41:2, 41:8, 41:14, 41:18, 42:4, 42:5, 42:22, 43:20, 43:21, 46:3, 51:11, 52:7, 53:7, 55:21, 56:12, 59:1, 59:6, 61:4, 61:12, 63:4, 63:12, 64:2, 65:10, 67:11, 69:12, 70:13, 72:5, 73:4, 73:20, 75:15, 78:9, 78:19, 82:19, 85:5, 86:1, 87:5, 89:22
**accept**
83:20, 86:16, 87:8, 87:10
**acceptable**
58:11
**accepts**
87:11
**accommodation**
27:14, 39:2, 42:14, 43:18, 44:3, 49:16, 49:21, 67:12
**accommodations**
17:4, 17:5, 17:10, 18:1, 19:1, 19:3, 19:8, 20:2, 20:14, 21:4, 22:12, 24:19, 26:17, 29:12, 32:16, 33:1, 33:14, 34:1, 34:10, 37:7, 37:12, 37:16, 38:10, 38:15, 39:14, 39:17, 40:5, 42:17, 43:3, 44:15, 44:20, 45:15, 47:1, 47:15, 48:10, 48:15, 48:20, 49:3, 49:17, 50:11, 51:2, 51:9, 52:13, 52:18, 55:19, 57:13, 57:16
**accompanying**
23:13
**according**
68:20, 72:21
**accounts**
13:2, 13:19
**accurate**
66:8, 83:19, 85:11, 85:17
**accurately**
72:2
**act**
17:6, 17:16, 19:5, 21:17, 28:15, 29:2, 35:8, 35:12, 56:17, 56:21, 57:4, 62:1, 70:8, 74:2, 75:19
**acting**
42:20
**action**
1:6, 6:14, 6:17, 51:3
**actual**
75:17, 87:22
**actually**
7:16, 39:11, 50:16, 62:18, 64:16, 83:22, 88:6
**add**
30:21, 31:3, 31:7, 31:13, 31:22, 36:3, 36:7, 36:11, 36:15, 36:19, 49:17
**added**
35:4
**adding**
39:4
**addition**
74:5
**additional**
72:14, 73:2
**address**
53:22, 54:7, 54:15
**addresses**
12:15, 13:1, 38:10, 54:4
**adjudicate**
59:13, 60:1, 60:14, 62:4, 62:21, 84:4, 84:8, 86:11, 86:18, 91:6
**adjudicated**
74:16
**adjudication**
59:12
**adjustment**
64:4, 64:11, 64:13, 64:22, 65:1, 65:11
**adjustments**
38:17
**administer**
17:6, 19:4, 19:5, 32:22, 56:21, 57:2, 84:1
**administrative**
14:10, 19:9, 19:13, 25:13, 26:4, 26:8, 28:12, 31:8, 31:9, 48:22, 57:1, 59:12, 62:10, 70:22, 74:17
**administrator**
15:9, 16:10, 19:8, 19:20, 22:15, 43:18, 56:18, 57:12, 58:2, 84:12
**administrator's**
56:12, 56:14
**advanced**
41:3, 65:9
**advertise**
71:13, 75:16
**advertising**
72:10
**advice**
34:4
**advise**
77:7
**advisory**
49:22, 50:7, 57:2, 84:12, 84:13, 84:15, 84:20, 85:2
**advocate**
14:1, 20:3, 20:5, 20:10, 20:13, 46:1, 46:9, 52:11
**affirmatively**
34:11
**affixed**
92:13
**after**
14:21, 15:3, 48:18, 60:21, 61:1, 61:2
**afterwards**
9:13
**again**
29:1, 29:16, 66:19, 67:1,

69:5, 75:9, 75:17, 77:11, 77:16, 78:11, 78:19, 79:13, 80:11, 82:2, 84:7, 85:5, 85:14, 88:9, 88:21, 90:16
**against**
51:3, 55:4
**agencies**
57:9
**agency**
57:22
**agency's**
80:15
**agent**
8:9, 8:10
**ago**
7:7, 51:20
**agreement**
2:13
**agreements**
60:3
**ahead**
9:12
**all**
11:13, 17:7, 18:15, 22:18, 25:20, 27:6, 56:2, 56:22, 57:4, 62:21, 68:1, 69:4, 71:16, 76:18, 78:4, 78:7, 81:5, 81:10, 82:1, 88:9, 89:4, 91:1, 91:10
**alleged**
8:5
**allocated**
36:12
**allowed**
80:13
**almost**
70:9
**also**
8:9, 8:10, 8:22, 12:4, 19:12, 19:15, 37:4, 40:15, 50:19, 56:19, 57:7, 57:8, 57:20, 83:1, 84:20, 90:8
**amended**
5:11, 12:1
**amount**
33:4, 34:12, 41:2, 69:22, 70:19, 78:13, 78:21, 82:7, 82:11, 86:4, 89:2, 89:17
**anderson**
4:6
**annually**
40:21
**another**
8:12, 24:6
**answer**
8:21, 9:1, 9:4, 9:6, 9:11, 9:12, 40:15, 63:18, 67:20, 75:6, 76:16, 77:6, 80:10, 80:14, 88:17
**answered**
77:3
**answering**
18:2
**any**
11:17, 12:8, 13:2, 13:14, 13:19, 14:17, 16:5, 16:14, 16:20, 18:5, 20:15, 21:6, 22:21, 25:2, 25:5, 25:8, 25:11, 25:15, 26:18, 28:16, 29:6, 29:17, 32:10, 33:11, 35:17, 35:21, 36:6, 36:10, 36:14, 37:7, 37:12, 38:9, 40:9, 41:4, 41:7, 42:17, 42:22, 43:3, 44:7, 44:15, 44:22, 45:6, 46:1, 46:8, 47:7, 50:12, 50:21, 51:3, 51:4, 51:10, 51:14, 52:14, 53:10, 53:11, 53:19, 54:6, 55:3, 55:11, 55:14, 61:5, 62:4, 70:12, 84:9, 85:2, 86:5, 86:12, 91:5, 92:9
**anybody**
13:16, 13:19, 24:18
**anyone**
14:1, 14:3, 14:6, 49:15, 55:19
**anything**
9:2, 13:10, 30:20, 31:2, 31:6, 31:10, 31:21, 32:4, 35:17, 36:7, 36:11, 36:16, 36:18, 36:20, 53:1, 54:22
**anywhere**
36:4, 36:22, 44:10, 45:12, 46:6
**apartment**
71:8
**apologies**
67:22
**apologize**
78:10
**appeal**
19:10, 60:21
**appealed**
19:15
**appeals**
61:3
**appeared**
54:1
**appears**
21:5
**appellate**
19:6, 19:12
**applicant**
47:11, 52:6, 65:16, 66:15, 67:7, 68:13
**applicants**
26:20
**application**
37:17, 48:18, 48:19, 52:9, 68:8, 69:1
**applications**
35:13
**applies**
39:17, 40:16, 65:1, 65:13, 67:17, 68:8, 69:21, 78:12, 82:5, 89:15
**apply**
65:11, 76:9, 80:6
**applying**
79:8
**appointed**
15:10, 15:12
**appreciate**
56:9, 61:17, 72:6
**approval**
18:9, 19:21
**approve**
18:11, 18:13, 22:17, 22:18, 22:20, 44:1
**approves**
18:20, 22:13
**aren't**
86:15

**arrangement**
73:17, 76:4
**asked**
7:21, 44:16, 45:20, 49:16, 51:9, 51:15, 88:12
**asking**
8:1, 8:20, 49:3, 49:10, 56:11, 79:9, 79:11, 80:15, 80:16, 80:17, 81:12
**asks**
30:4
**aspect**
57:3
**assessed**
26:5
**assessment**
40:10, 41:4, 41:7, 42:22
**assume**
9:6
**attached**
5:8, 10:4, 10:22, 20:22, 23:7, 43:13, 46:18
**attachment**
26:2
**attachments**
37:1, 65:18
**attorney**
6:10, 14:7, 14:14, 52:15, 52:20
**attorneys**
22:16, 81:9
**attract**
72:21
**authority**
19:13, 32:5, 34:8, 34:9, 44:4, 46:2, 46:3, 56:14, 56:18, 58:13, 58:18, 59:3, 62:4, 62:8, 62:20, 84:2, 84:4, 84:9, 84:12, 90:19, 91:5
**authorization**
18:16
**authorized**
74:2
**avenue**
4:8
**aware**
11:15, 38:15, 49:15, 49:20, 55:3, 55:14

B

**b**
46:13
**back**
7:17, 25:1, 30:9, 34:15, 50:16, 59:2, 61:17, 63:17, 66:2, 77:9, 77:16, 77:17, 77:18, 78:8, 82:1, 88:10
**baltimore**
3:17
**bar**
14:19, 15:2, 15:4
**bars**
14:17
**base**
39:5
**based**
26:13, 28:2, 75:2, 85:9, 90:12
**basic**
71:9
**basically**
20:4, 56:20
**basing**
80:19
**basis**
71:19, 79:1, 85:19
**because**
9:2, 12:14, 20:4, 27:20, 29:2, 32:5, 37:20, 48:17, 53:21, 54:13, 61:20, 62:13, 63:3, 64:9, 66:7, 72:17, 74:22, 75:10, 83:2
**been**
6:3, 6:20, 15:14, 15:18, 21:21, 24:20, 50:7, 51:9, 51:14, 62:17, 65:5, 86:9
**before**
2:13, 10:5, 11:4, 11:5, 18:19, 24:5, 24:7, 24:9, 32:17, 37:20, 47:12, 51:21, 52:9, 53:10, 67:22, 68:11, 68:12, 92:2
**beginning**
48:13
**begins**
46:21, 48:7, 64:5
**behalf**
3:3, 3:12, 4:3, 10:8, 10:12, 13:17, 13:20, 20:5
**behind**
91:2
**believe**
8:15, 10:9, 21:6, 24:20, 25:4, 27:11, 43:10, 46:7, 47:5, 54:17, 68:9, 74:15
**best**
8:22
**better**
22:7
**between**
7:11, 18:22, 20:1, 42:18, 68:19
**beyond**
54:12
**bid**
65:10
**bill**
20:11, 20:15, 38:17, 42:5
**billed**
40:6
**billing**
6:18, 25:12, 26:5, 26:8, 31:4, 32:10, 33:17, 36:16, 37:4, 53:2
**binder**
9:17, 20:19, 43:9, 46:14
**binding**
84:13
**bit**
64:10, 78:9
**blank**
30:6, 30:9, 36:3, 36:6, 36:10, 36:14, 36:19, 73:5, 91:1
**block**
36:11
**body**
19:6
**both**
28:6, 71:17, 71:22, 77:17, 83:5
**bottom**
9:19, 21:9,

23:16, 30:1, 34:16
**box**
25:2, 25:5, 25:8, 25:11, 25:15, 26:14, 29:22, 30:4, 30:15, 32:9, 34:15, 34:19, 35:4, 35:19, 36:2, 36:3, 36:6, 36:7, 36:10, 36:15, 36:18, 36:19, 54:14, 54:16, 88:14
**break**
9:14, 76:13, 76:22, 78:2
**bribery**
7:20
**bribes**
8:8, 8:10
**briefly**
41:10, 81:7
**brought**
6:14
**building**
54:3, 73:3
**buildings**
54:4, 75:7
**bullet**
30:14
**bulletins**
44:17

C

**cab**
1:7
**calculate**
32:20
**call**
45:6, 45:22, 49:9, 71:14, 80:3, 80:4, 82:21
**called**
6:3, 73:11, 79:15
**calls**
32:12, 33:20, 45:19
**can't**
12:14, 12:22, 20:5, 47:18, 73:1
**cannot**
62:20
**cap**
39:4
**capacity**
10:17
**case**
51:10, 51:13, 56:10, 75:5, 85:6, 92:10
**ccr**
1:22
**center**
18:3, 45:7, 45:19, 49:9
**certain**
8:3, 9:9, 9:10, 40:1, 60:2, 67:11
**certificate**
92:1
**certify**
92:3
**challenged**
27:19, 75:22
**challenges**
70:21
**chance**
81:6
**change**
75:6
**changed**
23:19, 24:15
**changes**
21:13, 21:16, 22:13, 38:18
**characterization**
76:5, 76:9
**characterize**
76:8
**charge**
30:6, 30:11, 30:18, 30:19, 32:7, 33:10, 34:6, 38:5, 38:22, 39:20, 40:2, 50:2, 51:5, 52:8, 62:5, 69:17, 72:12, 72:13
**charged**
32:8, 33:5, 33:18, 34:6, 34:12, 39:9, 39:16, 39:17, 40:8, 40:12, 41:6, 41:9, 42:6, 42:12, 42:13, 70:1, 70:19, 72:17, 72:22, 74:3, 75:1, 75:2, 78:14, 82:7, 83:16, 85:22, 89:3, 89:17, 90:2
**charges**
25:6, 30:22, 36:4, 36:12, 36:14, 37:3, 37:19, 39:4, 39:15, 40:7, 43:1, 43:5, 44:11, 44:17, 44:21, 45:3, 45:9, 45:16, 49:18, 51:11, 73:7, 73:10, 78:20
**check**
36:6, 36:10, 36:19, 54:9, 54:10
**checked**
12:13, 36:3, 54:8
**checklist**
87:16
**chen**
3:4, 5:4, 6:15, 9:9, 25:18, 28:3, 32:12, 33:20, 41:10, 41:22, 56:2, 56:4, 56:9, 76:14, 76:21, 77:5, 77:14, 80:12, 81:1, 88:6, 91:10
**circle**
78:8
**circumstance**
72:1
**civil**
1:2, 1:6
**claimed**
33:10
**claims**
17:13
**clarify**
28:4, 41:19, 76:14
**class**
6:14, 6:17, 12:5, 50:5
**clear**
61:21, 66:20, 67:1, 68:5, 68:15, 77:15, 78:11, 80:21, 81:12, 89:15
**clearly**
42:1
**client**
10:10
**co-agencies**
20:4
**code**
53:6
**coded**
12:21
**coding**
12:22
**cohort**
8:12
**collect**
74:4, 74:9

**columbia**
1:1, 2:15, 8:17, 14:18, 17:8, 43:22
**column**
88:21
**com**
3:10, 3:19
**come**
12:3, 13:9, 19:7, 35:22, 53:8
**comes**
70:6
**comment**
22:22
**commission**
14:4, 18:10, 18:17, 18:19, 19:2, 19:6, 19:11, 19:12, 19:17, 19:18, 19:22, 22:8, 22:9, 22:19, 40:21, 44:7, 57:7, 57:19, 61:1, 70:18, 71:1, 84:19, 92:15
**common**
81:11
**communication**
43:4
**communications**
54:11, 55:1
**community**
4:4, 10:13, 11:16, 15:7, 16:6, 16:15, 45:13
**company**
42:13, 42:20
**compared**
53:4
**complainant**
52:19, 52:22
**complainants**
52:14
**complained**
86:19
**complains**
52:7
**complaint**
26:7, 33:2, 33:12, 52:22, 59:5, 59:8, 61:11, 61:13, 84:5, 87:20
**complaints**
20:7, 53:5, 53:7, 53:12, 54:7, 86:12
**complete**
35:3, 35:5, 35:15, 83:19, 85:17, 87:21
**completeness**
59:10
**completing**
23:12, 23:15
**compliance**
48:11, 48:17, 87:13, 87:16
**compliant**
86:6
**complying**
59:17
**components**
59:18
**comprehensive**
35:10
**comprise**
34:5
**compute**
39:3
**concerns**
20:7
**concession**
72:11
**concluded**
91:13
**conclusion**
32:13, 33:21
**condition**
70:2, 78:15, 82:8, 83:1, 89:18, 90:4
**conducted**
8:3
**confirm**
52:5
**confuse**
65:22
**confused**
31:16
**confusing**
69:9
**connection**
26:6
**consequence**
27:16, 28:1, 28:8, 28:17, 28:21
**conservice**
13:8, 13:12, 55:7, 55:11
**constitutes**
32:6, 32:19, 40:11, 85:3
**construed**
38:12
**consultation**
22:15
**consumer**
14:7
**contacted**
49:2
**contains**
36:2
**contemplated**
29:5
**contemplating**
42:3
**content**
22:10
**contents**
18:6, 22:9
**continued**
4:1
**control**
12:17, 27:15, 29:7, 43:22, 61:7, 87:7
**controlled**
12:11, 28:5, 28:7, 28:20, 29:8, 29:13, 29:18, 58:19, 59:3, 59:7, 60:11, 72:4, 72:7, 73:3, 74:11, 75:7, 76:3, 76:10, 76:17, 87:5
**controlling**
75:12
**conversion**
16:9, 16:10
**coordinate**
57:9
**coordination**
57:6
**copy**
21:3, 21:7, 48:6
**cord**
9:3
**correct**
17:21, 19:19, 21:20, 23:18, 26:14, 26:16, 34:3, 36:2, 39:13, 40:3, 40:5, 52:12, 53:20, 55:2, 57:14, 57:15, 59:1, 59:3, 59:20, 60:9, 60:12, 60:13, 60:17, 63:21, 65:7, 65:9, 67:20, 68:5, 68:6, 69:6, 71:4, 75:21, 77:4, 82:3, 92:4
**cost**
42:15
**costs**
35:4, 35:21, 36:8, 37:18, 40:1, 41:8, 69:18
**could**
9:20, 12:14,

12:17, 12:20, 28:10, 28:13, 38:12, 49:7, 52:1, 72:1, 75:22, 77:6, 90:5
**couldn't** 47:13
**counsel** 6:5, 9:8, 9:11, 56:3, 92:9
**course** 63:11
**court** 1:1, 7:19, 61:3, 61:14, 62:15, 70:18, 71:3, 71:4, 77:6, 84:16
**covenant** 75:12
**covid** 7:11
**criminal** 7:18
**cross-examination** 56:3
**crosstalk** 77:8
**crystal** 1:4, 6:15, 13:14, 13:15
**current** 21:18, 22:17, 30:5, 30:11, 30:18, 44:1, 90:21

D

**database** 12:11, 12:17
**databases** 12:8, 12:10, 13:16
**date** 24:8, 24:9
**dates** 7:12
**day** 65:9, 92:13
**days** 41:3, 48:6, 48:12, 64:4, 65:11
**dcmr** 47:6, 47:7
**deal** 8:18
**decide** 62:8, 83:16
**decided** 60:12, 70:17, 87:9
**deciding** 87:1
**decision** 19:9, 19:10, 59:19, 84:17, 84:19
**decisions** 19:7
**defendant** 3:12, 6:5
**defendants** 1:8
**define** 25:19, 41:22
**defined** 12:6, 62:1, 62:6
**definitely** 59:2
**definition** 26:1, 26:8, 26:13, 58:12, 62:2, 70:14, 78:9, 80:1, 85:9, 89:2, 89:10
**definitions** 12:2, 12:6
**delivered** 48:18
**department** 4:3, 10:13, 11:15, 16:6, 16:15, 45:13
**depend** 49:13, 75:9
**depending** 61:13, 62:11
**depos** 1:12
**deposed** 6:21
**deposit** 35:14, 37:18, 38:20
**deposition** 1:11, 2:1, 5:9, 11:20, 11:22, 12:1, 26:3, 26:12, 51:8, 53:10, 91:13, 92:3
**depositions** 7:3
**describe** 56:13
**described** 26:7, 60:16
**determination** 48:21, 71:2, 80:17, 83:21, 90:17
**determinations** 70:12
**determine** 70:20
**determining** 18:6, 86:6
**developer** 8:8, 8:11, 8:12
**developers** 8:15
**development** 4:4, 10:14, 11:16, 15:7, 15:8, 16:6, 16:16, 45:13
**dhcd** 57:17, 57:20, 68:6, 85:1
**difference** 73:1
**different** 12:22, 24:20, 34:18, 42:1
**direct** 19:9
**direction** 92:7
**directly** 35:8, 41:17, 42:19
**director** 16:19
**disclose** 37:3, 50:2, 51:4, 67:11, 85:9
**disclosed** 37:9, 37:13, 49:4, 49:10, 63:13, 67:16, 72:18, 73:21, 74:22, 82:14, 83:6, 83:8, 83:11, 84:6, 86:4, 86:20
**discloses** 73:5
**disclosing** 26:19, 75:19
**disclosure** 5:15, 17:15, 17:19, 17:20, 18:6, 18:11, 18:15, 27:1, 35:12, 40:13, 53:5, 53:13, 57:4, 59:6, 66:14, 67:7, 81:18, 85:11
**disclosures** 5:12, 19:19, 46:12, 47:2, 47:16, 65:16, 73:20
**discreet** 60:18
**discrepancy** 64:10

**discretion**
33:16
**discussed**
55:15, 55:18
**discussion**
52:4, 81:4
**dispute**
62:5, 62:8, 86:22
**disputes**
61:5
**disputing**
46:4
**distinction**
42:18, 62:19, 72:6
**district**
1:1, 2:14, 7:19, 8:17, 14:18, 17:8, 43:22, 56:22, 57:9
**divider**
43:9, 46:13
**division**
1:2, 13:5, 16:11, 17:4, 17:5, 17:10, 18:1, 19:1, 19:3, 20:2, 20:14, 21:4, 22:13, 24:19, 26:17, 29:12, 32:17, 33:2, 34:1, 34:10, 37:7, 37:12, 37:17, 38:10, 38:16, 39:2, 39:14, 40:6, 43:3, 44:3, 44:15, 44:20, 45:15, 47:1, 47:15, 48:10, 48:16, 48:20, 49:3, 49:16, 49:17, 49:21, 50:11, 51:3, 51:9, 52:13, 52:19, 55:20, 57:14, 57:16, 57:18, 58:8
**division's**
33:14
**divisions**
42:17
**document**
10:5, 11:2, 11:4, 43:14, 43:16, 44:5, 44:9, 44:10, 63:10, 75:12
**documentation**
88:2
**documents**
40:14, 55:14
**dollar**
82:11, 91:3
**dollars**
71:9, 71:18, 73:12, 75:3, 78:20, 78:22, 79:3, 79:14, 79:21, 82:14, 85:6, 85:8, 86:3, 90:21
**done**
18:15, 68:11, 91:11, 91:12
**down**
9:3, 46:6, 61:20, 66:5, 72:19, 75:4, 90:20, 90:22
**draft**
18:14
**drafting**
18:14, 44:2
**drafts**
18:19, 22:13
**dropped**
72:19, 75:4
**drops**
82:20
**duly**
6:3
**during**
7:11, 50:5
**duties**
56:18

**E**

**earlier**
52:5, 53:18, 88:4, 88:10
**easier**
58:16
**education**
14:13
**effect**
24:21, 32:4, 88:13
**effective**
24:1
**either**
29:7, 34:2, 68:11, 70:17, 80:5
**elements**
46:19
**eleven**
16:13
**elicit**
8:5
**else**
13:16, 13:19, 24:18, 36:22
**email**
13:2, 13:19, 54:14, 54:16
**employed**
92:9
**employee**
8:7, 8:17, 49:11
**employees**
7:14, 16:22, 45:8
**enabling**
62:21
**enacted**
21:17
**end**
56:7
**enforcement**
51:3, 55:4
**ensure**
41:2
**ensuring**
59:17
**entities**
58:7
**entitle**
29:8
**entitled**
27:5, 27:21, 29:3, 74:4, 74:9
**envisioned**
23:11
**equal**
38:21
**esquire**
3:4, 3:13, 4:5, 4:6, 4:7
**essentially**
70:9
**est**
1:15, 91:14
**estate**
8:8
**even**
71:20
**ever**
6:20, 7:8, 15:14, 33:2, 33:11, 37:7, 37:12, 47:15, 48:16, 49:2, 49:16, 49:21, 52:14, 52:19, 86:11, 86:19
**every**
15:17, 33:8, 38:7, 73:10, 82:12
**evict**
79:3, 79:16, 80:6, 82:13
**evicted**
83:4, 90:6
**eviction**
50:19, 54:20, 54:21, 55:1
**exact**
7:12, 27:2

**exactly**
10:8, 18:22, 23:10, 67:6
**examination**
5:2, 6:5, 11:8, 12:4
**examined**
6:4
**example**
7:6, 13:8, 35:11, 35:13, 53:21, 60:3, 76:3, 79:13
**examples**
12:18, 13:11, 13:14, 51:14
**exception**
62:12
**excuse**
36:15, 39:3, 50:15
**exempt**
27:15, 29:19, 39:19, 40:22, 58:20, 61:6, 62:11, 62:13, 69:21, 72:5, 75:10, 78:12, 82:6, 86:16, 87:2, 89:16
**exemption**
17:13, 75:9
**exemptions**
29:6
**exeter**
3:15
**exhibit**
5:10, 5:11, 5:12, 5:13, 5:14, 5:15, 10:2, 10:3, 10:20, 10:21, 20:20, 20:21, 23:5, 23:6, 23:8, 23:10, 43:10, 43:11, 43:12, 46:16, 46:17, 63:5, 63:8, 63:17, 63:21, 66:12, 69:6, 69:10
**exhibits**
5:9, 29:15
**existing**
65:5
**expected**
24:4
**expenses**
37:8, 38:11
**experience**
52:18, 86:10
**expires**
92:15
**explain**
9:18, 25:19, 72:15
**explanation**
79:18
**expressed**
34:11
**extent**
58:20, 59:4
**extra**
82:21

**F**

**face**
28:2, 40:12
**facilities**
70:3, 78:17, 89:20
**fact**
44:16
**failed**
50:18
**failing**
51:4
**fails**
27:17, 28:8, 28:21
**fair**
76:2, 76:5
**fall**
79:17
**familiar**
11:1, 11:7, 21:1, 43:14, 46:12, 53:15, 55:7, 55:9
**fbi**
8:9
**fee**
25:13, 25:16, 25:20, 25:22, 26:1, 26:4, 26:5, 26:8, 26:9, 26:10, 26:13, 31:8, 31:9, 31:10, 31:14, 32:1, 32:10, 36:16, 36:20, 37:4, 37:13, 37:17, 39:5, 40:7, 41:12, 44:12, 44:18, 44:22, 45:9, 45:17, 45:20, 50:3, 51:5, 52:8, 71:15, 71:16, 73:10, 73:11, 74:1, 74:5, 74:11, 80:4, 82:21, 82:22, 83:1, 83:3, 83:6, 88:15, 89:1, 89:22, 90:1, 90:13, 91:6, 91:7
**fees**
26:15, 33:17, 34:13, 34:18, 35:3, 35:13, 35:21, 37:21, 38:1, 45:4, 49:18, 51:12, 53:2, 71:21, 73:2
**few**
56:8, 56:11, 69:12
**field**
25:2, 25:5, 25:8, 25:11, 25:15, 26:14, 49:9, 88:14
**figure**
30:4, 91:3
**file**
27:20, 28:10, 29:9, 29:10, 29:11, 29:13, 59:7, 59:9, 61:11
**filed**
57:5, 61:5, 86:15, 86:17
**filing**
57:3, 87:14
**filings**
54:21
**fill**
30:11, 34:18
**filled**
91:2
**final**
22:10, 22:20, 44:4
**financial**
92:11
**find**
12:14, 12:15, 12:18, 12:20, 13:14, 54:18, 54:22
**fines**
55:4
**finish**
74:7, 77:1
**finished**
15:1
**first**
6:3, 9:22, 11:22, 14:19, 38:21, 46:13, 46:22, 66:2
**flip**
11:3
**follow**
73:8, 90:6, 90:10
**following**
66:17, 90:2

**follows**
6:4
**fooling**
66:15
**footed**
21:10
**footer**
23:17
**foregoing**
92:3, 92:4
**forgive**
81:22
**form**
17:18, 17:19, 20:18, 21:1, 21:3, 21:10, 22:11, 22:14, 22:20, 23:12, 23:15, 23:17, 24:1, 24:4, 24:6, 24:10, 24:13, 25:1, 25:2, 25:5, 25:8, 25:11, 25:15, 26:15, 26:18, 27:3, 27:4, 27:10, 27:11, 27:17, 28:9, 28:22, 29:9, 29:11, 29:14, 29:19, 29:22, 33:5, 34:15, 35:16, 36:22, 37:9, 37:14, 38:4, 38:20, 39:7, 39:10, 39:11, 47:22, 48:6, 48:11, 48:17, 49:4, 49:10, 49:19, 50:4, 50:22, 51:6, 59:6, 64:4, 65:17, 66:9, 66:12, 67:6, 67:8, 67:13, 67:16, 68:6, 68:7, 68:17, 68:21, 69:6, 69:10, 69:12, 82:3, 82:15, 83:4, 83:8, 83:9, 83:11, 84:6, 85:8, 85:10, 86:7, 86:12, 86:21, 88:13, 89:6, 89:7, 89:9, 89:10, 90:20, 90:22, 91:4
**formerly**
8:3
**forms**
17:16, 18:7, 18:12, 18:15, 19:19, 19:21, 23:1, 27:1, 46:20, 47:10, 68:10
**forth**
61:18
**forward**
6:13
**forwards**
87:12
**found**
13:11, 48:16, 54:20, 76:2, 76:3
**four**
7:2, 15:20, 15:21
**fourth**
15:22
**frame**
81:14, 81:16
**fraud**
7:19, 7:20
**frequently**
44:16
**functions**
17:3
**further**
55:22, 91:10

G

**gallagher**
3:14, 6:11
**gap**
39:3
**general**
13:4, 13:5, 26:11, 43:21, 52:15, 52:20, 75:15
**general's**
14:7
**getting**
31:16, 65:10
**give**
7:21, 23:14, 27:5, 32:8, 34:4, 34:6, 46:1
**given**
7:8, 40:13, 45:1, 47:10, 47:11, 47:12, 92:5
**go**
9:12, 10:20, 19:10, 19:14, 34:15, 46:19, 52:2, 61:11, 88:6
**goal**
81:18
**goes**
40:11, 41:5, 46:3, 83:16, 85:21
**going**
6:13, 8:20, 9:16, 11:1, 20:17, 20:19, 31:18, 41:19, 63:16, 66:16, 66:19, 71:14, 77:11, 78:10, 81:14, 81:15, 81:16, 82:1, 82:2, 89:1
**gone**
75:17
**good**
6:8, 6:9, 56:5, 56:6, 77:1
**gosh**
8:1
**govern**
78:1
**government**
7:14, 62:14, 75:11, 85:16
**graduate**
14:15
**graduated**
14:21, 15:1
**groups**
45:2
**guess**
57:3
**guidance**
23:14, 34:7, 38:9, 45:6, 47:16, 49:4, 49:11, 50:1, 50:8
**guys**
59:13

H

**hand**
92:13
**happened**
8:18
**happy**
81:1
**hardship**
60:5
**harris**
1:4, 6:15, 6:16, 13:14, 13:15, 53:22, 54:13
**head**
9:2, 27:3, 33:7, 47:9, 51:19, 57:13, 68:20, 87:17
**header**
66:10
**hear**
61:5, 61:8, 81:20

**hearings**
14:10, 19:14, 28:12, 48:22, 59:12, 62:11, 70:22, 74:17
**hears**
19:6
**held**
1:12, 2:1, 52:4, 81:4
**helpful**
41:13, 67:21
**here**
9:21, 10:7, 10:12, 10:16, 11:12, 35:19, 35:22, 41:18, 47:3, 66:18, 70:11, 72:1, 76:15, 78:7, 78:9, 82:10, 83:17
**hereby**
92:3
**hereunto**
92:12
**highest**
14:12
**history**
27:12, 27:13, 53:7, 75:2, 75:3
**hold**
80:12
**hopefully**
56:7
**house**
30:21
**housing**
4:3, 5:12, 10:13, 11:15, 14:4, 15:7, 16:6, 16:15, 17:6, 17:7, 17:16, 18:3, 18:9, 18:16, 18:19, 19:2, 19:5, 19:11, 19:12, 19:16, 19:18, 19:22, 21:16, 22:8, 22:9, 22:19, 24:4, 28:15, 29:2, 31:3, 31:7, 31:13, 31:22, 32:6, 32:18, 32:19, 33:3, 33:15, 35:8, 35:11, 37:2, 37:7, 37:12, 39:15, 40:1, 40:20, 42:14, 44:7, 45:7, 45:13, 45:19, 48:16, 49:8, 50:18, 51:4, 53:6, 56:16, 56:21, 56:22, 57:4, 57:7, 57:19, 60:2, 61:1, 62:1, 64:2, 65:3, 65:16, 66:14, 67:7, 67:10, 67:11, 70:1, 70:8, 70:18, 70:20, 71:1, 72:9, 74:2, 75:19, 78:14, 82:8, 83:17, 84:19, 85:14, 87:18, 89:4, 89:18, 90:2, 90:19
**however**
41:20, 65:8, 77:12
**humor**
71:15
**hundreds**
33:7
**hypothetical**
71:6, 73:4, 74:12, 78:19, 81:16, 88:22

**I**

**idea**
85:14
**identification**
10:3, 10:21, 20:21, 23:6, 43:12, 46:17
**identified**
55:16
**imagine**
28:12, 61:14, 62:14
**immediately**
14:21
**implicated**
8:10
**important**
8:22
**imprisoned**
8:16
**inaccurate**
85:11, 86:13
**inaccurately**
33:4, 84:5, 86:20
**inc**
1:7, 6:6, 6:12, 53:16
**include**
17:18, 32:10, 33:16, 34:12, 58:8, 58:12
**included**
39:8, 87:18, 87:20
**includes**
17:8
**including**
11:21, 57:10, 58:14
**incorrect**
33:10, 65:14
**increase**
38:13, 40:16, 40:17, 59:6, 65:3, 65:8
**increased**
38:6
**independent**
57:22
**index**
40:20
**individuals**
16:14, 16:18, 16:20
**information**
26:19, 27:6, 27:8, 27:21, 29:3, 43:21, 67:11, 85:17, 86:12, 87:18, 87:19
**input**
18:14, 20:15
**inquiries**
54:10
**instruct**
45:22, 68:17, 80:13
**instructed**
45:8, 45:21
**instruction**
30:20, 31:2, 31:6, 31:11, 31:21, 32:3, 32:8, 36:3, 36:6, 36:10, 36:14, 36:19, 46:6, 48:5, 68:4, 68:21, 69:20, 79:8, 79:9, 80:7, 80:19, 82:2, 82:5, 82:15
**instructions**
5:13, 12:2, 12:7, 23:11, 23:13, 23:14, 23:17, 23:19, 23:22, 24:7, 24:12, 30:8, 30:10, 37:1, 47:19, 47:20, 63:19, 67:3, 68:2, 79:17, 83:5, 89:5, 89:6, 90:12
**instructs**
9:11, 48:5, 68:7

**intends**
65:3
**intention**
81:8
**interchangeably**
58:3
**interest**
92:10
**interested**
91:1
**interpretation**
42:9, 81:13
**interpretive**
49:22, 50:8
**interprets**
41:21
**involved**
22:2, 43:1
**issue**
50:11, 50:13, 57:1
**issued**
49:22, 85:2
**issues**
19:9, 81:6
**itself**
24:13, 87:20

**J**

**jail**
8:16
**january**
24:2, 24:5, 43:4, 50:9, 51:21, 92:15
**job**
1:20
**jr**
4:8
**june**
12:12, 16:4

**K**

**keith**
4:6
**kettler**
1:7, 3:12, 6:6, 6:11, 6:13, 6:19, 10:11, 12:16, 12:19, 13:6, 13:12, 53:15, 53:20, 55:4
**kind**
26:6, 28:1, 40:9, 41:4, 41:7, 42:22, 44:22, 53:11, 53:12, 57:12, 59:17, 59:22, 63:2, 63:3, 68:3, 69:4, 71:5, 78:8, 79:13, 81:7, 81:10, 81:22, 88:10
**king**
4:8
**know**
8:13, 8:18, 9:14, 19:3, 22:6, 23:12, 27:13, 32:3, 32:11, 32:14, 33:6, 33:19, 33:22, 35:5, 35:9, 35:14, 35:20, 37:16, 40:4, 42:14, 43:21, 47:18, 49:2, 49:13, 51:19, 53:9, 54:1, 56:20, 57:1, 58:8, 61:22, 62:13, 62:18, 64:21, 66:16, 68:19, 68:20, 69:9, 70:6, 71:12, 71:17, 72:20, 77:8, 77:22, 79:1, 85:20, 87:17, 88:1, 90:5, 90:16
**knowledge**
11:18, 24:18, 28:16, 33:1, 37:6, 37:10, 37:11, 37:15, 37:22, 38:1, 43:7, 44:14, 44:19, 45:5, 45:12, 46:8, 47:7, 47:14, 48:15, 49:5, 51:2, 55:11
**knowledgeable**
55:20
**known**
37:4

**L**

**lack**
22:7
**lakeila**
4:7
**landlord**
27:17, 28:1, 28:8, 28:21, 29:8, 41:17, 42:7, 42:20, 48:10, 50:2, 71:7, 71:12, 71:19, 71:22, 72:1, 73:4, 74:4, 74:9, 78:20, 78:22, 79:2, 79:15, 80:2, 82:12, 82:20, 84:5, 85:5, 86:4, 86:6, 86:20
**landlord's**
85:7
**landlords**
26:18, 29:17, 45:1, 48:5, 68:17
**language**
70:6
**last**
47:19, 88:21
**lauren**
1:11, 2:1, 5:2, 6:2
**law**
14:15, 14:21, 75:5
**lays**
56:17
**lease**
47:12, 47:13, 48:7, 48:13, 64:5, 68:12, 75:21, 78:1, 79:1, 79:6, 79:15, 79:22, 80:3, 82:10, 83:2, 85:7, 86:2, 87:22, 90:10
**left**
6:16, 9:3, 9:9
**legal**
20:8, 32:12, 33:20, 79:11, 80:1, 80:16, 81:13, 87:4
**legally**
84:10
**legislation**
51:17, 51:18
**less**
38:21
**let's**
28:7, 31:10, 42:8, 59:2, 71:5, 71:7, 72:6, 73:3, 75:14, 75:15, 76:12, 78:2, 78:19, 80:2, 82:19, 82:21, 85:5, 88:22, 89:2, 89:22, 90:1, 90:4, 90:8
**letter**
50:1
**letters**
50:8
**level**
14:12, 81:15

**limited**
59:16
**limits**
40:16, 40:17
**line**
64:2
**linked**
40:18, 40:19
**list**
34:17, 35:3, 35:5, 35:6, 35:10, 35:15
**listed**
11:7, 35:18, 35:19, 35:22, 37:2, 37:17, 46:12, 47:2
**listing**
33:4
**literally**
86:2
**litigation**
7:4, 51:11
**little**
64:10, 69:9, 72:15
**llp**
3:5, 3:14, 6:11
**locate**
27:8
**long**
9:15, 62:17, 65:8
**look**
9:16, 9:21, 9:22, 20:18, 23:4, 27:6, 35:10, 46:14
**looked**
12:4, 13:6, 13:15, 24:12, 54:2
**looking**
10:9, 21:19, 30:13, 87:15, 89:9, 91:2
**lot**
41:12, 68:1
**lucrative**
72:20
**luther**
4:8

**M**

**made**
21:12, 47:3, 47:17, 59:19
**mailbox**
13:5
**make**
40:9, 41:4, 41:7, 42:22, 48:21, 61:21, 64:9, 65:19, 67:1, 70:12, 71:1, 72:20, 73:1, 77:14, 77:17, 80:21, 81:9, 81:19, 83:21, 89:14, 90:17
**making**
68:22, 83:18, 85:15, 85:18
**managed**
6:19, 8:3, 12:16
**management**
1:7, 6:6, 6:12, 10:11, 53:15
**manager's**
87:19
**managing**
8:6
**mandatory**
24:9, 26:4
**many**
7:1, 15:3, 16:12, 16:22
**mark**
10:1, 10:20, 20:19, 23:5, 43:10, 46:15
**marked**
10:3, 10:21, 20:21, 23:6, 43:12, 46:17
**market**
40:21, 75:14, 78:1
**martin**
4:8
**maryland**
3:17, 14:18, 14:20
**matches**
79:6
**material**
44:22
**materials**
12:4
**matter**
7:19
**matters**
11:8, 11:13, 12:3
**maybe**
7:2, 15:5, 64:16
**mean**
15:18, 18:13, 21:11, 22:6, 26:10, 29:1, 32:14, 35:9, 42:10, 52:16, 54:12, 58:4, 62:16, 69:7, 75:21, 79:6, 79:21, 85:14, 90:16
**meaningful**
42:18
**means**
21:12, 26:4, 42:12, 69:22, 82:6, 89:17
**member**
14:17
**membership**
15:4
**merits**
59:13, 59:19
**michael**
4:5
**middle**
76:22
**might**
9:8, 9:10, 62:18
**migliaccio**
3:5
**mind**
35:22, 77:15
**minimal**
88:1
**minute**
12:21, 71:16
**mislabeled**
9:19
**misstatement**
67:22
**mm-hmm**
30:7, 47:21
**mold**
53:6
**monday**
1:14
**money**
69:22, 70:13, 78:13, 82:7, 89:3, 89:17
**month**
38:12, 71:14, 73:11, 79:14, 82:12
**month's**
38:21
**monthly**
26:4, 26:7, 30:5, 30:11, 30:18, 30:19, 32:7, 34:5, 34:6, 39:15, 39:19, 40:10, 40:11, 40:12, 41:5, 69:17, 71:19, 75:20, 78:22, 79:21, 83:18, 84:6, 85:7, 90:21
**months**
38:7

**more**
27:5, 31:19, 38:6, 55:20, 72:15, 72:20
**morning**
6:8, 6:9, 56:5, 56:6, 56:8
**most**
7:6, 7:10
**move**
63:3
**mpd**
57:10
**much**
27:8
**multiple**
11:3
**must**
37:8, 37:13, 38:20, 47:3, 47:10, 47:16, 49:4, 49:10, 50:2, 64:2, 65:11, 67:12
**myself**
31:16, 58:9, 58:12

**N**

**name**
6:10, 54:14
**named**
6:15, 13:9
**need**
9:14, 13:1, 20:8, 41:22, 54:3, 66:4
**negotiated**
22:7
**neither**
24:15, 92:8
**never**
34:11
**new**
75:4
**next**
15:5
**nod**
9:2
**non**
28:5, 28:20, 29:7, 29:18, 35:12, 58:18, 75:6, 76:9, 76:17, 82:22, 83:1, 83:3, 83:6, 84:13
**nonbinding**
84:18
**noncompliance**
50:13, 50:16, 50:17, 50:21, 50:22
**nonpayment**
82:13
**notarial**
92:13
**notary**
2:14, 92:1
**note**
50:12
**nothing**
41:1
**notice**
5:11, 11:22, 12:1, 22:21, 26:2, 26:18, 38:16, 41:3, 50:13, 64:3, 64:11, 64:13, 64:21, 65:1, 65:2, 65:9, 65:12, 65:13
**notices**
40:14, 50:12, 50:16, 50:17, 50:20, 50:21, 54:21, 55:3, 57:5
**november**
1:14, 92:14
**number**
20:20, 30:22, 31:4, 31:8, 32:1, 32:9, 33:17, 41:9, 43:10, 43:11, 46:16
**numbers**
9:18, 9:20

**O**

**oah**
59:19, 60:12, 60:22, 61:1, 87:12
**object**
9:8, 9:10, 41:10, 73:15, 77:10, 77:12, 77:19, 77:21, 85:19
**objected**
76:19
**objection**
25:18, 28:3, 32:12, 33:20, 68:18, 72:3, 72:8, 72:16, 73:14, 73:18, 74:6, 74:13, 74:14, 74:20, 74:21, 75:8, 76:6, 76:11, 76:12, 77:15, 79:4, 79:5, 79:19, 79:20, 80:8, 80:9, 82:17, 83:7, 83:13, 83:14, 85:12, 85:13, 86:8, 90:14, 90:15, 91:8
**objections**
81:9
**obtain**
14:19, 15:4
**occupancy**
70:2, 78:15, 82:8, 83:2, 89:19, 90:4
**october**
21:12, 21:22, 22:2, 23:20, 24:15
**office**
14:1, 14:6, 14:10, 19:13, 19:16, 20:2, 20:10, 20:11, 20:13, 28:11, 45:22, 46:8, 48:22, 52:10, 52:14, 52:20, 57:6, 58:22, 59:9, 59:11, 62:10, 70:21, 74:17
**officer**
92:2
**often**
20:6, 28:16, 53:7
**oh**
35:1, 66:21, 68:19, 89:8
**okay**
24:12, 30:16, 31:12, 31:17, 31:20, 32:3, 34:21, 35:1, 58:6, 58:10, 61:15, 63:2, 66:4, 67:1, 69:9, 71:5, 71:6, 79:12, 81:18, 86:11, 89:2, 89:11, 89:15, 89:22
**once**
27:7, 38:7, 87:13
**one**
10:10, 12:20, 27:3, 27:4, 30:4, 31:18, 41:17, 54:20, 63:3, 71:8, 71:18, 73:12, 78:20, 78:21, 79:3, 82:10, 82:14, 85:6, 86:3

**ones**
12:16
**only**
12:20, 30:10, 39:20, 41:1, 41:2, 54:8, 80:13
**opened**
88:19
**operate**
42:13
**opine**
84:9
**opinion**
49:22, 79:11, 80:16, 81:13, 84:13, 84:15
**opinions**
50:7, 57:2, 84:13, 85:2
**opposed**
68:13
**orders**
50:19, 57:2
**ota**
46:5
**other**
13:7, 16:20, 26:18, 27:1, 27:4, 28:14, 35:3, 37:18, 51:10, 51:14, 53:4, 54:4, 54:22, 55:4, 57:9, 69:17, 71:15, 72:10, 75:12, 87:8
**otherwise**
92:11
**out**
19:7, 34:18, 46:22, 48:17, 56:17, 81:6, 81:10, 91:2
**outcome**
92:11
**outlined**
28:15
**outside**
49:15, 75:18
**over**
19:13, 44:4, 58:18, 62:5, 84:20, 86:5, 90:6
**oversee**
57:1
**own**
32:20
**owned**
12:16, 12:18

**P**

**page**
5:2, 5:9, 12:7, 30:1, 30:12, 30:14, 34:16, 34:19, 34:22, 35:1, 37:2, 38:4, 39:11, 46:22, 47:19, 64:1, 66:2, 69:13, 89:11
**pages**
1:21, 11:3
**paid**
39:15, 40:1, 41:15, 41:16, 42:5, 42:7, 71:17, 71:19, 71:22, 82:11
**pair**
1:11, 2:1, 5:2, 5:9, 6:2, 6:20, 14:12, 56:5, 67:8, 69:10, 78:4, 81:5, 88:9
**pamphlet**
5:14, 43:17
**paragraph**
48:1, 66:9
**part**
7:4, 34:20, 39:8, 40:2, 43:6, 44:12, 44:18, 45:4, 45:10, 45:17, 45:20, 46:21, 50:3, 51:6, 90:10
**participated**
44:2, 51:16
**particular**
19:15
**parties**
7:13, 13:7, 92:10
**party**
7:3, 7:4, 7:5
**pass**
42:20
**passed**
42:15
**past**
27:13
**pause**
63:16
**pay**
79:2, 79:16, 80:5, 83:3, 90:5, 90:9
**paying**
42:2, 42:19, 65:6, 73:12, 73:22
**payment**
88:1
**pays**
78:21, 79:14
**penalties**
28:14
**pending**
9:15
**pepco**
41:16, 42:6
**perhaps**
52:16
**period**
12:5, 22:22, 50:5
**personal**
10:16, 49:5
**personally**
18:11, 18:13, 33:11, 52:21
**perspective**
27:18, 28:9, 28:22, 33:15, 42:16, 47:11, 48:9, 68:13, 68:16
**petition**
27:20, 28:10, 49:1, 59:14, 59:15, 84:7, 87:8, 87:11
**petitions**
19:14, 28:17, 33:8, 33:9, 54:9, 59:21, 59:22, 60:2, 60:4, 60:5, 60:11, 60:15, 84:8
**picked**
65:15
**pieces**
51:18
**plaintiff**
1:5, 3:3, 56:3, 56:10
**plaintiff's**
53:22
**planet**
1:12
**play**
44:7
**plea**
8:18
**please**
8:21, 9:21, 9:22, 63:6, 63:7, 80:22
**point**
30:15, 47:8, 50:9
**policy**
52:17
**position**
15:6, 15:10, 15:12, 16:12, 28:2, 34:2,

47:2, 51:10, 51:15, 51:16, 83:10, 83:15
**potentially**
76:4
**practice**
52:9
**practices**
6:18, 53:13
**precedence**
84:20
**premise**
71:10
**preparation**
13:3, 13:22
**prepare**
11:19
**presentation**
45:1
**previous**
77:9, 77:18
**printed**
46:22
**prior**
16:5, 51:8, 75:20, 76:2
**privileged**
80:15
**probably**
21:15, 21:16
**proceed**
87:9
**process**
44:8, 86:11, 86:14, 86:17, 87:11
**program**
17:9, 62:14
**promise**
88:22
**promptly**
87:12
**proof**
88:1
**proper**
73:13
**properties**
6:18, 12:13, 12:18, 29:12, 39:19, 40:19, 86:16
**property**
13:1, 39:20, 53:22, 54:4, 54:15, 58:20, 61:6, 75:10, 87:2, 87:6, 87:19
**protection**
14:7
**prove**
88:2
**proved**
87:21
**provide**
11:16, 27:17, 28:9, 28:22, 29:9, 29:19, 48:5, 48:12, 49:11, 68:17, 84:11
**provided**
22:6, 40:15, 47:15, 66:1, 68:7, 80:19
**provider**
30:21, 31:3, 31:7, 31:13, 31:22, 32:6, 32:18, 32:20, 33:3, 33:15, 37:2, 37:8, 37:13, 39:15, 40:1, 48:16, 50:18, 51:4, 60:2, 60:14, 65:3, 67:10, 70:1, 70:20, 78:14, 82:8, 83:17, 85:15, 87:19, 89:4, 89:18, 90:2, 90:20
**provider's**
5:12, 60:7, 64:3, 66:14, 67:7, 72:9
**providers**
24:4, 65:16
**providing**
43:20
**provisions**
35:7
**public**
2:14, 12:12, 18:2, 22:21, 43:4, 92:1
**publicly**
18:18
**publish**
18:18, 19:19, 26:18, 43:19
**published**
38:9, 40:20
**publishes**
18:12, 19:20, 20:11, 21:4
**publishing**
17:15, 44:4
**pulled**
35:7
**punitive**
6:14, 6:17
**pure**
75:14
**purposes**
40:8
**pursuant**
2:13
**put**
32:9, 90:22
**puts**
83:17, 90:20

**Q**

**question**
9:5, 9:15, 29:16, 30:10, 46:4, 47:4, 49:7, 49:14, 56:8, 62:18, 63:12, 70:11, 70:16, 70:17, 73:16, 74:7, 76:20, 76:22, 77:2, 77:4, 77:7, 77:9, 77:11, 77:16, 77:18, 77:20, 79:10, 80:10, 80:22, 81:15, 85:20, 85:21, 88:16, 89:14
**questioning**
81:8
**questions**
8:21, 9:9, 9:10, 9:12, 18:2, 20:7, 44:16, 56:1, 56:12, 69:12, 77:17, 81:21, 88:12, 91:11
**quick**
78:2, 80:11, 81:2
**quote**
69:20

**R**

**rad**
18:12, 21:10, 23:12, 23:17, 24:1, 24:6, 27:3, 27:4, 46:19, 52:13, 58:2, 58:11, 58:13, 58:14, 58:18, 59:2, 60:1, 60:14, 61:4, 61:8, 61:22, 62:4, 62:20, 64:4, 65:17, 68:16, 68:21, 70:12, 73:16, 80:20, 83:9, 84:9, 85:1, 86:5, 86:11, 86:22, 87:11, 91:5
**rad's**
52:9, 59:16,

62:19, 83:4, 83:10
**ran**
16:10, 53:18, 53:21, 54:18
**randolph**
3:4
**randy**
6:15, 56:9
**rate**
40:21, 75:14
**rather**
48:18
**rathod**
3:5
**rchen@classlawdc**
3:10
**read**
11:21, 12:1, 23:17, 25:22, 26:9, 66:16, 66:19, 67:3, 68:3, 77:9, 77:17, 77:18, 78:11, 82:2
**readily**
12:20
**reading**
77:16, 92:7
**reads**
21:10
**ready**
78:5
**real**
8:8
**really**
61:17, 76:15
**realm**
49:6
**reappointed**
15:14, 15:16, 15:18, 16:1
**reason**
21:6, 62:12, 62:16, 62:19
**reasons**
76:1
**recall**
8:2, 10:9, 21:15, 24:17, 47:18, 88:10, 88:16, 88:17
**recap**
79:13
**receive**
20:6, 27:21, 49:7, 67:12, 68:22
**received**
8:15, 33:2, 70:1, 78:14, 82:7, 89:3, 89:17, 90:1
**recent**
7:6, 7:10
**recently**
21:14
**recess**
78:3, 88:8
**recognize**
23:8
**recognizes**
39:14
**record**
9:18, 31:18, 52:3, 52:4, 61:21, 66:20, 67:5, 68:5, 77:19, 78:11, 80:13, 81:4, 81:11, 88:7, 89:15, 92:5
**records**
53:19
**recourse**
87:4
**reduced**
92:6
**refer**
6:12, 20:8, 20:9, 46:5, 52:10, 52:14, 58:8
**referenced**
54:5
**referred**
52:19
**referring**
41:12, 42:10, 48:1, 51:22, 66:12, 68:10
**reflect**
21:13
**refundable**
35:13
**refusing**
11:16
**regarding**
85:2
**register**
50:19
**registered**
58:21
**registration**
17:11, 40:8, 54:8
**registrations**
50:14, 50:15, 50:17, 57:5
**regulate**
43:2, 75:13
**regulated**
32:21, 40:17
**regulates**
17:7, 56:22
**regulations**
21:13, 37:21, 47:5, 48:8, 56:20
**regulators**
20:5
**regulatory**
34:8, 46:2, 56:14, 90:18
**rehabilitation**
60:4
**relate**
50:22
**related**
53:12, 53:19, 54:7, 55:1, 70:3, 78:16, 90:8, 92:9
**relates**
6:17, 25:2, 25:6, 25:9, 25:12, 25:16, 26:15, 88:14
**relating**
53:5
**relationship**
18:22, 20:1
**released**
12:12
**remember**
7:12, 8:1, 27:2, 27:9, 52:1, 63:10, 63:14, 64:7, 88:11
**rents**
32:20, 75:13
**repeat**
70:16
**rephrase**
17:22, 73:16
**report**
16:14, 17:1
**reported**
1:22
**reporter**
9:3, 77:7, 92:1
**represent**
6:11, 6:13, 56:10
**representation**
20:9, 83:20, 85:15, 85:18
**represents**
6:16
**requested**
92:8
**requests**
84:14
**required**
24:1, 29:13, 35:12, 35:18, 37:1, 43:19, 58:21, 63:13, 65:17, 67:10, 86:15
**requirement**
43:20

**requirements**
48:11
**requires**
35:16, 38:16, 57:8, 75:19
**resolution**
8:13
**resource**
18:3, 45:7, 45:19
**resources**
49:8
**respect**
81:17
**responses**
12:3
**responsibilities**
56:19
**responsible**
17:11, 17:13, 17:15, 17:21, 18:1
**responsive**
55:14
**restart**
89:14
**result**
28:17
**review**
11:5, 12:8, 13:2, 13:16, 13:19, 51:17, 59:10
**reviewed**
33:11
**revised**
21:10, 21:21
**revision**
22:3, 22:5
**revisions**
21:12
**right**
9:8, 9:17, 9:19, 21:9, 23:16, 34:20, 42:1, 56:2, 60:19, 66:6, 66:21, 69:3, 69:4, 70:18, 73:20, 75:13, 78:4, 78:7, 79:2, 79:16, 80:5, 81:5, 82:13, 84:21, 88:9, 89:4, 91:10
**rights**
20:12, 20:15
**role**
18:5, 22:5, 44:8, 56:13, 58:1, 59:16, 86:5, 86:22, 87:3, 87:7
**roles**
16:5, 16:8
**rollback**
28:18
**rollbacks**
28:13
**roughly**
7:1, 16:22
**route**
19:15
**rsteinberg@galla-gherllp**
3:19
**run**
53:10, 66:5
**ryan**
3:13, 6:10

S

**said**
19:4, 32:17, 53:18, 63:18, 64:1, 68:9, 70:16, 88:12, 88:18, 92:5
**sale**
16:9, 16:11
**same**
71:17
**saw**
64:9
**say**
17:1, 31:10, 32:4, 32:14, 35:9, 45:8, 45:21, 58:11, 58:13, 71:5, 71:7, 71:12, 72:1, 75:14, 76:2, 77:22, 80:2, 81:7, 86:14, 87:10, 88:22, 89:2, 90:1, 90:4, 90:8
**saying**
52:6, 64:7
**says**
26:3, 30:5, 30:17, 47:7, 66:9, 66:14, 69:17, 69:20, 71:12, 79:1, 80:3, 82:5, 83:2, 85:7, 86:2
**school**
14:15, 14:22
**script**
45:6
**seal**
92:13
**search**
13:4, 54:15, 54:16, 54:19
**searched**
54:13
**searches**
53:11, 53:18, 54:6
**searching**
54:12
**second**
5:11, 11:22, 30:12, 30:14, 66:8, 71:20
**section**
14:8, 56:16, 69:15, 70:7, 85:1
**security**
35:14, 37:18
**see**
12:13, 21:9, 23:16, 23:22, 30:4, 30:8, 30:17, 34:17, 35:2, 38:4, 38:20, 39:7, 53:11, 53:19, 66:8, 66:10, 66:21, 66:22, 67:14, 69:15, 69:18, 69:20, 70:4, 72:13, 78:17, 83:10, 89:4, 89:20
**seek**
87:3
**seen**
10:5, 11:4, 29:4
**sense**
77:17
**separate**
57:20, 58:5, 58:7, 73:10
**separately**
40:6
**series**
8:20
**serve**
64:2
**served**
65:18
**service**
25:16, 25:19, 25:22, 26:1, 26:3, 26:6, 26:9, 26:10, 26:13, 26:15, 31:9, 31:10, 31:14, 31:15, 31:22, 32:10, 33:17, 34:13, 36:20, 37:4, 37:13, 38:1, 39:4, 40:7, 41:12, 44:12, 44:18, 44:21, 45:4, 45:9, 45:16, 45:20,

48:2, 49:18, 50:3, 51:5, 51:12, 52:8, 53:2, 88:15, 89:1, 89:22, 90:1, 90:12, 91:7
**services**
70:3, 78:16, 82:9, 89:19
**set**
13:5, 62:21, 72:18, 73:1, 92:12
**sheets**
44:16
**should**
9:12, 32:9, 34:5, 34:12, 35:4, 35:9, 65:14, 65:15, 73:22, 75:1, 82:13, 83:5
**showing**
87:22
**side**
60:7, 60:9
**sidebar**
80:11, 81:2
**sign**
47:12
**signature-p1kal**
92:17
**signed**
68:12
**signing**
47:13, 68:11, 75:21, 92:8
**similar**
76:16
**since**
21:21, 23:19, 24:15, 50:9, 51:21
**situation**
71:18, 71:20, 82:19, 86:2
**slow**
61:20
**some**
13:6, 39:14, 51:20, 60:14, 75:12, 77:8, 81:6, 81:15
**somebody**
49:8
**someone**
23:12, 33:9, 42:2, 50:18, 86:14
**someone's**
68:12
**something**
49:6, 74:1, 74:16, 80:14, 80:18, 86:21, 88:13
**somewhat**
18:8
**somewhere**
7:11, 54:1
**sorry**
19:16, 29:15, 30:7, 30:9, 50:14, 56:18, 61:17, 66:18, 69:8, 70:16, 74:8, 82:18, 89:7
**sort**
22:21, 49:11, 50:7, 81:6
**sorts**
29:6
**sounds**
49:6
**speak**
13:22, 14:3, 14:6
**specific**
13:1, 35:21, 54:3, 56:17
**specificity**
21:15
**specified**
50:6
**spencer**
4:5, 30:2, 73:14, 74:13, 74:21, 76:12, 77:3, 77:21, 78:2, 79:5, 79:20, 80:9, 80:21, 81:3, 83:14, 85:13, 90:15, 91:8
**split**
71:21
**splits**
80:2
**spring**
15:2
**st**
24:2, 24:5
**stabilization**
17:9, 39:18, 69:22, 78:13, 82:6, 89:16
**stabilized**
38:6, 39:21, 39:22, 40:19, 62:9, 65:2
**staff**
18:5, 22:16, 45:21
**start**
28:7, 56:11, 63:2, 72:6, 82:1
**starting**
34:16, 34:19
**starts**
48:2
**state**
23:22, 30:10
**stated**
34:11, 37:20, 43:5, 44:15, 44:20, 45:2, 45:15, 74:22, 76:1
**states**
38:5, 38:20, 39:7, 44:11
**statuary**
43:19
**statute**
27:22, 32:21, 35:11, 35:16, 35:18, 37:21, 37:22, 38:2, 40:18, 46:21, 57:8, 58:4, 62:6, 62:22, 70:7, 72:22, 73:19, 75:5, 81:14, 84:10, 84:11
**statutory**
34:9, 43:20, 46:2, 62:2, 90:18
**stefanie**
1:22, 2:13, 92:2
**steinberg**
3:13, 5:3, 6:7, 6:10, 10:1, 10:19, 20:17, 23:4, 30:3, 41:19, 42:8, 43:8, 46:15, 52:2, 55:22, 63:5, 63:12, 68:18, 72:3, 72:8, 72:16, 73:15, 73:18, 74:6, 74:8, 74:14, 74:20, 75:8, 76:6, 76:11, 76:19, 77:10, 77:19, 79:4, 79:19, 80:8, 81:20, 82:17, 83:7, 83:13, 85:12, 86:8, 88:4, 88:12, 90:14, 91:12
**stemmons**
4:7
**steps**
11:19
**still**
56:7, 78:7, 81:1, 88:19,

89:7, 89:9
**street**
3:6, 3:15
**structure**
57:12
**studebaker**
13:8, 13:11, 55:9, 55:12
**sub-metered**
36:8
**sub-metering**
25:9
**sub-page**
45:14
**subject**
18:9, 39:18
**submit**
22:18
**submits**
86:14
**subordinate**
84:16
**subpoena**
5:10, 10:10, 11:21, 13:9, 50:6, 54:2, 54:5
**subpoenaed**
10:11
**subsection**
57:17
**subset**
60:18
**subsidized**
62:14, 75:11
**substance**
91:3, 91:6
**substantial**
60:4
**suite**
3:7, 3:16
**sum**
70:13
**summary**
43:21
**superior**
1:1, 61:14, 62:15, 71:3, 71:4
**supporting**
88:2
**suppose**
62:12
**supposed**
66:1, 67:16
**surcharge**
39:8
**sure**
29:1, 29:4, 33:6, 33:8, 61:19, 61:21, 64:9, 65:19, 67:5, 89:14
**suspect**
76:4, 76:9
**sworn**
6:4

**T**

**tab**
10:20, 20:18, 23:5, 30:2, 30:3, 63:7, 63:8, 63:17, 69:5, 69:7, 69:8, 69:10
**tabs**
9:21
**take**
7:16, 11:19, 40:12, 50:15, 51:9, 51:15, 76:12, 76:21, 78:2, 80:10, 81:2, 84:20
**taken**
51:3, 78:3, 88:8, 92:3, 92:6
**taking**
8:7, 8:10
**talent**
70:21
**talk**
73:3, 75:15, 78:19, 82:19, 85:5, 89:22
**talked**
63:4
**talking**
25:20, 28:4, 41:14, 41:18, 42:4, 42:5, 59:1, 72:5, 86:1
**talks**
78:9
**tasked**
91:5
**technical**
34:4, 59:10, 59:18, 87:13, 87:15
**tell**
9:6, 27:7, 32:5, 32:18, 46:9, 47:13, 63:7
**tells**
30:21, 31:3, 31:7, 31:13, 31:22
**ten**
17:2
**tenancy**
88:3
**tenant**
6:15, 14:1, 17:20, 20:3, 20:10, 20:11, 20:13, 20:15, 26:5, 27:18, 27:19, 27:20, 28:9, 28:10, 28:22, 33:3, 33:7, 33:9, 38:16, 40:2, 42:15, 42:19, 45:19, 46:1, 46:9, 46:10, 47:11, 49:1, 49:2, 49:9, 49:12, 52:6, 52:10, 52:11, 54:9, 54:10, 59:5, 59:15, 59:21, 60:10, 60:21, 61:6, 61:11, 63:14, 64:3, 64:11, 64:13, 65:5, 65:10, 65:17, 65:18, 66:15, 67:8, 67:17, 68:8, 68:14, 68:16, 71:18, 73:12, 73:21, 75:20, 78:21, 79:14, 82:10, 84:7, 84:8, 85:16, 86:19, 87:8, 87:9, 87:10, 87:21, 87:22
**tenant's**
38:17, 48:7, 48:13, 60:8, 60:9, 87:18
**tenants**
5:15, 20:6, 27:5, 27:7, 29:2, 29:20, 41:3, 45:2, 48:2, 48:6, 67:12, 72:21, 73:8
**term**
26:3, 26:10, 41:11, 61:22
**terms**
9:19, 36:18
**testified**
6:4
**testify**
7:18, 10:8, 10:11, 10:12, 10:16, 11:13
**testimony**
7:8, 7:21, 11:17, 76:5, 88:11, 92:5
**th**
50:9, 92:13, 92:15
**thank**
56:2, 67:21,

69:2, 78:4, 81:5, 88:9
**thereafter**
92:6
**thereupon**
6:1
**they'd**
72:12
**thing**
63:4
**things**
42:2, 60:15, 60:18
**think**
7:17, 12:14, 12:22, 13:7, 13:15, 24:7, 41:13, 41:20, 41:22, 47:4, 47:9, 47:10, 53:21, 54:2, 54:8, 54:13, 54:20, 55:20, 58:11, 60:6, 63:12, 63:17, 63:18, 74:18, 75:22, 77:1, 77:5, 77:14, 77:16
**third**
7:3, 64:1
**thousand**
71:8, 71:18, 73:12, 75:3, 75:17, 78:20, 78:22, 79:3, 79:14, 79:21, 82:11, 82:14, 85:6, 85:8, 86:3, 90:21
**three**
7:2, 15:17, 27:13
**through**
11:3, 11:21, 18:2, 19:14, 42:21, 48:22, 71:6
**time**
7:10, 8:16, 15:22, 31:19, 48:19, 51:20, 56:9, 62:17, 66:4, 68:7, 68:11, 68:22
**times**
7:1, 15:20, 15:21
**title**
29:7, 65:14
**titles**
27:2
**today**
11:5, 13:3, 13:22, 43:5, 55:15, 55:18, 68:16, 88:11
**today's**
11:20, 53:10, 68:5
**told**
37:7, 37:12, 52:7
**took**
8:17, 15:2
**top**
27:2, 30:14, 33:6, 38:4, 47:9, 51:19, 68:20, 87:17
**topics**
11:17, 55:15, 55:18, 55:21
**towns**
1:22, 2:14, 92:2
**track**
89:1
**trade**
45:2
**training**
44:22
**transactions**
8:4, 8:6
**transcript**
5:8, 10:4, 10:22, 20:22, 23:7, 43:13, 46:18, 92:4
**transfer**
28:11, 59:11
**treat**
40:6
**trial**
7:8, 7:13, 7:15, 8:11, 8:13
**true**
21:3, 21:7, 92:4
**truthful**
83:19, 85:17
**truthfully**
8:21
**try**
12:15, 81:14, 81:16
**trying**
7:17, 61:20, 65:20, 76:15
**turn**
25:1, 29:22, 30:9, 34:22, 35:1, 43:8, 63:5, 63:17, 66:2, 69:5, 69:13
**twice**
15:19
**two**
22:16, 27:1, 54:20, 58:4, 58:7
**types**
60:2
**typewriting**
92:7
**typical**
52:17
**typing**
9:3
**typo**
64:16, 64:18

**U**

**ultimate**
59:18
**ultimately**
66:4, 73:22
**uncovered**
54:6
**under**
17:16, 30:15, 62:13, 62:15, 70:14, 73:13, 74:2, 75:5, 79:6, 82:14, 83:4, 84:10, 92:7
**understand**
9:5, 25:20, 26:10, 41:13, 56:15, 57:11, 58:17, 60:10, 64:19, 65:20, 65:22, 66:21, 67:2, 68:2, 68:3, 71:9, 76:16
**understanding**
10:7, 11:12, 48:4, 79:10, 80:18, 81:11
**understood**
9:7
**unit**
8:2, 17:11, 30:6, 30:12, 38:6, 39:22, 59:7, 62:9, 67:13, 70:3, 71:13, 72:4, 72:5, 72:7, 74:11, 76:3, 76:10, 78:16, 82:9, 83:12, 90:9
**units**
28:5, 28:7, 28:20, 40:22, 58:19, 59:3, 60:5, 60:11, 65:2, 69:21, 78:12, 82:5, 89:16

**universe**
33:9
**unless**
9:10
**updated**
21:14
**use**
24:1, 24:5, 24:9, 26:19, 58:2, 66:9, 67:6, 70:2, 78:15, 82:9, 89:19, 90:9
**using**
41:11
**utilities**
25:3, 41:11, 41:14, 41:15, 41:16, 42:2, 42:4, 42:6, 42:10, 42:12, 44:11, 44:17, 44:21, 45:3, 45:9, 45:16, 49:18, 51:5, 51:11, 53:1, 53:8
**utility**
6:18, 25:6, 25:12, 26:6, 30:21, 31:3, 32:10, 33:16, 34:13, 36:4, 36:12, 36:16, 37:3, 37:8, 37:19, 37:21, 38:11, 38:17, 39:4, 40:7, 41:8, 42:5, 42:13, 42:19, 43:1, 43:5, 44:11, 44:17, 44:21, 45:3, 45:9, 45:16, 49:18, 50:2, 50:3, 51:5, 51:11, 52:8, 53:1, 53:12

**V**

**vacant**
60:5
**value**
40:13
**variable**
38:11
**vary**
38:11
**verbatim**
70:9, 70:10
**version**
21:18, 22:17, 24:6, 24:21, 44:1
**versus**
76:17
**view**
73:17, 74:18, 85:10
**violation**
29:1, 50:12, 55:3
**violations**
53:6
**void**
50:19
**voluntary**
60:3

**W**

**wait**
12:21, 81:20
**walk**
71:5
**want**
25:18, 25:19, 35:1, 52:5, 56:11, 61:20, 63:3, 64:9, 64:19, 65:19, 65:22, 66:7, 67:1, 69:4, 69:12, 70:11, 71:12, 71:13, 76:21, 77:13, 81:2, 81:7, 81:9, 81:12, 81:19, 88:10
**wanted**
63:2, 78:8
**washington**
1:13, 2:2, 3:8, 4:9
**water**
41:15
**way**
34:2, 68:4, 71:17, 82:1
**we'll**
43:10, 80:3, 80:4
**we're**
20:4, 21:18, 28:4, 30:3, 42:4, 42:5, 43:1, 63:16, 72:5, 78:7, 82:3, 91:11
**we've**
51:16, 55:18, 81:5
**website**
45:14
**welcome**
11:2
**whatever**
83:10, 90:22
**whenever**
89:12
**whereof**
92:12
**whether**
27:14, 28:4, 29:17, 33:16, 38:11, 41:8, 42:3, 42:4, 42:6, 42:18, 45:20, 47:12, 50:1, 62:5, 70:13, 86:6
**winter**
15:1, 15:2
**within**
15:6, 16:15, 22:12, 24:19, 31:11, 32:5, 33:17, 34:7, 35:17, 36:7, 36:11, 36:15, 36:18, 41:8, 44:10, 48:6, 48:12, 49:6, 55:19, 57:17, 64:4, 65:10, 79:17
**witness**
6:3, 41:20, 42:3, 56:1, 76:20, 82:18, 92:12
**witness's**
80:18
**word**
22:7, 22:10
**work**
18:10, 57:6
**workaround**
71:15, 71:16, 71:21, 73:11, 74:1, 74:5, 74:10, 80:4, 84:1
**wouldn't**
48:20
**write**
44:1
**written**
46:6, 50:1, 50:8
**wrong**
77:6, 86:4

**Y**

**yeah**
39:12, 59:1, 59:5, 64:17, 64:20, 67:6, 73:6, 73:9, 76:21, 80:10
**year**
14:15, 15:5, 16:3, 27:7, 33:8

**years**
7:7, 15:3, 15:17, 16:12, 27:13

**$**

**$1000**
72:19
**$500**
71:13, 71:15, 72:2, 72:10, 72:11, 72:12, 72:14, 72:20, 73:5, 73:11, 74:3, 74:5, 74:10, 80:3, 80:4, 80:6, 82:20, 82:21, 83:5, 83:6, 83:18, 83:21, 83:22, 90:22
**$900**
85:19, 86:4

**.**

**.1421**
3:18
**.3520**
3:9

**0**

**00**
1:15
**000177**
1:7
**05**
91:13

**1**

**10**
1:15, 5:10, 5:11, 21:10, 23:17, 92:13
**103**
70:7
**12**
38:7, 91:13, 92:15
**1200**
3:16
**1909**
4:8
**1985**
17:6

**2**

**20**
5:12
**20002**
3:8
**20020**
4:9
**20036**
1:13
**2004**
14:16
**2005**
15:5
**2017**
15:13
**202.470**
3:9
**2020**
7:11
**2021**
21:14
**2022**
7:12, 21:13, 21:22, 23:20, 24:16
**2023**
24:2, 24:5, 43:4, 50:9, 51:21
**2025**
12:12
**2026**
1:7, 1:14, 92:14
**2029**
92:15
**21202**
3:17
**22**
21:10, 22:2, 23:17
**23**
5:13
**26**
7:7
**29**
50:9
**2nd**
12:12

**3**

**30**
48:6, 48:12, 64:4, 65:11
**302**
3:7
**31**
24:2, 24:5
**3502.22**
46:13

**4**

**410.951**
3:18
**412**
3:6
**42**
46:13
**43**
5:14
**46**
5:15

**5**

**500**
71:21, 75:4, 75:16
**56**
5:4

**6**

**60**
41:3, 65:9
**650**
3:15
**656404**
1:20
**6th**
43:9

**9**

**900**
85:9
**92**
1:21
**9th**
1:14, 43:4, 51:21